**IN THE UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| CORBIN COWAN, DAWN COWAN, STRATEGIC EQUITY PARTNERS, LLC, TRIUMPH TECHNOLOGIES, LLC, CAB VENTURES, LLC, JEREMY ENGEL, SPARTAN MARKETING & INVESTMENTS, LLC, INTELLITECH SOLUTIONS, LLC, SOLIDA EQUITY PARTNERS, LLC AND JOSH KIRK, | § § § § § § § § § § | |
| *Plaintiffs,* | § § | |
| v. | § § | CASE NO. 4:25-cv-04476 |
| JAMES TYLER BOYD, MIKE BOGGS, PETER D. HATZIPETROS, THE EDEN ALLIANCE, LLC, ANGELS CODING, LLC, and DAWN BOGGS, | § § § § § § § | |
| *Defendants.* | § | |

---

**PLAINTIFFS' RESPONSE TO DEFENDANT PETER D. HAZIPETROS'S HATZIPETROS'S MOTION TO DISMISS**

---

TO THE HONORABLE JUDGE OF SAID COURT:

Plaintiffs submit this response in opposition to Defendant Peter D. Hazipetros's Motion to Dismiss. As set forth below, the Motion misapplies the governing pleading standards and asks the Court to resolve factual disputes and draw inferences in Hazipetros's favor at the pleading stage. When the Complaint is read as a whole and the well-pleaded allegations are accepted as true, Plaintiffs have plausibly stated their claims. The Motion should be denied.

## TABLE OF CONTENTS

I.      **TABLE OF AUTHORITIES** ........................................................................ **4**

II.    **INTRODUCTION AND OVERVIEW** ................................................... **8**

III.   **APPLICABLE LEGAL STANDARDS** ................................................ **8**

    A.   Rule 12(b)(1) ............................................................................................ 8

    B.   Rule 12(b)(6) ............................................................................................ 9

    C.   Rule 9(b) (Where Applicable) ................................................................. 9

IV.   **ATTORNEY IMMUNITY DOES NOT BAR PLAINTIFFS' CLAIMS** .............. **10**

    A.   Attorney Immunity Is Not a Jurisdictional Doctrine. ............................ 10

    B.   Plaintiffs Plausibly Allege Conduct Outside the Scope of Legitimate Legal Representation. ........................................................................................ 12

    C.   Attorney Immunity Does Not Protect Participation in a Client's Fraudulent Scheme. 14

V.    **PLAINTIFFS ADEQUATELY PLEAD FEDERAL RICO CLAIMS** .................. **16**

    A.   Substantive RICO (18 U.S.C. § 1962(c)) .............................................. 16

        a.   The Complaint Plausibly Alleges an Association-in-Fact Enterprise. .......................... 16

        b.   The Complaint Plausibly Alleges That Hatzipetros Participated in the Conduct of the Enterprise's Affairs. ................................................................................. 18

        c.   The Complaint Plausibly Alleges a Pattern of Racketeering Activity. ......................... 19

        d.   The Complaint Plausibly Alleges Proximate Cause and Injury. ................................. 19

        e.   Conclusion. ......................................................................................... 20

    B.   Plaintiffs Adequately Plead RICO Conspiracy (18 U.S.C. § 1962(d)). ......................... 20

VI.   **STATE-LAW CLAIMS ARE PLAUSIBLY PLEADED** ........................................ **22**

    A.   Plaintiffs Properly Plead a Conversion Claim. ...................................... 22

    B.   Plaintiffs' Unjust Enrichment Claim is Adequately Plead in the Alternative. .............. 25

    C.   Plaintiffs Fraud and Fraudulent Inducement Claims are Properly Plead under Rule 9(b). 26

D.  Plaintiffs' Fraudulent Concealment Claim is Amply Plead. .......................................... 29

E.  The Absence of a Fiduciary Relationship Is Not Dispositive. ..................................... 31

**VII.  SECURITIES CLAIMS ARE ADEQUATELY PLEADED .................................... 31**

A.  Exchange Act § 10(b) and Rule 10b-5 ..................................................................... 31

a.  Plaintiffs Plausibly Allege a Deceptive Scheme Under Rule 10b-5(a) and (c). .......... 32

b.  Plaintiffs Plausibly Allege Scienter as to Hatzipetros. .................................................. 32

c.  Plaintiffs Adequately Plead Reliance and Loss Causation. .......................................... 33

d.  Plaintiffs Satisfy Rule 9(b) and the PSLRA ................................................................... 33

e.  Conclusion. ..................................................................................................................... 34

B.  Texas Securities Act ................................................................................................... 34

a.  The Complaint Plausibly Alleges a Primary TSA Violation. ......................................... 34

b.  Plaintiffs Plausibly Allege TSA Aider Liability Against Hatzipetros. ......................... 35

c.  Plaintiffs Plausibly Allege TSA Seller Liability in the Alternative. ............................. 36

d.  Plaintiffs Satisfy Rule 9(b). ........................................................................................... 36

e.  Conclusion. ..................................................................................................................... 37

C.  Plaintiffs' Civil Conspiracy Claim is Amply Supported. .......................................... 37

**VIII.  REQUEST FOR LEAVE TO AMEND .................................................................... 39**

**IX.  CONCLUSION ............................................................................................................ 40**

## I.  TABLE OF AUTHORITIES

**Cases**

*Abraham v. Singh*,
480 F.3d 351 (5th Cir. 2007) ................................................................. 17, 19, 22

*Agar Corp., Inc. v. Electro Circuits Int'l, LLC*,
580 S.W.3d 136 (Tex. 2019) ................................................................. 38, 39

*Alpert v. Crain, Caton & James, P.C.*,
178 S.W.3d 398 (Tex. App.—Houston [1st Dist.] 2005, pet. denied) .................................... 12

*Anthology, Inc. v. Tarrant Cnty. Coll. Dist.*,
136 F.4th 549 (5th Cir. 2025) ................................................................. 10

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ................................................................. 9

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) ................................................................. 9, 22

*Bell v. Hood*,
327 U.S. 678 (1946) ................................................................. 9, 11

*Billitteri v. Sec. Am., Inc.*,
2010 WL 6785484 (N.D. Tex. July 26, 2010) ................................................................. 36

*Bishop Global Family Tr. v. Mackie Wolf Zientz & Mann, P.C.*,
2025 WL 1287743 (S.D. Tex. 2025) ................................................................. 13

*Bombardier Aerospace Corp. v. SPEP Aircraft Holdings, LLC*,
572 S.W.3d 213 (Tex. 2019) ................................................................. 28, 29, 30, 31

*Boyle v. United States*,
556 U.S. 938 (2009) ................................................................. 16, 17

*Brickley for CryptoMetrics, Inc. Creditors' Tr. v. ScanTech Identification Beams Sys., LLC*,
566 B.R. 815 (W.D. Tex. 2017) ................................................................. 21

*Bridge v. Phoenix Bond & Indem. Co.*,
553 U.S. 639 (2008) ................................................................. 20, 33

*Cantey Hanger, LLP v. Byrd*,
467 S.W.3d 477 (Tex. 2015) ................................................................. 12

*Dale v. Frankel*,
131 F. Supp. 2d 852 (S.D. Miss. 2001) ................................................................. 18

*Dorsey v. Portfolio Equities, Inc.*,
    540 F.3d 333 (5th Cir. 2008) ................................................................ 35, 36

*Edlund v. Bounds*,
    842 S.W.2d 719 (Tex. App.—Dallas 1992, writ denied) ........................... 23

*Fagan v. Nexo Capital Inc*.,
    2025 WL 2446301 (E.D. Tex. 2025) ......................................................... 23

*Great Plains Tr. Co. v. Morgan Stanley Dean Witter & Co.*,
    313 F.3d 305 (5th Cir. 2002) .................................................................... 39

*H.J. Inc. v. Nw. Bell Tel. Co.*,
    492 U.S. 229 (1989) .................................................................................. 19

*Hart v. Bayer Corp.*,
    199 F.3d 239 (5th Cir. 2000) .................................................................... 40

*Heldenfels Bros., Inc. v. City of Corpus Christi*,
    832 S.W.2d 39 (Tex. 1992) ....................................................................... 25

*Hendricks v. Thornton*,
    973 S.W.2d 348 (Tex. App.—Beaumont 1998, pet. denied) ...................... 35

*In re Enron Corp. Sec., Derivative & ERISA Litig.*,
    235 F. Supp. 2d 549 (S.D. Tex. 2002) ..................................................... 19

*In re Uplift RX, LLC*, 667 B.R. 665 (Bankr. S.D. Tex. 2024) ................... 13, 15, 18, 22

*Int'l Pecans, LLC v. Ultra Trading Int'l Corp.*,
    764 F. Supp. 3d 527 (W.D. Tex. 2025) .................................................... 25

*Ironshore Eur. DAC v. Schiff Hardin, L.L.P.*,
    912 F.3d 759 (5th Cir. 2019) .............................................................. 10, 15

*Italian Cowboy Partners, Ltd. v. Prudential Ins. Co. of Am.*,
    341 S.W.3d 323 (Tex. 2011) ..................................................................... 27

*Kelly v. Nichamoff*,
    868 F.3d 371 (5th Cir. 2017) ............................................................. passim

*King v. Baylor Univ.*,
    46 F.4th 344 (5th Cir. 2022) ............................................................... 25, 26

*Kubbernus v. ECAL Partners, Ltd.*,
    574 S.W.3d 444 (Tex. App.—Houston [1st Dist.] 2018, pet. denied) ........ 35

*Lorenzo v. SEC*,
    587 U.S. 71 (2019) .................................................................................... 32

*Lormand v. U.S. Unwired, Inc.*,
  565 F.3d 228 (5th Cir. 2009) ............................................................ 33

*Marshall v. Abbott*,
  2022 WL 670917 (E.D. Tex. Feb. 14, 2022) ...................................... 11

*Megatel Homes, LLC v. Moayedi*,
  2021 WL 5325919 (N.D. Tex. Nov. 16, 2021) .................................... 22

*Molina-Aranda v. Black Magic Enters., L.L.C.*,
  983 F.3d 779 (5th Cir. 2020) ...................................................... 16, 20

*Newsome v. Charter Bank Colonial, N.A.*,
  940 S.W.2d 157 (Tex. App.—Houston [14th Dist.] 1996, writ denied) ................ 24

*Pinter v. Dahl*,
  486 U.S. 622 (1988) ...................................................................... 36

*Ramming v. United States*,
  281 F.3d 158 (5th Cir. 2001) ............................................................ 11

*Reves v. Ernst & Young*,
  507 U.S. 170 (1993) ................................................................ 16, 18

*Rotstain v. Trustmark Nat'l Bank*,
  2016 WL 8216509 (N.D. Tex. July 27, 2016) .................................... 37

*Salinas v. United States*,
  522 U.S. 52 (1997) ............................................................ 19, 20, 22

*Schlumberger Well Surveying Corp. v. Nortex Oil & Gas Corp.*,
  435 S.W.2d 854 (Tex. 1968) ............................................................ 38

*State of Tex. v. Allan Const. Co., Inc.*,
  851 F.2d 1526 (5th Cir. 1988) .......................................................... 30

*Steel Co. v. Citizens for a Better Env't*,
  523 U.S. 83 (1998) ...................................................................... 9

*Sterling Trust Co. v. Adderley*,
  168 S.W.3d 835 (Tex. 2005) ............................................................ 35

*Stripling v. Jordan Prod. Co.*,
  234 F.3d 863 (5th Cir. 2000) ............................................................ 40

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
  551 U.S. 308 (2007) ................................................................ 28, 33

*Tel-Phonic Servs., Inc. v. TBS Int'l, Inc.*,
   975 F.2d 1134 (5th Cir. 1992) ................................................................... 19

*Texas Capital Secs., Inc. v. Sandefer*,
   58 S.W.3d 760 (Tex. App.—Houston [1st Dist.] 2001, pet. denied)........................................ 36

*Thawar v. 7-Eleven, Inc.*,
   165 F. Supp. 3d 524 (N.D. Tex. 2016) ................................................................... 25

*Troice v. Proskauer Rose, L.L.P.*,
   816 F.3d 341 (5th Cir. 2016) ................................................................... 11, 14

*United States ex rel. Grubbs v. Kanneganti*,
   565 F.3d 180 (5th Cir. 2009) ................................................................... 10, 27, 34

*United States v. Elliott*,
   571 F.3d 880 (5th Cir. 1978) ................................................................... 21, 22

*United States v. Gratkowski*,
   964 F.3d 307 (5th Cir. 2020) ................................................................... 24

*United States v. Posada-Rios*,
   158 F.3d 832 (5th Cir. 1998) ................................................................... 21

*Waisath v. Lack's Stores, Inc.*,
   474 S.W.2d 444 (Tex. 1971)................................................................... 24

*Walker v. Cotter Props., Inc.*,
   181 S.W.3d 895 (Tex. App.—Dallas 2006, no pet.)................................................................... 26

*Williams v. WMX Techs., Inc.*,
   112 F.3d 175 (5th Cir. 1997) ................................................................... 10, 34

*Williamson v. Tucker*,
   645 F.2d 404 (5th Cir. 1981) ................................................................... 9

**Statutes**

Tex. Fin. Code Ann. § 160.001(4) ................................................................... 22

Tex. Gov't Code § 4008.052................................................................... 33

**Rules**

Fed. R. Civ. P. 15(a)(2)................................................................... 37

## II.  INTRODUCTION AND OVERVIEW

1.      Hatzipetros was not an incidental participant in this scheme. Plaintiffs allege that he structured, registered, and maintained the entities that received and held investor cryptocurrency and that conveyed the impression of institutional custody and oversight. Compl. ¶¶ 13, 46, 59–60. According to the Complaint, those entities were essential to the scheme's operation, enabling Defendants to solicit investments, conceal control, and misappropriate assets while maintaining an appearance of legitimacy. Compl. ¶¶ 43–46, 56–59.

2.      Plaintiffs' claims center on the solicitation and handling of investor cryptocurrency under the guise of institutional custody and professional management. Investors were told their assets would be safely held and traded on their behalf, while in reality Defendants retained unilateral control over those assets and diverted them for unauthorized purposes. Compl. ¶¶ 24–27, 31, 43–46.

3.      Rather than engage with these allegations as pleaded, the Motion to Dismiss seeks to defeat the claims by isolating individual counts and disregarding incorporated factual allegations. The law does not require Plaintiffs to plead their case in that manner, and courts routinely reject efforts to defeat scheme-based claims through artificial compartmentalization.

4.      When the Complaint is read as a whole, as it must be, Plaintiffs plausibly allege that Hatzipetros knowingly participated in a coordinated course of conduct that harmed investors. The Motion to Dismiss therefore presents a narrow legal question: whether Plaintiffs have alleged facts sufficient to state plausible claims for relief, not whether the Court should rewrite the Complaint or resolve factual disputes at the pleading stage. As set forth below, Plaintiffs have done more than enough.

### III. APPLICABLE LEGAL STANDARDS

#### A.  Rule 12(b)(1)

5.     A motion to dismiss under Rule 12(b)(1) challenges the Court's subject-matter jurisdiction, which is a threshold issue that must be resolved before the merits. *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 93–94 (1998). When a defendant brings a facial challenge to jurisdiction, the Court's review is limited to the pleadings, and the well-pleaded factual allegations are accepted as true, much like a motion under Rule 12(b)(6). *Williamson v. Tucker*, 645 F.2d 404, 412 (5th Cir. 1981).

6.     By contrast, a factual attack under Rule 12(b)(1) permits the Court to consider evidence outside the pleadings and to resolve disputed jurisdictional facts. *Id.* at 412–13. Even in that posture, however, the Court may not weigh the merits of the plaintiff's claims. *Id.* Where the jurisdictional inquiry is intertwined with the substantive elements of the claims asserted, dismissal under Rule 12(b)(1) is improper unless the claims are wholly insubstantial or frivolous. *Bell v. Hood*, 327 U.S. 678, 682 (1946).

**B.  Rule 12(b)(6)**

7.     To survive a motion to dismiss under Rule 12(b)(6), a complaint must allege sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 554–57 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

8.     In assessing plausibility, the Court must draw all reasonable inferences in the plaintiff's favor and may not resolve factual disputes, weigh evidence, or assess the merits of competing explanations. *Twombly*, 550 U.S. at 554–56; *Iqbal*, 556 U.S. at 678–79. The question at this stage is not whether Plaintiffs will ultimately prevail, but whether they have alleged facts sufficient to move their claims across the line from conceivable to plausible.

**C.  Rule 9(b) (Where Applicable)**

9.      For claims sounding in fraud, Rule 9(b) requires that the circumstances constituting fraud be pleaded with particularity, including the nature of the alleged misrepresentations or omissions and the manner in which they were misleading. *Williams v. WMX Techs., Inc.*, 112 F.3d 175, 178 (5th Cir. 1997).

10.     Rule 9(b), however, does not require evidentiary detail or proof at the pleading stage, nor does it prohibit group pleading where defendants are alleged to have acted in concert as part of a unified scheme. *United States ex rel. Grubbs v. Kanneganti*, 565 F.3d 180, 190 (5th Cir. 2009). Where the complaint identifies the fraudulent scheme and each defendant's role within it, Rule 9(b) is satisfied.

## IV. ATTORNEY IMMUNITY DOES NOT BAR PLAINTIFFS' CLAIMS

### A.  Attorney Immunity Is Not a Jurisdictional Doctrine.

11.     Defendant's opening move (invoking attorney immunity as a basis for dismissal under Rule 12(b)(1)) fails as a matter of black-letter federal law. State-law attorney immunity does not strip a federal court of subject-matter jurisdiction; it is a merits-based affirmative defense that, if applicable at all, must be analyzed under Rule 12(b)(6). *Anthology, Inc. v. Tarrant Cnty. Coll. Dist.*, 136 F.4th 549, 552–53 (5th Cir. 2025).

12.     The Fifth Circuit has made this point explicit: state-law immunities cannot limit the jurisdiction of federal courts, because federal jurisdiction derives exclusively from Article III and congressional grants, not from state doctrines governing liability. *Id.* at 553. If a state-law immunity applies in federal court under *Erie*, it does so "as a non-jurisdictional, merits-based defense." *Id.* Attorney immunity is no exception. *Id.*

13.     To be sure, courts often describe attorney immunity as a "true immunity from suit," but that label does not transform it into a jurisdictional bar. *Ironshore Eur. DAC v. Schiff Hardin, L.L.P.*, 912 F.3d 759, 764 (5th Cir. 2019). As the Fifth Circuit has explained, calling something an

affirmative defense "does not indicate that it is a simple defense to liability" or that it deprives a court of power to hear the case. *Troice v. Proskauer Rose, L.L.P.*, 816 F.3d 341, 344–45 (5th Cir. 2016). Other "true immunities," including qualified immunity and judicial immunity, are likewise treated as affirmative defenses rather than jurisdictional defects. *Id.* at 346.

14.     That distinction matters procedurally. A Rule 12(b)(1) motion permits a defendant to challenge subject-matter jurisdiction based on the pleadings and, in limited circumstances, undisputed jurisdictional facts or the court's resolution of disputed jurisdictional facts, but it does not authorize resolution of factual disputes intertwined with the merits. *Ramming v. United States*, 281 F.3d 158, 161–62 (5th Cir. 2001). Attorney immunity, by contrast, requires a conduct-specific analysis of what the attorney allegedly did and whether that conduct falls within the scope of legitimate legal representation. *Kelly v. Nichamoff*, 868 F.3d 371, 374–75 (5th Cir. 2017). That inquiry is inherently merits-based and often fact-intensive, precisely why courts only grant attorney immunity at the pleading stage when entitlement is "apparent on the face of the complaint." *Id.* at 375.

15.     Courts in this Circuit therefore reject attempts (like Defendant's) to smuggle attorney immunity into Rule 12(b)(1). When jurisdiction exists, immunity is addressed, if at all, as an alternative merits defense under Rule 12(b)(6). *Marshall v. Abbott*, 2022 WL 670917, at *7 (E.D. Tex. Feb. 14, 2022). The sequencing is not optional: jurisdiction first, defenses second.

16.     Here, Plaintiffs invoked federal-question jurisdiction through detailed civil RICO allegations, including predicate acts of wire fraud and money laundering, pleaded with particularity. Compl. ¶¶ 54–64. That alone vests this Court with subject-matter jurisdiction. *Bell*, 327 U.S. at 682. Whether Defendant can ultimately establish attorney immunity turns on the nature

and scope of his alleged conduct: an issue the Court cannot resolve under Rule 12(b)(1). *Kelly*, 868 F.3d at 375–76.

17.     In short, Defendant's jurisdictional argument asks this Court to do what the Fifth Circuit has squarely forbidden: allow a state-law immunity doctrine to contract federal jurisdiction. The Court should decline the invitation, deny dismissal under Rule 12(b)(1), and address attorney immunity, if at all, where it belongs: on the merits.

**B.    Plaintiffs Plausibly Allege Conduct Outside the Scope of Legitimate Legal Representation.**

18.     Attorney immunity turns on *what the attorney did*, not how artfully the conduct is relabeled after the fact. The governing inquiry focuses on the kind of conduct alleged, whether it constitutes traditional legal representation or instead amounts to independent business participation or operational involvement that is foreign to the duties of an attorney. *See Cantey Hanger, LLP v. Byrd*, 467 S.W.3d 477, 482–83 (Tex. 2015).

19.     Under this "nature of the conduct" test, an attorney is protected only for actions that involve "the office, professional training, skill, and authority of an attorney." *Id.* at 483. The mere existence of an attorney-client relationship, or the fact that legal documents were prepared, does not automatically cloak all conduct in immunity. *Kelly*, 868 F.3d at 375–76. To obtain dismissal at the pleading stage, the attorney bears a "heavy burden" to conclusively establish that the challenged conduct fell within the scope of legitimate legal representation and was not foreign to attorney duties. *Id*.

20.     Critically, attorney immunity does not extend to "independently fraudulent activities" or participation in a client's business scheme as a functional actor rather than as legal counsel. *Alpert v. Crain, Caton & James, P.C.*, 178 S.W.3d 398, 406 (Tex. App.—Houston [1st Dist.] 2005, pet. denied). Courts draw a clear line between providing legal advice and helping

operate or implement a fraudulent enterprise, particularly where the attorney's conduct enables concealment, misrepresentation, or control of assets. *Kelly*, 868 F.3d at 376.

21.    Here, Plaintiffs allege far more than passive legal drafting. The Complaint pleads that Defendant assisted in structuring, registering, and maintaining shell entities used to solicit, pool, control, and conceal investor funds, and that those entities were deliberately used to create the *appearance* of institutional legitimacy while obscuring true ownership and control. Compl. ¶¶ 13, 46, 59, 72(g), 76(f), 89(d). Plaintiffs further allege that Defendant's conduct enabled Defendants Boyd and Boggs to falsely represent that investor assets were "institutionally housed," when in fact the funds remained under Defendants' unilateral control. Compl. ¶¶ 46, 89(d).

22.    Those allegations place Defendant's conduct squarely within the category of extra-legal participation, not routine legal services. Courts routinely deny immunity where an attorney's actions extend beyond legal advice into business facilitation, operational structuring, or scheme implementation, even where those actions are dressed up as "representation." *In re Uplift RX, LLC*, 667 B.R. 665, 687–88 (Bankr. S.D. Tex. 2024). When an attorney's role "far exceeded just providing legal services" and involved shaping or enabling the mechanics of a fraudulent enterprise, immunity does not apply. *Id* at 699.

23.    Nor does Defendant escape scrutiny by insisting that entity formation is, in the abstract, legal work. While traditional entity formation can be protected, immunity evaporates where the attorney's conduct is alleged to be integral to the fraudulent use of those entities, rather than incidental to lawful business objectives. *Kelly*, 868 F.3d at 375–76; *Bishop Global Family Tr. v. Mackie Wolf Zientz & Mann, P.C.*, 2025 WL 1287743, at *3 (S.D. Tex. 2025). At the pleading stage, courts must accept Plaintiffs' allegations that the structuring itself was designed to facilitate fraud and concealment. *Bishop Global Family Tr.*, 2025 WL 1287743, at *2.

24.     Defendant's contrary framing, that Plaintiffs merely object to "legal service," asks the Court to ignore the substance of the allegations and accept a conclusory label in place of analysis. That is not how the doctrine works. Attorney immunity protects legal advocacy, not business engineering for a fraudulent enterprise.

25.     In short, because Plaintiffs plausibly allege that Defendant crossed the line from legal advisor to active participant in the structure and concealment of the scheme, attorney immunity cannot be resolved in Defendant's favor on a motion to dismiss, and certainly not as a matter of law at this stage.

**C. Attorney Immunity Does Not Protect Participation in a Client's Fraudulent Scheme.**

26.     Attorney immunity is broad, but it is not blind. While the doctrine protects lawyers from liability to non-clients for conduct undertaken in legitimate representation, it does not extend to attorneys who knowingly participate in, facilitate, or further a client's fraudulent scheme through conduct that is independently wrongful and foreign to the duties of an attorney. *Kelly*, 868 F.3d at 376–77.

27.     To be clear, Texas law does not recognize a free-floating "fraud exception" to attorney immunity. *Troice.*, 816 F.3d at 348. But that principle cuts both ways: while merely labeling conduct as fraudulent does not defeat immunity, allegations that an attorney knowingly engaged in independently fraudulent activities do. *Kelly*, 868 F.3d at 377; *Alpert*, 178 S.W.3d at 406.

28.     The Fifth Circuit has repeatedly emphasized the distinction. Attorney immunity protects legal services that may incidentally lend legitimacy to a client's conduct, so long as those services are "the kind of conduct in which an attorney engages when discharging his duties to his client." *Troice*, 816 F.3d at 348. Immunity is lost, however, when the attorney steps beyond representation and becomes a functional participant in the scheme itself, particularly where the

attorney's conduct enables concealment, misrepresentation, or control of assets. *Kelly*, 868 F.3d at 377; *Ironshore Eur. DAC*, 912 F.3d at 765–66.

29.     That is exactly what Plaintiffs allege here. The Complaint pleads that Defendant did not merely draft documents in isolation, but knowingly structured and maintained a web of shell entities used to mislead investors, conceal the true flow of funds, and provide a false veneer of institutional legitimacy. Compl. ¶¶ 13, 46, 59–60, 72(g), 76(f), 89(d), 93(e). Plaintiffs further allege that Defendant understood these entities were being used to solicit and pool investor assets under false pretenses, while obscuring ownership and control from investors. Compl. ¶¶ 46, 89(d), 100.

30.     Courts routinely hold that such allegations place an attorney outside the protection of immunity. In *Kelly*, for example, the Fifth Circuit denied immunity where the attorney allegedly received benefits beyond legal fees and had a pecuniary interest in the fraudulent transaction, concluding those facts supported an inference of "participat[ing] in independently fraudulent activities." 868 F.3d at 377. Likewise, in *In re Uplift RX, LLC*, the court denied dismissal where attorneys allegedly helped establish structures designed to conceal a scheme, emphasizing that conduct extending "beyond providing legal advice" cannot be immunized as a matter of law. 667 B.R. at 687–88.

31.     The same principle applies here. Plaintiffs do not allege that Defendant simply provided bad advice, missed red flags, or advocated too aggressively. They allege that Defendant helped build and maintain the infrastructure of the fraud itself, knowing how it would be used and why. Compl. ¶¶ 46, 59–60, 72(g). At this stage, those allegations must be credited. *Kelly*, 868 F.3d at 376.

32.     Defendant's contrary argument collapses everything into the label "legal services," as if that label alone were dispositive. It is not. Attorney immunity protects representation, not participation. And where, as here, Plaintiffs plausibly allege knowing and integral involvement in the execution and concealment of a fraudulent scheme, the doctrine offers no safe harbor at the motion-to-dismiss stage.

## V. PLAINTIFFS ADEQUATELY PLEAD FEDERAL RICO CLAIMS

### A. Substantive RICO (18 U.S.C. § 1962(c))

33.     Defendant Hatzipetros's RICO arguments rest on a familiar but flawed premise: that civil RICO liability is limited to investor-facing fraudsters who personally transmit wires or solicit funds. That is not the law, and it is not what § 1962(c) requires. When the Complaint is read as a whole and the well-pleaded allegations are accepted as true, Plaintiffs plausibly allege that Hatzipetros participated in the conduct of a RICO enterprise's affairs through a pattern of racketeering activity, causing concrete financial injury. *See Reves v. Ernst & Young*, 507 U.S. 170, 177 (1993).

34.     To state a substantive RICO claim, a plaintiff must plausibly allege: (1) the existence of an enterprise; (2) that the defendant conducted or participated in the conduct of the enterprise's affairs; (3) through a pattern of racketeering activity; and (4) resulting injury to the plaintiff's business or property by reason of the RICO violation. *Boyle v. United States*, 556 U.S. 938, 943–44 (2009); *Molina-Aranda v. Black Magic Enters., L.L.C.*, 983 F.3d 779, 784 (5th Cir. 2020).

#### a. The Complaint Plausibly Alleges an Association-in-Fact Enterprise.

35.     An association-in-fact enterprise requires only a common purpose, relationships among members, and longevity sufficient to pursue the enterprise's purpose; it need not have a formal hierarchy or fixed roles. *Boyle*, 556 U.S. at 947–48. At the pleading stage, courts assess

these elements holistically, not in isolation. *Abraham v. Singh*, 480 F.3d 351, 355–56 (5th Cir. 2007).

36.    The Complaint expressly alleges an association-in-fact enterprise composed of Boyd, Boggs, Hatzipetros, and affiliated entities, including Eden Alliance and Angels Coding, that functioned as a continuing unit to solicit investor funds, divert those funds, and conceal the diversion through layered entity structures and misleading representations. Compl. ¶¶ 56–59. The enterprise's common purpose, to obtain investor cryptocurrency through false assurances of safety and profitability and to disguise the misappropriation of those assets, is pleaded with specificity. Compl. ¶ 57.

37.    The Complaint further alleges concrete relationships among enterprise members, including coordinated use of shared entities, interlocking roles in structuring and maintaining those entities, and reliance on a common infrastructure to receive, pool, and move investor funds. Compl. ¶¶ 31, 43–46, 59. These relationships were not episodic or incidental; they were ongoing and interdependent throughout the life of the scheme. *Id.*

38.    Longevity is also plausibly alleged. The enterprise is pleaded to have operated continuously from at least mid-2024 through mid-2025, during which time members repeatedly solicited investments, routed funds through shell entities, and provided fabricated explanations to investors to conceal the diversion of assets. Compl. ¶¶ 56, 62. That duration is more than sufficient to satisfy Boyle's longevity requirement. *Boyle*, 556 U.S. at 946.

39.    Hatzipetros's attempt to exclude himself from the enterprise by characterizing his role as "outside legal services" misunderstands the inquiry. An enterprise may include members who perform different functions, including structural or concealment roles, so long as they act in

furtherance of a shared purpose. *Id.* at 944–45. The Complaint plausibly alleges that Hatzipetros did exactly that.

> b. *The Complaint Plausibly Alleges That Hatzipetros Participated in the Conduct of the Enterprise's Affairs.*

40.     To satisfy § 1962(c), a defendant need not be upper management or the public face of the scheme; it is enough that he had "some part in directing" the enterprise's affairs. *Reves*, 507 U.S. at 179. Participation may be shown where the defendant knowingly enables or implements the enterprise's decisions in a manner integral to its operation. *Dale v. Frankel*, 131 F. Supp. 2d 852, 857–58 (S.D. Miss. 2001).

41.     Courts draw a critical distinction between routine professional services and conduct that operationalizes or conceals a fraudulent scheme. While merely providing legal advice does not suffice, attorneys and other professionals may be liable where they knowingly design, structure, or maintain the mechanisms through which the enterprise carries out its racketeering activity. *In re Uplift RX, LLC*, 667 B.R. at 699–701.

42.     The Complaint alleges that Hatzipetros's conduct went far beyond neutral legal advice. Plaintiffs allege that he knowingly structured, registered, and maintained shell entities used to receive, pool, and conceal investor cryptocurrency, while providing those entities with the appearance of institutional legitimacy necessary to sustain the fraud. Compl. ¶¶ 13, 46, 59–60, 72(g), 76(f), 89(d). Plaintiffs further allege that these entities were deliberately used to mislead investors about custody, governance, and control of their assets. Compl. ¶¶ 46, 89(d).

43.     Those allegations place Hatzipetros squarely within the category of defendants who "participate in the operation or management" of an enterprise by designing and maintaining the infrastructure that makes the scheme possible. *Uplift RX*, 667 B.R. at 699; *Crowe v. Smith*, 848 F. Supp. 1258, 1264 (W.D. La. 1994). As in *Enron*, Plaintiffs allege that the entity structures

themselves were not incidental, but essential to concealing the scheme and perpetuating investor reliance. *In re Enron Corp. Sec., Derivative & ERISA Litig.*, 235 F. Supp. 2d 549, 615 (S.D. Tex. 2002).

44.    Hatzipetros's argument that he did not personally solicit investors or transmit wires is beside the point. Section 1962(c) does not require that each defendant personally commit every predicate act; it requires participation in the enterprise's affairs through those acts. *Salinas v. United States*, 522 U.S. 52, 61–63 (1997). Accepting the Complaint's allegations as true, Hatzipetros's conduct plausibly satisfies that standard.

### c.    The Complaint Plausibly Alleges a Pattern of Racketeering Activity.

45.    A pattern of racketeering activity requires at least two predicate acts that are related and pose a threat of continued criminal activity. *H.J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 242–43 (1989). Relatedness and continuity are assessed in light of the overall scheme alleged. *Abraham*, 480 F.3d at 354–55.

46.    The Complaint alleges a pattern of wire fraud and money laundering carried out through repeated, coordinated acts designed to solicit investor funds, route those funds through shell entities, and conceal the diversion of assets. Compl. ¶¶ 61–64. Plaintiffs allege that these acts were not isolated or sporadic, but part of a single scheme that operated over many months and involved multiple victims and repeated transactions. Compl. ¶¶ 56, 62.

47.    At the pleading stage, Plaintiffs are not required to catalogue every transaction or attribute each predicate act to each defendant with evidentiary precision. It is enough to allege representative examples of racketeering conduct and to plead how the defendant's role furthered that conduct. *Tel-Phonic Servs., Inc. v. TBS Int'l, Inc.*, 975 F.2d 1134, 1138–39 (5th Cir. 1992). Plaintiffs have done so here.

### d.    The Complaint Plausibly Alleges Proximate Cause and Injury.

48.     Civil RICO requires a plausible allegation that the defendant's racketeering conduct was a proximate cause of the plaintiff's injury. *Bridge v. Phoenix Bond & Indem. Co.*, 553 U.S. 639, 653–54 (2008). Direct reliance by the plaintiff is not required where the defendant's conduct foreseeably caused economic harm. *Id* at 641.

49.     Plaintiffs allege that Hatzipetros's conduct was a direct and foreseeable cause of their injuries because the entity structures he designed and maintained enabled the solicitation, pooling, and concealment of investor funds, without which the scheme could not have succeeded. Compl. ¶¶ 46, 59–60, 89(d), 100. Plaintiffs further allege that their cryptocurrency was lost as a result of the enterprise's use of those structures to misappropriate and launder assets. Compl. ¶¶ 27, 31, 34, 63. At the pleading stage, that causal chain is more than sufficient. *Molina-Aranda*, 983 F.3d at 784.

        *e.    Conclusion.*

50.     When the Complaint is read as a whole, it plausibly alleges that Hatzipetros participated in the conduct of an association-in-fact enterprise through a pattern of racketeering activity that caused Plaintiffs concrete financial harm. His attempt to reframe the allegations as nothing more than "legal services" asks the Court to ignore the substance of the pleadings and to resolve factual disputes in his favor at the outset. The Court should decline that invitation and deny dismissal of Plaintiffs' substantive RICO claim under § 1962(c).

## B.  Plaintiffs Adequately Plead RICO Conspiracy (18 U.S.C. § 1962(d)).

51.     Section 1962(d) makes it unlawful to conspire to violate RICO's substantive provisions, and its reach is deliberately broader than § 1962(c). To state a RICO conspiracy claim, a plaintiff need only allege that the defendant knew of and agreed to the overall objective of the RICO enterprise, not that the defendant personally committed predicate acts or managed the enterprise. *Salinas*, 522 U.S. at 61–63.

52.     Critically, no formal or express agreement is required, and plaintiffs are not required to plead the precise moment, location, or words by which the conspiracy was formed. *United States v. Posada-Rios*, 158 F.3d 832, 857–58 (5th Cir. 1998). Because conspiracies are, by design, secretive, agreement may be alleged (and later proven) through circumstantial evidence, including coordinated conduct and acts taken in furtherance of a shared unlawful objective. *United States v. Elliott*, 571 F.2d 880, 898 (5th Cir. 1978).

53.     At the pleading stage, a RICO conspiracy claim is sufficient if the complaint plausibly alleges that the defendant objectively manifested an agreement, either through words or actions, to participate, directly or indirectly, in the enterprise's affairs through racketeering activity. *Brickley for CryptoMetrics, Inc. Creditors' Tr. v. ScanTech Identification Beams Sys., LLC*, 566 B.R. 815, 857 (W.D. Tex. 2017). Direct evidence of agreement is unnecessary, and a defendant need not know every detail of the scheme or the identity of every co-conspirator. *Posada-Rios*, 158 F.3d at 857; *Dale*, 131 F. Supp. 2d at 860.

54.     The Complaint easily satisfies these standards. Plaintiffs allege that Hatzipetros knowingly joined and furthered an enterprise whose objective was to solicit investor cryptocurrency under false pretenses and to conceal the diversion of those assets through layered entity structures. Compl. ¶¶ 56–59. Plaintiffs further allege that Hatzipetros was retained for the specific purpose of structuring and maintaining shell entities that were then used exclusively in furtherance of the fraudulent scheme, providing both functional control over investor assets and a false veneer of institutional legitimacy. Compl. ¶¶ 13, 46, 59–60, 72(g), 76(f), 89(d).

55.     Those allegations support a reasonable inference that Hatzipetros knew the nature and scope of the enterprise's unlawful objective and agreed to further it. Courts routinely recognize that agreement may be inferred where a defendant's conduct is coordinated with other enterprise

members and is essential to accomplishing the scheme. *Elliott*, 571 F.2d at 902–03; *Megatel Homes, LLC v. Moayedi*, 2021 WL 5325919, at *7–8 (N.D. Tex. Nov. 16, 2021). Plaintiffs allege precisely that kind of coordinated conduct here. Compl. ¶¶ 31, 43–46, 59.

56.    Hatzipetros's insistence on allegations of an express agreement or a detailed account of conspiratorial meetings misstates the law. The Fifth Circuit has squarely rejected the notion that plaintiffs must plead "the exact words of the agreement" or "the precise date on which it was formed." *Abraham*, 480 F.3d at 357. Nor must Plaintiffs allege that Hatzipetros agreed to personally commit two predicate acts; it is enough that he agreed to the goal of furthering a RICO violation, knowing that racketeering acts would be committed by others. *Salinas*, 522 U.S. at 63–64.

57.    Hatzipetros's role as a lawyer does not alter this analysis. Even where a defendant ultimately disputes liability under § 1962(c), he may still be liable for conspiracy if he knowingly agreed to facilitate the enterprise's criminal objective. *Salinas*, 522 U.S. at 64; *In re Uplift RX, LLC*, 667 B.R. at 701. Plaintiffs allege facts supporting that inference here, including Hatzipetros's timing of involvement, the exclusive use of the entities he structured in the scheme, and his close coordination with Boggs, a central enterprise participant. Compl. ¶¶ 46, 59–60, 89(d), 100.

58.    At bottom, Plaintiffs are not required to *prove* the conspiracy at this stage. They must only plead enough facts to make the existence of an agreement plausible. *Twombly*, 550 U.S. at 556. They have done so. Accordingly, Defendant's motion to dismiss Plaintiffs' RICO conspiracy claim under § 1962(d) should be denied.

## VI. STATE-LAW CLAIMS ARE PLAUSIBLY PLEADED

### A.  Plaintiffs Properly Plead a Conversion Claim.

59.    Defendant's conversion argument relies on an outdated and overly rigid view of property law that treats cryptocurrency as indistinguishable from undifferentiated cash. Texas law

(and federal courts applying it) do not require that result. When the pleaded facts are taken as true, Plaintiffs plausibly allege the conversion of specifically identifiable digital assets over which they retained ownership and control.

60.     Under Texas law, conversion occurs when a defendant wrongfully exercises dominion or control over another's property in denial of or inconsistent with the owner's rights. *Edlund v. Bounds*, 842 S.W.2d 719, 727 (Tex. App.—Dallas 1992, writ denied). While money is ordinarily not subject to conversion, an exception applies where the plaintiff alleges the conversion of specific, identifiable funds intended to be kept segregated or subject to an obligation to return them in a particular form. *Id.*

61.     The Complaint satisfies that standard. Plaintiffs allege that they deposited identified quantities of specific cryptocurrencies, including Bitcoin and USDC, into accounts and wallets controlled by Defendants, with the express understanding that those assets would be held for their benefit and traded pursuant to defined parameters. Compl. ¶¶ 24–27, 31, 46. Plaintiffs further allege that Defendants instead exercised unauthorized control over those assets by diverting them through shell entities, commingling them for improper purposes, and ultimately misappropriating them. Compl. ¶¶ 31, 34, 46, 63.

62.     Contrary to Defendant's assertion, the fact that cryptocurrency is digital does not preclude a conversion claim. Courts applying Texas law have recognized that digital assets with unique identifying characteristics and traceable ownership records may qualify as specifically identifiable property for conversion purposes. *Fagan v. Nexo Capital Inc*., 2025 WL 2446301, at *20 (E.D. Tex. 2025). Unlike generic cash, cryptocurrency transactions are recorded on immutable blockchain ledgers that allow assets to be traced by type, quantity, and transaction history. *United*

*States v. Gratkowski*, 964 F.3d 307, 309 (5th Cir. 2020); Tex. Fin. Code Ann. § 160.001(4). Those features make cryptocurrency far more analogous to specific chattel than to fungible currency.

63.     Nor does the Complaint's allegation that assets were "pooled" defeat conversion as a matter of law. Texas courts focus on whether the plaintiff retained a right to a specific, identifiable interest, not whether the defendant promised to keep funds in a physically separate container. *See Newsome v. Charter Bank Colonial, N.A.*, 940 S.W.2d 157, 161 (Tex. App.—Houston [14th Dist.] 1996, writ denied). Plaintiffs allege that any pooling was represented as a temporary operational mechanism for trading, not a relinquishment of ownership, and that Plaintiffs always retained proportional ownership rights in their deposited assets. Compl. ¶¶ 27, 31, 46.

64.     Defendant's argument that conversion fails because the assets were "transformed" through exchanges fares no better. Texas law does not require property to remain in an identical physical form to remain convertible; it requires only that the property be sufficiently identifiable and subject to an obligation to return or account for it. *Waisath v. Lack's Stores, Inc.*, 474 S.W.2d 444, 447 (Tex. 1971). Converting cryptocurrency from one form to another, such as from Bitcoin to USDC, no more destroys its identity than converting dollars to euros would eliminate ownership of the underlying funds. Plaintiffs allege that Defendants remained obligated to account for and return the value of the specific digital assets entrusted to them, which they failed to do. Compl. ¶¶ 31, 63.

65.     Finally, Plaintiffs plausibly allege Defendant Hatzipetros's participation in the conversion. Plaintiffs allege that he structured and maintained the entities and mechanisms through which investor cryptocurrency was received, controlled, and diverted, thereby enabling Defendants' wrongful exercise of dominion over Plaintiffs' assets. Compl. ¶¶ 13, 46, 59–60, 89(d).

At the pleading stage, those allegations are sufficient to state a claim. *See Thawar v. 7-Eleven, Inc.*, 165 F. Supp. 3d 524, 529 (N.D. Tex. 2016).

66.     In sum, Plaintiffs allege the conversion of specifically identifiable cryptocurrency assets over which they retained ownership and which Defendants wrongfully controlled and misappropriated. Defendant's attempt to dismiss this claim by collapsing digital assets into generic cash ignores both the pleaded facts and the evolving recognition of cryptocurrency as property under Texas law. The conversion claim should proceed.

**B.  Plaintiffs' Unjust Enrichment Claim is Adequately Plead in the Alternative.**

67.     Plaintiffs plead unjust enrichment in the alternative as an equitable theory of recovery to prevent Defendant Hatzipetros from retaining benefits allegedly obtained through wrongful conduct. Plaintiffs recognize that Texas courts often describe unjust enrichment as "not an independent cause of action," but they also consistently permit equitable recovery where a defendant has obtained a benefit through fraud, conversion, or other wrongful means. *Heldenfels Bros., Inc. v. City of Corpus Christi*, 832 S.W.2d 39, 41 (Tex. 1992).

68.     Unjust enrichment under Texas law applies when a defendant wrongfully secures or retains a benefit through fraud, duress, or the taking of undue advantage. *Id.* Even courts that reject unjust enrichment as a standalone tort allow such claims to proceed when they are pleaded in the alternative to legal causes of action and seek restitution or disgorgement rather than expectancy damages. *King v. Baylor Univ.*, 46 F.4th 344, 367 (5th Cir. 2022); *Int'l Pecans, LLC v. Ultra Trading Int'l Corp.*, 764 F. Supp. 3d 527, 537 (W.D. Tex. 2025).

69.     That is precisely how Plaintiffs plead the claim here. Plaintiffs allege that Hatzipetros knowingly obtained and retained fees and other benefits derived from his role in structuring and maintaining entities used to receive, control, and misappropriate investor cryptocurrency. Compl. ¶¶ 13, 46, 59–60, 89(d). Plaintiffs further allege that those benefits were

obtained through conduct that facilitated fraud, conversion, and breaches of fiduciary duty, rendering their retention inequitable. Compl. ¶¶ 46, 63, 100.

70.      Courts applying Texas law routinely allow unjust enrichment to proceed at the pleading stage where it is tethered to independently wrongful conduct and seeks disgorgement of ill-gotten gains. *Walker v. Cotter Props., Inc.*, 181 S.W.3d 895, 900 (Tex. App.—Dallas 2006, no pet.). The claim does not ask the Court to recognize a new cause of action, but to preserve an equitable remedy should Plaintiffs' legal theories ultimately fail or be narrowed. *Heldenfels*, 832 S.W.2d at 41.

71.      Hatzipetros's objection, that unjust enrichment is "not a recognized cause of action," should not warrant dismissal at this stage. Plaintiffs do not contend that unjust enrichment displaces their tort claims; they plead it solely to ensure that equity may reach conduct that allegedly allowed Defendant to profit from wrongdoing. *See King*, 46 F.4th at 367–68. Where, as here, Plaintiffs allege that a defendant retained benefits obtained through fraud-based conduct, dismissal at the Rule 12 stage would be premature.

72.      At minimum, unjust enrichment remains available as an equitable theory of restitution tied to Plaintiffs' other claims. Because Plaintiffs plausibly allege that Hatzipetros obtained and retained benefits through conduct that equity will not condone, the Court should decline to dismiss this alternative claim at the pleading stage.

### C. Plaintiffs Fraud and Fraudulent Inducement Claims are Properly Plead under Rule 9(b).

73.      Hatzipetros's fraud arguments ask the Court to impose a pleading requirement that Rule 9(b) does not demand: that each defendant must personally utter a misrepresentation in order to be liable for fraud. The law is otherwise. Fraud and fraudulent inducement may be pleaded against defendants who knowingly participate in a fraudulent scheme, including through

omissions, half-truths, and conduct that creates or perpetuates a misleading impression. At the pleading stage, Plaintiffs have done more than enough.

74. To state claims for fraud and fraudulent inducement, Plaintiffs must plausibly allege a material misrepresentation or omission, made with knowledge or recklessness, intended to induce reliance, actual and justifiable reliance, and resulting injury. *Italian Cowboy Partners, Ltd. v. Prudential Ins. Co. of Am.*, 341 S.W.3d 323, 337 (Tex. 2011). Where fraud is alleged, Rule 9(b) requires that the circumstances of the fraud be pleaded with particularity, but it does not require evidentiary detail or that each defendant be alleged to have personally spoken every misrepresentation. *Kanneganti*, 565 F.3d at 190.

75. The Complaint satisfies these standards. Plaintiffs allege a cohesive fraudulent scheme centered on false representations that investor cryptocurrency would be safely held, institutionally managed, and segregated from Defendants' personal use, when in fact Defendants retained unilateral control and misappropriated investor assets. Compl. ¶¶ 24–27, 31, 43–46. Plaintiffs further allege that these representations were reinforced by the creation and use of shell entities that falsely conveyed legitimacy, custody, and governance. Compl. ¶¶ 46, 59–60, 72(g), 89(d).

76. Hatzipetros's role in that scheme is pleaded with specificity. Plaintiffs allege that he knowingly structured, registered, and maintained the entities that held themselves out as custodians or managers of investor assets, while understanding that those entities were being used to conceal control and misuse of funds. Compl. ¶¶ 13, 46, 59–60, 89(d), 100. Plaintiffs further allege that Hatzipetros's conduct enabled and perpetuated false impressions regarding the security and handling of investor assets, impressions on which Plaintiffs relied when deciding to invest and to maintain their investments. Compl. ¶¶ 27, 31, 46.

77.     Fraud liability is not limited to affirmative misstatements. A defendant who creates or participates in a misleading framework may be liable for fraudulent omissions or half-truths where the defendant's conduct renders disclosed information misleading or incomplete. *Bombardier Aerospace Corp. v. SPEP Aircraft Holdings, LLC*, 572 S.W.3d 213, 219–20 (Tex. 2019). Plaintiffs allege that Hatzipetros's structuring and maintenance of the entities at issue operated as precisely such half-truths: the entities conveyed legitimacy and custodial protection while concealing the reality of Defendants' control and misuse of investor assets. Compl. ¶¶ 46, 59–60, 89(d).

78.     Rule 9(b) does not require Plaintiffs to allege the precise words spoken by each defendant where, as here, the Complaint pleads a unified scheme, identifies the nature of the misrepresentations, explains why they were false, and alleges each defendant's role in furthering them. *Kanneganti*, 565 F.3d at 190. The Complaint does exactly that by detailing the structure of the scheme, the false impressions conveyed to investors, the mechanisms used to sustain those impressions, and Hatzipetros's knowing participation. Compl. ¶¶ 43–46, 56–64.

79.     Hatzipetros's contention that he is "not mentioned" in the fraud counts elevates form over substance. Courts evaluate fraud pleadings by reading the complaint as a whole, not by isolating individual counts and ignoring incorporated factual allegations. *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322–23 (2007). The fraud counts expressly incorporate the factual allegations describing Hatzipetros's conduct and role in the scheme. Compl. ¶¶ 93(e), 100, 105(b). That is sufficient at the pleading stage.

80.     Finally, Plaintiffs plausibly allege reliance and injury. Plaintiffs allege that they relied on Defendants' representations and omissions regarding custody, governance, and asset security when deciding to invest and to leave their assets in the system, and that they suffered

concrete financial losses as a result. Compl. ¶¶ 27, 31, 34, 63. Those allegations satisfy the reliance and causation elements for both fraud and fraudulent inducement.

81.    In short, Plaintiffs do not allege fraud based on isolated statements or hindsight disagreement. They allege a coordinated scheme that depended on misleading structures, omissions, and false impressions: structures that Hatzipetros knowingly helped create and maintain. Rule 9(b) requires plausibility, not perfection. Plaintiffs have met that standard, and dismissal of the fraud and fraudulent inducement claims is unwarranted.

**D. Plaintiffs' Fraudulent Concealment Claim is Amply Plead.**

82.    Hatzipetros's fraudulent concealment argument hinges on the assertion that he owed no duty to disclose material facts to Plaintiffs. That contention misstates both the law and the pleadings. Fraudulent concealment does not require a formal fiduciary relationship or direct communications with the plaintiff; it arises where a defendant conceals or fails to disclose material facts under circumstances that impose a duty to speak, including where the defendant's conduct creates misleading half-truths or actively conceals the truth. *Bombardier Aerospace Corp*, 572 S.W.3d at 219–20.

83.    To state a claim for fraudulent concealment, a plaintiff must allege that the defendant concealed or failed to disclose a material fact, had a duty to disclose that fact, intended to induce reliance, and that the plaintiff suffered injury as a result. *Id.* A duty to disclose arises not only from fiduciary relationships, but also when a defendant makes partial disclosures that are misleading absent additional information, or when the defendant engages in conduct designed to conceal material facts. *Id.*

84.    The Complaint plausibly alleges such concealment here. Plaintiffs allege that Defendants conveyed the impression that investor cryptocurrency would be safely held, institutionally managed, and segregated, while concealing the reality that Defendants retained

unilateral control over the assets and were misappropriating them. Compl. ¶¶ 24–27, 31, 43–46. Plaintiffs further allege that this misleading impression was not accidental, but was sustained through the deliberate use of shell entities that masked ownership, custody, and control. Compl. ¶¶ 46, 59–60, 72(g), 89(d).

85.    Hatzipetros's role in that concealment is pleaded with specificity. Plaintiffs allege that he knowingly structured, registered, and maintained the very entities that created a false appearance of institutional legitimacy and custodial protection, while understanding that those entities were being used to conceal material facts about how investor assets were actually handled. Compl. ¶¶ 13, 46, 59–60, 89(d), 100. By helping create and maintain that misleading framework, Hatzipetros assumed a duty to disclose facts necessary to prevent the representations conveyed by those structures from being false or misleading. *Bombardier*, 572 S.W.3d at 219–20.

86.    Fraudulent concealment may be based on conduct as well as silence. Courts recognize that structuring transactions or entities to hide material information can constitute active concealment, even absent direct communications with the plaintiff. *See State of Tex. v. Allan Const. Co., Inc.*, 851 F.2d 1526, 1534 (5th Cir. 1988) ("acts taken to conceal wrongful conduct may support a claim of fraudulent concealment even though they occur at the time of the offense and further commission of the offense."). Plaintiffs allege precisely that kind of concealment here: the use of entities and legal architecture to obscure who controlled investor assets and how those assets were used. Compl. ¶¶ 46, 59–60.

87.    Hatzipetros's argument that he had no duty to speak because he did not personally solicit investors elevates form over substance. A defendant who knowingly participates in a scheme that depends on nondisclosure cannot avoid liability by remaining silent while others convey misleading impressions. *Bombardier*, 572 S.W.3d at 219–20. At the pleading stage, Plaintiffs need

only allege facts supporting a reasonable inference that Hatzipetros knew material facts were being concealed and that his conduct contributed to that concealment. They have done so. Compl. ¶¶ 46, 59–60, 89(d).

88.    Finally, Plaintiffs plausibly allege reliance and injury. Plaintiffs allege that they relied on the false impression created by Defendants' concealment when deciding to invest and to maintain their investments, and that they suffered loss of their cryptocurrency as a result. Compl. ¶¶ 27, 31, 34, 63. Those allegations satisfy the remaining elements of fraudulent concealment at the pleading stage. *Bombardier*, 572 S.W.3d at 219.

89.    In short, Plaintiffs allege more than silence. They allege deliberate concealment through structure, omission, and half-truths: concealment in which Hatzipetros knowingly participated. That is enough to state a claim for fraudulent concealment, and dismissal at this stage would be improper.

**E.  The Absence of a Fiduciary Relationship Is Not Dispositive.**

90.    Plaintiffs acknowledge that the fiduciary-duty claim presents a narrower question than the other causes of action asserted. Even if the Court were to dismiss that claim, Plaintiffs' remaining claims, including their RICO, securities, fraud, and conversion claims, would remain fully viable based on independent duties imposed by statute and common law.

## VII.    SECURITIES CLAIMS ARE ADEQUATELY PLEADED

**A.  Exchange Act § 10(b) and Rule 10b-5**

91.    Hatzipetros's motion seeks dismissal of Plaintiffs' federal securities claims by reframing them as a failure to plead defendant-specific misstatements. That framing misunderstands both the claims asserted and the governing law. Plaintiffs do not allege that Hatzipetros was merely a passive bystander to misstatements made by others; they allege that he

knowingly participated in a deceptive investment scheme, rendering him liable under Rule 10b-5(a) and (c) regardless of whether he personally spoke to investors.

      *a.   Plaintiffs Plausibly Allege a Deceptive Scheme Under Rule 10b-5(a) and (c).*

92.     Section 10(b) and Rule 10b-5 prohibit not only false statements, but also deceptive schemes and practices that operate as a fraud on investors. *Lorenzo v. SEC*, 587 U.S. 71, 77 (2019). Liability under Rule 10b-5(a) and (c) does not require that a defendant personally make a misstatement; it is sufficient that the defendant knowingly engaged in conduct that was deceptive or that created a false appearance on which investors relied. *Id.* at 78.

93.     The Complaint alleges precisely such a scheme. Plaintiffs allege that Defendants solicited investments in cryptocurrency trading programs by representing that investor assets would be safely held, institutionally managed, and segregated from Defendants' personal use, when in fact Defendants retained unilateral control and misappropriated those assets. Compl. ¶¶ 24–27, 31, 43–46. Those representations were reinforced not merely through words, but through the creation and use of entities that conveyed a false appearance of legitimacy, custody, and governance. Compl. ¶¶ 46, 59–60, 72(g), 89(d).

94.     Hatzipetros's role in that scheme is pleaded with particularity. Plaintiffs allege that he knowingly structured, registered, and maintained the entities used to receive, pool, and control investor cryptocurrency, while understanding that those entities were being used to conceal true ownership and control of investor assets. Compl. ¶¶ 13, 46, 59–60, 89(d), 100. That conduct constitutes deceptive scheme participation actionable under Rule 10b-5(a) and (c). *Lorenzo*, 587 U.S. at 78.

      *b.   Plaintiffs Plausibly Allege Scienter as to Hatzipetros.*

95.     To plead scienter under the PSLRA, plaintiffs must allege facts giving rise to a strong inference that the defendant acted with intent to deceive or with severe recklessness. *Tellabs*, 551 U.S. at 322–23. Scienter is evaluated holistically, considering all alleged facts together. *Id.*

96.     The Complaint plausibly alleges scienter as to Hatzipetros. Plaintiffs allege that he understood how the entities he structured would be used, knew that those entities were presented to investors as custodial or institutional vehicles, and nonetheless helped maintain structures that concealed Defendants' unilateral control over investor assets. Compl. ¶¶ 46, 59–60, 89(d), 100. Plaintiffs further allege that the fraudulent scheme depended on those structures to induce and maintain investor confidence. Compl. ¶¶ 43–46, 56–59.

97.     Taken together, these allegations support a strong inference that Hatzipetros knowingly or recklessly participated in deceptive conduct. At the pleading stage, Plaintiffs are not required to prove scienter or exclude every innocent explanation. *Tellabs*, 551 U.S. at 322–23.

### c.  Plaintiffs Adequately Plead Reliance and Loss Causation.

98.     Hatzipetros argues that Plaintiffs fail to plead reliance or loss causation as to him specifically. That argument misapprehends scheme liability. In scheme-based securities fraud, plaintiffs need not allege reliance on each defendant's individual conduct; it is sufficient to allege reliance on the overall deceptive scheme. *Bridge*, 553 U.S. at 649–50.

99.     Plaintiffs allege that they relied on Defendants' representations and omissions regarding custody, control, and institutional management when deciding to invest and to maintain their investments. Compl. ¶¶ 27, 31, 46. Plaintiffs further allege that they suffered loss of their cryptocurrency as a result of the scheme's concealment of asset control and misuse. Compl. ¶¶ 34, 63. Where, as here, a defendant's conduct is a necessary link in the chain of causation, loss causation is adequately pleaded. *Lormand v. U.S. Unwired, Inc.*, 565 F.3d 228, 258 (5th Cir. 2009).

### d.  Plaintiffs Satisfy Rule 9(b) and the PSLRA.

100.    Rule 9(b) and the PSLRA require particularity, not evidentiary proof. *Williams*, 112 F.3d at 178. In scheme cases, plaintiffs may plead the nature of the scheme, the misleading conduct, and each defendant's role without attributing every misrepresentation to every defendant. *Kanneganti*, 565 F.3d at 190.

101.    The Complaint satisfies those requirements. It identifies the substance of the misrepresentations and omissions, explains why they were misleading, describes how the scheme operated, and alleges Hatzipetros's specific role in creating and maintaining the deceptive framework. Compl. ¶¶ 13, 43–46, 56–64, 89(d), 93(e), 100. That is more than sufficient at the pleading stage.

       *e.    Conclusion.*

102.    Plaintiffs allege that Hatzipetros knowingly participated in a deceptive investment scheme that induced and harmed investors. Federal securities law reaches such conduct. Because Plaintiffs plausibly plead scheme liability, scienter, reliance, and loss causation, dismissal of the federal securities claims is unwarranted.

**B.  Texas Securities Act**

103.    Hatzipetros seeks dismissal of Plaintiffs' Texas Securities Act ("TSA") claims by importing requirements the statute does not impose and by ignoring the distinct theories of liability it expressly authorizes. When the Complaint is read as a whole and the allegations are accepted as true, Plaintiffs plausibly plead TSA liability against Hatzipetros under both secondary aider liability and, in the alternative, seller liability.

       *a.    The Complaint Plausibly Alleges a Primary TSA Violation.*

104.    The TSA imposes civil liability where a security is offered or sold by means of an untrue statement of material fact or an omission of a material fact necessary to make the statements made not misleading. Tex. Gov't Code § 4008.052. Unlike common-law fraud or federal securities

claims, TSA seller liability does not require proof of reliance, loss causation, or scienter. *Kubbernus v. ECAL Partners, Ltd.*, 574 S.W.3d 444, 485 (Tex. App.—Houston [1st Dist.] 2018, pet. denied) (loss causation); *Dorsey v. Portfolio Equities, Inc*., 540 F.3d 333, 343–44 (5th Cir. 2008) (scienter); *Hendricks v. Thornton*, 973 S.W.2d 348, 360 (Tex. App.—Beaumont 1998, pet. denied) (reliance).

105.    The Complaint plausibly alleges a primary TSA violation. Plaintiffs allege that Defendants offered and sold investments in cryptocurrency trading programs by representing that investor assets would be safely held, institutionally managed, and segregated, while omitting the material fact that Defendants retained unilateral control over those assets and misappropriated them. Compl. ¶¶ 24–27, 31, 43–46. Plaintiffs further allege that these omissions rendered Defendants' affirmative representations materially misleading. Compl. ¶¶ 46, 59–60.

106.    Those allegations are sufficient to plead a primary TSA violation.

> *b.  Plaintiffs Plausibly Allege TSA Aider Liability Against Hatzipetros.*

107.    The TSA imposes joint and several liability on any person who, "with intent to deceive or defraud or with reckless disregard for the truth or the law, materially aids" a securities violation. Tex. Gov't Code § 4008.055(c). To plead aider liability, a plaintiff must allege (1) a primary violation, (2) the defendant's general awareness of his role in that violation, (3) substantial assistance rendered with the requisite scienter; and (4) intent to deceive or reckless disregard for the truth. *Dorsey*, 540 F.3d 333, 342–43 (5th Cir. 2008); *Sterling Trust Co. v. Adderley*, 168 S.W.3d 835, 837 (Tex. 2005). Critically, an aider need not have direct contact with investors to be liable under the TSA. *Sterling Trust*, 168 S.W.3d at 843.

108.    The Complaint plausibly alleges aider liability here. Plaintiffs allege that Hatzipetros knowingly structured, registered, and maintained the entities used to receive, pool, and control investor cryptocurrency, while understanding that those entities were being used to conceal

true ownership, custody, and misuse of investor assets. Compl. ¶¶ 13, 46, 59–60, 89(d), 100. Plaintiffs further allege that the fraudulent scheme depended on those entity structures to convey a false appearance of institutional legitimacy and to induce and maintain investor participation. Compl. ¶¶ 43–46, 56–59.

109.    Those allegations support a reasonable inference that Hatzipetros was generally aware of his role in the scheme and that his conduct materially aided the primary TSA violation. At the pleading stage, Plaintiffs are not required to prove scienter; they need only allege facts supporting a plausible inference of intent or reckless disregard. *Dorsey*, 540 F.3d at 343. They have done so.

      *c.  Plaintiffs Plausibly Allege TSA Seller Liability in the Alternative.*

110.    In the alternative, Plaintiffs plausibly allege that Hatzipetros qualifies as a "seller" under the TSA. The TSA defines a seller broadly to include any person who is "a link in the chain of the selling process." *Texas Capital Secs., Inc. v. Sandefer*, 58 S.W.3d 760, 775 (Tex. App.— Houston [1st Dist.] 2001, pet. denied). While seller liability requires privity, it is not limited to those who pass title or directly receive payment. *See Pinter v. Dahl*, 486 U.S. 622, 647–48 (1988).

111.    Plaintiffs allege that Hatzipetros actively participated in the sale of the securities by creating and maintaining the entity structures through which investor funds were solicited, received, and held out as institutionally managed. Compl. ¶¶ 46, 59–60. Those allegations plausibly place him within the chain of the selling process, at minimum sufficient to plead seller liability in the alternative at this stage.

      *d.  Plaintiffs Satisfy Rule 9(b).*

112.    Federal courts apply Rule 9(b) to TSA claims sounding in fraud. *Billitteri v. Sec. Am., Inc.*, 2010 WL 6785484, at *5 (N.D. Tex. July 26, 2010). Rule 9(b) requires plaintiffs to plead the "who, what, when, where, and how" of the alleged misrepresentations or omissions, but it does

not require evidentiary detail or prohibit pleading multiple theories of TSA liability. *Rotstain v. Trustmark Nat'l Bank*, 2016 WL 8216509, at *2 (N.D. Tex. July 27, 2016).

113.    The Complaint satisfies Rule 9(b). It identifies the nature of the misrepresentations and omissions (custody, control, and institutional management), explains why they were misleading, describes when and how investors were induced to invest, and pleads Hatzipetros's specific role in creating and maintaining the misleading framework. Compl. ¶¶ 13, 24–27, 43–46, 56–64, 89(d), 93(e), 100. This is not impermissible group pleading; it is scheme-based pleading that identifies each defendant's role. *Rotstain*, 2016 WL 8216509, at *2.

     *e.    Conclusion.*

114.    The TSA is a remedial statute designed to reach precisely the type of conduct alleged here. Plaintiffs plausibly allege a primary TSA violation and Hatzipetros's liability as a knowing aider (and, in the alternative, as a seller) without the need to plead reliance, loss causation, or defendant-specific investor communications. Dismissal of Plaintiffs' Texas Securities Act claims is unwarranted.

**C.  Plaintiffs' Civil Conspiracy Claim is Amply Supported.**

115.    Hatzipetros seeks dismissal of Plaintiffs' civil conspiracy claim on the ground that it merely repackages the underlying causes of action. Texas law does not require more. Civil conspiracy is a derivative theory of liability that imposes joint responsibility on those who knowingly agree to and participate in a common unlawful objective. Where, as here, Plaintiffs plausibly allege underlying torts and coordinated conduct in furtherance of those torts, a conspiracy claim is properly pleaded.

116.    Under Texas law, civil conspiracy requires: (1) two or more persons; (2) an object to be accomplished—either an unlawful purpose or a lawful purpose by unlawful means; (3) a meeting of the minds on the object or course of action; (4) one or more unlawful, overt acts; and

(5) damages as a proximate result. *Agar Corp., Inc. v. Electro Circuits Int'l, LLC*, 580 S.W.3d 136, 141 (Tex. 2019). Because conspiracies are inherently secretive, a plaintiff need not allege an express agreement; a meeting of the minds may be inferred from circumstantial evidence, including coordinated conduct and actions taken in furtherance of a shared objective. *Schlumberger Well Surveying Corp. v. Nortex Oil & Gas Corp.*, 435 S.W.2d 854, 858 (Tex. 1968).

117.    The Complaint plausibly alleges the existence of a conspiracy among Boyd, Boggs, and Hatzipetros. Plaintiffs allege that Defendants collectively pursued an unlawful objective: inducing investments through misrepresentations and omissions regarding custody, control, and institutional management of cryptocurrency, and then misappropriating investor assets. Compl. ¶¶ 24–27, 31, 43–46. Plaintiffs further allege that each Defendant played a distinct but coordinated role in furtherance of that objective. Compl. ¶¶ 46, 56–60.

118.    As alleged, Hatzipetros knowingly participated in the conspiracy by structuring, registering, and maintaining the entities used to receive, pool, and control investor cryptocurrency, while understanding that those entities were being used to conceal true ownership and misuse of investor assets. Compl. ¶¶ 13, 46, 59–60, 89(d), 100. Plaintiffs allege that these acts were not incidental or neutral, but were essential to creating the appearance of legitimacy and custody on which the scheme depended. Compl. ¶¶ 43–46, 56–59.

119.    Those allegations support a reasonable inference of a meeting of the minds. Texas courts routinely hold that agreement may be inferred where defendants' actions are interdependent and make sense only as part of a coordinated course of conduct. *Agar*, 580 S.W.3d at 142. Plaintiffs are not required to plead the precise timing or terms of the agreement; it is enough to allege facts showing that Defendants shared a common objective and acted in concert to achieve it. *Id.*

120.    Plaintiffs also allege multiple overt acts taken in furtherance of the conspiracy, including the creation and use of shell entities to hold investor assets, conceal control, and perpetuate misleading impressions regarding custody and governance. Compl. ¶¶ 46, 59–60, 72(g), 89(d). Plaintiffs allege that these acts proximately caused their damages, including the loss of their cryptocurrency investments. Compl. ¶¶ 34, 63.

121.    Because Plaintiffs plausibly allege underlying torts, including securities fraud, common-law fraud, conversion, and breach of fiduciary duty, and coordinated conduct in furtherance of those torts, the civil conspiracy claim is adequately pleaded. *Agar*, 580 S.W.3d at 141. Dismissal at the pleading stage would be improper.

## VIII.        REQUEST FOR LEAVE TO AMEND

122.    If the Court determines that any portion of the Complaint is deficient, Plaintiffs respectfully request leave to amend. Leave to amend should be freely granted when justice so requires, particularly at the Rule 12 stage and where amendment would not be futile or prejudicial. Fed. R. Civ. P. 15(a)(2); *Great Plains Tr. Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 329 (5th Cir. 2002).

123.    This request is not an admission that Plaintiffs' pleading is deficient. To the contrary, as set forth above, the Complaint plausibly alleges each asserted claim and provides Defendant with fair notice of the factual and legal bases for liability. But should the Court conclude that additional factual detail would be helpful as to any claim or any Defendant, amendment would be both appropriate and efficient.

124.    Any amendment would be narrowly tailored and curative in nature. Plaintiffs could, if necessary, provide additional detail regarding Defendant Hatzipetros's role in the alleged scheme, the timing and mechanics of the challenged conduct, or other matters addressed in

Defendant's Motion to Dismiss, without altering the substance of Plaintiffs' claims or prejudicing Defendant. *See Hart v. Bayer Corp.*, 199 F.3d 239, 248 n.6 (5th Cir. 2000).

125.    Courts routinely grant leave to amend in these circumstances, particularly where no discovery has occurred and dismissal with prejudice would be premature. *Stripling v. Jordan Prod. Co.*, 234 F.3d 863, 872–73 (5th Cir. 2000). Denial of leave is appropriate only when amendment would be futile or when plaintiffs have repeatedly failed to cure deficiencies after prior opportunities to amend. *Id.* Neither circumstance is present here.

126.    Accordingly, if the Court identifies any pleading deficiencies, Plaintiffs respectfully request leave to amend their Complaint consistent with the Court's guidance.

## IX. CONCLUSION

127.    Hatzipetros's motion asks the Court to disregard well-pleaded allegations of coordinated misconduct and to insulate a central participant in the scheme based solely on his professional title. The law does not permit that result. When the Complaint is read as a whole and its allegations are accepted as true, Plaintiffs plausibly allege that Hatzipetros knowingly participated in a fraudulent and deceptive enterprise that caused substantial harm.

128.    Plaintiffs have adequately pleaded their federal RICO claims, state-law conspiracy, federal and state securities violations, and common-law tort claims. At this stage, Plaintiffs are not required to prove their case; they must only allege facts that state plausible claims for relief. They have done so.

129.    For these reasons, Defendant Hatzipetros's Motion to Dismiss should be denied in its entirety.

Respectfully submitted,

*/s/Kaitlyn M. Coker*
Kyle A. Coker
Texas Bar I.D. 24115353

kyle@farmercoker.com
Kaitlyn M. Coker
Texas Bar I.D. 24115264
kaitlyn@farmercoker.com

**FARMER & COKER, PLLC**
901 Main St., Ste. 5330
Dallas, TX 75202
Tel:   (832) 240-1047

**ATTORNEYS FOR PLAINTIFFS**

## CERTIFICATE OF SERVICE

I hereby certify that on January 29, 2026, a true and correct copy of the foregoing Plaintiffs' Response to Defendant Hazipetros's Motion to Dismiss was served on all counsel of record through the Court's CM/ECF system, which will effect service upon all attorneys registered with the CM/ECF system.

/s/*Kaitlyn M. Coker*
KAITLYN M. COKER