**IN THE UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| CORBIN COWAN, DAWN COWAN, STRATEGIC EQUITY PARTNERS, LLC, TRIUMPH TECHNOLOGIES, LLC, CAB VENTURES, LLC, JEREMY ENGEL, SPARTAN MARKETING & INVESTMENTS, LLC, INTELLITECH SOLUTIONS, LLC, SOLIDA EQUITY PARTNERS, LLC AND JOSH KIRK, | § § § § § § § § § § § | |
| *Plaintiffs,* | § § | |
| v. | § § | CASE NO. 4:25-cv-04476 |
| JAMES TYLER BOYD, MIKE BOGGS, PETER D. HATZIPETROS, THE EDEN ALLIANCE, LLC, ANGELS CODING, LLC, and DAWN BOGGS, | § § § § § § § | |
| *Defendants.* | § | |

---

**PLAINTIFFS' RESPONSE TO DEFENDANT ANGELS CODING'S MOTION TO DISMISS**

---

TO THE HONORABLE JUDGE OF SAID COURT:

Plaintiffs submit this response in opposition to Defendant Angels Coding's Motion to Dismiss. As set forth below, the Motion misapplies the governing pleading standards and asks the Court to resolve factual disputes and draw inferences in Defendant's favor at the pleading stage. When the Complaint is read as a whole and the well-pled allegations are accepted as true, Plaintiffs have plausibly stated their claims. The Motion should be denied.

## TABLE OF CONTENTS

I.    **TABLE OF AUTHORITIES** ........................................................................ 5

II.    **INTRODUCTION** .................................................................................... 10

III.   **SUMMARY OF THE ARGUMENT** ........................................................ 11

IV.   **LEGAL STANDARD** ............................................................................... 12

    A.   Rule 12(b)(6) ......................................................................................... 12

    B.   Rule 9(b) (Where Applicable) ............................................................. 13

V.    **THE MOTION TO DISMISS IS PREMIZED ON A FALSE "REVERSE VEIL PIERCING" THEORY** ....................................................................... 13

    A.   Plaintiffs Do Not Seek to Impose Another Defendant's Liability on Angels Coding. ..... 13

    B.   The Complaint Alleges Direct Misconduct by Angels Coding. ......................................... 15

    C.   A Shell Entity Is Liable for Its Own Role in a Fraud. ......................................................... 17

VI.   **THE COMPLAINT PLAUSIBLY ALLEGES ANGELS CODING'S KNOWING PARTICIPATION IN THE FRAUDULENT ENTERPRISE** ...................................... 19

    A.   Angels Coding's Knowledge Is Plausibly Inferred from the Alleged Facts. ................... 19

    B.   Rule 9(b) Is Satisfied as to Angels Coding. ...................................................................... 22

VII.  **THE COMPLAINT ADEQUATELY STATES CLAIMS AGAINST ANGELS CODING** ............................................................................................... 23

    A.   RICO Conspiracy (18 U.S.C. § 1962(d)) .......................................................................... 23

        a.   Plaintiffs Have Adequately Pled a Substantive RICO Violation by the Enterprise. ..... 23

        b.   A RICO Conspiracy Claim Does Not Require Angels Coding to Commit Predicate Acts. ......................................................................................... 24

        c.   The Complaint Plausibly Alleges Angels Coding's Agreement to the Enterprise's Objectives. ............................................................................. 24

        d.   Rule 9(b) Does Not Require Pleading Internal Conspiracy Mechanics. ....................... 26

        e.   The RICO Conspiracy Claim Against Angels Coding Is Plausibly Pled. ..................... 27

    B.   Civil Conspiracy to Commit Fraud .................................................................................... 27

a.   Agreement and Shared Knowledge Are Plausibly Alleged. ......................................... 27

b.   Overt Acts in Furtherance of the Conspiracy Are Specifically Alleged. ...................... 28

c.   Plaintiffs Allege Resulting Damages. ........................................................................... 28

d.   The Allegations Are Sufficient at the Pleading Stage. .................................................. 29

C.   Fraud-Based Claims (Scheme Liability and Concealment)................................................ 29

a.   Fraud Liability Extends to Participants in the Execution and Concealment of a Scheme. ........................................................................................................................ 30

b.   The Complaint Plausibly Alleges Angels Coding's Role in Executing and Concealing the Fraud. ...................................................................................................................... 30

c.   Rule 9(b) Is Satisfied as to Scheme Liability and Concealment................................... 31

d.   Fraudulent Concealment Does Not Require a Fiduciary Relationship Where Defendants Engage in Affirmative Deceptive Conduct. ................................................ 32

D.   Section 10(b) and Rule 10b-5 (Scheme Liability) ............................................................. 33

E.   Plaintiffs Adequately Pled Scienter, Reliance, and Loss Causation Under Section 10(b).35

a.   Scienter Is Plausibly Alleged. ...................................................................................... 35

b.   Reliance Is Adequately Alleged in a Scheme-Liability Case........................................ 35

c.   Loss Causation Is Plausibly Pled. ................................................................................ 36

d.   Angels Coding's Conduct Is Not Too Remote as a Matter of Law. .............................. 37

F.   Violation of the Texas Securities Act (Tex. Rev. Civ. Stat. art. 581-33)........................... 38

a.   The TSA Reaches Participants and Material Aiders, Not Only Sellers or Speakers..... 38

b.   The Complaint Plausibly Alleges Angels Coding's Material Aid and Inducement. ..... 39

c.   Rule 9(b) Is Satisfied as to the TSA Claim. .................................................................. 39

d.   Dismissal Is Improper at the Pleading Stage. ............................................................... 40

G.   Plaintiffs' Unjust Enrichment Claim Should Remain. ...................................................... 40

H.   Plaintiffs' Concession as to Count Four (Breach of Fiduciary Duty) ............................... 42

VIII.   **IN THE ALTERNATIVE, PLAINTIFFS SHOULD BE GRANTED LEAVE TO AMEND** .................................................................................................................... **42**

**IX.    CONCLUSION** ................................................................................................. **43**

## I.    TABLE OF AUTHORITIES

**Cases**

*Abraham v. Singh*,
    480 F.3d 351 (5th Cir. 2007) ................................................................................ 24

*Agar Corp., Inc. v. Electro Circuits Int'l, LLC*,
    580 S.W.3d 136 (Tex. 2019) ........................................................................... 27, 28

*Alaska Elec. Pension Fund v. Flowserve Corp.*,
    572 F.3d 221 (5th Cir. 2009) ................................................................................ 36

*Allstate Ins. Co. v. Benhamou*,
    190 F. Supp. 3d 631 (S.D. Tex. 2016) ...................................................... 15, 17, 19

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ............................................................................... 13, 19

*Aubrey v. Barlin*,
    No. A–10–CA–076–SS, 2010 WL 3909332 (W.D. Tex. Sep. 29, 2010) .............................. 37

*Barrie v. Intervoice-Brite, Inc.*,
    397 F.3d 249 (5th Cir. 2005) ................................................................................ 20

*Bates Energy Oil & Gas v. Complete Oilfield Servs., LLC*,
    361 F. Supp. 3d 633 (W.D. Tex. 2019) ...................................................... 14, 18, 19

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 54 (2007) .............................................................................................. 13

*Billitteri v. Sec. Am., Inc.*,
    2010 WL 6785484 (N.D. Tex. July 26, 2010) ....................................................... 39

*Bombardier Aerospace Corp. v. SPEP Aircraft Holdings, LLC*,
    572 S.W.3d 213 (Tex. 2019) ................................................................................ 32

*Burford v. Cargill, Inc.*,
    No. CIV.A. 05-0283, 2011 WL 4382124 (W.D. La. Sept. 20, 2011) ...................... 23

*Burlington N. R.R. Co. v. Southwestern Elec. Power Co.*,
    925 S.W.2d 92 (Tex. 1996) ................................................................................. 41

*Corpus Christi Area Teachers Credit Union v. Hernandez*,
    814 S.W.2d 195 (Tex. App.—San Antonio 1991, no writ) ................................... 29

*Dale v. Frankel*,
    131 F. Supp. 2d 852 (S.D. Miss. 2001) ........................................................ passim

*Davis–Lynch, Inc. v. Moreno*,
    667 F.3d 539 (5th Cir. 2012) ........................................................... 24, 25

*Dorsey v. Portfolio Equities, Inc.*,
    540 F.3d 333 (5th Cir. 2008) ........................................................... 38, 39

*Dura Pharm., Inc. v. Broudo*,
    544 U.S. 336 (2005) ................................................................................. 36

*El Paso Disposal, LP v. Ecube Labs Co.*,
    766 F. Supp. 3d 692 (W.D. Tex. 2025) ................................... 23, 26, 31

*Frank v. Bear Stearns & Co.*,
    11 S.W.3d 380 (Tex. App.—Houston [14th Dist.] 2000, pet. denied) ............................. 38, 39

*Great Plains Tr. Co. v. Morgan Stanley Dean Witter & Co.*,
    313 F.3d 305 (5th Cir. 2002) ................................................................. 43

*H.E.B., L.L.C. v. Ardinger*,
    369 S.W.3d 496 (Tex. App.—Fort Worth 2012, no pet.) ....................... 41

*H.J. Inc. v. Nw. Bell Tel. Co.*,
    492 U.S. 229 (1989) ................................................................................. 23

*Hart v. Bayer Corp.*,
    199 F.3d 239 (5th Cir. 2000) ................................................................. 43

*Heldenfels Bros., Inc. v. City of Corpus Christi*,
    832 S.W.2d 39 (Tex. 1992) ............................................................... 41, 42

*Holland v. CryptoZoo Inc.*,
    2025 WL 2492970 (W.D. Tex. Aug. 14, 2025) ............................... 14, 15

*In re Enron Corp. Sec., Derivative & ERISA Litig.*,
    439 F. Supp. 2d 692 (S.D. Tex. 2006) ................................................... 37

*Janvey v. Alguire*,
    846 F. Supp. 2d 662 (N.D. Tex. 2011) ............................... 18, 19, 41, 42

*Keyes v. Weller*,
    692 S.W.3d 274 (Tex. 2024) ................................................................... 14

*Lorenzo v. SEC*,
    587 U.S. 71 (2019) ........................................................................... 34, 38

*Lormand v. U.S. Unwired, Inc.*,
    565 F.3d 228 (5th Cir. 2009) ........................................................... 36, 37

*Malone v. Harden*,
   668 S.W.3d 39 (Tex. App.—Houston [1st Dist.] 2022, no pet.) ............................................. 28

*Nathenson v. Zonagen Inc.*,
   267 F.3d 400 (5th Cir. 2001) ...................................................................................................... 35

*North Cypress Med. Ctr. Operating Co. v. Cigna Healthcare*,
   781 F.3d 182 (5th Cir. 2015) ...................................................................................................... 25

*North Tex. Opportunity Fund L.P. v. Hammerman & Gainer Int'l, Inc.*,
   107 F. Supp. 3d 620 (N.D. Tex. 2015) ....................................................................................... 18

*Ranieri v. AdvoCare Int'l, L.P.*,
   336 F. Supp. 3d 701 (N.D. Tex. 2018) ....................................................................................... 20

*Robertson v. ADJ P'ship, Ltd.*,
   204 S.W.3d 484 (Tex. App.—Beaumont 2006) ................................................................... 29, 30

*Rotstain v. Trustmark Nat'l Bank*,
   2016 WL 8216509 (N.D. Tex. July 27, 2016) ............................................................................ 39

*Salinas v. United States*,
   522 U.S. 52 (1997) ................................................................................................................ 24, 25

*Santanna Nat. Gas Corp. v. Hamon Operating Co.*,
   954 S.W.2d 885 (Tex. App.—Austin 1997, pet. denied) ...................................................... 32, 33

*Schlumberger Well Surveying Corp. v. Nortex Oil & Gas Corp.*,
   435 S.W.2d 854 (Tex. 1968) ....................................................................................................... 27

*Sec. & Exch. Comm'n v. Verges*,
   716 F. Supp. 3d 456 (N.D. Tex. 2024) ......................................................................... 31, 34, 36

*See United States v. Greenlaw*,
   84 F.4th 325 (5th Cir. 2023) ....................................................................................................... 21

*Sourcing Mgmt., Inc. v. Simclar, Inc.*,
   118 F. Supp. 3d 899 (N.D. Tex. 2015) .................................................................................. 15, 17

*Sparling v. Doyle*,
   2014 WL 12489990 (W.D. Tex. Oct. 23, 2014) .................................................................... 18, 19

*Spring St. Partners-IV, L.P. v. Lam*,
   730 F.3d 427 (5th Cir. 2013) ....................................................................................... 14, 15, 17, 19

*State of Tex. v. Allan Constr. Co.*,
   851 F.2d 1526 (5th Cir. 1988) .................................................................................................... 32

*Stoneridge Inv. Partners, LLC v. Scientific-Atlanta, Inc.*,
    552 U.S. 148 (2008)................................................................ 35, 36

*Stripling v. Jordan Prod. Co.*,
    234 F.3d 863 (5th Cir. 2000) ......................................................... 43

*Taylor v. Cmty. Bankers Sec., LLC*,
    2013 WL 3166336 (S.D. Tex. June 20, 2013)........................... 16, 17, 41

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
    551 U.S. 308 (2007).......................................................... 19, 22, 35

*Tilton v. Marshall*,
    925 S.W.2d 672 (Tex. 1996). ........................................................ 27

*U.S. ex rel. Riley v. St. Luke's Episcopal Hosp.*,
    355 F.3d 370 (5th Cir. 2004) ......................................................... 16

*United Healthcare Services, Inc. v. First St. Hosp. LP*,
    570 S.W.3d 323 (Tex. App.—Houston [1st Dist.] 2018, pet. denied) .................... 33

*United Healthcare Servs., Inc. v. Next Health, LLC*,
    2021 WL 764035 (N.D. Tex. Feb. 26, 2021) ................................... 17, 30

*United States ex rel. Grubbs v. Kanneganti*,
    565 F.3d 180 (5th Cir. 2009) .................................................. passim

*United States v. Freeman*,
    434 F.3d 369 (5th Cir. 2005) ......................................................... 21

*United States v. Griffin*,
    324 F.3d 330 (5th Cir. 2003) ................................................ 21, 28, 31

*United States v. Pipkin*,
    114 F.3d 528 (5th Cir. 1997) ......................................................... 21

*United States v. Thomas*,
    627 F.3d 146 (5th Cir. 2010) ......................................................... 20

*Williams v. WMX Techs., Inc.*,
    112 F.3d 175 (5th Cir. 1997) .................................................... 13, 22

## Statutes

18 U.S.C. § 1962(d) ........................................................................... 8

Tex. Gov't Code Ann. § 4008.052 ........................................................... 35

Tex. Gov't Code Ann. § 4008.055 ...................................................... 35, 36

**Rules**

Fed. R. Civ. P. 12(b)(6) ............................................................................. 13

Fed. R. Civ. P. 15(a)(2) ............................................................................. 43

## II.   INTRODUCTION

1.      Defendant Angels Coding, LLC seeks dismissal by recasting itself as a passive bystander to a fraud it allegedly helped execute and conceal. The Complaint alleges otherwise. Plaintiffs plausibly allege that Angels Coding knowingly received and laundered more than $5.2 million in investor funds under a false technological pretext, providing cover and continuity for a fraudulent enterprise that misappropriated investor assets on a massive scale.

2.      Angels Coding's motion relies on a series of doctrinal mischaracterizations. It argues that liability depends on veil piercing, even though Plaintiffs allege Angels Coding's own misconduct. It insists that fraud and securities claims require direct investor-facing misstatements, even though scheme liability extends to those who execute and conceal fraud. It demands internal admissions and granular proof of intent at the pleading stage, notwithstanding well-settled law permitting scienter and agreement to be inferred from circumstantial facts.

3.      The Complaint alleges that Angels Coding was not an incidental recipient of funds, but a controlled entity used to receive, legitimize, and conceal the diversion of investor assets through a false "Switch server hosting" justification that never reflected real services. Those allegations are supported by specific facts, detailed transaction amounts and timing, and a coherent narrative of how Angels Coding's conduct fit into, and was essential to, the broader scheme.

4.      Plaintiffs do not oppose dismissal of the breach of fiduciary duty claim as to Angels Coding. That narrow concession underscores what this case is—and what it is not. Plaintiffs do not seek to impose liability on Angels Coding based on status, association, or form. They seek to hold Angels Coding accountable for its alleged knowing participation in fraud, conspiracy, racketeering activity, securities violations, and unjust enrichment. At the pleading stage, that is more than sufficient to proceed to discovery.

### III.  SUMMARY OF THE ARGUMENT

5.      Angels Coding's motion should be denied in all material respects because the Complaint plausibly alleges Angels Coding's direct participation in a fraudulent enterprise and satisfies the applicable pleading standards.

6.      First, Plaintiffs do not seek to impose another defendant's liability on Angels Coding through veil piercing or reverse veil piercing. Plaintiffs allege that Angels Coding is directly liable for its own conduct, including knowingly receiving and laundering investor funds under false pretenses. Veil-piercing doctrines are inapplicable where, as here, liability is predicated on the defendant's own actions.

7.      Second, the Complaint plausibly alleges Angels Coding's knowing participation in the fraudulent enterprise. Knowledge and agreement may be inferred from circumstantial facts, including Angels Coding's control by a principal wrongdoer, the extraordinary volume and timing of transfers, the false stated purpose for those transfers, synchronization with investor inflows, and Angels Coding's role as a dedicated receiving and laundering entity. Plaintiffs are not required to plead internal communications or admissions at the motion-to-dismiss stage.

8.      Third, Plaintiffs have adequately pled RICO conspiracy. A defendant need not personally commit predicate acts to be liable under 18 U.S.C. § 1962(d); it is enough to plausibly allege that the defendant knowingly agreed to facilitate the enterprise's objectives. The Complaint alleges that Angels Coding did exactly that by routing and concealing fraud proceeds in furtherance of the scheme.

9.      Fourth, Plaintiffs' fraud-based claims are not limited to speaker liability. Fraud liability extends to participants who execute or conceal a fraudulent scheme, including by providing false justifications and laundering funds. The Complaint alleges affirmative deceptive conduct by Angels Coding, not mere silence, and Rule 9(b) is satisfied by the detailed allegations

identifying the scheme, Angels Coding's role, the timing and amounts of transfers, and why the stated purposes were false.

10.    Fifth, Plaintiffs have plausibly alleged scheme liability under Section 10(b) and Rule 10b-5(a) and (c). Angels Coding's conduct (receiving and disguising investor funds under a false infrastructure justification) constitutes deceptive acts sufficient to support primary liability. Scienter, reliance, and loss causation are adequately pled at this stage, and Angels Coding's attempt to characterize its role as too remote is foreclosed by controlling authority.

11.    Sixth, Plaintiffs have stated a viable claim under the Texas Securities Act. The statute reaches persons who materially aid or induce securities violations, not only sellers or speakers. The Complaint plausibly alleges that Angels Coding materially aided the fraudulent sale of securities by laundering investor funds and concealing the scheme's true nature, which is sufficient to proceed.

12.    Finally, Plaintiffs have plausibly alleged unjust enrichment. The Complaint alleges that Angels Coding received and retained millions of dollars traceable to fraud under circumstances that make retention inequitable. Texas law permits unjust enrichment to be pled in the alternative at the pleading stage, and Angels Coding's arguments to the contrary fail as a matter of law.

13.    Taken together, the Complaint alleges a coherent scheme, a defined role for Angels Coding within that scheme, and concrete harms to Plaintiffs. Angels Coding's motion seeks to impose heightened pleading standards and doctrinal limitations that do not apply. Except for the conceded fiduciary duty claim, the motion to dismiss should be denied.

## IV.   LEGAL STANDARD

### A. Rule 12(b)(6)

14.    To survive a motion to dismiss under Rule 12(b)(6), a complaint must allege sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face.

Fed. R. Civ. P. 12(b)(6); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 554–57 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

15.     In assessing plausibility, the Court must draw all reasonable inferences in the plaintiff's favor and may not resolve factual disputes, weigh evidence, or assess the merits of competing explanations. *Twombly*, 550 U.S. at 554–56; *Iqbal*, 556 U.S. at 678–79. The question at this stage is not whether Plaintiffs will ultimately prevail, but whether they have alleged facts sufficient to move their claims across the line from conceivable to plausible.

**B. Rule 9(b) (Where Applicable)**

16.     For claims sounding in fraud, Rule 9(b) requires that the circumstances constituting fraud be pled with particularity, including the nature of the alleged misrepresentations or omissions and the manner in which they were misleading. *Williams v. WMX Techs., Inc.*, 112 F.3d 175, 178 (5th Cir. 1997).

17.     Rule 9(b), however, does not require evidentiary detail or proof at the pleading stage, nor does it prohibit group pleading where defendants are alleged to have acted in concert as part of a unified scheme. *United States ex rel. Grubbs v. Kanneganti*, 565 F.3d 180, 190 (5th Cir. 2009). Where the complaint identifies the fraudulent scheme and each defendant's role within it, Rule 9(b) is satisfied.

**V.    THE MOTION TO DISMISS IS PREMISED ON A FALSE "REVERSE VEIL PIERCING" THEORY**

**A. Plaintiffs Do Not Seek to Impose Another Defendant's Liability on Angels Coding.**

18.     Angels Coding's Motion to Dismiss is premised on the erroneous assumption that Plaintiffs seek to impose the liability of James Boyd or Mike Boggs on Angels Coding through a theory of reverse veil piercing. Reverse veil piercing, however, is not a cause of action; it is a remedial doctrine used to disregard the corporate form in order to impose one party's liability on

another entity, typically to reach corporate assets to satisfy an individual's obligations. *Spring St. Partners-IV, L.P. v. Lam*, 730 F.3d 427, 443 (5th Cir. 2013) (veil piercing is a means of imposing liability rather than a substantive claim); *Holland v. CryptoZoo Inc.*, 2025 WL 2492970, at *10 (W.D. Tex. Aug. 14, 2025) (same).

19.    Plaintiffs do not invoke that doctrine here. They do not allege that Angels Coding is liable because Boyd or Boggs is liable, nor do they seek to satisfy any other defendant's debts through Angels Coding. Instead, Plaintiffs allege that Angels Coding is liable for its own direct misconduct as a knowing participant in the fraudulent enterprise. Where liability is predicated on a defendant's own tortious or fraudulent acts, veil-piercing principles are inapplicable. *Keyes v. Weller*, 692 S.W.3d 274, 279–80 (Tex. 2024) (corporate agents and entities are liable for their own tortious conduct independent of veil-piercing theories); *Bates Energy Oil & Gas v. Complete Oilfield Servs., LLC*, 361 F. Supp. 3d 633, 672–73 (W.D. Tex. 2019) (distinguishing direct liability for a defendant's own conduct from vicarious liability imposed through veil piercing).

20.    The Complaint alleges specific, affirmative conduct by Angels Coding itself. Plaintiffs allege that Angels Coding was used as a vehicle to receive, conceal, and transfer investor funds as part of the fraudulent enterprise, not merely as a passive recipient of funds. Compl. ¶ 15. Between January and May 2025, Intellitech Solutions, LLC wired and transferred a total of $5,239,845 to Angels Coding, purportedly for "server hosting" at the Switch data center. Compl. ¶¶ 31, 61. Plaintiffs allege that this explanation was false, that Angels Coding did not operate legitimate hosting services at Switch, and that the transfers were funded with investor assets and served as a laundering mechanism within the enterprise. Compl. ¶¶ 31, 61, 83(d).

21.    Plaintiffs further allege that Angels Coding knowingly agreed to facilitate the conduct of the enterprise and joined the scheme with an understanding of its unlawful purpose.

Compl. ¶ 66. Overt acts in furtherance of the conspiracy are alleged to include routing more than $5.2 million in investor funds into Angels Coding under the guise of Switch server hosting. Compl. ¶¶ 67, 105(c). These allegations are directed at Angels Coding's own conduct, not conduct imputed to it based on ownership or control.

22.    Courts routinely reject attempts to recharacterize allegations of an entity's direct participation in fraud or racketeering as veil-piercing claims merely because the entity is described as a "vehicle" or "conduit" within the scheme. Where a complaint alleges that a corporate entity itself knowingly received, transferred, or concealed illicit proceeds in furtherance of unlawful conduct, liability rests on the entity's own acts, not on alter-ego or unity-of-interest theories. *Allstate Ins. Co. v. Benhamou*, 190 F. Supp. 3d 631, 647–48 (S.D. Tex. 2016).

23.    Because Plaintiffs seek to hold Angels Coding liable for its own alleged acts (including knowingly receiving and laundering investor funds) rather than to impose another defendant's liability upon it, the reverse veil-piercing authorities relied upon by Angels Coding are inapposite. The Complaint pleads direct misconduct by Angels Coding, and dismissal on veil-piercing grounds is therefore unwarranted. *Spring St. Partners*, 730 F.3d at 443; *Holland*, 2025 WL 2492970, at *10.

**B. The Complaint Alleges Direct Misconduct by Angels Coding.**

24.    The Complaint alleges that Angels Coding engaged in affirmative conduct that furthered and concealed the fraudulent enterprise, not that it merely received funds incidental to the acts of others. At the pleading stage, allegations that a defendant knowingly received, disguised, or laundered fraud proceeds constitute actionable misconduct sufficient to support claims for fraud-based liability, conspiracy, RICO conspiracy, and unjust enrichment. *Sourcing Mgmt., Inc. v. Simclar, Inc.*, 118 F. Supp. 3d 899, 919–20 (N.D. Tex. 2015) (entity alleged to have participated in scheme to divert assets stated plausible unjust enrichment claim); *Taylor v. Cmty.*

*Bankers Sec., LLC*, 2013 WL 3166336, at *10 (S.D. Tex. June 20, 2013) (denying motion to dismiss where defendants allegedly received proceeds of Ponzi scheme).

25.    First, Plaintiffs allege that Angels Coding was used as a vehicle to receive, conceal, and transfer investor funds as part of the enterprise's laundering process. Compl. ¶ 15. Between January and May 2025, Intellitech Solutions, LLC wired approximately $1.4 million and transferred approximately $3.84 million in USDT to Angels Coding, totaling $5,239,845. Compl. ¶¶ 31, 61. These transfers are alleged to have been funded with investor assets and routed through Angels Coding to conceal their true source and purpose. Compl. ¶ 61.

26.    Plaintiffs further allege that Angels Coding did not provide the services for which these payments were purportedly made. The Complaint alleges that the transfers were falsely characterized as payments for "server hosting" at the Switch data center in Las Vegas, when in fact Angels Coding did not operate legitimate hosting services at Switch and performed no such services. Compl. ¶¶ 31, 83(d). Allegations that a defendant knowingly accepts payment for services never performed, under a false pretext, constitute affirmative deceptive conduct, not mere nonperformance or breach. *See U.S. ex rel. Riley v. St. Luke's Episcopal Hosp.*, 355 F.3d 370, 376–77 (5th Cir. 2004) (distinguishing actionable fraud based on statements "known to be false" from errors or regulatory violations). At the pleading stage, allegations that payments were obtained through knowingly false representations about services purportedly rendered are sufficient to state fraud-based claims.

27.    Third, Plaintiffs allege that Angels Coding's receipt of funds was not accidental or innocent, but knowing and coordinated. The Complaint alleges that Angels Coding knowingly agreed to facilitate the conduct of the enterprise and joined the scheme with an understanding of its unlawful scope and purpose. Compl. ¶ 66. Plaintiffs further allege overt acts in furtherance of

the conspiracy, including routing more than $5.2 million in investor funds through Angels Coding under the guise of Switch server hosting. Compl. ¶¶ 67, 105(c). At the motion-to-dismiss stage, allegations of knowing agreement and overt acts in furtherance of a fraudulent scheme are sufficient to plead participation in a conspiracy. *United Healthcare Servs., Inc. v. Next Health, LLC*, 2021 WL 764035, at *8 (N.D. Tex. Feb. 26, 2021).

28.     Fourth, Angels Coding's alleged role as a recipient and laundering entity constitutes direct participation in the fraudulent scheme, not passive association. Courts routinely recognize that entities which knowingly receive and process fraud proceeds play an essential role in effectuating fraud and may be held liable for their own conduct. *Benhamou*, 190 F. Supp. 3d at 663 (allegations that entity participated in enterprise's racketeering activity sufficient at pleading stage).

29.     Taken together, these allegations plausibly plead that Angels Coding was not a peripheral actor, but an operational component of the fraudulent enterprise: it received investor funds, disguised their purpose, and facilitated their concealment and movement. Compl. ¶¶ 15, 31, 61, 66, 83(d), 105(c). Such allegations are sufficient to state claims based on Angels Coding's own misconduct and preclude dismissal under Rule 12(b)(6). *Taylor*, 2013 WL 3166336, at *10; *Sourcing Mgmt.*, 118 F. Supp. 3d at 919–20.

**C.  A Shell Entity Is Liable for Its Own Role in a Fraud.**

30.     Under Texas and Fifth Circuit law, veil piercing and alter ego doctrines are purely remedial and are required only when a plaintiff seeks to impose one party's liability on another. They are not prerequisites to holding a corporate entity liable for its own participation in fraudulent or tortious conduct. *Spring St. Partners-IV*, 730 F.3d at 444–45 (veil piercing does not create a substantive cause of action and serves only to expand sources of recovery); *Bates Energy Oil &*

*Gas*, 361 F. Supp. 3d at 664 (veil piercing distinct from direct liability based on defendant's own conduct).

31.     Courts therefore routinely reject arguments that an entity's status as a "shell," "closely held," or controlled company triggers veil-piercing requirements where the plaintiff alleges the entity's direct involvement in wrongdoing. In *Sparling v. Doyle*, the court denied a motion to dismiss premised on alleged failures to plead veil piercing, holding that "a particular Defendant may still be held directly liable for its own tortious activities regardless if one of the Defendants ultimately cannot be held liable for the legal obligations of its co-defendants." 2014 WL 12489990, at *11 (W.D. Tex. Oct. 23, 2014). Similarly, in *Bates Energy*, the court emphasized that statutory veil-piercing protections do not apply to claims based on a defendant's own tortious conduct. 361 F. Supp. 3d at 664.

32.     This principle applies with equal force in fraud, conspiracy, and unjust enrichment cases involving shell entities. Courts consistently allow claims to proceed against entities alleged to have knowingly received, diverted, or retained fraud proceeds without requiring alter ego or veil-piercing allegations. *Janvey v. Alguire*, 846 F. Supp. 2d 662, 672–73 (N.D. Tex. 2011) (entities directly liable for unjust enrichment based on receipt and retention of Ponzi scheme proceeds); *North Tex. Opportunity Fund L.P. v. Hammerman & Gainer Int'l, Inc*., 107 F. Supp. 3d 620, 638 (N.D. Tex. 2015) (allowing civil conspiracy claims against shell entity alleged to have participated in diversion of funds).

33.     Consistent with these authorities, Plaintiffs are not required to plead veil-piercing or alter ego elements to state claims against Angels Coding. Plaintiffs allege that Angels Coding itself participated in the fraudulent scheme by receiving, disguising, and laundering investor funds under false pretenses. Compl. ¶¶ 15, 31, 61, 83(d). Allegations of such conduct state direct liability

claims regardless of whether the entity is characterized as a shell or conduit. *Spring St. Partners*, 730 F.3d at 444–45; *Sparling*, 2014 WL 12489990, at *11.

34.     Accordingly, Angels Coding's attempt to invoke veil-piercing doctrines as a prerequisite to liability fails as a matter of law. Where, as here, a plaintiff alleges a corporate entity's own role in fraud and conspiracy, no veil doctrine is required, and dismissal under Rule 12(b)(6) is improper. *Bates Energy*, 361 F. Supp. 3d at 664; *Janvey*, 846 F. Supp. 2d at 672–73.

## VI.    THE COMPLAINT PLAUSIBLY ALLEGES ANGELS CODING'S KNOWING PARTICIPATION IN THE FRAUDULENT ENTERPRISE

### A.    Angels Coding's Knowledge Is Plausibly Inferred from the Alleged Facts.

35.     At the pleading stage, Plaintiffs are not required to allege direct evidence of a defendant's internal mental state. Knowledge and intent may be plausibly inferred from circumstantial facts, including the nature, timing, and context of the defendant's conduct. *Ashcroft*, 556 U.S. at 678; *Kanneganti*, 565 F.3d at 190. Courts routinely reject attempts to require plaintiffs to plead internal admissions, communications, or confessions where such information lies uniquely within defendants' control. *See Tellabs, Inc. v. Makor Issues & Rights, Ltd*., 551 U.S. 308, 323–24 (2007).

36.     The Complaint pleads multiple, independent facts from which Angels Coding's knowing participation in the fraudulent enterprise may be reasonably inferred.

37.     First, Plaintiffs allege that Angels Coding was controlled by a principal participant in the scheme, Mike Boggs, who served as its registered agent and exercised authority over the entity. Compl. ¶¶ 15, 31. Control by a central wrongdoer supports a reasonable inference that the entity was aware of, and acted in furtherance of, the scheme's objectives. *Benhamou*, 190 F. Supp. 3d at 656–57.

38.     Second, the volume and timing of the transfers routed through Angels Coding support an inference of knowledge. Plaintiffs allege that between January and May 2025, Intellitech Solutions, LLC transferred a total of $5,239,845 to Angels Coding, including approximately $1.4 million by wire and approximately $3.84 million in USDT. Compl. ¶¶ 31, 61. Courts routinely find that unusually large, concentrated transfers occurring over a short period weigh against any inference of innocent or routine commercial activity. *United States v. Thomas*, 627 F.3d 146, 154–55 (5th Cir. 2010); *Dale v. Frankel*, 131 F. Supp. 2d 852, 856–57 (S.D. Miss. 2001).

39.     Third, Plaintiffs allege that these transfers were falsely characterized as payments for "server hosting" at the Switch data center, when in fact Angels Coding did not operate legitimate hosting services at Switch and performed no such services. Compl. ¶¶ 31, 83(d). A knowingly false stated purpose for substantial payments supports an inference of scienter, not negligence or mistake. *See Barrie v. Intervoice-Brite, Inc.*, 397 F.3d 249, 264 (5th Cir. 2005), *opinion modified on denial of reh'g*, 409 F.3d 653 (5th Cir. 2005); *Ranieri v. AdvoCare Int'l, L.P.*, 336 F. Supp. 3d 701, 716–17 (N.D. Tex. 2018) (denying motion to dismiss RICO claims where plaintiffs plausibly alleged scienter by pleading that defendants affirmatively mischaracterized payments as legitimate retail commissions while engaging in specific conduct inconsistent with those representations, supporting a strong inference of fraudulent intent under Rule 9(b)).

40.     Fourth, Plaintiffs allege that the transfers to Angels Coding were synchronized with investor inflows and were funded with investor assets, indicating that Angels Coding functioned as part of the scheme's internal mechanics rather than as an arms-length vendor. Compl. ¶ 61. This temporal and functional integration with investor funding supports a plausible inference that the recipient entity understood its role within the fraudulent enterprise. *See United States v. Greenlaw*,

84 F.4th 325, 342 (5th Cir. 2023) (holding that temporal linkage between investor distributions and downstream fund transfers—where defendants initiated, timed, and controlled transfers to ensure investor payments—supported an inference of knowing participation in a fraudulent scheme rather than innocent arms-length business relationships); *United States v. Freeman*, 434 F.3d 369, 373–74 (5th Cir. 2005) (finding knowledge inferable where investor funds were commingled and used contemporaneously to make lulling payments).

41.    Fifth, Plaintiffs allege that Angels Coding served as a dedicated receiving and laundering entity used to conceal the true source and purpose of investor funds. Compl. ¶¶ 15, 31, 61. Courts consistently recognize that entities used to receive, layer, or conceal fraud proceeds are not passive bystanders, and that such conduct supports an inference of knowing participation. *Dale*, 131 F. Supp. 2d at 856–57 (denying Rule 12(b)(6) motion where allegations that defendant functioned as a dedicated receiving and laundering conduit, accepted systematic wire transfers, and converted funds to cash were sufficient to support an inference of knowing participation in a RICO conspiracy rather than passive receipt); *United States v. Griffin*, 324 F.3d 330, 352 (5th Cir. 2003) (holding that concealment of the source or purpose of funds, including use of third parties and deceptive transaction structures, permits an inference of guilty knowledge and active participation in a fraudulent scheme rather than innocent receipt of proceeds); *United States v. Pipkin*, 114 F.3d 528, 534 (5th Cir. 1997) (recognizing that use of intermediary entities and layered financial transactions to obscure the source or ownership of funds supports an inference of intentional concealment and knowing participation even where individual transactions may appear ordinary in isolation).

42.    Taken together, these allegations plausibly support the inference that Angels Coding knowingly participated in the fraudulent enterprise. At this stage, Plaintiffs are not required

to negate every hypothetical innocent explanation or to plead internal communications evidencing knowledge. *Tellabs*, 551 U.S. at 323–24. They must allege facts that make knowing participation plausible. They have done so.

**B. Rule 9(b) Is Satisfied as to Angels Coding.**

43.     Rule 9(b) requires plaintiffs to plead the circumstances constituting fraud with particularity, including the nature of the alleged misrepresentations and the manner in which they were misleading. *Williams*, 112 F.3d at 178. However, Rule 9(b) does not require evidentiary detail, nor does it prohibit group pleading where defendants are alleged to have acted in concert as part of a unified fraudulent scheme. *Kanneganti*, 565 F.3d at 190. Where the complaint identifies the fraudulent scheme and each defendant's role within it, the rule is satisfied. *Id*.

44.     The Complaint satisfies Rule 9(b) as to Angels Coding.

    a.   Who: Angels Coding, LLC. Compl. ¶¶ 15, 31.

    b.   What: The false representation that payments routed to Angels Coding were for legitimate server hosting at the Switch data center. Compl. ¶¶ 31, 83(d).

    c.   When: January through May 2025. Compl. ¶¶ 31, 61, 83(d).

    d.   How: Wire transfers and USDT transfers totaling $5,239,845 routed through Angels Coding. Compl. ¶¶ 31, 61.

    e.   Why False: Angels Coding did not operate legitimate hosting services at Switch and instead functioned as a laundering conduit for investor funds. Compl. ¶¶ 15, 31, 61, 83(d).

45.     These allegations provide Angels Coding with ample notice of the precise conduct at issue and the basis for Plaintiffs' claims. Rule 9(b) does not require Plaintiffs to plead the internal mechanics of Angels Coding's decision-making, the identities of individual employees who processed transfers, or internal communications evidencing knowledge: matters uniquely within

Defendants' possession. *See El Paso Disposal, LP v. Ecube Labs Co.*, 766 F. Supp. 3d 692, 702 (W.D. Tex. 2025) (Rule 9(b)'s primary purpose is providing defendants with fair notice, not requiring exhaustive internal details); *see also Burford v. Cargill, Inc*., No. CIV.A. 05-0283, 2011 WL 4382124, at *12 & n.7 (W.D. La. Sept. 20, 2011) ("Plaintiffs cannot be expected to have knowledge of all the details which undergird the alleged fraudulent scheme.... In such cases, some relaxation of Rule 9(b)'s particularity requirement is appropriate in instances where such information is in the defendant's hands or control.") (internal citations omitted).

46.     When the Complaint is read as a whole, as it must be, Plaintiffs pled a cohesive fraudulent scheme, identified Angels Coding's specific role within that scheme, and explain why the challenged representations were false. Compl. ¶¶ 15, 31, 61, 66, 83(d), 105(c). That is all Rule 9(b) requires at the pleading stage. *See Kanneganti*, 565 F.3d at 190.

## VII.  THE COMPLAINT ADEQUATELY STATES CLAIMS AGAINST ANGELS CODING

### A.  RICO Conspiracy (18 U.S.C. § 1962(d))

#### *a.  Plaintiffs Have Adequately Pled a Substantive RICO Violation by the Enterprise.*

47.     As set forth in detail in Plaintiffs' responses to the motions to dismiss filed by Defendants Boggs and Hatzipetros, the Complaint plausibly alleges a substantive RICO violation by the Boyd–Boggs–Eden Enterprise under 18 U.S.C. § 1962(c). Plaintiffs allege the existence of an association-in-fact enterprise with a common purpose, relationships among members, and longevity sufficient to pursue that purpose. Compl. ¶¶ 55–60.

48.     The Complaint further alleges a pattern of racketeering activity consisting of hundreds of predicate acts of wire fraud and money laundering, spanning more than a year, directed toward inducing investment, misappropriating investor assets, and concealing the scheme's true nature. Compl. ¶¶ 62–64, 83, 89; *see H.J. Inc. v. Nw. Bell Tel. Co*., 492 U.S. 229, 239–43 (1989).

These allegations are sufficient to plead closed-ended continuity and interstate commerce, and thus a substantive RICO violation by the enterprise. *Abraham v. Singh*, 480 F.3d 351, 357 (5th Cir. 2007).

49.    Angels Coding does not meaningfully dispute the existence of the enterprise or the pattern of racketeering activity alleged. Instead, it attempts to leverage arguments rejected in the context of the individual defendants to claim derivative immunity. That effort fails as a matter of law.

> b.  *A RICO Conspiracy Claim Does Not Require Angels Coding to Commit Predicate Acts.*

50.    Angels Coding's principal legal error is its contention that it cannot be liable under 18 U.S.C. § 1962(d) because Plaintiffs allegedly failed to plead that Angels committed a substantive RICO violation. The Supreme Court and Fifth Circuit have squarely rejected that position.

51.    A defendant may be liable for RICO conspiracy even if it did not personally commit (or could not itself commit) the predicate racketeering acts, so long as it knowingly agreed to facilitate the enterprise's criminal objectives. *Salinas v. United States*, 522 U.S. 52, 65 (1997); *Davis–Lynch, Inc. v. Moreno*, 667 F.3d 539, 551–52 (5th Cir. 2012).

52.    Accordingly, the relevant inquiry is not whether Angels Coding itself executed wire fraud or laundering transactions in isolation, but whether it knowingly agreed to participate in the enterprise's scheme to defraud investors and conceal misappropriated assets. *Salinas*, 522 U.S. at 65. Plaintiffs have plausibly alleged such an agreement.

> c.  *The Complaint Plausibly Alleges Angels Coding's Agreement to the Enterprise's Objectives.*

53.    To plead a RICO conspiracy, Plaintiffs must allege facts supporting a plausible inference that Angels Coding knew of the essential nature of the plan and agreed to further its

unlawful objectives. *North Cypress Med. Ctr. Operating Co. v. Cigna Healthcare*, 781 F.3d 182, 203 (5th Cir. 2015). Direct evidence of an express agreement is not required; agreement may be inferred from circumstantial evidence and coordinated conduct. *Kanneganti*, 565 F.3d at 190.

54.     The Complaint alleges multiple, reinforcing facts from which Angels Coding's agreement may be inferred:

> a.   Angels Coding received over $5.239 million in investor-derived funds between January and May 2025. Compl. ¶¶ 31, 61.

> b.   Those transfers were falsely represented as payments for Switch data-center hosting services that Angels Coding did not provide. Compl. ¶¶ 31, 83(d).

> c.   The transfers were synchronized with investor inflows and funded with investor assets, demonstrating functional integration with the enterprise's operations. Compl. ¶ 61.

> d.   Angels Coding served as a dedicated receiving and laundering entity, used to conceal the source and purpose of misappropriated funds. Compl. ¶¶ 15, 31.

> e.   Angels Coding knowingly agreed to facilitate the enterprise's conduct and committed overt acts in furtherance of the conspiracy. Compl. ¶¶ 66–67, 105(c).

55.     These allegations go well beyond conclusory assertions of conspiracy. They plausibly allege that Angels Coding knowingly joined the enterprise and agreed to advance its fraudulent objectives by receiving, disguising, and laundering investor funds. Courts routinely hold such allegations sufficient to plead agreement under § 1962(d). *See Salinas*, 522 U.S. at 65; *Davis–Lynch*, 667 F.3d at 551–52.

56.     Angels Coding's reliance on cases dismissing RICO conspiracy claims for lack of specificity is misplaced. Those cases involved complaints devoid of factual allegations tying defendants to the enterprise's core financial mechanics. Here, Angels Coding is alleged to have played a defined and essential role in the flow and concealment of fraud proceeds.

   d.  *Rule 9(b) Does Not Require Pleading Internal Conspiracy Mechanics.*

57.     To the extent Angels Coding argues that Plaintiffs failed to plead a "meeting of the minds" with particularity, that argument improperly elevates Rule 9(b) into a demand for internal communications and subjective mental states.

58.     Rule 9(b) requires particularity as to the circumstances of the fraud, not evidentiary detail concerning internal agreement formation. *Kanneganti*, 565 F.3d at 190; *El Paso Disposal,* 766 F. Supp. 3d at 702. In scheme-based fraud and RICO cases, the rule is applied flexibly, particularly where details of internal coordination lie uniquely within defendants' control. *Kanneganti*, 565 F.3d at 190.

59.     Here, Plaintiffs have alleged:

   a.  the fraudulent scheme,

   b.  the enterprise,

   c.  the pattern of racketeering activity,

   d.  and Angels Coding's specific role within that scheme.

60.     That is all Rule 9(b) requires at the pleading stage. Angels Coding's demand for granular allegations concerning who proposed the conspiracy, when Angels "understood" it, or how internal decisions were made seeks proof, not plausibility. Rule 12(b)(6) does not require such detail.

*e.  The RICO Conspiracy Claim Against Angels Coding Is Plausibly Pled.*

61.     When the Complaint is read as a whole, Plaintiffs have plausibly alleged that Angels Coding knowingly agreed to facilitate the Boyd–Boggs–Eden Enterprise through a pattern of racketeering activity, causing Plaintiffs' injuries. Compl. ¶¶ 62–67. That is sufficient to state a claim under 18 U.S.C. § 1962(d), and Angels Coding's motion to dismiss the RICO conspiracy claim should be denied.

**B.  Civil Conspiracy to Commit Fraud**

62.     Under Texas law, a civil conspiracy requires: (1) a combination of two or more persons; (2) an object to be accomplished; (3) a meeting of the minds on the object or course of action; (4) one or more unlawful, overt acts; and (5) damages as a proximate result. *Agar Corp., Inc. v. Electro Circuits Int'l, LLC*, 580 S.W.3d 136, 141 (Tex. 2019); *Tilton v. Marshall*, 925 S.W.2d 672, 680–81 (Tex. 1996).

63.     At the pleading stage, a plaintiff is not required to allege direct evidence of an express agreement. A conspiracy may be inferred from circumstantial evidence, including concerted action, interdependent conduct, and participation in a common scheme. *Schlumberger Well Surveying Corp. v. Nortex Oil & Gas Corp.*, 435 S.W.2d 854, 858 (Tex. 1968).

64.     The Complaint plausibly alleges each element of civil conspiracy as to Angels Coding.

*a.  Agreement and Shared Knowledge Are Plausibly Alleged.*

65.     Plaintiffs allege that Angels Coding knowingly agreed with Boyd, Boggs, Hatzipetros, and other defendants to participate in a fraudulent scheme designed to solicit investor funds under false pretenses and to conceal the misappropriation of those funds. Compl. ¶¶ 66, 104. The Complaint alleges that Angels Coding was not a passive recipient of funds, but a controlled

entity used to receive, disguise, and launder investor assets as part of the scheme. Compl. ¶¶ 15, 31, 61.

66.    Shared knowledge and agreement may be inferred where defendants act in a coordinated manner to accomplish a fraudulent objective. *See Malone v. Harden*, 668 S.W.3d 39, 45 (Tex. App.—Houston [1st Dist.] 2022, no pet.) ("civil conspiracy can be proved by course of conduct from which tacit agreement to act in concert may be inferred."). Here, the Complaint alleges that Angels Coding's conduct (receiving large, investor-funded transfers under a knowingly false pretext) was synchronized with the scheme's broader operations, supporting a plausible inference of shared understanding and agreement. Compl. ¶¶ 31, 61.

b.    *Overt Acts in Furtherance of the Conspiracy Are Specifically Alleged.*

67.    Plaintiffs allege multiple overt acts in furtherance of the conspiracy, including the routing of more than $5.239 million in investor funds to Angels Coding between January and May 2025 under the false guise of Switch data-center hosting. Compl. ¶¶ 31, 61, 83(d), 105(c). These transfers are alleged to have been funded with investor assets and to have served as a mechanism for laundering and concealing the proceeds of the fraud. Compl. ¶¶ 15, 61.

68.    Allegations that a defendant knowingly received and processed fraud proceeds as part of a coordinated scheme constitute overt acts sufficient to support a civil conspiracy claim. *See Dale*, 131 F. Supp. 2d at 856–57; *see also Griffin*, 324 F.3d at 352.

c.    *Plaintiffs Allege Resulting Damages.*

69.    Plaintiffs allege that they suffered concrete financial losses as a direct and proximate result of the conspiracy, including the loss and diversion of investor funds routed through Angels Coding as part of the fraudulent scheme. Compl. ¶¶ 90, 107–109. These allegations satisfy the damages element of a civil conspiracy claim. *Agar Corp.*, 580 S.W.3d at 141–42.

*d. The Allegations Are Sufficient at the Pleading Stage.*

70.    Taken together, the Complaint plausibly alleges that Angels Coding knowingly agreed to participate in a fraudulent scheme, committed overt acts in furtherance of that scheme by receiving and laundering investor funds, and caused damages to Plaintiffs. Compl. ¶¶ 15, 31, 61, 66, 83(d), 104–105. At the pleading stage, Plaintiffs are not required to prove the existence of a conspiracy or to plead internal communications evidencing agreement; they must allege facts supporting a reasonable inference of concerted action. *See Dale*, 131 F. Supp. 2d at 856–57.

71.    Because Plaintiffs have done so, Angels Coding's motion to dismiss the civil conspiracy claim should be denied.

## C. Fraud-Based Claims (Scheme Liability and Concealment)

72.    Angels Coding's motion improperly assumes that fraud liability is limited to defendants who directly communicated false statements to Plaintiffs. That is not the law. Texas courts recognize that liability for fraud extends to defendants who knowingly participate in the execution or concealment of a fraudulent scheme, even if they did not themselves make the misrepresentations that induced reliance. *Robertson v. ADJ P'ship, Ltd*., 204 S.W.3d 484, 494 (Tex. App.—Beaumont 2006); *Corpus Christi Area Teachers Credit Union v. Hernandez*, 814 S.W.2d 195, 198 (Tex. App.—San Antonio 1991, no writ) ("the rule that a party in interest may become liable by mere silent acquiescence for the fraudulent misrepresentations of a third party is recognized in Texas.") (internal citation omitted).

73.    Plaintiffs do not allege that Angels Coding merely "stood by" while others committed fraud. Rather, the Complaint alleges that Angels Coding actively participated in the execution and concealment of the scheme, including by providing a false technological justification for the diversion of investor funds and serving as a controlled entity through which those funds were laundered and concealed. Compl. ¶¶ 15, 31, 61, 83(d).

      *a.   Fraud Liability Extends to Participants in the Execution and Concealment of a Scheme.*

74.     Texas courts have long held that "each party to a fraudulent scheme is responsible for the acts of the other participants done in furtherance of the scheme and liable for fraud," regardless of whether the defendant directly communicated with the victim. *Robertson*, 204 S.W.3d at 494 (internal quotation marks omitted). In *Robertson*, the court rejected the argument that fraud liability required direct misrepresentations to the plaintiff, holding instead that orchestrating deceptive transactions, concealing identities, and benefiting from the fraud sufficed to establish liability. *Id*. at 493–95.

75.     Federal courts applying Texas law have adopted the same principle. In *United Healthcare Services, Inc.*, the court held that a defendant "may be liable for fraud without making any fraudulent representations" where it allegedly participated in fraudulent transactions and reaped the benefits of the scheme. 2021 WL 764035, at *5. These cases make clear that fraud liability is not limited to the speaker of a misrepresentation, but extends to those who knowingly carry out or conceal the fraudulent conduct.

      *b.   The Complaint Plausibly Alleges Angels Coding's Role in Executing and Concealing the Fraud.*

76.     The Complaint alleges that Angels Coding played a defined and essential role in the scheme's execution and concealment. Plaintiffs allege that Angels Coding received more than $5.239 million in investor-funded transfers between January and May 2025, purportedly for "server hosting" at the Switch data center. Compl. ¶¶ 31, 61. Plaintiffs further allege that this stated purpose was false, that Angels Coding did not operate legitimate hosting services at Switch, and that the reference to Switch was used to lend technological legitimacy to the diversion of investor funds. Compl. ¶¶ 31, 83(d).

77.    The Complaint also alleges that Angels Coding functioned as a laundering and concealment vehicle, used to route and disguise the source and purpose of misappropriated investor assets. Compl. ¶¶ 15, 31, 61. Courts have repeatedly recognized that laundering or concealing fraud proceeds constitutes actionable participation in a fraudulent scheme. *See Dale*, 131 F. Supp. 2d at 856–57; *see also Griffin*, 324 F.3d at 352.

78.    These allegations describe affirmative, deceptive conduct by Angels Coding itself. They are not allegations of mere association, passive receipt, or after-the-fact involvement. Rather, Plaintiffs allege that Angels Coding's conduct had the purpose and effect of facilitating the fraud and concealing it from detection: precisely the type of conduct courts recognize as sufficient to support scheme-based fraud liability. *See Sec. & Exch. Comm'n v. Verges*, 716 F. Supp. 3d 456, 467 (N.D. Tex. 2024) (recognizing scheme-based fraud liability under Rule 10b-5(a) and (c) where a defendant's conduct, though not itself a misstatement, had the purpose and effect of facilitating and concealing a fraudulent scheme by creating a false appearance).

   c.  *Rule 9(b) Is Satisfied as to Scheme Liability and Concealment.*

79.    Scheme-based fraud claims are subject to Rule 9(b), but courts recognize that the rule is applied flexibly where the fraud involves complex transactions and internal mechanics uniquely within defendants' control. *See Kanneganti*, 565 F.3d at 190; *see also El Paso Disposal*, 766 F. Supp. 3d at 702; *Verges*, 716 F. Supp. 3d at 467–70.

80.    Here, Plaintiffs plead with particularity the nature and purpose of the fraudulent scheme, the role Angels Coding played in executing and concealing it, the timing and amount of the transfers, and why the stated justification for those transfers was false. Compl. ¶¶ 15, 31, 61, 83(d). Rule 9(b) does not require Plaintiffs to plead internal communications, billing deliberations, or subjective admissions of knowledge by Angels Coding: details that lie solely within Defendants' possession. *See Kanneganti*, 565 F.3d at 190.

81.    Because Plaintiffs have plausibly alleged that Angels Coding knowingly participated in the execution and concealment of the fraudulent scheme, the fraud-based claims against Angels Coding are adequately pled, and dismissal is unwarranted.

### d. Fraudulent Concealment Does Not Require a Fiduciary Relationship Where Defendants Engage in Affirmative Deceptive Conduct.

82.    Angels Coding argues that Plaintiffs' fraudulent concealment allegations fail because Angels Coding owed Plaintiffs no fiduciary or special duty to disclose. That argument misstates Texas law. Fraudulent concealment is not limited to silence in the face of a fiduciary duty; it may be based on affirmative misrepresentations, half-truths, or active participation in deceptive conduct that creates or perpetuates a false impression. *Bombardier Aerospace Corp. v. SPEP Aircraft Holdings, LLC*, 572 S.W.3d 213, 219–20 (Tex. 2019); *Santanna Nat. Gas Corp. v. Hamon Operating Co.*, 954 S.W.2d 885, 891 (Tex. App.—Austin 1997, pet. denied).

83.    Texas courts have expressly rejected the "silence-plus-fiduciary-relationship" formulation advanced by Angels Coding. In *Santanna*, the court held that "affirmative misrepresentations can support fraudulent concealment even in the absence of a duty to disclose," explaining that once a defendant chooses to speak or act in a manner that conveys a false impression, the absence of a fiduciary relationship does not immunize deceptive conduct. 954 S.W.2d at 891.

84.    Federal courts applying Texas law follow the same rule. The Fifth Circuit has held that "acts taken to conceal wrongful conduct may support a claim of fraudulent concealment" even when those acts occur contemporaneously with the underlying scheme, rejecting any artificial separation between acts of perpetration and acts of concealment. *State of Tex. v. Allan Constr. Co.*, 851 F.2d 1526, 1534 (5th Cir. 1988).

85.     Here, Plaintiffs do not allege fraudulent concealment based on passive silence. Plaintiffs allege affirmative deceptive conduct by Angels Coding, namely, providing a false technological justification ("Switch server hosting") for the routing of investor funds and functioning as a laundering conduit to disguise the source and purpose of those funds. Compl. ¶¶ 15, 31, 61, 83(d). Under Texas law, such conduct constitutes actionable concealment regardless of whether Angels Coding owed Plaintiffs a fiduciary duty. *Santanna*, 954 S.W.2d at 891.

86.     Nor does Rule 9(b) require Plaintiffs to plead a fiduciary relationship to maintain a concealment theory. Rule 9(b) requires particularity as to the circumstances of the deception, not proof of a special relationship. *See United Healthcare Services, Inc. v. First St. Hosp. LP*, 570 S.W.3d 323, 341–42 & n.21 (Tex. App.—Houston [1st Dist.] 2018, pet. denied) ("But fraudulent concealment can be based on something other than silence in the face of a duty to disclose; it can be based on an active misrepresentation. Whether First Hospital had a duty to disclose information is not determinative.") (internal citations omitted). Plaintiffs have done so by alleging the timing, mechanism, false justification, and role Angels Coding played in concealing the scheme. Compl. ¶¶ 31, 61, 83(d).

87.     Accordingly, Angels Coding's attempt to collapse fraudulent concealment into fiduciary-duty doctrine fails as a matter of law. Because Plaintiffs plausibly allege that Angels Coding engaged in affirmative deceptive conduct that concealed the fraudulent scheme, dismissal of Plaintiffs' concealment-based claims is unwarranted.

### D.  Section 10(b) and Rule 10b-5 (Scheme Liability)

88.     Plaintiffs' Section 10(b) and Rule 10b-5 claims against Angels Coding are predicated on scheme liability, not on a theory that Angels Coding was the speaker of investor-facing misrepresentations. Section 10(b) prohibits the use of "any manipulative or deceptive device or contrivance," and Rule 10b-5(a) and (c) impose primary liability on defendants who participate

in a deceptive scheme or course of conduct, even if they did not themselves make a false statement. *Lorenzo v. SEC*, 587 U.S. 71, 84–85 (2019).

89.    Federal courts in Texas have repeatedly recognized that Rule 10b-5(a) and (c) reach defendants whose own conduct had a deceptive purpose and effect, including structuring transactions, laundering funds, or creating false appearances that conceal the true nature of a fraudulent scheme. *Verges*, 716 F. Supp. 3d at 466. Liability under these provisions does not require the defendant to have made a misstatement; it requires participation in conduct that itself operates as a fraud. *Lorenzo*, 587 U.S. at 84–85.

90.    The Complaint plausibly alleges that Angels Coding engaged in such deceptive conduct. Plaintiffs allege that Angels Coding participated in a scheme to divert and conceal investor funds by receiving more than $5.239 million in transfers falsely described as payments for "server hosting" at the Switch data center. Compl. ¶¶ 31, 61, 83(d). Plaintiffs further allege that Angels Coding did not operate legitimate hosting services at Switch and that the purported technological justification was used to lend legitimacy to the diversion and laundering of investor assets. Compl. ¶¶ 31, 83(d).

91.    These allegations describe affirmative, deceptive acts by Angels Coding itself, not mere assistance to others. Plaintiffs allege that Angels Coding's conduct was integral to the operation and concealment of the fraudulent scheme and operated as a fraud on investors by creating a false appearance of legitimate infrastructure expenditures. Compl. ¶¶ 31, 61, 83(d). At the pleading stage, such allegations are sufficient to state a claim for scheme liability under Section 10(b) and Rule 10b-5(a) and (c). *Lorenzo*, 587 U.S. at 84–85; *Verges*, 716 F. Supp. 3d at 466.

92.    At minimum, Plaintiffs have plausibly alleged Angels Coding's knowing participation in a deceptive scheme sufficient to proceed to discovery. Whether Angels Coding's

conduct ultimately satisfies the elements of scheme liability is a fact-intensive inquiry not suitable for resolution on a motion to dismiss.

**E. Plaintiffs Adequately Pled Scienter, Reliance, and Loss Causation Under Section 10(b).**

93.    Angels Coding's remaining arguments against Plaintiffs' Section 10(b) and Rule 10b-5 claims improperly import summary-judgment standards into the pleading stage and ignore settled law governing scheme-liability claims under Rule 10b-5(a) and (c).

*a. Scienter Is Plausibly Alleged.*

94.    To plead scienter under the Private Securities Litigation Reform Act, Plaintiffs must allege facts giving rise to a strong inference that the defendant acted with intent to deceive, manipulate, or defraud, or with severe recklessness. *Tellabs,* 551 U.S. at 322–23. Scienter may be inferred from circumstantial evidence. *Nathenson v. Zonagen Inc.,* 267 F.3d 400, 410 (5th Cir. 2001).

95.    Here, Plaintiffs allege that Angels Coding knowingly participated in a deceptive scheme by receiving more than $5.239 million in investor funds under a false "Switch server hosting" justification, despite performing no legitimate hosting services, and by functioning as a laundering conduit to conceal the scheme's operation. Compl. ¶¶ 15, 31, 61, 83(d). The volume, timing, and false stated purpose of these transactions support a strong inference of scienter, particularly where Angels Coding's conduct was integral to the scheme's concealment. At the pleading stage, these allegations suffice. *Tellabs*, 551 U.S. at 323.

*b. Reliance Is Adequately Alleged in a Scheme-Liability Case.*

96.    In a private action under Section 10(b) and Rule 10b-5, reliance remains an essential element of a scheme-liability claim. *Stoneridge Inv. Partners, LLC v. Scientific-Atlanta, Inc.*, 552 U.S. 148, 159 (2008). But reliance is not defeated merely because a particular defendant

did not directly communicate with investors. Rather, the relevant inquiry is whether the defendant's deceptive conduct was too remote from investors' decision-making, or whether it was sufficiently connected to the misrepresentations or false appearances on which investors relied. *Id.* at 159–61.

97.     Here, Plaintiffs do not allege that Angels Coding engaged in merely remote or undisclosed conduct. Plaintiffs allege that Angels Coding's actions (providing a false infrastructure justification for investor funds and routing those funds through sham "hosting" transactions) were integral to the representations of legitimacy and use of funds on which investors relied. Compl. ¶¶ 31, 61, 83(d). These allegations plausibly connect Angels Coding's deceptive conduct to investor reliance on the scheme's legitimacy and sustainability.

98.     At the pleading stage, Plaintiffs are not required to prove actual reliance or to demonstrate that Angels Coding itself made direct misrepresentations to investors. They must allege facts supporting a reasonable inference that Angels Coding's conduct was not too remote from the fraud that induced investment and that its conduct operated as part of the deceptive scheme relied upon by investors. *Stoneridge*, 552 U.S. at 159–61; *Verges*, 716 F. Supp. 3d at 466–67. Plaintiffs have done so here.

     *c.  Loss Causation Is Plausibly Pled.*

99.     To plead loss causation under Section 10(b) and Rule 10b-5, Plaintiffs must allege a plausible causal connection between the defendant's deceptive conduct and the economic loss suffered. *Dura Pharm., Inc. v. Broudo*, 544 U.S. 336, 342 (2005). At the motion-to-dismiss stage, Rule 8 requires only a facially plausible allegation of causation; Plaintiffs are not required to prove loss causation or to establish the precise mechanism by which the loss ultimately occurred. *Lormand v. U.S. Unwired, Inc.*, 565 F.3d 228, 258–59 (5th Cir. 2009); *Alaska Elec. Pension Fund v. Flowserve Corp.*, 572 F.3d 221, 230 (5th Cir. 2009).

100.    The Fifth Circuit has recognized that loss causation may be adequately pled through different factual pathways depending on the nature of the alleged fraud. In cases involving the misappropriation, diversion, or concealment of investor funds, district courts within this circuit have permitted plaintiffs to plead loss causation by alleging that concealed risks materialized in the form of dissipated or unrecoverable assets, without requiring a market-price reaction or a single corrective disclosure at the pleading stage. *See In re Enron Corp. Sec., Derivative & ERISA Litig.*, 439 F. Supp. 2d 692, 701–02 (S.D. Tex. 2006); *Aubrey v. Barlin*, No. A–10–CA–076–SS, 2010 WL 3909332, at *11 (W.D. Tex. Sep. 29, 2010).

101.    Plaintiffs allege that investor funds were diverted, laundered, and concealed through Angels Coding as part of the fraudulent scheme, rendering those assets unavailable for their intended purpose and resulting in concrete financial loss. Compl. ¶¶ 31, 61, 90–92. Where the alleged fraud consists of the misuse and concealment of invested funds, the loss is not contingent on a subsequent market correction; it occurs when investor assets are siphoned, dissipated, or rendered unrecoverable through deceptive conduct. *In re Enron*, 439 F. Supp. 2d at 712; *Aubrey*, 2010 WL 3909332, at *7.

102.    At this stage, Plaintiffs are not required to resolve whether loss causation will ultimately be proven through corrective disclosures, gradual revelation, or the materialization of concealed risks. They must allege facts supporting a reasonable inference that Angels Coding's deceptive conduct was a substantial factor in bringing about Plaintiffs' losses. *Lormand*, 565 F.3d at 262–63. Plaintiffs have done so here.

> d.    *Angels Coding's Conduct Is Not Too Remote as a Matter of Law.*

103.    Finally, Angels Coding's attempt to characterize its conduct as too remote or "back-office" to support primary liability ignores the Supreme Court's recognition that deceptive acts forming an integral part of a fraudulent scheme may give rise to primary liability under Rule 10b-

5(a) and (c). *Lorenzo*, 587 U.S. at 84–85. Plaintiffs allege that Angels Coding's conduct was not ancillary, but central to the execution and concealment of the fraud. Compl. ¶¶ 15, 31, 61. That is sufficient at the pleading stage.

### F. Violations of the Texas Securities Act

104.     Angels Coding's motion to dismiss Plaintiffs' Texas Securities Act ("TSA") claim rests on the mistaken premise that liability under the TSA is limited to sellers or speakers of misrepresentations. The statute is broader. The TSA expressly imposes liability not only on sellers, but also on persons who directly or indirectly induce, materially aid, or participate in the sale of securities through fraudulent conduct. Tex. Gov't Code Ann. §§ 4008.052, 4008.055.

*a.   The TSA Reaches Participants and Material Aiders, Not Only Sellers or Speakers.*

105.     Under Texas Government Code Section 4008.052 (formerly Tex. Rev. Civ. Stat. Article 581-33(A)(2)), a person is liable if they "directly or indirectly" engage in fraudulent conduct in connection with the sale of a security. Section 4008.055 (formerly Tex. Rev. Civ. Stat. Article 581-33(F)(2)) further extends liability to any person who "materially aids" the seller, unless that person sustains the burden of proving they did not know, and could not reasonably have known, of the violation. Tex. Gov't Code Ann. § 4008.055.

106.     Texas courts and federal courts applying Texas law consistently recognize that TSA liability is not limited to the person who made the misrepresentation or consummated the sale, but extends to those who knowingly facilitated, induced, or materially aided the fraudulent transaction. *See Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333, 344 (5th Cir. 2008); *Frank v. Bear Stearns & Co.*, 11 S.W.3d 380, 384–85 (Tex. App.—Houston [14th Dist.] 2000, pet. denied).

107.     Accordingly, Angels Coding's repeated assertion that it was not a "seller" or did not make investor-facing statements does not defeat TSA liability at the pleading stage.

*b.   The Complaint Plausibly Alleges Angels Coding's Material Aid and Inducement.*

108.    Plaintiffs plausibly allege that Angels Coding materially aided and induced the fraudulent sale of securities by serving as a dedicated receiving and laundering entity for investor funds and by providing a false appearance of legitimate infrastructure expenditures. Compl. ¶¶ 15, 31, 61, 83(d).

109.    Specifically, Plaintiffs allege that between January and May 2025, more than $5.239 million in investor funds were routed to Angels Coding under the false pretense of "server hosting" at the Switch data center, when Angels Coding did not operate legitimate hosting services and instead functioned as a conduit to conceal and divert investor assets. Compl. ¶¶ 31, 61, 83(d). These allegations support a reasonable inference that Angels Coding's conduct materially aided the fraudulent sales by legitimizing the scheme, enabling its continuation, and concealing the misuse of investor funds.

110.    Courts have repeatedly held that routing, holding, or disguising investor funds in furtherance of a securities fraud constitutes material aid under the TSA. *See Frank*, 11 S.W.3d at 384–85; *see Dorsey*, 540 F.3d at 344. At the pleading stage, Plaintiffs are not required to negate Angels Coding's statutory defense; once material aid is plausibly alleged, the burden shifts to Angels Coding to establish lack of knowledge. Tex. Gov't Code Ann. § 4008.055.

*c.   Rule 9(b) Is Satisfied as to the TSA Claim.*

111.    Federal courts apply Rule 9(b) to TSA claims sounding in fraud. *Billitteri v. Sec. Am., Inc.*, 2010 WL 6785484, at *5 (N.D. Tex. July 26, 2010). Rule 9(b) requires plaintiffs to plead the "who, what, when, where, and how" of the alleged misrepresentations or omissions, but it does not require evidentiary detail or prohibit pleading multiple theories of TSA liability. *Rotstain v. Trustmark Nat'l Bank*, 2016 WL 8216509, at *2 (N.D. Tex. July 27, 2016).

112.    Here, Plaintiffs pled:

a. who: Angels Coding LLC;

b. what: receipt and laundering of investor funds under a false hosting justification;

c. when: January through May 2025;

d. how: wire and USDT transfers totaling $5.239 million;

e. why deceptive: Angels Coding did not perform legitimate hosting services and served as a laundering conduit.

Compl. ¶¶ 15, 31, 61, 83(d).

113.    These allegations more than satisfy Rule 9(b) as applied to TSA participant liability and are far from the type of vague, speakerless pleading Angels relies upon in its motion.

*d.  Dismissal Is Improper at the Pleading Stage.*

114.    Angels Coding's motion improperly seeks to narrow the TSA to a seller-only statute and to impose heightened federal securities pleading standards that do not apply. Plaintiffs have plausibly alleged that Angels Coding materially aided and induced the fraudulent sale of securities by laundering investor funds and concealing the scheme's true nature. Whether Angels Coding can establish a lack of knowledge defense under Section 4008.055 is a factual question unsuitable for resolution on a motion to dismiss.

115.    Accordingly, Plaintiffs' Texas Securities Act claim against Angels Coding should proceed to discovery.

**G.  Plaintiffs' Unjust Enrichment Claim Should Remain.**

116.    Unjust enrichment applies when a defendant has obtained a benefit from another by fraud, duress, or the taking of an undue advantage, and it would be inequitable to permit the defendant to retain that benefit. *Heldenfels Bros., Inc. v. City of Corpus Christi*, 832 S.W.2d 39, 41

(Tex. 1992); *Burlington N. R.R. Co. v. Southwestern Elec. Power Co.*, 925 S.W.2d 92, 97 (Tex. 1996).

117.    A claim for unjust enrichment does not require proof that the defendant made misrepresentations to the plaintiff or stood in a direct contractual relationship. Rather, it focuses on whether the defendant received and retained benefits under circumstances that make retention unjust. *Janvey*, 846 F. Supp. 2d at 673–74; *H.E.B., L.L.C. v. Ardinger*, 369 S.W.3d 496, 507 (Tex. App.—Fort Worth 2012, no pet.).

118.    The Complaint plausibly alleges that Angels Coding was unjustly enriched by receiving and retaining investor funds misappropriated through the fraudulent scheme. Plaintiffs allege that between January and May 2025, Angels Coding received more than $5.239 million in investor-derived funds purportedly for "server hosting" services that were never performed. Compl. ¶¶ 31, 61, 83(d). Plaintiffs further allege that these funds were routed to Angels Coding to conceal the true source and purpose of investor assets and to facilitate the continuation of the fraud. Compl. ¶¶ 15, 31, 61.

119.    Texas courts routinely allow unjust enrichment claims to proceed where a defendant knowingly receives funds traceable to fraud, even if the defendant was not the primary wrongdoer or the direct recipient of the plaintiff's payment. *Janvey*, 846 F. Supp. 2d at 674–75 (allowing unjust enrichment claims against entities that received Ponzi scheme proceeds); *Taylor*, 2013 WL 3166336, at *9 (same).

120.    Angels Coding's contention that unjust enrichment is "not an independent cause of action" does not warrant dismissal. While Texas courts sometimes describe unjust enrichment as an equitable theory rather than a standalone tort, they consistently permit unjust enrichment to be pled in the alternative where, as here, plaintiffs allege that a defendant obtained and retained

benefits through fraud or other wrongful conduct. *Heldenfels Bros.*, 832 S.W.2d at 41; *Janvey*, 846 F. Supp. 2d at 674–75. At the pleading stage, Plaintiffs are not required to elect between legal and equitable remedies, and the existence of other claims arising from the same conduct does not bar an unjust enrichment theory in the alternative.

121.    At this stage, Plaintiffs are not required to trace each dollar or to prove Angels Coding's ultimate disposition of the funds. It is sufficient to allege that Angels Coding obtained and retained benefits flowing from the fraudulent scheme and that equity requires disgorgement. *See Janvey*, 846 F. Supp. 2d at 674–75.

122.    Accordingly, Plaintiffs have plausibly stated a claim for unjust enrichment against Angels Coding, and dismissal under Rule 12(b)(6) is unwarranted.

### H. Plaintiffs' Concession as to Count Four (Breach of Fiduciary Duty)

123.    Plaintiffs do not oppose dismissal of Count Four (Breach of Fiduciary Duty) as to Defendant Angels Coding LLC only. Plaintiffs do not allege that Angels Coding owed Plaintiffs an independent fiduciary duty, and the fiduciary-duty claim is not necessary to Plaintiffs' remaining theories of liability against Angels Coding.

124.    This limited concession does not affect Plaintiffs' fraud-based claims, civil conspiracy claim, RICO conspiracy claim, Texas Securities Act claim, unjust enrichment claim, or any other claims asserted against Angels Coding, all of which are predicated on Angels Coding's alleged knowing participation in the fraudulent scheme rather than the existence of a fiduciary relationship.

### VIII.  IN THE ALTERNATIVE, PLAINTIFFS SHOULD BE GRANTED LEAVE TO AMEND

125.    If the Court determines that any portion of the Complaint is deficient, Plaintiffs respectfully request leave to amend. Leave to amend should be freely granted when justice so

requires, particularly at the Rule 12 stage and where amendment would not be futile or prejudicial. Fed. R. Civ. P. 15(a)(2); *Great Plains Tr. Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 329 (5th Cir. 2002).

126.    This request is not an admission that Plaintiffs' pleading is deficient. To the contrary, as set forth above, the Complaint plausibly alleges each asserted claim and provides Defendant with fair notice of the factual and legal bases for liability. But should the Court conclude that additional factual detail would be helpful as to any claim or any Defendant, amendment would be both appropriate and efficient.

127.    Any amendment would be narrowly tailored and curative in nature. Plaintiffs could, if necessary, provide additional detail regarding Defendant Angels Coding's role in the alleged scheme, the timing and mechanics of the challenged conduct, or other matters addressed in Defendant's Motion to Dismiss, without altering the substance of Plaintiffs' claims or prejudicing Defendant. *See Hart v. Bayer Corp.*, 199 F.3d 239, 248 n.6 (5th Cir. 2000).

128.    Courts routinely grant leave to amend in these circumstances, particularly where no discovery has occurred and dismissal with prejudice would be premature. *Stripling v. Jordan Prod. Co.*, 234 F.3d 863, 872–73 (5th Cir. 2000). Denial of leave is appropriate only when amendment would be futile or when plaintiffs have repeatedly failed to cure deficiencies after prior opportunities to amend. *Id.* Neither circumstance is present here.

129.    Accordingly, if the Court identifies any pleading deficiencies, Plaintiffs respectfully request leave to amend their Complaint consistent with the Court's guidance.

## IX.    CONCLUSION

130.    For the foregoing reasons, Defendant Angels Coding, LLC's Motion to Dismiss should be denied in all material respects. The Complaint plausibly alleges that Angels Coding knowingly participated in the execution and concealment of a fraudulent enterprise by receiving,

disguising, and laundering investor funds under false pretenses. Those allegations are supported by specific factual detail and satisfy the applicable pleading standards.

131.    Plaintiffs do not oppose dismissal of Count Four (Breach of Fiduciary Duty) as to Angels Coding only. In all other respects, Angels Coding's motion rests on doctrinal mischaracterizations and demands for proof that exceed what is required at the pleading stage. Plaintiffs are entitled to proceed to discovery on their claims for fraud, civil conspiracy, RICO conspiracy, violations of Section 10(b) and Rule 10b-5, violations of the Texas Securities Act, and unjust enrichment.

132.    Accordingly, Plaintiffs respectfully request that the Court dismiss Count Four as to Angels Coding, LLC, and deny the Motion to Dismiss in all other respects.

Respectfully submitted,

*/s/Kaitlyn M. Coker*
Kyle A. Coker
Texas Bar I.D. 24115353
kyle@farmercoker.com
Kaitlyn M. Coker
Texas Bar I.D. 24115264
kaitlyn@farmercoker.com

**FARMER & COKER, PLLC**
901 Main St., Ste. 5330
Dallas, TX 75202
Tel:    (832) 240-1047

**ATTORNEYS FOR PLAINTIFFS**

## CERTIFICATE OF SERVICE

I hereby certify that on January 29, 2026, a true and correct copy of the foregoing Plaintiffs' Response to Defendant Angels Coding, LLC's Motion to Dismiss was served on all counsel of record through the Court's CM/ECF system, which will effect service upon all attorneys registered with the CM/ECF system.

/s/*Kaitlyn M. Coker*
KAITLYN M. COKER