UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| CORBIN COWAN, DAWN COWAN, | § | |
| STRATEGIC EQUITY PARTNERS, LLC, | § | |
| TRIUMPH TECHNOLOGIES, LLC, | § | |
| CAB VENTURES, LLC, JEREMY ENGEL, | § | |
| SPARTAN MARKETING & INVESTMENTS, | § | |
| LLC, INTELLITECH SOLUTIONS, LLC, | § | |
| SOLIDA EQUITY PARTNERS, LLC, AND | § | |
| JOSH KIRK, | § | |
| | § | |
| *Plaintiffs*, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 4:25-cv-04476 |
| | § | |
| JAMES TYLER BOYD, | § | |
| MIKE BOGGS, PETER D. HATZIPETROS, | § | |
| THE EDEN ALLIANCE, LLC, AND | § | |
| ANGELS CODING, LLC, | § | |
| | § | |
| *Defendants*. | § | |

**MOTION TO COMPEL ARBITRATION AND TO STAY PROCEEDINGS BY**
**<u>DEFENDANTS MIKE BOGGS, PETER HATZIPETROS, AND ANGELS CODING, LLC</u>**

Defendants Mike Boggs, Peter D. Hatzipetros, and Angels Coding, LLC move this Court

to compel plaintiffs Corbin Cowan, Dawn Cowan, Strategic Equity Partners, LLC, Triumph

Technologies, LLC, Cab Ventures, LLC, Jeremy Engel, Spartan Marketing & Investments, LLC,

Intellitech Solutions, LLC, Solida Equity Partners, LLC, and Josh Kirk (collectively, "Plaintiffs")

to arbitrate any claims against them pursuant to the Federal Arbitration Act and to stay all litigation

until the conclusion of arbitration.

## TABLE OF CONTENTS

TABLE OF CITATIONS ........................................................................................... iii

SUMMARY ............................................................................................................... 1

NATURE AND STAGE OF PROCEEDING ............................................................ 2

STATEMENT OF ISSUES ....................................................................................... 3

FACTUAL BACKGROUND .................................................................................... 4

A.     The James Boyd "Scheme" ........................................................................... 4

B.     Node System User Agreements ..................................................................... 4

C.     Agreement To Arbitrate In The Node System User Agreements ................... 5

D.     Plaintiffs' Allegations Relating To The Non-Boyd Defendants' Products,
       Services, Or Relationship ............................................................................... 6

ARGUMENT ............................................................................................................. 6

I.     The FAA Applies To This Lawsuit. .............................................................. 7

II.    A Valid And Binding Arbitration Agreement Exists ..................................... 8

       A.     Plaintiffs Are Bound By The Arbitration Agreement ........................... 9

              1.     The Arbitration Agreement Binds Plaintiff Spartan Marketing &
                     Investment, LLC. ....................................................................... 9

              2.     The Arbitration Agreement Binds Plaintiff Jeremy Engel. ....... 11

              3.     The Arbitration Agreement Should Bind The Other Plaintiffs ... 12

       B.     The Non-Boyd Defendants Can Enforce The Arbitration Agreement. ... 15

              1.     Defendants Boggs And Hatzipetros Should Be Treated As
                     Signatories To the Arbitration Agreement ............................... 15

              2.     Defendant Angels Coding Can Enforce The Arbitration
                     Agreement. ................................................................................ 17

III.   The Arbitration Agreement Covers Plaintiffs' Claims. ................................ 20

IV.    The Lawsuit Should Be Stayed Pending Arbitration. ................................... 22

CONCLUSION ......................................................................................................... 22

## TABLE OF CITATIONS

**Cases**

*ABNL Ltd. v. Baker Hughes Process Sys.*,
   No. CV H-04-4662, 2005 WL 8164068 (S.D. Tex. May 16, 2005) ..........................................7

*Ace Amer. Ins. Co. v. Huntsman Corp.*,
   255 F.R.D. 179 (S.D. Tex. 2008) ..................................................................................12, 13

*Adam Techs. Int'l S.A. de C.V. v. Sutherland Glob. Servs., Inc.*,
   729 F.3d 443 (5th Cir. 2013) ........................................................................................22

*Alford v. Dean Witter Reynolds, Inc.*,
   975 F.2d 1161 (5th Cir. 1992) ......................................................................................22

*Am. Bankers Ins. Grp., Inc. v. Long*,
   453 F.3d 623 (4th Cir. 2006) .................................................................................10, 16

*Antonio Leonard TNT Productions, LLC v. Goossen-Tutor Promotions, LLC*,
   47 F. Supp.3d 500 (S.D. Tex. 2014) ......................................................................13, 21

*Arthur Andersen LLP v. Carlisle*,
   556 U.S. 624 (2009) ..........................................................................................8, 12, 14

*AT&T Techs., Inc. v. Commc'ns Workers of Am.*,
   475 U.S. 643 (1986) ......................................................................................... 20, 21

*Banc One Acceptance Corp. v. Hill*,
   367 F.3d 426 (5th Cir. 2004) .......................................................................................20

*Bellman v. i3Carbon, LLC*,
   563 Fed. Appx. 608 (10th Cir. 2014) ...........................................................................9

*Bridas S.A.P.I.C. v. Gov't of Turkenistan*,
   345 F.3d 347 (5th Cir. 2003) ............................................................................. passim

*Brown v. Pac. Life Ins. Co.*,
   462 F.3d 384 (5th Cir. 2006) .............................................................................16, 19, 20

*Circuit City Stores, Inc. v. Adams*,
   532 U.S. 105 (2001) ...................................................................................................8

*Citizens Bank v. Alafabco, Inc.*,
   539 U.S. 52 (2003) .....................................................................................................8

*Cordero Mining Co. v. U.S. Fid. & Guar. Ins. Co.*,
   67 P.3d 616 (Wyo. 2003) .................................................................................. 14, 15-16

*Coronado v. D.N. W. Houston, Inc.*,
No. H-13-2179, 2015 WL 5781375 (S.D. Tex. Sept. 30, 2015) ...................................7, 18, 20

*Dean Witter Reynolds, Inc. v. Byrd*,
470 U.S. 213 (1985) .....................................................................................................3, 7

*DIRECTV, Inc. v. Imburgia*,
577 U.S. 47 (2015).............................................................................................................8

*Doctors' Co. v. Insurance Corp. of Amer.*,
864 P.2d 1018 (Wyo. 1993)............................................................................................12

*Fedmet Corp. v. M/V Buyalyk*,
194 F.3d 674 (5th Cir. 1999) ..........................................................................................22

*Fleetwood Enters., Inc. v. Gaskamp*,
280 F.3d 1069 (5th Cir. 2002) .........................................................................................14

*Ford Motor Co. v. Ables*,
207 F. App'x 443 (5th Cir. 2006) ............................................................................. 18-19, 20

*Gilbert v. Donahoe*,
751 F.3d 303 (5th Cir. 2014) .............................................................................................7

*Gilmer v. Interstate/Johnson Lane Corp.*,
500 U.S. 20 (1991)........................................................................................................3, 8

*Green Tree Fin. Corp.- Alabama v. Randolph*,
531 U.S. 79 (2000)..........................................................................................................21

*Grigson v. Creative Artists Agency L.L.C.*,
201 F.3d 524 (5th Cir. 2000) ...........................................................................10, 12, 16, 18

*Growtech Partners v. Accenture LLP*,
118 F. Supp.3d 920 (S.D. Tex. 2015) ...............................................................................10

*Harvey v. Halliburton Energy Services, Inc.*,
No. 1:19-CV-0027-SWS, 2019 WL 12497729 (D. Wyo. Apr. 1, 2019).................................9

*Hays v. HCA Holdings, Inc.*,
838 F.3d 605 (5th Cir. 2016) ..................................................................... 13, 17-18, 19, 20

*Hot Springs Cnty. Sch. Dist. No. 1 v. Strube Const. Co.*,
715 P.2d 540 (Wyo. 1986)................................................................................................9

*Johnson v. SSC Sheridan Operating Co., LLC*,
No. 20-CV-30-SWS, 2020 WL 10356869 (D. Wyo. Sept. 2, 2020) ............................... 15-16

*JP Morgan Chase & Co. v. Conegie ex rel. Lee*,
    492 F.3d 596 (5th Cir. 2007) ...................................................................14

*Kindred Healthcare Operating, Inc. v. Boyd*,
    403 P.3d 1014 (Wyo. 2017) ................................................... 8-9, 10, 11

*Lenox MacLaren Surgical Corp. v. Medtronic, Inc.*,
    449 Fed. Appx. 704 (10th Cir. 2011) ..............................................17, 18

*Long v. Silver*,
    248 F.3d 309 (4th Cir. 2001) ...................................................................16

*McKee v. Home Buyers Warranty Corp.*,
    45 F.3d 981 (5th Cir. 1995) ......................................................................20

*Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*,
    473 U.S. 605 (1985)...............................................................................3, 21

*Moses H. Cone Memorial Hosp. v. Mercury Const.*,
    460 U.S. 1 (1983)................................................................................3, 7, 20

*Noble Drilling Servs., Inc. v. Certex USA, Inc.*,
    620 F.3d 469 (5th Cir. 2010) .....................................................................7

*Pennzoil Exploration & Prod. Co. v. Ramco Energy Ltd.*,
    139 F.3d 1061 (5th Cir. 1998) ..................................................................21

*Perry v. Thomas*,
    482 U.S. 483 (1987)................................................................................6-7

*Reeves v. Enterprise Products Partners, LP*,
    17 F.4th 1008 (10th Cir. 2021) ................................................................18

*Steelworkers v. Warrior & Gulf Navigation Co.*,
    363 U.S. 593 (1960)...................................................................................21

*Texaco Exploration and Prod. Co. v. Amclyde Engineered Prods. Co.*,
    243 F.3d 906 (5th Cir. 2001) .....................................................................3

*The Rice Co. (Suisse), S.A. v. Precious Flowers, Ltd.*,
    523 F.3d 528 (5th Cir. 2008) ....................................................................12

*Tittle v. Enron Corp.*,
    463 F.3d 410 (5th Cir. 2006) ..................................................................3, 7

*Wash. Mut. Fin. Grp., LLC v. Bailey*,
    364 F.3d 260 (5th Cir. 2004) .............................................................10, 16

*WaterVation PLLC v. Shamrock Envtl. Corp.*,
    No. 2:20-CV-00063-MLC, 2020 WL 3578053 (D. Wyo. June 30, 2020) ............................9

*Webb v. Investacorp, Inc.*,
    89 F.3d 252 (5th Cir. 1996) ........................................................................................3

*Wick v. Atl. Marine*,
    605 F.2d 166 (5th Cir. 1979) ......................................................................................7

*Wood v. PennTex Resources, L.P.*,
    458 F. Supp.2d 355 (S.D. Tex. 2006) ......................................................................13

**Statutes**

9 U.S.C. § 1 .................................................................................................................6

9 U.S.C. § 2 ...........................................................................................................3, 7, 8

9 U.S.C. § 3 ................................................................................................2, 3, 11, 12, 22

9 U.S.C. § 4 ..............................................................................................................2, 7

15 U.S.C. § 78j(b) .......................................................................................................8

18 U.S.C. § 1961 .........................................................................................................8

Wyo. Stat. § 1-36-103 ................................................................................................9

**Rules**

Fed. R. Civ. P. 12(b) ..................................................................................................2

Fed. R. Civ. P. 12(b)(1) .............................................................................................7

Fed. R. Civ. P. 12(b)(3) .............................................................................................7

## SUMMARY

This case involves an unsuccessful technology innovation to profit from incremental discrepancies across over 50 decentralized cryptocurrency exchanges, markets, and platforms. There are victims on both sides of the case caption.  Like Plaintiffs, defendants Mike Boggs, Peter D. Hatzipetros, and Angels Coding, LLC ("Angels Coding") (collectively, the "Non-Boyd Defendants") fell prey to defendant James Boyd, who Plaintiffs accurately allege "exercised control over the trading system's infrastructure" to "singlehandedly" deceive both contributors and earnest associates alike.  Compl. [Dkt. 1] ¶¶ 28, 59.  As Plaintiffs colorfully allege, Boyd "weaponized" the technological solution Boggs conceived, *id.* ¶¶ 59, 67(c), and now Boyd has skipped town to leave the Non-Boyd Defendants to clean up Boyd's mess.

What Plaintiffs only obliquely disclose to the Court in their initial pleading, however, is that the transactions in the Complaint were subject to written contracts.  *See id.* ¶ 46.  For example, in November 2024, plaintiff Spartan Marketing & Investments, LLC, *see id.* ¶ 6, executed a 25-page Node System User Agreement, which governed its use of the proprietary software algorithm and user account described in the Complaint before manipulation by Boyd.  *See* Affidavit of Peter Hatzipetros, dated February 20, 2026 ("Hatzipetros Aff."), ¶ 6 & Exhibit 1 thereto.  Plaintiff also reaffirmed the contract's terms six times by executing addenda on December 4, 2024, December 9, 2024, January 14, 2025, February 12, 2025, March 1, 2025, and March 2, 2025.  *See* Hatzipetros Aff. Exh. 1 at 26–37.  Countersignatory Mike Boggs performed his contractual obligations by establishing user accounts, providing "inception" deposit credentials, and presenting balance and transaction history in a platform.  Hatzipetros Aff. ¶ 13.  Unfortunately, the infrastructure provided in accordance with the contract was hijacked by Boyd.  Despite the fact that Boggs and Hatzipetros expressly disclosed the "substantial" risks involved in digital asset transactions and disclaimed any responsibility for Plaintiffs' financial outcome or the security of the system's infrastructure, *see*

Haztipetros Aff. Exh. 1 at 13–17, Plaintiffs filed this lawsuit maligning the Non-Boyd Defendants and trying to recover millions of dollars contributed pursuant to contracts like the Node System User Agreement.

Plaintiffs' claims are flawed and provably baseless. Plaintiffs have already dismissed their claims against one of the original Non-Boyd Defendants represented by undersigned counsel. As set forth in pending motions to dismiss, Plaintiffs' claims against Boggs, Hatzipetros, and Angels Coding also suffer from incurable legal and procedural flaws. Nonetheless, Plaintiffs have used the wrong forum to drag the Non-Boyd Defendants into their disagreement with Boyd. Even assuming Plaintiffs have stated viable claims against the Non-Boyd Defendants and that this Court has subject matter jurisdiction over attorney Peter Hatzipetros, which the Non-Boyd Defendants expressly deny, plaintiffs Spartan Marketing & Investments, LLC, Jeremy Engel, and others agreed that any disputes "arising out of or related to" the products and services described in the Complaint must be resolved by arbitration in accordance with the Federal Arbitration Act. All plaintiffs should be bound by this agreement because their claims rely on such "investment contracts" and because they affirmatively allege that they are beneficiaries of the written Node System agreements. *See, e.g.*, Compl. [Dkt. 1] ¶¶ 43–46, 67(d), 83(c), 98. Accordingly, this Court should grant specific performance of the attached agreements to arbitrate and stay litigation in this Court on all issues referred to arbitration. 9 U.S.C. §§ 3, 4.

## NATURE AND STAGE OF PROCEEDING

This lawsuit is in its earliest stages. Plaintiffs filed this lawsuit on September 19, 2025. *See* Dkt. 1. On December 4, 2025, each of the Non-Boyd Defendants filed a Motion to Dismiss under Federal Rule of Civil Procedure 12(b) as that defendant's first appearance. The motions expressly reserved the right to file the present motion to compel arbitration. The parties have not yet appeared for an Initial Conference.

## STATEMENT OF ISSUES

1. Whether the Court should compel arbitration of all claims against the Non-Boyd Defendants under the Federal Arbitration Act.

   **Standard of review:**  The Federal Arbitration Act ("FAA") dictates that "[a] written provision in . . . a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof, . . . shall be valid, irrevocable, and enforceable." 9 U.S.C. § 2.  The FAA embodies a strong federal policy in favor of arbitration.  *See Moses H. Cone Memorial Hosp. v. Mercury Const.*, 460 U.S. 1 (1983).  In weighing a motion to compel arbitration, the Court must first decide "whether the parties agreed to arbitrate the dispute in question." *Tittle v. Enron Corp.*, 463 F.3d 410, 418 (5th Cir. 2006) (quoting *Webb v. Investacorp, Inc.*, 89 F.3d 252, 258 (5th Cir. 1996)).  That determination is governed by a two-step inquiry: "(1) whether there is a valid agreement to arbitrate between the parties; and (2) whether the dispute in question falls within the scope of that arbitration agreement." *Id.* (quoting *Webb*, 89 F.3d at 258).  If the court finds that the parties have agreed to arbitrate the particular dispute, it "must determine if any legal constraints foreclose arbitration of those claims." *Id.*; *see also Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 605, 628 (1985).  If an arbitration agreement exists and the claims presented are within the scope of that agreement, the FAA "leaves no place for the exercise of discretion by the district court, but instead mandates that district courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985) (emphasis in original).

2. Whether the Court should stay litigation of the instant case until arbitration has been had in accordance with the applicable arbitration agreement under the Federal Arbitration Act.

   **Standard of review:**  The FAA provides for a stay of a court proceeding when an issue in the proceeding is referable to arbitration.  *See Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 24 (1991).  The Act provides in pertinent part, "If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration." 9 U.S.C. § 3.  "If the issues in a case are within the reach of that arbitration agreement, the district court has no discretion under section 3 to deny the stay." *Texaco Exploration and Prod. Co. v. Amclyde Engineered Prods. Co.*, 243 F.3d 906, 909 (5th Cir. 2001) (citation omitted).

## FACTUAL BACKGROUND

### A.    The James Boyd "Scheme"

Defendant Mike Boggs, a computer program designer based in Pennsylvania, Compl. [Dkt. 1] ¶ 12, designed an online trading concept and algorithm to (a) survey separate, decentralized cryptocurrency exchanges, markets, and platforms for incremental discrepancies in comparative currency value using Artificial Intelligence and then (b) execute arbitrage trades to capitalize on those disparities. *See id.* ¶ 26.  As an experienced programmer, Boyd brought implementation expertise to Boggs's concept.  Among other innovations, Boyd devised a proposed infrastructure to accept funds and convert them into blockchain-based "nodes," which enhanced security.  *See* Compl. [Dkt. 1] ¶ 23.  Accordingly, the Complaint accurately alleges that Mr. Boggs "turned over his code to Boyd."  *Id.* ¶ 29.

Unfortunately, the system did not work.  Boyd programmed an additional layer of infrastructure to (a) get access to the secure "wallets," (b) route funds through a system operated outside of the United States to anonymize the funds, and (c) give the appearance of operational returns by recycling and redistributing funds to others in a series of microtransactions.  *See id.* ¶¶ 28–33.  Boyd "singlehandedly" performed these operations, as he "exercised control over the trading system's infrastructure."  *Id.* ¶¶ 28, 59.

### B.    Node System User Agreements

The Non-Boyd Defendants steadfastly contend that they were not aware of Boyd's manipulations of Boggs's original concept in real time.  Consistent with that contention, Boggs engaged Hatzipetros to add legal formality to the payments and to protect all parties through written agreements prepared by an attorney.  *See* Compl. [Dkt. 1] ¶ 49; Hatzipetros Aff. ¶ 4.  For example, on November 23, 2024, plaintiff Spartan Marketing & Investments, LLC ("Spartan") executed a 25-page Node System User Agreement, which governed its use of the proprietary

4

software algorithm and user account described in the Complaint before manipulation by Boyd. *See* Hatzipetros Aff. ¶ 6 & Exh. 1.  The Spartan Node System User Agreement was "prepared by" defendant Hatzipetros, a practicing attorney licensed in New York and Pennsylvania.  *See* Compl. [Dkt. 1] ¶ 13; Hatzipetros Aff. ¶¶ 3, 5, 7.  Spartan reaffirmed the contract's terms six times by executing addenda between December 4, 2024, and March 2, 2025.  Hatzipetros Aff. Exh. 1 at 26–37.

Boggs and Hatzipetros entered into Node System User Agreements as a "standard operating procedure" when fund contributors were onboarded.  Hatzipetros Aff. ¶ 5.  These agreements contained substantially similar terms.  *Id.*  For example, plaintiff Jeremy Engel received, and was a designated signatory to, an identical Node System User Agreement dated November 21, 2024.  Hatzipetros Aff. ¶¶ 9–11 & Aff. Exh. 2 at 23.

## C.    Agreement To Arbitrate In The Node System User Agreements

The Node System User Agreement includes the following Dispute Resolution provision:

> Any dispute between you and us arising out of or relating to our products, services, this Agreement or our relationship as created by this Agreement (whether arising out of contract, tort, statute or any other manner) shall be settled in binding JAMS arbitration, in accordance with the Federal Arbitration Act under the JAMS Streamlined Arbitration Rules & Procedures.
>
> * * *
>
> The arbitrator shall resolve the dispute and is empowered with the exclusive authority to resolve any dispute relating to the scope, interpretation, applicability or enforceability of these terms or the formation of this Agreement, including the arbitrability of any dispute and any contention that all or any part of this Agreement is unconscionable, void or voidable. You agree that the arbitrator shall have the authority to order relief, and you agree to abide by all decisions and awards rendered in such a proceeding, which shall be final and conclusive.
>
> * * *

> For avoidance of doubt, you are agreeing to give up the ability to bring a lawsuit in court (except small claims discussed herein) . . . . This Section will survive any termination of your relationship with us.

Hatzipetros Aff. Exh. 1 at 21–22.

## D. Plaintiffs' Allegations Relating To The Non-Boyd Defendants' Products, Services, Or Relationship

The Complaint asserts eleven causes of action against "Defendants" related to the Boyd scheme. Although none of the counts is for breach of contract *per se*, Plaintiffs' allegations and counts expressly refer to arrangements like the Spartan and Engel Node System User Agreements, including at least one written contract. *See, e.g.*, Compl. [Dkt. 1] ¶ 46. Plaintiffs allege that the Non-Boyd Defendants "assisted" Boyd by "structuring, registering, and maintaining shell entities and legal vehicles" used to "hold investor funds." *See id.* ¶¶ 13, 46, 59, 76(f), 89(d), 93(e), 100, 108(b)). The "legal vehicles" were documented through "investment contracts" like the Node System User Agreement. *See id.* ¶¶ 61, 67(d), 83(c), 98, 99(c), 108(e). Indeed, Count Nine (violation of U.S. Securities Exchange Act Section 10(b)) and Count Ten (violation of the Texas Securities Act) are predicated on the allegation that non-Boyd defendants Boggs, Hatzipetros, and Angels Coding entered into misleading "investment contracts" with "Plaintiffs" by "use of the means and instrumentalities of interstate commerce." *Id.* at 25–28. These "legal vehicles" were allegedly established to provide an "institutional[]"—as opposed to Defendant-controlled—operation of the arbitrage system. *Id.* ¶ 46. The Complaint acknowledges that contractual work product had "an appearance of legitimacy" to Plaintiffs throughout the system's purported operation. *Id.* ¶¶ 59, 66(c).

## **ARGUMENT**

The Federal Arbitration Act, 9 U.S.C. §§ 1, *et. seq.* ("FAA"), "create[s] a body of federal substantive law of arbitrability," which is "enforceable in both state and federal courts." *Perry v.*

*Thomas*, 482 U.S. 483, 489 (1987) (citation omitted).  The FAA "is a congressional declaration of a liberal federal policy favoring arbitration." *Moses H. Cone Mem. Hosp.*, 460 U.S. at 24; *see also Byrd*, 470 U.S. at 221 (recognizing policy requires courts to "rigorously enforce agreements to arbitrate").

The FAA requires the Court to compel a dispute to arbitration when (1) a valid agreement to arbitrate exists binding the parties and (2) the dispute in question falls within the scope of that arbitration agreement.  *See* 9 U.S.C. §§ 2, 4; *Tittle*, 463 F.3d at 418.  If both tests are met, the FAA "leaves no place for the court to exercise discretion." *Coronado v. D.N. W. Houston, Inc.*, No. H-13-2179, 2015 WL 5781375, at *3 (S.D. Tex. Sept. 30, 2015) (quoting *Byrd*, 470 U.S. at 218).  If the Order resolves all of the claims in a lawsuit, then the entire action should be dismissed under Federal Rule of Civil Procedure 12(b)(1) or 12(b)(3).  *See Gilbert v. Donahoe*, 751 F.3d 303, 306 (5th Cir. 2014); *Noble Drilling Servs., Inc. v. Certex USA, Inc.*, 620 F.3d 469, 472 n.3 (5th Cir. 2010).  If only some claims in a lawsuit are arbitrable, then a stay of proceedings is required under Section 3 of the FAA.  *See Wick v. Atl. Marine*, 605 F.2d 166, 168 (5th Cir. 1979).

This Court should compel all Plaintiffs to arbitrate all claims against the Non-Boyd Defendants, and dismiss or stay this lawsuit, because the FAA applies to this dispute and because the facts and pleadings in the Complaint support both steps of the FAA arbitration analysis.

## I.    The FAA Applies To This Lawsuit.

The Court should apply the FAA to Plaintiffs' claims and this Motion on two independent grounds.  First, if an agreement requires arbitration under the FAA, a party can be compelled to arbitrate under the FAA regardless of whether the transaction involved or affected interstate commerce.  *See ABNL Ltd. v. Baker Hughes Process Sys.*, No. CV H-04-4662, 2005 WL 8164068, at *5 (S.D. Tex. May 16, 2005).  Here, the Node System User Agreement expressly provides that "[a]ny dispute" arising out of or related to the agreement, the parties' relationship, or the products

and/or services related to the agreement "shall be settled . . . in accordance with the Federal Arbitration Act . . . ." Hatzipetros Aff. Exh. 1 at 21.

Second, even if the agreement did not expressly refer to the statute requiring arbitration of the parties' disputes, the FAA applies to transactions involving interstate commerce. *See Circuit City Stores, Inc. v. Adams*, 532 U.S. 105, 113 (2001). Courts have held that the notion of "interstate commerce" in the context of the FAA extends arbitrability to the "full reach of the Commerce Clause," reaching more transactions than those actually "within the flow of interstate commerce." *Citizens Bank v. Alafabco, Inc.*, 539 U.S. 52, 56 (2003). Securities trading has been held to have a substantial effect on interstate commerce for the purpose of the FAA. *See, e.g.*, *id.* at 56–57. Indeed, the Complaint itself alleges that Defendants' complained-of conduct took place "interstate." *E.g.*, Compl. [Dkt. 1] ¶¶61, 92 ("by use of the means and instrumentalities of interstate commerce"). By asserting claims arising under Section 10(b) of the Securities Exchange Act and RICO, 18 U.S.C. §§ 1961 *et seq.*, Plaintiffs have further alleged that the complained-of conduct involves interstate commerce. *See Gilmer*, 500 U.S. at 26 (citing cases applying the FAA to such causes of action). Accordingly, the interstate commerce requirement of the FAA is clearly and easily satisfied here. Plaintiffs' claims are governed by the FAA, 9 U.S.C. § 2.

## II.    A Valid And Binding Arbitration Agreement Exists.

While the FAA governs enforcement of arbitration agreements, state law generally governs whether an enforceable contract or agreement to arbitrate exists in the first place. *Arthur Andersen LLP v. Carlisle*, 556 U.S. 624, 630 (2009). The Node System User Agreement provides that it is governed by Wyoming law in several important respects.[1] Hatzipetros Aff. Exh. 1 at 21–22.

---

[1]    The FAA "allows parties to an arbitration contract considerable latitude to choose what law governs some or all of its provisions." *DIRECTV, Inc. v. Imburgia*, 577 U.S. 47, 53–54 (2015). Section IX of the Node System User Agreement provides that (a) the arbitrator presiding over a dispute must apply Wyoming law, (b) any arbitration decision may be enforced in a Wyoming

Under Wyoming law, a valid contract exists when evidence is present of an offer, acceptance, and consideration. *Kindred Healthcare*, 403 P.3d at 1024–25. A valid arbitration agreement must be in writing, but it need not be signed. WYO. STAT. § 1-36-103; *Bellman v. i3Carbon, LLC,* 563 Fed. Appx. 608, 614 (10th Cir. 2014). Where, as is the case with respect to plaintiff Spartan, the parties have signed a written contract containing an arbitration agreement, courts have held that the signatures establish offer and acceptance. *See, e.g.*, *WaterVation PLLC v. Shamrock Envtl. Corp.*, No. 2:20-CV-00063-MLC, 2020 WL 3578053, at *6 (D. Wyo. June 30, 2020). Where, as is the case with respect to plaintiff Engel, the parties are listed on an unsigned written contract containing an arbitration agreement, courts have held that offer and acceptance can be established by receipt of the contract and performance of its terms. *See, e.g.*, *Harvey v. Halliburton Energy Services, Inc.*, No. 1:19-CV-0027-SWS, 2019 WL 12497729, at **2, 4 (D. Wyo. Apr. 1, 2019). Mutual agreements to arbitrate and forgo resolution of disputes by a court of law also are sufficient consideration to form a valid contract. *Kindred Healthcare*, 403 P.3d at 1025. The conduct of the parties in performing or enforcing the contract in a dispute can establish such mutual assent. *See Kindred Healthcare*, 403 P.3d at 1024–25; *Hot Springs Cnty. Sch. Dist. No. 1 v. Strube Const. Co.*, 715 P.2d 540, 545 (Wyo. 1986); *WaterVation*, 2020 WL 3578053, at *6.

### A. Plaintiffs Are Bound By The Arbitration Agreement.

#### 1. The Arbitration Agreement Binds Plaintiff Spartan Marketing & Investment, LLC.

The Node System User Agreement attached as Exhibit 1 to the Hatzipetros Affidavit establishes each of the elements of a valid agreement to arbitrate with respect to Spartan under

---

court, and (c) any tribunal considering "the invalidity or unenforceability of a provision" of the agreement must "be located in Wyoming, applying Wyoming law." Hatzipetros Aff. Exh. 1 at 21–22. These provisions likely demonstrate an intent by the parties to rely on Wyoming state law or the federal law in the Tenth Circuit to govern the interpretation and validity of the agreement. *See Kindred Healthcare Operating, Inc. v. Boyd*, 403 P.3d 1014, 1018 (Wyo. 2017).

Wyoming law. The Node System User Agreement is in writing, it defines the "User" party as Spartan Marketing & Investment, LLC, and it was signed by managers on behalf of Spartan on or around November 23, 2024. *See* Hatzipetros Aff. Exh. 1 at 4, 23. Under Wyoming law, these facts indicate that Spartan offered and accepted the terms contained in the agreement. Spartan also expressly agreed "to give up the ability to bring a lawsuit in court" in the Node System User Agreement, *see* Hatzipetros Aff. Exh. 1 at 22, which constitutes consideration under Wyoming law. *See Kindred Healthcare*, 403 P.3d at 1025. Spartan's mutual assent is established by the repeated addenda and renewals by Spartan of the Node System User Agreement on December 4, 2024, December 9, 2024, January 14, 2025, February 12, 2025, March 1, 2025, and March 2, 2025. Hatzipetros Aff. Exh. 1 at 26–37. Accordingly, Spartan's obligation to arbitrate a dispute within the scope of the arbitration agreement is straightforward.

Spartan is bound by the arbitration agreement it signed even if the party seeking to arbitrate is a nonsignatory. Under the theory of equitable estoppel, a signatory plaintiff "cannot, on the one hand, seek to hold [a] non-signatory liable pursuant to duties imposed by the agreement, which contains an arbitration provision, but, on the other hand, deny arbitration's applicability because the defendant is a non-signatory." *Grigson v. Creative Artists Agency L.L.C.*, 201 F.3d 524, 528 (5th Cir. 2000); *see also Am. Bankers Ins. Grp., Inc. v. Long*, 453 F.3d 623, 727 (4th Cir. 2006) ("[I]t is unfair for a party to rely on a contract when it works to its advantage, and repudiate it when it works to its disadvantage."). As this Court has explained, equitable estoppel prevents a signatory like Spartan from "having it both ways." *Growtech Partners v. Accenture LLP*, 118 F. Supp.3d 920, 931 (S.D. Tex. 2015) (quoting *Wash. Mut. Fin. Grp., LLC v. Bailey*, 364 F.3d 260, 268 (5th Cir. 2004)). Whether *Grigson* equitable estoppel applies depends on whether the issues that would be resolved in arbitration are "intertwined with the agreement that the estopped party

has signed." *Bridas S.A.P.I.C. v. Gov't of Turkenistan*, 345 F.3d 347, 361 (5th Cir. 2003) (emphasis removed). Here, Plaintiffs, including Spartan, assert claims for securities fraud, which necessarily depend and rely on the existence and performance of the Node System User Agreement. *See* Compl. [Dkt. 1] ¶¶ 91–102 & 108(e) ("Defendants offered and sold unregistered investment contracts"). Accordingly, at a minimum, the Court should compel Spartan to arbitrate its claims. 9 U.S.C. § 3.

### 2.     The Arbitration Agreement Binds Plaintiff Jeremy Engel.

The Node System User Agreement attached as Exhibit 2 to the Hatzipetros Affidavit establishes each of the elements of a valid agreement to arbitrate with respect to Jeremy Engel under Wyoming law. The Node System User Agreement is in writing. *See* Hatzipetros Aff. Exh. 2. Engel received the Node System User Agreement. *See id.* ¶¶ 9–11. And Engel performed by depositing funds into an "Inception Wallet" established pursuant to the Node System User Agreement after he received the agreement. *See id.* ¶ 10. Under Wyoming law, these facts indicate that Engel offered and accepted the terms contained in the agreement. *See Kindred Healthcare*, 403 P.3d at 1024–25. Engel also expressly agreed "to give up the ability to bring a lawsuit in court" in the Node System User Agreement, *see* Hatzipetros Aff. Exh. 2 at 22, which constitutes consideration under Wyoming law. *See Kindred Healthcare*, 403 P.3d at 1025.

The fact that the Node System User Agreement attached as Exhibit 2 to the Hatzipetros Affidavit defines the "User" party as "The Targeted Cash Flow Fund" instead of Engel personally does not diminish the force of the arbitration agreement with respect to Engel. *See* Hatzipetros Aff. Exh. 2 at 4, 23. Under Wyoming law, "[a]n agent has express actual authority to bind the principal when the principal, orally or in writing, specifically grants the agent the power to bind the principal." *Kindred Healthcare*, 403 F.3d at 1019. The Node System User Agreement dispenses with the authority question altogether by designating Engel himself as the "*Principal*"

11

of "The Targeted Cash Flow Fund." *See* Hatzipetros Aff. ¶¶ 9, 11.  This word should be afforded

its plain meaning under Wyoming law.  *See Doctors' Co. v. Insurance Corp. of Amer.*, 864 P.2d

1018, 1023 (Wyo. 1993).  Engel and The Targeted Cash Flow Fund were also alter egos as a matter

of fact, *see* Hatzipetros Aff. ¶11, which is a well-settled basis to find a party who may otherwise

be viewed to be a nonsignatory.  *See Arthur Anderson*, 556 U.S. at 631.  Accordingly, Engel is

obligated to arbitrate a dispute within the scope of the arbitration agreement.

As with Spartan, Engel is bound by his arbitration agreement even if the party seeking to

arbitrate is a nonsignatory under the theory of equitable estoppel.  *See Grigson*, 201 F.3d at 528.

Here again, Plaintiffs, including Jeremy Engel, assert claims for securities fraud, which necessarily

depend and rely on the existence and performance of the Node System User Agreement.  *See*

Compl. [Dkt. 1] ¶¶ 91–102 & 108(e) ("Defendants offered and sold unregistered investment

contracts").  The Court should compel Engel to arbitrate its claims.  9 U.S.C. § 3.

### 3.    The Arbitration Agreement Should Bind The Other Plaintiffs.

Parties who are not signatories to an arbitration agreement may be required to arbitrate

under certain circumstances.  *See The Rice Co. (Suisse), S.A. v. Precious Flowers, Ltd.*, 523 F.3d

528, 536–37 (5th Cir. 2008) (discussing six theories for binding a nonsignatory to an arbitration

agreement); *Bridas*, 345 F.3d at 356 (5th Cir. 2003) (same); *Ace Amer. Ins. Co. v. Huntsman Corp.*,

255 F.R.D. 179, 208 (S.D. Tex. 2008) (denying motion to dismiss action to compel arbitration

under direct-benefits estoppel analysis).  Although the Non-Boyd Defendants are not introducing

documentary evidence at this time that plaintiffs other than Spartan and Engel entered into Node

System User Agreements, those other plaintiffs should still be required to arbitrate pursuant to

those agreements under two legal doctrines.

First, plaintiffs other than Spartan and Engel are also bound by the agreement to arbitrate

in the Node System User Agreement under the direct benefits estoppel theory.  "Direct benefits

estoppel applies when a nonsignatory knowingly exploits the agreement containing the arbitration clause." *Bridas*, 345 F.3d at 361–62 (quotations omitted).[2]  A clear form of such exploitation is when "the nonsignatory [brings] suit . . . premised in part upon the agreement."  *Id.* at 362 (citations omitted); *see also Antonio Leonard TNT Productions, LLC v. Goossen-Tutor Promotions, LLC*, 47 F. Supp.3d 500, 519 (S.D. Tex. 2014) (applying direct benefits estoppel to nonsignatory plaintiff who was "seeking" benefit under an agreement with an arbitration requirement); *Wood v. PennTex Resources, L.P.*, 458 F. Supp.2d 355, 371 (S.D. Tex. 2006) (identifying a "key[]" in analyzing direct benefits estoppel as "whether the nonsignatory demanded . . . benefits under the contract containing the arbitration clause . . . by suing the signatory under the contract").  Whether direct benefits estoppel applies depends on "the substance of the claim," rather than "artful pleading" to escape a direct reference to an arbitration agreement. *Hays v. HCA Holdings, Inc.*, 838 F.3d 605, 609 (5th Cir. 2016) (affirming order compelling arbitration of tortious interference claim, the "viability" of which depended on the existence of a contract with arbitration language).

Here, all Plaintiffs, including plaintiffs other than Spartan and Engel, assert claims for securities fraud, which necessarily depend and rely on the existence and performance of the Node System User Agreement.  *See* Compl. [Dkt. 1] ¶¶ 91–102 & 108(e) ("Defendants offered and sold unregistered investment contracts").  Moreover, Plaintiffs' other claims rely on the fact that formal vehicles like the Node System User Agreement were in place.  For example:

- Plaintiffs expressly reference "contracts with investors" in Count Two (*id.* ¶ 67(d));

---

[2]    As this Court has previously explained, it is not clear whether state or federal law applies to a direct-benefits estoppel analysis.  *Huntsman*, 255 F.R.D. at 201–02 (examining the issue of direct benefits estoppel under federal law).  The argument above applies federal law as this Court did in *Huntsman*.

- As a component of an alleged RICO conspiracy (Count Two), Plaintiffs complain about "Each Defendant" "drafting and circulating" information in June 2024 (*id.* ¶¶66, 67(a));

- As a component of an alleged RICO conspiracy (Count Two), Plaintiffs complain about "Each Defendant" "[r]etaining Peter Hatzipetros to structure and register shell entities" in Summer 2024 (*id.* ¶¶66, 67(c)); and

- Plaintiffs rely on Defendants' provision of "contracts" in Count Six (*id.* ¶83(c) (Defendants "provided contracts representing that funds were to be pooled and traded through legitimate systems.").

Second, although parties to a contract are "presumed to be contracting for themselves only," this presumption may be overcome if an intent to make someone a third-party beneficiary is "clearly written or evidenced in the contract." *Bridas*, 345 F.3d at 362 (quoting *Fleetwood Enters., Inc. v. Gaskamp*, 280 F.3d 1069, 1075–76 (5th Cir. 2002)). When an agreement specifically refers to a nonsignatory as a recipient of contract benefits, that party can be bound by an agreement to arbitration within the contract. *See JP Morgan Chase & Co. v. Conegie ex rel. Lee*, 492 F.3d 596, 600 (5th Cir. 2007). But a party does not need to be expressly named to be considered a beneficiary of an agreement containing an arbitration obligation. *See Arthur Andersen*, 556 U.S. at 631; *Cordero Mining Co. v. U.S. Fid. & Guar. Ins. Co.*, 67 P.3d 616, 623 (Wyo. 2003). In this case, a core element of Plaintiffs' theory of liability is that Defendants' use of contracts like the Node System User Agreement "pooled" funds redistributed by Boyd as putative profit distributions. *See, e.g.*, Compl. [Dkt. 1] ¶ 83(c). The Node System User Agreement specifically refers to this network. *See* Hatzipetros Aff. Exh. 1 at 4 ("Your User Account is a comprehensive digital asset management account that integrates seamlessly into the Node System."), 5 ("User Account is designed to be fully integrated with the Platform."). Under either of these theories, it is therefore equitable for the Court to find all Plaintiffs are estopped from avoiding the arbitration obligations in the contracts underpinning Plaintiffs' claims.

B.    **The Non-Boyd Defendants Can Enforce The Arbitration Agreement.**

1.    **Defendants Boggs And Hatzipetros Should Be Treated As Signatories To The Arbitration Agreement.**

Technically, various Plaintiffs' counterparty to the Node System User Agreement is "QuantumArc International LLC." *See* Hatzipetros Aff. Exh. 1 at 4, 23. Boggs and Hatzipetros signed the Node System User Agreement on behalf of this entity. *See id.* at 23. Boggs and Hatzipetros are competent to enforce the Node System User Agreement despite this structure for two reasons.

First, as a matter of reasonable contract interpretation, Boggs and Hatzipetros are the actual, logical signatories to the Node System User Agreements. This is evidenced by the repeated textual references to QuantumArc in the plural, with the pronouns "we" and "us" used at least twenty times throughout. *See, e.g.*, Hatzipetros Aff. Exh. 1 at 2 ("Through a process we have called Arbitrage Capture Opportunity . . ."), ¶ 7.1 ("We grant you a limited, nonexclusive, nontransferable license"), ¶ 8.9 ("We may assign rights or delegate duties under this User Agreement in our sole discretion."). Indeed, the Arbitration Agreement itself uses the pronoun "us" in describing its application: "Any dispute between you and *us* arising out of or relating to *our* products, services, this Agreement or *our* relationship as created by this Agreement . . . shall be settled in binding JAMS arbitration." *Id.* at 21 (emphasis added). The Node System User Agreement also broadens the parties' understanding of "QuantumArc" with respect to the contract's rights and obligations. *See, e.g., id.* ¶ 8.1 (applying to "QuantumArc and its associates, affiliates, owners, officers, directors, employees, agents, and representatives are not investment advisers . . ."), ¶ 8.5.4 (similar language). Courts consider structural elements such as the language above to determine which parties were intended to enter into a contract. *See Cordero*, 67 P.3d at 621; *Johnson v. SSC Sheridan Operating Co., LLC*, No. 20-CV-30-SWS, 2020 WL 10356869, at

*3 (D. Wyo. Sept. 2, 2020) (non-signatory defendant could enforce arbitration agreement because it could be "reasonably construed" as a company affiliated with signatory); *see also Long v. Silver*, 248 F.3d 309, 318 (4th Cir. 2001) (holding that the non-signatory shareholders of a subsidiary could "compel arbitration against [the plaintiff] with respect to the issues arising under and relating to" an agreement upon which the plaintiff sought to claim multiple benefits).  The use of plural pronouns was deliberate and in keeping with Hatzipetros's practice of referring to contracting parties within a corporation as well as the corporation itself.  *See* Hatzipetros Aff. ¶7.

Second, even if the Court does not consider Boggs and Hatzipetros to be functional signatories (despite the presence of their respective signatures), they are also entitled to enforce the arbitration provisions in the Node System User Agreements as non-signatories under the theory of equitable estoppel.  *See Brown v. Pac. Life Ins. Co.*, 462 F.3d 384, 398 (5th Cir. 2006) ("Although arbitration is a matter of contract that generally binds only signatories, a party to an arbitration agreement may be equitably estopped from litigating its claims against non-parties in court and may be ordered to arbitration." (internal citations omitted)).  As discussed above, a plaintiff "cannot, on the one hand, seek to hold [a] non-signatory liable pursuant to duties imposed by [an] agreement, which contains an arbitration provision, but, on the other hand, deny arbitration's applicability because the defendant is a non-signatory."  *Grigson*, 201 F.3d at 528; *see also Wash. Mut. Fin. Group*, 364 F.3d at 263 (stating that a plaintiff should not be able to claim the benefit of a contract and simultaneously avoid its burdens); *Am. Bankers Ins. Grp.*, 453 F.3d at 727 ("[I]t is unfair for a party to rely on a contract when it works to its advantage, and repudiate it when it works to its disadvantage.").  A question central to applying equitable estoppel under *Grigson* is whether the issues that would be resolved in arbitration are "intertwined with the agreement that the estopped party has signed."  *Bridas*, 345 F.3d at 361 (emphasis removed).

16

Here, unspecified "investment contracts" like the Node System User Agreement form the legal basis for at least two claims in Plaintiffs' Complaint. Compl. [Dkt. 1] at 25–28. These claims are "the *sine qua non* of an appropriate situation for applying equitable estoppel." *Lenox MacLaren Surgical Corp. v. Medtronic, Inc.*, 449 Fed. Appx. 704, 710 (10th Cir. 2011) (internal quotations and citation omitted). Plaintiffs expressly reference "contracts" utilized by Plaintiffs and Defendants in other counts as well. *See* Compl. [Dkt. 1] ¶ 67(d) (Defendants entered into a "contract with investors")), ¶83(c) (Defendants "provided contracts representing that funds were to be pooled and traded through legitimate systems.")). It would be inequitable to allow Plaintiffs to resist the invocation of their arbitration obligations by Boggs and Hatzipetros at the same time Plaintiffs seek to hold Boggs and Hatzipetros accountable for the same agreements.

## 2. Defendant Angels Coding Can Enforce The Arbitration Agreement.

Plaintiffs allege that Angels Coding is a "vehicle" used by "Defendants" to facilitate the transfer of Plaintiffs' funds with the same registered agent and physical address as defendant Boggs. Compl. [Dkt. 1] ¶15. Angels Coding is not mentioned by name in the Node System User Agreement. Nonetheless, the Court should find that Angels Coding may compel Plaintiffs to arbitrate on three grounds.

First, the doctrine of intertwined claims estoppel works to compel arbitration regarding a nonsignatory defendant when (i) that defendant has a "close relationship" with a defendant subject to the arbitration agreement and (ii) the claims are "intimately founded in and intertwined with the contract obligations." *Hays*, 838 F.3d at 610 (quotations and citation omitted). In *Hays*, the Fifth Circuit granted a motion to compel arbitration filed by a nonsignatory defendant based on findings that the plaintiff treated signatory and nonsignatory defendants "as a single unit in his pleadings," "rais[ed] virtually indistinguishable factual allegations" against all defendants, "regarded the

17

parties as closely related by failing to differentiate" defendants in pleaded factual allegations, and treated defendants "as if they were interchangeable." *Id.* at 612–13.

In the Complaint here, Plaintiffs lump Angels Coding in with Boggs and Hatzipetros without distinction. For example:

- Plaintiffs vaguely allege that five defendants, including two limited liability companies, "made untrue statements of material fact and omitted to state material facts necessary to make the statements made not misleading" (*id.* ¶ 92);

- Plaintiffs complain that "Defendants . . . [o]mitted material facts, including . . . the role of Hatzipetros in creating shell entities . . ." (*id.* ¶ 93(e)); and

- There were ten plaintiffs and six defendants when Plaintiffs filed their Complaint (*see id* at 3–5), yet Plaintiffs fail to provide any clarity regarding which of the "Defendants" made alleged misrepresentations to which plaintiff, including when they were made, where they were made, how they were made, and why they are misleading (*see id.* ¶ 99).

Second, the doctrine of concerted misconduct estoppel provides another basis for compelling Plaintiffs to arbitrate all of their claims. Under that theory, nonsignatory parties may compel arbitration "when a signatory plaintiffs' allegations of wrongdoing against the nonsignatory parties are intertwined with the allegations against signatory defendants." *Coronado*, 2015 WL 5781375, at *6 (citing *Grigson*, 201 F.3d at 526). Although this Court clarified that the availability of concerted misconduct estoppel is a question of state law instead of federal law after the Supreme Court's decision in *Arthur Anderson*, *id.*, the Tenth Circuit adopted the theory in *Reeves v. Enterprise Products Partners, LP*, 17 F.4th 1008, 1010 (10th Cir. 2021). The Tenth Circuit also has indicated that allegations of collusion will support estoppel when "the claims against the nonsignatory are intimately founded in and intertwined with the obligations imposed by the contract containing the arbitration clause." *Lenox*, 449 Fed. Appx. at 710.

The Fifth Circuit has repeatedly held that non-signatories can compel arbitration under the theory of concerted misconduct estoppel. For example, in *Ford Motor Co. v. Ables*, automobile

buyers filed suit against a dealership and automobile manufacturer, alleging claims for, *inter alia,* fraudulent inducement, fraud, breach of implied covenant of good faith and fair dealing, negligence, and gross negligence.  207 F. App'x 443, 445 (5th Cir. 2006).  The complaint alleged that the dealership and automobile manufacturer "conspired between themselves and with others to unlawfully injure Plaintiffs" and that their "scheme was calculated to and in fact did cause Plaintiffs to [act] . . . based on false and fraudulent representations."  *Id.* at 448.  The buyers and dealership had a contract with an arbitration clause.  The automobile manufacturer was not a signatory to the contract, but it moved to compel arbitration.  *Id.*  The Fifth Circuit held that the buyers alleged substantially interdependent and concerted misconduct by the automobile manufacturer (a non-signatory) and the dealership (a signatory), thus allowing the automobile manufacturer to compel arbitration as a non-signatory to the agreement.  *See also Brown*, 462 F.3d at 398–99 (compelling arbitration by nonsignatory where "the complaint asserts concerted misconduct by all parties").

Here, Plaintiffs allege that Boggs, Hatzipetros, and Angels Coding engaged in misconduct as a collusive unit.  For example:

- As part of their RICO claim (Count One), Plaintiffs allege that Hatzipetros, "acting as [Mr.] Boggs's attorney and advisor," assisted the alleged enterprise in "structur[ing] and maintain[ing]" an unspecified number of "corporate entities" on undisclosed dates (*id.* ¶¶ 57, 59);

- As a component of an alleged RICO conspiracy (Count Two), Plaintiffs allege, "Each Defendant understood the scope of the unlawful scheme and joined in it to achieve its fraudulent purpose" (*id.* ¶ 66); and

- As a component of an alleged RICO conspiracy (Count Two), Plaintiffs complain about "Each Defendant" "[r]etaining Peter Hatzipetros to structure and register shell entities" in Summer 2024 (*id.* ¶¶ 66, 67(c)).

Finally, the Fifth Circuit has reiterated that, "as a policy matter, . . . any doubt as to whether a controversy is arbitrable should be resolved in favor of arbitration."  *Hays*, 838 F.3d at 612

(quoting *McKee v. Home Buyers Warranty Corp.*, 45 F.3d 981, 985 (5th Cir. 1995)).  When faced with a question of first impression about the applicability of intertwined claims estoppel in this Circuit, the *Hays* court explained, "[Q]uestions of arbitrability must be addressed with a healthy regard for the federal policy favoring arbitration."  *Id.* (quoting *Moses H. Cone Mem'l Hosp.*, 460 U.S. at 24).  When considered along with the interdependent and concerted misconduct alleged by Plaintiff against all Non-Boyd Defendants, these policy considerations should be sufficient to estop Plaintiffs from litigating their claims in a court of law.  Accordingly, it is proper for this Court to require arbitration between all Plaintiffs and all Non-Boyd Defendants.  *See Ford*, 207 F. App'x at 448; *Brown*, 462 F.3d at 398–99.

## III.    The Arbitration Agreement Covers Plaintiffs' Claims.

Once the Court determines there is a valid agreement to arbitrate, the Court then applies federal law to decide whether the parties' dispute is within the scope of the agreement.  *Coronado*, 2015 WL 5781375, at *4.  A strong federal policy favoring the enforcement of the arbitration agreements applies to this inquiry, so all ambiguities must be resolved in favor of arbitration.  *See Banc One Acceptance Corp. v. Hill*, 367 F.3d 426, 429 (5th Cir. 2004).  As the Supreme Court has stated:  "An order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute.  Doubts should be resolved in favor of coverage."  *AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 650 (1986).

The arbitration clause in the Node System User Agreement is broad.  The Arbitration Agreement applies to "[a]ny dispute . . . arising out of or relating to our products, services, this Agreement or our relationship as created by this Agreement (whether arising out of contract, tort, statute or any other manner)."  Hatzipetros Aff. Exh. 1 at 21.  The words "relating to" identify the Node System User Agreement provision as a "broad" arbitration clause, as opposed to a "narrow"

arbitration clause. *See Antonio Leonard*, 47 F. Supp.3d at 520 (quoting *Pennzoil Exploration & Prod. Co. v. Ramco Energy Ltd.*, 139 F.3d 1061, 1067 (5th Cir. 1998)). A "broad" arbitration clause is "not limited to claims that literally 'arise under the contract,' but rather embrace[s] all disputes between the parties having a significant relationship to the contract regardless of the label attached to the dispute." *Pennzoil Exploration*, 139 F.3d at 1067. Put another way, if the allegations underlying the claims even "touch matters" covered by the agreement, those claims are within the scope of the arbitration clause. *See Mitsubishi Motors*, 473 U.S. at 624 n.13.

"[T]he party resisting arbitration bears the burden of proving that the claims at issue are unsuitable for arbitration." *Green Tree Fin. Corp.- Alabama v. Randolph*, 531 U.S. 79, 91 (2000). "[O]nly the most forceful evidence of a purpose to exclude [a dispute] from arbitration can prevail." *AT&T Techs.*, 475 U.S. at 650 (citing *Steelworkers v. Warrior & Gulf Navigation Co.*, 363 U.S. 593, 584-85 (1960)). Plaintiffs cannot meet this burden here. Allegations in the Complaint "relating to" the "products" and "services" provided by the Non-Boyd Defendants include:

- As part of their RICO claim (Count One), Plaintiffs allege that Hatzipetros "structured and maintained" an unspecified number of "corporate entities" on undisclosed dates (*id.* ¶¶ 57, 59);

- As a component of an alleged RICO conspiracy (Count Two), Plaintiffs complain about "Each Defendant" "[r]etaining Peter Hatzipetros to structure and register shell entities" in Summer 2024 (*id.* ¶¶ 66, 67(c)); and

- As part of their breach of fiduciary duty claim (Count Four), Plaintiffs complain about "Defendants" "soliciting and receiving digital assets from Plaintiff for the purpose of trading on their behalf (*id.* ¶ 75).

Allegations in the Complaint "relating to" the Node System User Agreement include paragraphs 67(d) (Defendants entered into "contract[s] with investors"), 83(c) (Defendants "provided contracts representing that funds were to be pooled and traded through legitimate systems."), and 108(e) ("Defendants offered and sold unregistered investment contracts")). And allegations in the

21

Complaint "relating to" the parties' "relationship" include paragraphs 66 and 67(a) (Plaintiffs complain about "Each Defendant" "drafting and circulating" information in June 2024) and paragraphs 66 and 67(c) (Plaintiffs complain about "Each Defendant" "[r]etaining Peter Hatzipetros to structure and register shell entities" in Summer 2024). Accordingly, this dispute is within the scope of the arbitration clause.

## IV.    The Lawsuit Should Be Stayed Pending Arbitration.

Given the applicable agreements to arbitrate, the Court should compel Plaintiffs to bring their claims in arbitration and order the claims against the Non-Boyd Defendants be dismissed from this proceeding. The Fifth Circuit is clear that "dismissal is appropriate 'when all of the issues raised in the district court must be submitted to arbitration.'" *Adam Techs. Int'l S.A. de C.V. v. Sutherland Glob. Servs., Inc.*, 729 F.3d 443, 447 n.1 (5th Cir. 2013) (quoting *Alford v. Dean Witter Reynolds, Inc.*, 975 F.2d 1161, 1164 (5th Cir. 1992)); *see also Fedmet Corp. v. M/V Buyalyk*, 194 F.3d 674 (5th Cir. 1999) ("[D]istrict courts have discretion to dismiss cases in favor of arbitration under 9 U.S.C. § 3."). As demonstrated above, all claims alleged against the Non-Boyd Defendants are arbitrable and should be resolved by binding arbitration. As such, this Court is required to compel Plaintiffs to arbitrate their claims against Boggs, Hatzipetros, and Angels Coding, and dismissal as to those claims is appropriate. Alternatively, pursuant to Section 3 of the FAA, the litigation is subject to a mandatory stay and should be stayed pending arbitration. 9 U.S.C. § 3; *Alford*, 975 F.2d at 1164.

## CONCLUSION

For the foregoing reasons, defendants Mike Boggs, Peter Hatzipetros, and Angels Coding, LLC respectfully request the Court enforce the agreements to arbitrate established above and compel arbitration of Plaintiffs' claims against them. Defendants Boggs, Hatzipetros, and Angels

Coding further request that the Court enter an order dismissing the claims against them or, alternatively, staying this action pending arbitration.

Respectfully submitted,

**DRUMHELLER, HOLLINGSWORTH & MONTHY, LLP**

/s/ *Jeremy T. Monthy*
Jeremy T. Monthy, *Attorney-in-Charge*
State Bar No. 24073240
Federal I.D. No. 1115582
Derek S. Hollingsworth
State Bar No. 24002305
Federal I.D. No. 34569
712 Main Street, Suite 1705
Houston, Texas 77002
Telephone: (713) 751-2300
Facsimile: (713) 751-2310
Emails: jmonthy@dhmlaw.com
        dhollingsworth@dhmlaw.com

**COGDELL LAW FIRM, PLLC**
Dan Cogdell
Texas Bar # 04501500
Cogdell Law Firm
712 Main St., Suite 2400
Houston, TX 77002
Telephone: 713 426 2244
Email: dan@cogdell-law.com

**ATTORNEYS FOR DEFENDANTS
MIKE BOGGS, PETER D. HATZIPETROS,
AND ANGELS CODING, LLC**

23

## <u>CERTIFICATE OF CONFERENCE</u>

I hereby certify that counsel have conferred in a good-faith effort to resolve the issues raised in the foregoing motion but were unable to reach an agreement.  Counsel specifically discussed the foregoing motion at the parties' Rule 26(f) conference on February 4, 2026, and by email on February 5, 6, 10, 11, and 23, 2026.  The Non-Boyd Defendants at one point agreed to delay filing the foregoing motion to facilitate further conversations about the relief sought, but Plaintiffs did not engage in further discussions.

 /s/ <em>Jeremy T. Monthy</em>
Jeremy T. Monthy

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on February 23, 2026, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all registered parties, including:

    Kyle A. Coker
    Kaitlyn M. Coker
    Farmer & Coker, PLLC
    901 Main Street, Suite 5330
    Dallas, Texas  75202
    *Attorneys for Plaintiffs*

 /s/ <em>Jeremy T. Monthy</em>
Jeremy T. Monthy
