IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| CORBIN COWAN, DAWN COWAN, STRATEGIC EQUITY PARTNERS, LLC, TRIUMPH TECHNOLOGIES, LLC, CAB VENTURES, LLC, JEREMY ENGEL, SPARTAN MARKETING & INVESTMENTS, LLC, INTELLITECH SOLUTIONS, LLC, SOLIDA EQUITY PARTNERS, LLC, JOSH KIRK, JUSTIN ANDERSON, JARED GULLER, QUANTUM LIFE ENTERPRISES, LLC,  RAINY DAZE, LLC, and SIMPLE DAZE, LLC, <br><br> *Plaintiffs,* <br><br> v. <br><br> JAMES TYLER BOYD, MIKE BOGGS, PETER D. HATZIPETROS, THE EDEN ALLIANCE, LLC, and ANGELS CODING, LLC, <br><br> *Defendants.* | § § § § § § § § § § § § § § § § § § § § § § § § § | CIVIL ACTION NO. 4:25-cv-04476 |

**PLAINTIFFS' RESPONSE TO DEFENDANT MIKE BOGGS, PETER HAZIPETROS, AND ANGELS CODING, LLC'S MOTION TO COMPEL ARBITRATION AND STAY PROCEEDINGS**

TO THE HONORABLE UNITED STATES DISTRICT JUDGE:

COME NOW, Plaintiffs Corbin Cowan, Dawn Cowan, Strategic Equity Partners, LLC, Triumph Technologies, LLC, CAB Ventures, LLC, Jeremy Engel, Spartan Marketing & Investments, LLC, Intellitech Solutions, LLC, Solida Equity Partners, LLC, Josh Kirk, Justin Anderson, Jared Guller, Quantum Life Enterprises, LLC, Rainy Daze, LLC, and Simple Daze, LLC, and file this Response to Defendants Mike Boggs, Peter Hazipetros, and Angels Coding,

LLC's Motion to Compel Arbitration and Stay Proceedings and, for cause, would respectfully show unto the Court as follows:

## I.    SUMMARY OF THE ARGUMENT

Defendants' Motion to Compel Arbitration fails for several independent reasons.

First, the Court must decide arbitrability because Plaintiffs challenge whether any arbitration agreement was formed and whether Defendants, as non-signatories, may enforce such an agreement. Those are threshold issues for the Court, not an arbitrator.

Second, Defendants have not established the existence of a valid arbitration agreement as to multiple Plaintiffs. As to some, there is no evidence of any agreement to arbitrate. As to others, including Engel, the undisputed record reflects ongoing negotiations and no final acceptance of a binding contract.

Third, the moving Defendants cannot enforce the arbitration clause. They are non-signatories, and Texas law permits non-signatories to compel arbitration only in narrow circumstances that are not present here. That failure is especially clear as to Angel's Coding, which is not a party to, or even mentioned in, the alleged agreement.

Fourth, Plaintiffs' claims fall outside the scope of the arbitration clause. The clause is limited to disputes arising from the relationship created by the agreement, but Plaintiffs' claims arise from a broader scheme involving independent statutory and common law duties, separate communications, and conduct that can be proven without reference to the agreement.

Finally, even if any claim were subject to arbitration, dismissal of this action would be improper. The Federal Arbitration Act ("FAA") requires a stay of arbitrable claims, not dismissal, and claims against non-signatories and defaulted Defendants must proceed in this Court.

For all of these reasons, the motion should be denied in its entirety.

**TABLE OF CONTENTS**

I.      SUMMARY OF THE ARGUMENT ...................................................................... 2

II.    NATURE AND STAGE OF THE PROCEEDING ...................................................... 7

III.   ISSUES PRESENTED AND STANDARDS OF REVIEW ....................................... 7

IV.   INTRODUCTION ......................................................................................... 9

V.    ARGUMENT.............................................................................................. 10

    A. The Court, Not the Arbitrator, Must Decide Arbitrability .................................... 10

    B. No Enforceable Arbitration Agreement Exists As To Most Plaintiffs................................ 11

        1.    Engel (alleged signatory) ...................................................... 11

        2.    Non-signatory Plaintiffs.......................................................... 12

    C. The Non-Boyd Defendants Cannot Enforce the Agreement................................................ 14

        1.    Boggs and Hatzipetros Are Not Signatories ............................................... 14

        2.    Equitable Estoppel Does Not Apply........................................... 15

        3.    Angels Coding Cannot Enforce ..................................................... 16

    D. Plaintiffs' Claims Fall Outside the Scope of the Arbitration Clause ................................. 18

        1.    Governing Standard: Scope Is Not Unlimited ........................................... 18

        2.    The Agreement Is Narrow: It Governs Use of the Node System—Nothing More... 19

        3.    Plaintiffs' Claims Arise from Independent Statutory and Tort Duties ..................... 20

        4.    The Claims Do Not Arise from the "Relationship Created by the Agreement"....... 21

        5.    Independent Third Parties (e.g., Angel's Coding) Fall Outside the Clause Entirely 22

        6.    Conclusion: Even a Broad Clause Does Not Reach These Claims .......................... 23

    E. Even If Arbitration Applies To Some Parties Or Claims, The Case Cannot Be Dismissed 23

VI.   CONCLUSION AND REQUESTED RELIEF ........................................................ 24

## TABLE OF AUTHORITIES

**CASES**

*20/20 Commc'ns, Inc. v. Crawford*,
930 F.3d 715 (5th Cir. 2019) ...................................................................................... 6

*Am. Heritage Life Ins. Co. v. Orr*,
294 F.3d 702 (5th Cir. 2002) ...................................................................................... 7

*Aramark Servs., Inc. Grp. Health Plan v. Aetna Life Ins. Co.*,
162 F.4th 532 (5th Cir. 2025) ..................................................................................... 8

*Arthur Andersen LLP v. Carlisle*,
556 U.S. 624 (2009)............................................................................................... 7, 13

*Bridas S.A.P.I.C. v. Gov't of Turkmenistan*,
345 F.3d 347  (5th Cir. 2003) ............................................................................. 12, 15

*Brittania-U Nigeria, Ltd. v. Chevron USA, Inc.*,
866 F.3d 709 (5th Cir. 2017) .................................................................................... 10

*CAM Logistics, L.L.C. v. Pratt Indus., Inc.*,
148 F.4th 346 (5th Cir. 2025) ................................................................................... 11

*Coffman v. Provost & Umphrey Law Firm, L.L.P.*,
161 F. Supp. 2d 720 (E.D. Tex. 2001)...................................................................... 19

*Cotton Commercial USA, Inc. v. Clear Creek Indep. Sch. Dist.*,
387 S.W.3d 99 (Tex. App.—Houston [14th Dist.] 2012, no pet.)......................... 13

*Dean Witter Reynolds, Inc. v. Byrd*,
470 U.S. 213 (1985)............................................................................................... 8, 23

*Dr. Kenneth Ford v. NYLCare Health Plans of Gulf Coast, Inc.*,
141 F.3d 243 (5th Cir. 1998) ................................................................... 7, 19, 20, 21

*First Options of Chi., Inc. v. Kaplan*,
514 U.S. 938 (1995)................................................................................................. 6, 9

*Fridl v. Cook*,
908 S.W.2d 507 (Tex. App.—El Paso 1995, writ dism'd w.o.j.) ...................... 19, 20

*Granite Rock Co. v. Int'l Bhd. of Teamsters*,
561 U.S. 287 (2010)................................................................................................... 10

*Grigson v. Creative Artists Agency L.L.C.*,
210 F.3d 524 (5th Cir. 2000) .................................................................................... 12

*Hollywood Fantasy Corp. v. Gabor*,
    151 F.3d 203 (5th Cir. 1998) ........................................................................... 11

*Houston Dairy, Inc. v. John Hancock Mut. Life Ins. Co.*,
    643 F.2d 1185 (5th Cir. 1981) ......................................................................... 11

*IMA, Inc. v. Columbia Hosp. Med. City at Dallas Subsidiary, L.P.*,
    1 F.4th 385 (5th Cir. 2021) .................................................................. 10, 12, 16

*In re FirstMerit Bank, N.A.*,
    52 S.W.3d 749 (Tex. 2001) ............................................................................... 17

*In re Great W. Drilling, Ltd.*,
    211 S.W.3d 828 (Tex. App.—Eastland 2006, no pet.) ................................. 18, 20

*In re Kellogg Brown & Root, Inc.*,
    166 S.W.3d 732 (Tex. 2005) ........................................................................ 13, 14

*In re Merrill Lynch Tr. Co. FSB*,
    235 S.W.3d 185 (Tex. 2007) ........................................................................ 13, 15

*In re Rubiola*,
    334 S.W.3d 220 (Tex. 2011) ........................................................................... 7, 15

*In re Weekley Homes, L.P.*,
    180 S.W.3d 127 (Tex. 2005) ...................................................................... 6, 17, 19

*Inland Sea, Inc. v. Castro*,
    420 S.W.3d 55 (Tex. App.—El Paso 2012, pet. denied) ..................................... 13

*Janvey v. Alguire*,
    847 F.3d 231 (5th Cir. 2017) ............................................................................. 12

*Jody James Farms, JV v. Altman Grp., Inc.*,
    547 S.W.3d 624 (Tex. 2018) ...................................................................... passim

*KPMG LLP v. Cocchi*,
    565 U.S. 18 (2011) ........................................................................................... 23

*Kubala v. Supreme Prod. Servs., Inc.*,
    830 F.3d 199 (5th Cir. 2016) ............................................................................. 10

*Lennar Homes of Tex. Land & Constr., Ltd. v. Whiteley*,
    672 S.W.3d 367 (Tex. 2023) .............................................................................. 14

*Mohamed v. Auto Nation USA Corp.*,
    89 S.W.3d 830 (Tex. App.—Houston [1st Dist.] 2002, no pet.) .......................... 14

*Natgasoline LLC v. Refractory Constr. Services, Co. LLC*,
   566 S.W.3d 871 (Tex. App.—Houston [14th Dist.] 2018, pet. denied) ................................ 16

*Newman v. Plains All Am. Pipeline, L.P.*,
   23 F.4th 393 (5th Cir. 2022) ....................................................................................... 15, 16

*Noble Drilling Servs., Inc. v. Certex USA, Inc.*,
   620 F.3d 469 (5th Cir. 2010). ............................................................................................ 12

*Pennzoil Expl. & Prod. Co. v. Ramco Energy Ltd.*,
   139 F.3d 1061 (5th Cir. 1998) .............................................................................................. 7

*Polyflow, L.L.C. v. Specialty RTP, L.L.C.*,
   993 F.3d 295 (5th Cir. 2021) .......................................................................................... 7, 17

*Rodriguez v. Tex. Leaguer Brewing Co. L.L.C.*,
   586 S.W.3d 423 (Tex. App.—Houston [14th Dist.] 2019, pet. denied) ................................ 20

*Smith v. Spizzirri*,
   601 U.S. 472 (2024)...................................................................................................... 8, 22

*Tex. Petrochemicals LP v. ISP Water Mgmt. Services LLC*,
   301 S.W.3d 879 (Tex. App.—Beaumont 2009, no pet.). ...................................................... 17

*Tittle v. Enron Corp.*,
   463 F.3d 410 (5th Cir. 2006) .......................................................................................... 7, 20

*Van Zanten v. Energy Transfer Partners, L.P.*,
   320 S.W.3d 845 (Tex. App.—Houston [1st Dist.] 2010, no pet.). ........................................ 13

*Waste Mgmt., Inc. v. Residuos Industriales Multiquim, S.A. de C.V.*,
   372 F.3d 339 (5th Cir. 2004) .......................................................................................... 8, 23

*Will-Drill Res., Inc. v. Samson Res. Co.*,
   352 F.3d 211 (5th Cir. 2003) ........................................................................................ 10, 11

**STATUTES**

9 U.S.C. § 3............................................................................................................................. 8, 22

## II.    NATURE AND STAGE OF THE PROCEEDING

This is a civil action arising from Defendants' alleged fraudulent solicitation and misappropriation of investor funds, asserting claims under federal and state law, including claims grounded in fraud and related misconduct.

Plaintiffs filed their Complaint on September 19, 2025. Defendant James Tyler Boyd is in default following the Clerk's entry of default. Defendants Mike Boggs, Peter Hatzipetros, and Angel's Coding, LLC have appeared and answered, and on February 23, 2026, they filed the present Motion to Compel Arbitration and Stay Proceedings [ECF 38] (the "Motion"). A Joint Case Management Plan was filed on February 24, 2026.

The case remains in its early stages. Several Rule 12 motions are pending, no discovery has occurred, and no scheduling order has been entered. The threshold issue currently before the Court is whether any portion of this action should be compelled to arbitration or whether the case should proceed in this Court.

## III.    ISSUES PRESENTED AND STANDARDS OF REVIEW

This Motion presents four threshold issues for the Court:

1) **Whether a valid arbitration agreement was formed between Plaintiffs and any Defendant.**

Under the FAA, whether a valid arbitration agreement was formed is a gateway issue for the Court, not the arbitrator, and is determined under applicable state contract law principles. *20/20 Commc'ns, Inc. v. Crawford*, 930 F.3d 715, 718 (5th Cir. 2019); *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 944 (1995). The party seeking to compel arbitration bears the burden of proving formation by a preponderance of the evidence. *In re Weekley Homes, L.P.*, 180 S.W.3d 127, 130 (Tex. 2005). If the making of the agreement is placed in issue, the Court must resolve that dispute under 9 U.S.C. § 4, including by evidentiary hearing if necessary, and a party opposing

arbitration must present competent evidence to create a genuine fact issue. *Am. Heritage Life Ins. Co. v. Orr*, 294 F.3d 702, 710 (5th Cir. 2002).

**2) Whether non-signatory Defendants may enforce any arbitration agreement against Plaintiffs.**

Under the FAA, whether a non-signatory may enforce an arbitration agreement is a gateway question for the Court, governed by state contract law rather than federal common law. *Arthur Andersen LLP v. Carlisle*, 556 U.S. 624, 631 (2009). The movant bears the burden to establish both a valid arbitration agreement and its right, as a non-signatory, to enforce that agreement under recognized Texas-law doctrines such as direct benefits estoppel, agency, or third-party beneficiary status. *Jody James Farms, JV v. Altman Grp., Inc.*, 547 S.W.3d 624, 632–33 (Tex. 2018); *In re Rubiola*, 334 S.W.3d 220, 223–24 (Tex. 2011).

**3) Whether Plaintiffs' claims fall within the scope of any arbitration agreement.**

Under the FAA and Texas law, whether claims fall within the scope of an arbitration agreement is a question for the Court, reviewed de novo, and determined by examining the factual allegations of the complaint rather than the legal labels asserted. *Dr. Kenneth Ford v. NYLCare Health Plans of Gulf Coast, Inc.*, 141 F.3d 243, 250 (5th Cir. 1998); *Polyflow, L.L.C. v. Specialty RTP, L.L.C.*, 993 F.3d 295, 304 (5th Cir. 2021). Broad clauses such as those covering disputes "arising out of or relating to" an agreement are construed expansively, and any doubts are resolved in favor of arbitration. *Pennzoil Expl. & Prod. Co. v. Ramco Energy Ltd.*, 139 F.3d 1061, 1067–68 (5th Cir. 1998). However, that presumption has limits: claims grounded in duties imposed by law that can be maintained without reference to the contract fall outside the clause's scope, even if they are factually related to the parties' relationship. *Ford*, 141 F.3d at 250; *Tittle v. Enron Corp.*, 463 F.3d 410, 420 (5th Cir. 2006).

**4. Whether this action should be dismissed or, if arbitration is compelled in part, stayed.**

Under the FAA, if a court compels arbitration and a party requests a stay, the court must stay the action and may not dismiss it. 9 U.S.C. § 3; *Smith v. Spizzirri*, 601 U.S. 472, 478–79 (2024). In cases involving both arbitrable and non-arbitrable claims or parties, the court must compel arbitration as to arbitrable claims while retaining discretion to proceed with or stay the remaining claims. *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 221 (1985). The Fifth Circuit applies a discretionary framework to determine whether to stay non-arbitrable claims, focusing on whether the claims involve the same operative facts, are inherently inseparable, and whether litigation would impair arbitration. *Waste Mgmt., Inc. v. Residuos Industriales Multiquim, S.A. de C.V.*, 372 F.3d 339, 344 (5th Cir. 2004). A district court's ruling on a motion to compel arbitration or stay proceedings is reviewed de novo. *Aramark Servs., Inc. Grp. Health Plan v. Aetna Life Ins. Co.*, 162 F.4th 532, 536 (5th Cir. 2025).

## IV.　INTRODUCTION

Defendants' Motion attempts to convert a multi-defendant fraud scheme into a single-contract arbitration dispute. It fails because there is no single contract, no uniform agreement to arbitrate, and no legal basis to extend arbitration this far.

At the outset, Defendants cannot meet the most basic requirement of the FAA: the existence of an agreement to arbitrate. They offer no evidence that many Plaintiffs ever entered into any arbitration agreement at all. As to others, including Engel, the record reflects ongoing negotiations that never resulted in a final, accepted contract. Arbitration cannot be compelled in the absence of agreement, and speculation or attorney argument cannot fill that gap.

The defects do not stop there. Defendants seeking to compel arbitration are themselves non-signatories, and one of them, Angel's Coding, is not even mentioned in the QuantumArc Node System User Agreement (the "QuantumArc Agreement") which Defendants allege forms the basis of their Motion. There is no contract between Angel's Coding and Plaintiffs, no theory of consent,

and no recognized doctrine under Texas law that would allow a complete stranger to an agreement to enforce it. Defendants' position would expand arbitration far beyond its contractual foundation and effectively eliminate the requirement of consent altogether.

Even more fundamentally, Defendants mischaracterize the nature of this case. Plaintiffs do not assert claims based on the QuantumArc Agreement, and their claims do not depend on it. The alleged misconduct arises from a broader scheme involving multiple entities, separate communications, and independent misrepresentations made to induce investment. The QuantumArc Agreement is, at most, one document among many and not the source of the duties Defendants are alleged to have violated. Plaintiffs' claims arise from independent statutory and common law obligations that exist regardless of any agreement and can be proven without reference to its terms.

Defendants ask the Court to do what the FAA does not permit: compel arbitration where no agreement exists, extend an arbitration clause to non-parties, and sweep independent fraud claims into a contract that did not create them. The Court should deny the Motion in its entirety. At a minimum, if any claim is found to be arbitrable, the Court should stay only those claims and allow the remainder of this case to proceed.

## V.    ARGUMENT

### A.  The Court, Not the Arbitrator, Must Decide Arbitrability.

The issue is whether the Court or an arbitrator decides arbitrability. Under the FAA, arbitrability is presumptively a question for the Court unless the parties clearly and unmistakably agree to delegate that issue to an arbitrator. *First Options of Chi*, 514 U.S. at 944–45. The Fifth Circuit applies a two-step framework: courts must first determine whether any arbitration agreement was formed, and only if a valid agreement exists with a valid delegation provision does

the inquiry shift to the arbitrator. *Kubala v. Supreme Prod. Servs., Inc.*, 830 F.3d 199, 201–02 (5th Cir. 2016).

That sequencing controls here and is not in dispute. Even where an arbitration agreement incorporates arbitral rules that delegate arbitrability, courts must still resolve threshold questions of contract formation and whether the agreement binds the parties before the Court. *Granite Rock Co. v. Int'l Bhd. of Teamsters*, 561 U.S. 287, 296–97 (2010); *Brittania-U Nigeria, Ltd. v. Chevron USA, Inc.*, 866 F.3d 709, 714 (5th Cir. 2017).

Plaintiffs dispute both. They contest whether arbitration agreements were formed as to multiple Plaintiffs and whether the Non-Boyd Defendants, who are not signatories, may enforce any such agreements. Those are threshold formation and enforceability questions that must be resolved by the Court before any arbitration can be compelled. *Will-Drill Res., Inc. v. Samson Res. Co.*, 352 F.3d 211, 218 (5th Cir. 2003); *IMA, Inc. v. Columbia Hosp. Med. City at Dallas Subsidiary, L.P.*, 1 F.4th 385, 391–92 (5th Cir. 2021).

Accordingly, the Court must determine whether a valid arbitration agreement exists as to each Plaintiff and whether each Defendant may enforce that agreement. Unless Defendants carry that burden, the FAA does not permit referral of this dispute to an arbitrator.

## B. No Enforceable Arbitration Agreement Exists As To Most Plaintiffs.

### 1. Engel (alleged signatory)

The issue is whether Defendants have carried their burden to establish that Engel agreed to the contract containing the arbitration provision. Here, Defendants' own evidence confirms that no agreement was ever formed.

The original proposed QuantumArc Agreement identified "Bloctech Investment Group" as the contracting party. Engel subsequently requested a revised agreement substituting a different entity, "The Targeted Cash Flow Fund." That request altered a material term—the identity of the

contracting party—and therefore operated as a counteroffer, rejecting the original proposal. *See Hollywood Fantasy Corp. v. Gabor*, 151 F.3d 203, 208 (5th Cir. 1998); *Houston Dairy, Inc. v. John Hancock Mut. Life Ins. Co.*, 643 F.2d 1185, 1187–88 (5th Cir. 1981). Defendants fail to provide any evidence that they ever provided, or Engel accepted the revised QuantumArc Agreement. Absent acceptance of that counteroffer, no contract was formed.

Nor does Engel's conduct cure that defect. While assent may be inferred from conduct, it must reflect acceptance of a binding agreement, not participation in ongoing negotiations. *Hollywood Fantasy*, 151 F.3d at 210. Here, the undisputed record shows that the parties were still negotiating the identity of the contracting party—a foundational term—when Engel allegedly deposited funds and communicated about the relationship. Where material terms remain unresolved and draft agreements are exchanged without final acceptance, courts routinely find no mutual assent or, at minimum, a fact issue precluding enforcement. *See CAM Logistics, L.L.C. v. Pratt Indus., Inc.*, 148 F.4th 346, 360 (5th Cir. 2025).

At a minimum, Defendants' evidence creates a genuine dispute as to whether any agreement was formed. Under the FAA, a court may not compel arbitration where the making of the agreement is in issue. *See Will-Drill*, 352 F.3d at 218. Because Defendants have not established that Engel agreed to a final, binding version of the QuantumArc Agreement, the arbitration provision cannot be enforced against him.

### 2. Non-signatory Plaintiffs

The issue is whether Defendants, who are themselves non-signatories, may compel non-signatory Plaintiffs to arbitrate under any recognized doctrine. Under the FAA and Fifth Circuit law, arbitration is a matter of contract, and a party seeking to compel arbitration bears the burden of establishing both a valid agreement and a basis to bind the opposing party. Where non-signatories are involved, courts apply limited equitable doctrines such as direct benefits estoppel

or intertwined claims estoppel, but those doctrines are narrowly confined and rooted in state law. *Grigson v. Creative Artists Agency L.L.C.*, 210 F.3d 524, 527–28 (5th Cir. 2000); *IMA*, 1 F.4th at 391–92.

Defendants' Motion fails at the threshold because it presents a posture unsupported by any governing authority: non-signatories seeking to compel arbitration against other non-signatories. Courts in this circuit have recognized that equitable estoppel doctrines do not extend this far. *See, e.g., Bridas S.A.P.I.C. v. Gov't of Turkmenistan*, 345 F.3d 347, 361 (5th Cir. 2003) (rejecting efforts to bind non-signatories absent a valid contractual basis); *Janvey v. Alguire*, 847 F.3d 231, 242–43 (5th Cir. 2017) (limiting non-signatory doctrines to specific directional relationships). Here, neither side is a party to the alleged arbitration agreement, and the signatory entity— QuantumArc—is not before the Court. That absence eliminates the contractual nexus required for any derivative theory of enforcement.

Even if that structural defect could be overlooked, none of the recognized doctrines applies. Intertwined claims estoppel does not apply because Plaintiffs are not signatories and do not rely on any contract to assert their claims. *Grigson* applies only to prevent a signatory from avoiding arbitration with a non-signatory, not the reverse. *Janvey*, 847 F.3d at 242. Likewise, direct benefits estoppel requires actual knowledge of the contract and knowing exploitation of its terms— elements Defendants do not and cannot establish. *Noble Drilling Servs., Inc. v. Certex USA, Inc.*, 620 F.3d 469, 473–74 (5th Cir. 2010). Plaintiffs do not sue to enforce any agreement; they assert statutory and common-law claims arising from independent duties.

That distinction is dispositive. Claims grounded in federal statutes, tort law, and fiduciary obligations do not trigger estoppel merely because they are factually related to a contract. *Jody James Farms*, 547 S.W.3d at 637. Plaintiffs' RICO claims, predicated on wire fraud and related

misconduct, arise from duties imposed by law, not from any contractual relationship. Because Defendants cannot establish that Plaintiffs are bound to any arbitration agreement under any recognized theory, the Motion must be denied as to the non-signatory Plaintiffs.

### C. The Non-Boyd Defendants Cannot Enforce the Agreement.

#### 1. Boggs and Hatzipetros Are Not Signatories.

The issue is whether Boggs and Hatzipetros, who are not signatories to the alleged arbitration agreement, may compel arbitration. Whether a non-signatory may enforce an arbitration agreement is governed by state law. *Arthur Andersen*, 556 U.S. at 630–31.

Under Texas law, arbitration agreements are generally enforced only between their signatories. *Cotton Commercial USA, Inc. v. Clear Creek Indep. Sch. Dist.*, 387 S.W.3d 99, 104 (Tex. App.—Houston [14th Dist.] 2012, no pet.); *Van Zanten v. Energy Transfer Partners, L.P.*, 320 S.W.3d 845, 847 (Tex. App.—Houston [1st Dist.] 2010, no pet.). A non-signatory may compel arbitration only in limited, defined circumstances grounded in traditional contract and equitable principles, such as agency, alter ego, third-party beneficiary status, or direct benefits estoppel. *In re Kellogg Brown & Root, Inc.*, 166 S.W.3d 732, 739 (Tex. 2005); *In re Merrill Lynch Tr. Co. FSB*, 235 S.W.3d 185, 191–95 (Tex. 2007). These doctrines do not expand arbitration rights; they operate only where the non-signatory can establish a recognized contractual basis to enforce the agreement.

Those exceptions are narrow and strictly applied. Importantly, Texas courts have rejected broader formulations of equitable estoppel that would allow non-signatories to compel arbitration based on allegations of intertwined or concerted misconduct. *See In re Merrill Lynch*, 235 S.W.3d at 194; *Inland Sea, Inc. v. Castro*, 420 S.W.3d 55, 59 (Tex. App.—El Paso 2012, pet. denied). Instead, Texas limits estoppel to circumstances where a party seeks to derive a direct benefit from the contract itself, rather than simply where claims are factually related to it.

That baseline rule controls here. Boggs and Hatzipetros are not parties to the Node System User Agreement, and their ability to compel arbitration depends entirely on whether they can establish one of these limited exceptions under Texas law. The burden to do so rests squarely on them. *Mohamed v. Auto Nation USA Corp.*, 89 S.W.3d 830, 836 (Tex. App.—Houston [1st Dist.] 2002, no pet.) ("The initial burden of the party seeking to compel arbitration-to establish the arbitration agreement's existence-includes proving the entity seeking to enforce the arbitration agreement was a party to it or had the right to enforce the agreement notwithstanding.").

### 2. Equitable Estoppel Does Not Apply.

The issue is whether any recognized Texas-law exception permits Boggs or Hatzipetros, as non-signatories, to compel arbitration. Texas recognizes a limited set of doctrines under which a non-signatory may enforce an arbitration agreement: incorporation by reference, assumption, agency, alter ego, third-party beneficiary status, and direct benefits estoppel. *In re Kellogg Brown & Root, Inc.*, 166 S.W.3d at 739. Each doctrine is grounded in consent and applies only in narrow, fact-specific circumstances. *Jody James Farms*, 547 S.W.3d at 639.

None of those doctrines applies here. Direct benefits estoppel requires that a plaintiff seek to derive a direct benefit from the contract itself, such that the claim depends on the contract's existence and cannot stand independently. *Id*. at 636–37; *Lennar Homes of Tex. Land & Constr., Ltd. v. Whiteley*, 672 S.W.3d 367, 377 (Tex. 2023). That requirement is not met where claims arise from independent statutory or common-law duties. *Jody James Farms*, 547 S.W.3d at 639–40. Plaintiffs' RICO, fraud, and tort-related claims arise from duties imposed by law and do not rely on the terms of any agreement. Because Plaintiffs do not seek to enforce the contract, they cannot be estopped from avoiding its arbitration clause.

Nor can Defendants rely on any form of equitable estoppel based on alleged intertwined or concerted misconduct. Texas has expressly rejected the broader "concerted misconduct" estoppel

theory recognized in some federal cases, holding that allegations of coordinated wrongdoing do not supply consent to arbitration. *In re Merrill Lynch*, 235 S.W.3d at 194. To the extent Defendants rely on a theory of intertwined claims, it fails independently because the required "close relationship" between signatory and non-signatory is absent. A mere arm's-length business or service-provider relationship is insufficient as a matter of law. *Jody James Farms*, 547 S.W.3d at 640; *Newman v. Plains All Am. Pipeline, L.P.*, 23 F.4th 393, 404–05 (5th Cir. 2022).

The remaining doctrines fare no better. There is no evidence that Boggs or Hatzipetros assumed the obligations of the agreement or otherwise manifested assent to it. *See In re Rubiola*, 334 S.W.3d at 224–25. Nor is there any basis for agency or alter ego: Defendants are, at most, independent actors who allegedly participated in a broader scheme, not entities subject to the control of a signatory or indistinguishable from it. *See Jody James Farms*, 547 S.W.3d at 635; *Bridas S.A.P.I.C.*, 345 F.3d at 356–57. Finally, nothing in the agreement reflects a clear intent to confer enforceable rights on these Defendants, defeating any third-party beneficiary theory. *See Jody James Farms*, 547 S.W.3d at 635–36.

Because none of the recognized Texas-law doctrines applies, Defendants cannot establish any contractual or equitable basis to enforce the arbitration agreement. As non-signatories, they lack the requisite consent to compel arbitration, and their Motion must be denied.

### 3. Angels Coding Cannot Enforce the Agreement.

The issue is whether Angel's Coding, a non-signatory service provider with no contractual relationship to Plaintiffs, may compel arbitration under any recognized Texas-law doctrine. It cannot. Under Texas law, non-signatories may enforce arbitration agreements only in rare circumstances and only where a recognized doctrine grounded in consent applies. *Jody James Farms*, 547 S.W.3d at 633. Angel's Coding satisfies none of those doctrines.

As an initial matter, Defendants have not identified any agreement between Angel's Coding and Plaintiffs containing an arbitration provision. Nor do they identify any contractual basis by which Angel's Coding acquired rights under the QuantumArc Agreement. That failure alone is dispositive. The burden rests on the party seeking to compel arbitration to establish its right to do so, and attorney argument cannot substitute for evidence of a binding agreement or a recognized basis for enforcement.

Even setting that defect aside, every potentially applicable doctrine fails on these facts. Direct benefits estoppel does not apply because Plaintiffs' claims arise from independent statutory and common-law duties, including RICO and fraud, and do not depend on or seek to enforce any contract. *Id*. at 637–38; *IMA*, 1 F.4th at 391–92. Angel's Coding, moreover, is alleged to have been compensated through its own arrangements, not through the contract containing the arbitration clause, confirming that it did not "embrace" that agreement in any legally relevant sense. *See Natgasoline LLC v. Refractory Constr. Services, Co. LLC*, 566 S.W.3d 871, 887 (Tex. App.—Houston [14th Dist.] 2018, pet. denied).

Nor can Angel's Coding rely on agency, alter ego, or intertwined claims theories. Texas law requires actual control to establish agency, not mere participation in a transaction, and there is no evidence of any such relationship here. *Jody James Farms*, 547 S.W.3d at 635. Likewise, a "close relationship" sufficient to support intertwined claims estoppel requires corporate affiliation, not an arm's-length service-provider relationship. *Newman*, 23 F.4th at 404–05. Angel's Coding is, at most, an independent vendor alleged to have provided services in connection with the broader scheme, which is insufficient as a matter of law.

Finally, Angel's Coding is not a third-party beneficiary of the agreement. Nothing in the Node System User Agreement identifies it as such, and Texas law does not infer third-party

beneficiary status from a commercial relationship alone. *Jody James Farms*, 547 S.W.3d at 635–36. Absent a clear expression of intent to confer enforceable rights, this theory fails.

Because Angel's Coding is a non-signatory with no contractual relationship to Plaintiffs and no viable basis to invoke any recognized exception under Texas law, it cannot compel arbitration. Its request for arbitration should be denied.

**D. Plaintiffs' Claims Fall Outside the Scope of the Arbitration Clause.**

**1. Governing Standard: Scope Is Not Unlimited.**

The issue is whether Plaintiffs' claims fall within the scope of the arbitration clause. Under the FAA and Texas law, a party seeking to compel arbitration must establish both the existence of a valid agreement and that the claims asserted fall within its scope. *Tex. Petrochemicals LP v. ISP Water Mgmt. Services LLC*, 301 S.W.3d 879, 884–85 (Tex. App.—Beaumont 2009, no pet.). While Texas law strongly favors arbitration, that policy does not extend beyond the scope of the parties' agreement. *See id.*

Arbitration clauses covering disputes "arising out of or relating to" an agreement are construed broadly, and doubts are generally resolved in favor of arbitration. *In re FirstMerit Bank, N.A.*, 52 S.W.3d 749, 754 (Tex. 2001). That presumption, however, has limits. The critical inquiry is whether the claims are grounded in the contract itself or arise from independent legal duties. *Polyflow*, 993 F.3d at 304. Claims must be arbitrated if liability "arises solely from the contract or must be determined by reference to it." *In re Weekley Homes, L.P.*, 180 S.W.3d at 131–32. By contrast, claims fall outside the scope of an arbitration agreement when they are based on "general obligations imposed by law" and can be maintained without reference to the contract. *Id*.

The Fifth Circuit applies the same standard: a claim is arbitrable if it is "so interwoven with the contract that it could not stand alone," but not if it is "completely independent of the contract and could be maintained without reference to" it. *Polyflow*, 993 F.3d at 304. Thus, even under a

broad arbitration clause, claims arising from independent statutory or tort duties remain outside the agreement's scope.

### 2. The Agreement Is Narrow: It Governs Use of the Node System—Nothing More.

Even where an arbitration clause is broadly worded, its scope is defined by the contract itself. Texas courts do not apply arbitration clauses in the abstract; they examine the agreement to determine the relationship it creates and the disputes it governs. *See In re Great W. Drilling, Ltd.*, 211 S.W.3d 828, 840 (Tex. App.—Eastland 2006, no pet.) (holding that when parties "specifically limit their duties and obligations, these limitations must be considered when determining the scope of their arbitration agreement"). Thus, even broad language such as "arising out of or relating to" does not extend beyond the contractual relationship the agreement actually establishes.

Here, the QuantumArc Agreement defines a narrow and specific relationship: the use of the QuantumArc "Node System" and platform for digital asset arbitrage. Its terms govern operational aspects of that system, such as wallet participation, automated transactions, and platform mechanics, not the broader investment relationship alleged in the Complaint. Critically, the arbitration clause itself is limited to disputes arising from "our relationship as created by this Agreement." That limiting language matters; it confines the clause's reach to disputes arising from the platform-based relationship the agreement creates, not any and all dealings between the parties.

Plaintiffs' claims arise from a fundamentally different relationship. As alleged in the Complaint, Defendants solicited investments, made misrepresentations regarding returns, and misappropriated investor funds through a broader scheme involving multiple entities and separate communications. Those alleged duties (truthful solicitation, lawful handling of investor funds, and compliance with statutory obligations) do not arise from the User Agreement and are not defined by it. The User Agreement did not create the investment relationship, did not define the promised returns, and did not establish the obligations Plaintiffs allege were breached.

Texas and Fifth Circuit law are clear that arbitration clauses do not extend to claims arising from separate agreements or independent relationships, even between related parties. *See Ford*, 141 F.3d at 250 (claims fall outside scope where they "could be maintained without reference to the agreement"). Because Plaintiffs' claims can be stated and proven without reference to the QuantumArc Agreement's terms, they fall outside the scope of its arbitration clause.

### 3.   Plaintiffs' Claims Arise from Independent Statutory and Tort Duties.

Even under a broad arbitration clause, claims fall outside its scope when they arise from legal duties independent of the contract. The controlling Fifth Circuit test is whether the claims "could be maintained without reference to the contract." *Ford*, 141 F.3d at 250. Texas law applies the same rule: claims are arbitrable only if liability arises from the contract itself or must be determined by reference to it; where liability arises from "general obligations imposed by law," the claims remain outside the agreement. *In re Weekley Homes,* 180 S.W.3d at 131–32.

Plaintiffs' claims arise from precisely those independent legal duties. The Complaint alleges a coordinated scheme involving fraudulent solicitation of investments, misrepresentations regarding returns, and misappropriation of funds in violation of federal statutes and common law duties. Obligations to make truthful representations, lawfully handle investor funds, and comply with statutory prohibitions exist independently of any private agreement. As courts have repeatedly held, claims grounded in statutory and tort duties may be maintained without reference to a contract even where the contract forms part of the factual background. *See Coffman v. Provost & Umphrey Law Firm, L.L.P.*, 161 F. Supp. 2d 720, 732 (E.D. Tex. 2001).

The critical question is not whether the QuantumArc Agreement is mentioned in the Complaint or may be introduced as evidence, but whether Defendants could be held liable even if they fully performed the contract. *Fridl v. Cook*, 908 S.W.2d 507, 513 (Tex. App.—El Paso 1995, writ dism'd w.o.j.). Here, the answer is yes. Defendants could comply with every provision of the

User Agreement governing platform use and still be liable for fraudulent inducement, securities violations, and misappropriation of investor funds. That fact alone places these claims outside the scope of the arbitration clause.

Finally, the Complaint alleges that the QuantumArc Agreement was merely one instrument among many used to carry out a broader fraudulent scheme involving multiple entities and separate transactions. Where a contract serves only as a backdrop within a larger course of wrongful conduct, claims arising from that conduct do not become arbitrable simply because the contract exists. *See id*.; *Ford*, 141 F.3d at 250–51. Because Plaintiffs' claims can be stated and proven without reference to the QuantumArc Agreement, and arise from duties imposed by law rather than the contract, they fall outside the scope of the arbitration clause.

### 4. The Claims Do Not Arise from the "Relationship Created by the Agreement."

Even where an arbitration clause uses broad language, its scope is defined by the text of the provision as a whole. Courts must interpret the clause in context, giving effect to all of its language. *Tittle*, 463 F.3d at 420. Here, the clause does not extend to all disputes between the parties; it is expressly limited to disputes arising from "our relationship as created by this Agreement." That qualifier is dispositive.

Texas courts consistently hold that arbitration clauses anchored to a specific agreement govern only the relationship that agreement creates. *See In re Great W. Drilling, Ltd.*, 211 S.W.3d at 836–38 (scope must be assessed in light of the "duties and obligations" defined by the agreement); *Rodriguez v. Tex. Leaguer Brewing Co. L.L.C.*, 586 S.W.3d 423, 433 (Tex. App.— Houston [14th Dist.] 2019, pet. denied) (arbitration clause in one agreement did not extend to disputes arising under a separate agreement between the same parties). When "the relationship extends beyond the agreement or is governed by separate and independent agreements, arbitration is less likely." *Great W. Drilling*, 211 S.W.3d at 838.

The relationship created by the QuantumArc Agreement is narrow: it governs the use of the QuantumArc platform and Node System. Plaintiffs' claims arise from a different relationship entirely: Defendants' solicitation of investments, representations regarding returns, and alleged misappropriation of funds through a broader scheme involving multiple entities and separate communications. Those alleged duties do not arise from the QuantumArc Agreement and are not defined by it, but rather exist independently of the platform-based relationship the agreement creates.

That distinction is legally dispositive. The Fifth Circuit has made clear that even broad arbitration clauses do not reach claims arising from conduct occurring in a different role or relationship between the parties. *See Ford*, 141 F.3d at 250–51. Because Plaintiffs' claims arise from a relationship that was not "created by this Agreement," they fall outside the scope of the arbitration clause.

### 5. Independent Third Parties (*e.g.*, Angel's Coding) Fall Outside the Clause Entirely.

The arbitration clause applies only to disputes "between you and us." By its plain terms, it is limited to the parties to the QuantumArc Agreement and does not extend to independent third parties. Arbitration is a matter of consent, and courts may not rewrite an agreement to require arbitration with entities the parties did not include.

Angel's Coding is not a party to the QuantumArc Agreement, is not identified anywhere in it, and is not part of the bilateral relationship the Agreement creates. The contract defines a narrow relationship between QuantumArc and the user with respect to platform access and use; it does not reference vendors, service providers, or any category of third-party participants.

Nor does the QuantumArc Agreement contain any language extending the arbitration clause to agents, affiliates, contractors, or third-party beneficiaries. That omission is dispositive.

Had the drafters intended to include independent service providers like Angel's Coding, they could have done so expressly. They did not.

Because Angel's Coding falls outside the defined scope of "you and us," it cannot invoke the arbitration clause as a matter of contract interpretation.

### 6. Conclusion: Even a Broad Clause Does Not Reach These Claims.

Even a broad arbitration clause has limits, and this one is defined by the QuantumArc Agreement itself. It applies only to disputes arising from the "relationship as created by this Agreement"—a narrow, non-custodial, non-advisory platform relationship.

Plaintiffs' claims arise instead from independent statutory and common law obligations that exist regardless of the QuantumArc Agreement and could be maintained without reference to it. They are further based on a broader scheme involving multiple entities, separate transactions, and public-facing conduct outside the QuantumArc Agreement's scope. Moreover, several Defendants (*i.e.*, Angel's Coding) are not even within the clause's reach, which is expressly limited to disputes "between you and us."

Therefore, because the claims neither arise from the QuantumArc Agreement nor fall within its defined relationship, the arbitration clause does not apply. The Motion to compel should be denied.

### E. Even If Arbitration Applies To Some Parties Or Claims, The Case Cannot Be Dismissed.

Even if the Court were to conclude that arbitration applies to any subset of claims or defendants, dismissal of this action would be improper as a matter of law. The FAA mandates that courts stay claims that are subject to arbitration upon application of a party. 9 U.S.C. § 3; *Smith*, 601 U.S. at 478–79. That statutory directive is not discretionary and applies only to claims actually determined to be arbitrable.

This case, however, involves multiple defendants and multiple claims that fall outside any arbitration agreement. Claims against non-signatories are not subject to arbitration absent a recognized exception under Texas law, and as shown above, no such exception applies here. Likewise, Defendant Boyd (against whom a clerk's entry of default has already been entered) has not moved to compel arbitration and cannot invoke the FAA's protections. As to these parties, § 3 does not apply, and the Court retains full authority to proceed. *See Dean Witter Reynolds*, 470 U.S. at 221 (holding that the FAA requires district courts to compel arbitration of pendent arbitrable claims but does not permit courts to refuse to adjudicate non-arbitrable claims).

The Supreme Court has repeatedly emphasized that the FAA requires enforcement of arbitration agreements according to their terms rather than wholesale displacement of federal jurisdiction. *Id*.; *see also KPMG LLP v. Cocchi*, 565 U.S. 18, 22 (2011) (courts must compel arbitration of arbitrable claims "even where the result would be the possibly inefficient maintenance of separate proceedings"). The Fifth Circuit follows this same framework, permitting parallel litigation to proceed against non-arbitrating parties and on non-arbitrable claims. *See, e.g., Waste Mgmt.*, 372 F.3d at 344–45.

Accordingly, even under Defendants' own theory, the proper course would be to stay only those claims (if any) that are actually subject to arbitration, while allowing the remainder of this case to proceed, particularly claims against non-signatories and defaulted defendants. Dismissal of the action in its entirety would directly contravene § 3 of the FAA and controlling Supreme Court precedent.

## VI.    CONCLUSION AND REQUESTED RELIEF

For the foregoing reasons, the Court should deny Defendants' Motion to Compel Arbitration in its entirety. Defendants have failed to carry their burden to establish the existence of a valid arbitration agreement as to all Plaintiffs, failed to demonstrate any basis under Texas

law to permit non-signatories to compel arbitration, and failed to show that Plaintiffs' claims fall within the scope of the QuantumArc Agreement.

In the alternative, if the Court determines that arbitration may be compelled as to any party or claim, the Court should stay only those specific claims subject to arbitration pursuant to 9 U.S.C. § 3, and allow all remaining claims to proceed in this Court, including Plaintiffs' claims against non-signatory defendants and against Defendant Boyd, who is in default.

Plaintiffs respectfully request all other relief to which they are justly entitled.

DATED: April 10, 2026                                    Respectfully submitted,

                                                        */s/Kyle A. Coker*
                                                        Kyle A. Coker
                                                        Texas Bar I.D. 24115353
                                                        kyle@farmercoker.com
                                                        Kaitlyn M. Coker
                                                        Texas Bar I.D. 24115264
                                                        kaitlyn@farmercoker.com

                                                        **FARMER & COKER, PLLC**
                                                        901 Main St., Ste. 5330
                                                        Dallas, TX 75202
                                                        Tel:    (832) 240-1047

                                                        **ATTORNEYS FOR PLAINTIFFS**

## CERTIFICATE OF SERVICE

I hereby certify that on April 10, 2026, a true and correct copy of the foregoing Plaintiffs' First Amended Complaint was filed electronically with the Clerk of Court using the CM/ECF system, which will send notification of such filing to all counsel of record who are registered CM/ECF users.

I further certify that any party not registered to receive electronic service through the CM/ECF system will be served with a copy of the foregoing document in accordance with Federal Rule of Civil Procedure 5.

/s/ *Kaitlyn M. Coker*
Kaitlyn M. Coker