UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

CORBIN COWAN, DAWN COWAN, §
STRATEGIC EQUITY PARTNERS, LLC, §
TRIUMPH TECHNOLOGIES, LLC, §
CAB VENTURES, LLC, JEREMY ENGEL, §
SPARTAN MARKETING & INVESTMENTS, §
LLC, INTELLITECH SOLUTIONS, LLC, §
SOLIDA EQUITY PARTNERS, LLC, AND §
JOSH KIRK, §
§
*Plaintiffs*, §
§
v. § CIVIL ACTION NO. 4:25-cv-04476
§
JAMES TYLER BOYD, §
MIKE BOGGS, PETER D. HATZIPETROS, §
THE EDEN ALLIANCE, LLC, §
ANGELS CODING, LLC, AND §
DAWN BOGGS, §
§
*Defendants*. §

**DEFENDANT MIKE BOGGS'S MOTION TO DISMISS
THE FIRST AMENDED COMPLAINT FOR
FAILURE TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED**

Subject to and without waiving his pending Motion to Compel Arbitration, defendant Mike

Boggs moves this Court to dismiss all claims against him in the First Amended Complaint of

plaintiffs Corbin Cowan, Dawn Cowan, Strategic Equity Partners, LLC, Triumph Technologies,

LLC, Cab Ventures, LLC, Jeremy Engel, Spartan Marketing & Investments, LLC, Intellitech

Solutions, LLC, Solida Equity Partners, LLC, Josh Kirk, Justin Anderson, Jared Guller, Quantum

Life Enterprises, LLC, Rainy Daze, LLC, and Simple Daze, LLC (collectively, "Plaintiffs") for

failure to state a claim upon which relief can be granted pursuant to Federal Rule of Civil Procedure

12(b)(6).

**TABLE OF CONTENTS**

TABLE OF CITATIONS ..................................................................................................... iii

SUMMARY .......................................................................................................................... 1

NATURE AND STAGE OF PROCEEDING ........................................................................ 2

STATEMENT OF ISSUES ................................................................................................... 2

FACTUAL BACKGROUND ................................................................................................ 3

A.     The Mike Boggs Idea. ................................................................................................ 3

B.     The James Boyd "Scheme." ....................................................................................... 3

C.     Boggs's Objective Response To Boyd's Malfeasance. ............................................. 4

D.     Plaintiffs' Allegations Regarding Boggs In The Amended Complaint. .................... 5

ARGUMENT ........................................................................................................................ 6

A.     The Amended Complaint Amplifies Instead Of Cures Improper Group Pleading. ............. 6

B.     Plaintiffs' RICO Claim Should Be Dismissed. ........................................................ 7

C.     Plaintiffs' RICO Conspiracy Claim Should Be Dismissed. .................................... 11

D.     Plaintiffs' Conversion Claim Should Be Dismissed. .............................................. 13

E.     Plaintiffs Have Not Pleaded A Basis To Sue Boggs For Breach Of Fiduciary
       Duty. ........................................................................................................................ 14

F.     Plaintiffs Fail To State A Claim For Unjust Enrichment. ...................................... 15

G.     Plaintiffs' Fraud-Based Claims Fail. ...................................................................... 16

H.     Plaintiffs' Securities And Exchange Act Claim Has Fundamental Structural And
       Factual Flaws. .......................................................................................................... 18

I.     Plaintiffs' Texas Securities Act Claim Should Be Dismissed. ............................... 22

J.     Plaintiffs' Fraud Conspiracy Claim Should Be Dismissed. ................................... 23

K.     This Court Should Dismiss The Claims Against Boggs With Prejudice. ................ 24

CONCLUSION ................................................................................................................... 25

## TABLE OF CITATIONS

**Cases**

*ABC Arbitrage Plaintiffs Group v. Tchuruk*,
  291 F.3d 336 (5th Cir. 2002) ..................................................................................................23

*Abraham v. Singh*,
  480 F.3d 351 (5th Cir. 2007) ..................................................................................................11

*Allstate Ins. Co. v. Benhamou*,
  190 F. Supp. 3d 631 (S.D. Tex. 2016) ....................................................................................10

*Allstate Ins. Co. v. Donovan*,
  No. H-12-0432, 2012 WL 2577546 (S.D. Tex. July 30, 2012) ...............................................15

*Allstate Ins. Co. v. Plambeck*,
  802 F.3d 665 (5th Cir. 2015) ..................................................................................................10

*Alpert v. Riley*,
  No. H-04-CV-3774, 2008 WL 304742 (S.D. Tex. Jan. 31, 2008).......................................7, 8

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009)...................................................................................................................2

*Bank of New York Mellon*,
  No. CV H-16-3238, 2017 WL 3424975 (S.D. Tex. Aug. 9, 2017) .........................................17

*Barnard v. Bank of Amer., N.A. (USA)*,
  No. CV H-05-2589, 2005 WL 8166961 (S.D. Tex. Nov. 15, 2005) ...................................8, 10

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007)..............................................................................................................2, 24

*Benchmark Elec., Inc. v. J.M. Huber Corp.*,
  343 F.3d 719 (5th Cir. 2003) ...............................................................................................3, 19

*Billitteri v. Sec. Am., Inc.*,
  No. 09-CV-1568-F, 2010 WL 6785484 (N.D. Tex. July 26, 2010) ..................................23, 24

*Bircher v. Bank of N.Y. Mellon*,
  No. 12–cv–171, 2012 WL 3245991 (N.D. Tex. Aug. 9, 2012) ...............................................16

*Bittinger v. Wells Fargo Bank NA*,
  No. CIV.A. H-10-1745, 2011 WL 3568206 (S.D. Tex. Aug. 15, 2011) .............................7, 25

*Bradford v. Vento*,
  48 S.W.3d 749 (Tex. 2001)......................................................................................................18

*Calcasieu Marine Nat. Bank v. Grant*,
  943 F.2d 1453 (5th Cir. 1991) ...............................................................................11

*Ceramic Performance Worldwide, LLC v. Motor Works, LLC*,
  No. 3-09-CV-0344-BD, 2010 WL 234804 (N.D. Tex. Jan. 21, 2010) ...................................25

*Chaney v. Dreyfus Service Corp.*,
  595 F.3d 219 (5th Cir. 2010) ...............................................................................12

*Crosswell v. Martinez*,
  120 F.4th 177 (5th Cir. 2024) ...............................................................................10

*Crowe v. Henry*,
  43 F.3d 198 (5th Cir.1995) ...............................................................................12

*D&T Partners, L.L.C. v. Baymark Partners Mgmt., L.L.C.*,
  98 F.4th 198 (5th Cir. 2024) ...............................................................................11

*Davis–Lynch, Inc. v. Moreno*,
  667 F.3d 539 (5th Cir. 2012) ...............................................................................12

*Dawes v. Imperial Sugar Co.*,
  975 F. Supp.2d 666 (S.D. Tex. 2013) ...............................................................................21

*Del Castillo v. PMI Holdings N. Am. Inc.*,
  No. 4:14-CV-3435, 2015 WL 3833447 (S.D. Tex. June 22, 2015)...........................................6

*Dixon v. Wells Fargo Bank, N.A.*,
  No. 3:19-CV-1677-G-BH, 2020 WL 10050726 (N.D. Tex. Jan. 29, 2020) ...........................13

*Dorsey v. Portfolio Equities, Inc.*,
  540 F.3d 333 (5th Cir. 2008) ...............................................................................23

*Dura Pharms., Inc. v. Broudo*,
  544 U.S. 336 (2005)...............................................................................19, 22

*Duzich v. Advantage Fin. Corp.*,
  395 F.3d 527 (5th Cir. 2004) ...............................................................................24

*El Paso Disposal, LP v. Ecube Labs Co.*,
  766 F. Supp. 3d 692 (W.D. Tex. 2025)...............................................................................8

*Fast Capital Mktg., LLC v. Fast Capital LLC*,
  No. CIV. A. H-08-2142, 2008 WL 5381309 (S.D. Tex. Dec. 24, 2008)...............................25

*First Capital Asset Mgmt., Inc. v. Satinwood, Inc.*,
  385 F.3d 159 (2d Cir. 2004)...............................................................................11

iv

*Fortune Production Co. v. Conoco, Inc.*,
52 S.W.3d 671 (Tex.2000)..................................................................................15

*Great Plains Tr. Co. v. Morgan Stanley Dean Witter & Co.*,
313 F.3d 305 (5th Cir. 2002) .............................................................................25

*Green Int'l v. Solis*,
951 S.W.2d 384 (Tex. 1997)...............................................................................13

*Greene v. CitiMortgage, Inc.*,
No. 2:13-CV-219, 2014 WL 948878 (S.D. Tex. Mar. 11, 2014) ............................15

*Hart v. Bayer Corp.*,
199 F.3d 239, 247 (5th Cir. 2000) .......................................................................8

*Highland Crusader Offshore Partners, LP v. LifeCare Holdings Inc.*,
377 F. App'x 422 (5th Cir. 2010) (per curiam) ...................................................24

*H.J. Inc. v. Northwestern Bell Telephone Co.*,
492 U.S. 229 (1989)...........................................................................................11

*Hoatson v. New York Archdiocese*,
No. 05 Civ. 10467(PAC), 2007 WL 431098 (S.D.N.Y. Feb. 8, 2007)......................8

*In re BJ Servs., LLC*,
No. 20-33627, 2023 WL 2311986 (S.D. Tex. Mar. 1, 2023) ................................15

*In re Cogent Energy Services, LLC*,
No. 23-33659, 2024 WL 3770041 (S.D. Tex. Aug. 12, 2024) .........................6, 23

*In re Heartland Payment Sys., Inc. v. Customer Data Sec. Breach Lit'n*,
No. H-10-171, 2011 WL 1232352 (S.D. Tex. Mar. 31, 2011) ..............................15

*In re Marriage of Moncur*,
640 S.W.3d 309 (Tex. App.—Houston [14th Dist.] 2022, no pet.)........................18

*In re Mastercard Intern. Inc.*,
313 F.3d 257 (5th Cir. 2002) .............................................................................10

*In re Uplift RX, LLC*,
667 B.R. 665 (Bankr. S.D. Tex. 2024) ................................................................25

*Inclusive Cmtys. Project, Inc. v. Lincoln Prop. Co.*,
920 F.3d 890 (5th Cir. 2019) ...............................................................................3

*Izadjoo v. Helix Energy Solutions Group, Inc.*,
237 F. Supp.3d 492 (S.D. Tex. 2017) .............................................................19, 21

*Liang v. Peng*,
No. 4:24-cv-2657, 2025 WL 3050177 (S.D. Tex. Sept. 26, 2025)..........................................14

*Lincoln v. Turner*,
874 F.3d 833 (5th Cir. 2017) .................................................................................................2

*Lormand v. U.S. Unwired, Inc.*,
565 F.3d 228 (5th Cir. 2009) ...............................................................................................22

*Matrixx Initiatives, Inc. v. Siracusano*,
563 U.S. 27 (2011)...............................................................................................................20

*Meadows v. Hartford Life Ins. Co.,*
492 F.3d 634 (5th Cir. 2007) ...............................................................................................14

*Meyer v. Cathey*,
167 S.W.3d 327 (Tex. 2005)................................................................................................14

*Mitchell Energy Corp. v. Samson Resources Co.*,
80 F.3d 976 (5th Cir. 1996) .................................................................................................13

*Molina-Aranda v. Black Magic Enterprises, L.L.C.*,
983 F.3d 779 (5th Cir. 2020) .................................................................................................8

*Occidental Petroleum Corp. v. Wells Fargo Bank, N.A.*,
573 F. Supp.3d 1161 (S.D. Tex. 2021) ................................................................................15

*Patterson v. Long Beach Mortg. Co.*,
No. 07–cv–1602, 2009 WL 4884151 (N.D. Tex. Dec. 15, 2009)....................................15–16

*PCS Software, Inc. v. Dispatch Services, Inc.*,
No. CV H-23-108, 2024 WL 3448009 (S.D. Tex. July 16, 2024)...........................................9

*Peel v. cPaperless, Inc.*,
No. 4:23-CV-02417, 2024 WL 5058609 (S.D. Tex. Nov. 8, 2024) ..............................7, 9, 11

*Perales v. Bank of America, N.A.*,
No. H-14-1791, 2014 WL 3907793 (S.D. Tex. Aug. 11, 2014)......................................15, 16

*R2 Invs. LDC v. Phillips*,
401 F.3d 638 (5th Cir. 2005) ...............................................................................19, 20, 23, 24

*Redwood Resort Props., LLC v. Holmes Co. Ltd.*,
No. 3:06-CV-1022-D, 2006 WL 3531422 (N.D. Tex. Nov. 27, 2006) ..................................15

*Schiller v. Physicians Res. Group, Inc.*,
No. CIV.A. 3:97-CV-3158L, 2002 WL 318441 (N.D. Tex. Feb. 26, 2002),
aff'd, 342 F.3d 563 (5th Cir. 2003) ....................................................................................7, 9

*Schott v. Nobilis Health Corp.*,
211 F. Supp.3d 936 (S.D. Tex. 2016) ...............................................................21

*Schouest v. Medtronic*,
92 F. Supp. 3d 606 (S.D. Tex. 2015) ...............................................................17

*Shandong Yinguang Chem. Indus. Joint Stock Co. v. Potter*,
607 F.3d 1029 (5th Cir. 2010) .........................................................................17

*Smith v. MTGLQ Investors, LP*,
2019 WL 13193219 (S.D. Tex. 2019) ..............................................................18

*Southland Sec. Corp. v. INSpire Ins. Solutions, Inc.*,
365 F.3d 353 (5th Cir. 2004) ..............................................................6, 20, 23

*Stephens v. Uranium Energy Corp.*,
No. H-15-1862, 2016 WL 3855860 (S.D. Tex. July 15, 2016) ........................20

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
551 U.S. 308 (2007)....................................................................................20, 21

*Tel-Phonic Services, Inc. v. TBS Intern., Inc.*,
975 F.2d 1134 (5th Cir. 1992) .........................................................................12

*Tilton v. Marshall*,
925 S.W.2d 672 (Tex. 1996)..............................................................................24

*Tornado Bus Co. v. Bus & Coach Am. Corp.*,
No. 3:14-CV-3231-M, 2015 WL 5164731 (N.D. Tex. Sept. 2, 2015) ..............14

*Trendsetter Investors, LLC v. Hyperdynamics Corp.*,
No. H-06-0746, 2007 WL 172627 (S.D. Tex. Jan. 18, 2007)...........................19

*Tuchman v. DSC Commc'ns Corp.*,
14 F.3d 1061 (5th Cir. 1994) .............................................................................8

*United States v. Posada-Rios*,
158 F.3d 832 (5th Cir. 1998) ...........................................................................13

*United States v. Sanders*,
925 F.3d 263 (5th Cir. 2020) ......................................................................12–13

*U.S. ex rel. Briseno v. Hillcroft Medical Clinic Ass'n*,
No. 4:20-cv-02871, 2022 WL 17417178 (S.D. Tex. Dec. 5, 2022) .................17

*Van Loon v. Dep't of the Treasury*,
122 F.4th 549 (5th Cir. 2024) ..........................................................................14

*Van Velzer v. Amegy Bank,*
    713 Fed. Appx. 377 (5th Cir. 2018).................................................................................9

*Verde Minerals, LLC v. Burlington Res. Oil & Gas Co., LP*,
    No. CV 2:16-463, 2017 WL 9535076 (S.D. Tex. June 30, 2017) .........................................8, 9

*VTX Communications, LLC v. AT&T Inc.*,
    No. 7:19-CV-00269, 2020 WL 4465968 (S.D. Tex. Aug. 4, 2020) ......................................16

*W. Texas Nat. Bank v. FEC Holdings, LP*,
    No. MO-11-CV-086, 2013 WL 2158947 (W.D. Tex. May 17, 2013)....................................12

*Whitney Nat'l Bank v. Med. Plaza Surgical Ctr. L.L.P.*,
    No. CIV.A. H-06-1492, 2007 WL 400094 (S.D. Tex. Feb. 1, 2007) .....................................24

*Williams v. Apple Inc.*,
    No. H-19-782, 2019 WL 2057960 (S.D. Tex. May 9, 2019)....................................................15

*Williams v. WMX Techs., Inc.*,
    112 F.3d 175 (5th Cir. 1997) ...........................................................................7, 8, 16, 17, 23

*Willis v. Donnelly*,
    199 S.W.3d 262 (Tex. 2006)................................................................................................18

**Statutes**

15 U.S.C. § 77z-2(c)(1)..............................................................................................................20

15 U.S.C. § 78j(b).................................................................................................................19, 21

15 U.S.C. § 78u-4(b)(1) .............................................................................................................19

15 U.S.C. § 78u-4(b)(2) ..................................................................................................19, 20, 21

15 U.S.C. § 78u-4(b)(4) .............................................................................................................22

15 U.S.C. § 78u-5(c)(1) ..............................................................................................................20

18 U.S.C. § 1962................................................................................................................ *passim*

18 U.S.C. § 1962(b) ...................................................................................................................12

18 U.S.C. § 1962(c) ...............................................................................................................7, 10

18 U.S.C. § 1962(d) ...................................................................................................................11

Tex. Gov't Code § 4008.051 ......................................................................................................22

## Rules

FED. R. CIV. P. 9(b) ................................................................................................ *passim*

FED. R. CIV. P. 12(b)(6) ........................................................................................ *passim*

FED. R. EVID. 201 ...........................................................................................................3

## Other Authorities

S. Rep. No. 91-617...........................................................................................................7

## SUMMARY

This case involves an as-yet unsuccessful technology innovation to profit from incremental discrepancies across over 50 decentralized cryptocurrency exchanges, markets, and platforms. There are victims on both sides of the case caption. Like Plaintiffs, defendant Mike Boggs fell prey to defendant James Boyd, who Plaintiffs accurately allege "maintain[ed] unilateral control over the system's core" and ultimately deceived both investors and associates alike. Pls' Am. Compl., filed March 16, 2026 [Dkt. 42] ("Am. Compl."), ¶¶ 56, 58–59. As Plaintiffs colorfully allege, Boyd "singlehandedly" "weaponized" the technology Boggs conceived, *id.* ¶¶ 57, 95, and now Boyd has skipped town to leave Boggs to clean up Boyd's mess.

Plaintiffs may have actionable civil claims against Boyd, but the Amended Complaint states no viable causes of action against Boggs. Despite thorough and lengthy briefing regarding defects in the Original Complaint and an order to replead, the Amended Complaint exacerbates the fatal defects rather than cures them. For example, allegations about Boggs's specific conduct are obscured by Plaintiffs' rampant use of group pleading, which permeates the Amended Complaint and precludes any ability to decipher which, if any, actionable misconduct was purportedly committed by *Boggs*. Taking the few Boggs-specific allegations in the Amended Complaint as true, Boggs was not directly involved in Boyd's secret computations. According to Plaintiffs, Boggs:

- "Designed" and provided "algorithmic trading logic," *i.e.*, the way the system was *supposed* to function;

- Solicited investors to participate in the system as Boggs designed it;

- "Set up (or directed to be set up) the inception and master wallets" to facilitate Plaintiffs' willing investments; and

- "Assisted" in investor dashboard reporting tools, which tracked an investor's contributions and distributions.

1

Am. Compl. ¶ 17.   None of these actions is inherently deceptive.   The Amended Complaint's factual allegations instead plausibly allege that Boggs was duped by Boyd along with Plaintiffs. The allegations above, even if assumed to be true, therefore, do not state a claim upon which relief can be granted.

## NATURE AND STAGE OF PROCEEDING

Plaintiffs filed this lawsuit on September 19, 2025.   *See* Dkt. 1.   Boggs timely filed a motion to dismiss all claims against it on December 4, 2025, which was Boggs's first appearance.   *See* Dkt. 9 ("1st Motion").   Boggs also moved to compel arbitration, *see* Dkt. 38, and he reserves all related rights.   This Court ordered Plaintiffs to amend their Complaint by March 13, 2026.   *See* Dkt. 41.   Plaintiffs filed the First Amended Complaint on March 16, 2026.   Dkt. 42.   Boggs now seeks to dismiss the Amended Complaint with prejudice under Federal Rule of Civil Procedure 12(b)(6).

## STATEMENT OF ISSUES

1.   Whether Plaintiffs have stated plausible claims against Boggs for federal racketeering (Count One), RICO conspiracy (Count Two), conversion (Count Three), breach of fiduciary duty (Count Four), unjust enrichment (Count Five), fraud (Count Six), fraudulent inducement (Count Seven), fraudulent concealment (Count Eight), violation of Section 10(b) of the U.S. Securities Exchange Act (Count Nine), violation of the Texas Securities Act (Count Ten), or fraud conspiracy (Count Eleven).

**Standard of review:**   To "state a claim upon which relief can be granted" under Rule 12(b)(6), a complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).   A claim has "facial plausibility" when the plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556).   "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*   To withstand a Rule 12(b)(6) motion, a complaint must include "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Lincoln v. Turner*, 874 F.3d 833, 839 (5th Cir. 2017) (quoting *Twombly*, 550 U.S. at 555).   "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557).   The facts alleged in a complaint "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S.

2

at 555).     In a case alleging fraud like this one, Rule 9(b) requires, "[a]t a minimum, . . . allegations of the particulars of time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby." *Benchmark Elec., Inc. v. J.M. Huber Corp.*, 343 F.3d 719, 724 (5th Cir. 2003) (citation and quoting reference omitted).  A court reviewing a motion to dismiss under Rule 12(b)(6) may consider "(1) the facts set forth in the complaint, (2) documents attached to the complaint, and (3) matters of which judicial notice may be taken under Federal Rule of Evidence 201." *Inclusive Cmtys. Project, Inc. v. Lincoln Prop. Co.*, 920 F.3d 890, 900 (5th Cir. 2019).

## FACTUAL BACKGROUND

### A.     The Mike Boggs Idea.

Plaintiffs claim to be wealthy private investors who were attracted to a get-rich-quick scheme in 2024.  *See* Am. Compl. ¶¶ 2, 26–28.  Defendant Mike Boggs, a computer program designer based in Pennsylvania, *id.* ¶ 17, designed an online trading concept and algorithm to (a) survey separate, decentralized cryptocurrency exchanges, markets, and platforms for incremental discrepancies in comparative currency value using Artificial Intelligence and then (b) execute arbitrage trades to capitalize on those disparities.  *See id.* ¶¶ 17, 26, 31.  Scaling these trades across a larger system of cryptocurrency exchanges over long periods of time created the possibility of "predictable profits" through an "automated" system with an accessible online dashboard interface.  *See id.* ¶¶ 31–32.

### B.     The James Boyd "Scheme."

Defendant James Boyd was both the concept's savior and the seed of its destruction.  As an experienced programmer, Boyd brought implementation expertise to Boggs's concept.  Boyd devised and "controlled" an infrastructure to accept investor funds and convert them into blockchain-based "nodes."  *See* Am. Compl. ¶¶ 16, 29.  The stated advantage of this conversion was threefold:  security—once ingested into the system, no human, including Boyd, could access the digital funds; ease of translation across various cryptocurrencies and markets; and cost, as trades involving some cryptocurrencies involve lower fees than others.  *See id.* ¶¶ 26–27.

3

Although Boggs was the initial code developer, the Amended Complaint accurately alleges that "Boggs provided the source code to Boyd," who took it and "implemented additional modifications." *Id.* ¶¶ 57–58.

Unfortunately, after Boggs "verified" that his code was active, "Boyd modified and branched the codebase" by creating a concealed underlayer, which allowed "Boyd to maintain unilateral control over the system's core infrastructure and wallet activity." *Id.* ¶¶ 58–59. Boyd's secret back-end exploitation of the system allowed Boyd to (a) access the secure investor "wallets," over which he had "unilateral control," (b) route funds through other exchange systems to anonymize the funds, and (c) give the appearance of operational returns by recycling and redistributing investor funds to others in a series of microtransactions. *See id.* ¶¶ 59–61.

Boyd's "international Ponzi scheme" took on a life of its own. *Id.* ¶ 3. To feed the ever-cycling system, Boyd hosted "elaborate" investor presentations in Las Vegas to solicit new investors, *id.* ¶ 28, and existing investors re-invested purported profits into the system and paid for servers hosted in Las Vegas. *See id.* ¶ 22. After less than one year, the "scheme" began to unravel and "Boyd turned himself in to federal authorities." *See id.* ¶ 81.

## C.     Boggs's Objective Response To Boyd's Malfeasance.

The knowledge and complicity of Mike Boggs and other non-Boyd defendants in the scheme is in dispute. As Plaintiffs concede, Boggs has consistently maintained that he was not party to Boyd's manipulations of his original concept. *See id.* ¶ 82. Boggs's behavior, as alleged in the Amended Complaint, is consistent with this position. *See, e.g.*, *id.* ¶¶ 58 (Boggs "initially verified" that his original source code was "active"), 30 (Boggs made an effort to add legal formality to the investments through written agreements prepared by an attorney), 33 (same), and 83 (Boggs worked with investors after Boyd's surrender to conduct "forensic analysis"). Boggs's

voluntary appearance in a forum with no demonstrable jurisdiction over him is also indicative of an earnest actor.

Boggs also executed at least one written contract with investors that was prepared by his attorney. *See id.* ¶¶ 30–31. For example, Plaintiff Spartan Marketing & Investments, LLC executed a "QuantumArc Node System User Agreement," which governed Plaintiff's use of the proprietary software algorithm and user account before manipulation by Boyd. *Id.* This plaintiff reaffirmed the contract's terms six times by executing addenda between December 4, 2024 and March 2, 2025. *See* Dkt. 38-2. The Amended Complaint confirms that Plaintiffs perceived that this, and other contracts, legitimized and formalized Plaintiffs' contributions to the arbitrage system, further illustrating Boggs's good faith belief in the venture. *Id.* ¶ 31.[1]

### D.  Plaintiffs' Allegations Regarding Boggs In The Amended Complaint.

Plaintiffs have sued Boggs for every cause of action in the Amended Complaint. Boggs's alleged conduct, however, does not populate every overt act allegation in the Amended Complaint. Conduct exclusively attributed to Boyd—*e.g.*, "singlehandedly" and "alone" possessing administrative keys to investor wallets (Am. Compl. ¶¶ 95, 126(a)), secretly converting investor cryptocurrency into XRP and StealthEx (*id.* ¶ 98), secretly routing cryptocurrency deposits through ChangeNow and StealthEx (*id* ¶¶ 33, 120(a), 120(b)), "unilateral[ly]" controlling the wallets (*id.* ¶¶ 59, 130(e)), and conduct otherwise vaguely attributed to an unnamed collective "Defendants" makes up over 80 percent of Plaintiffs' allegations.

---

[1]    The Amended Complaint's express reliance on this Agreement strengthens Boggs's pending Motion to Compel Arbitration. *See* Dkt. 38 & Dkt. 38-2.

## **ARGUMENT**

The Court should dismiss all eleven claims against Mike Boggs under Rule 12(b)(6).

**A.      The Amended Complaint Amplifies Instead Of Cures Improper Group Pleading.**

As a threshold matter, this Court should dismiss with prejudice the claims against Boggs because the Amended Complaint is "replete with instances of group pleading," which fail to plausibly distinguish Boggs's alleged conduct from an unspecified collective of "Defendants." *Southland Sec. Corp. v. INSpire Ins. Sols., Inc.*, 365 F.3d 353, 385 (5th Cir. 2004). The Amended Complaint redeploys Plaintiffs' group pleading errors from the Original Complaint many times over. Plaintiffs add a minimum of 25 alleged "representations" made by an unnamed group of "Defendants" in the Amended Complaint's background section. Am. Compl. ¶¶ 27, 29, 34, 35, 39, 40, 42, 43, 45, 46, 47, 49, 50, 51, 53, 62, 74, 78, 79, 84, 85, 87, 88, 89. These deliberate pleading choices fail to provide Boggs with fair notice of the allegations against him. *Del Castillo v. PMI Holdings N. Am. Inc.*, No. 4:14-CV-3435, 2015 WL 3833447, at *6 (S.D. Tex. June 22, 2015) ("A complaint does not satisfy the requirements of *Iqbal* and *Twombly* by lumping together all defendants.").

Plaintiffs' deliberate and chronic use of "Defendants" also runs afoul of Rule 9(b)'s requirements to plead claims based on fraud with particularity, further dooming ten of eleven claims against Boggs. *See Southland*, 365 F.3d at 365, 385. For example, Plaintiffs allege that a specific group of defendants committed wire fraud under Count One (including Boggs), *id.* ¶ 91, but they also allege that unnamed "Defendants" committed common law fraud under Count Six, *id.* ¶ 120. This inconsistency creates confusion; it is crucial to identify which defendants made which representations—and whether Boggs was one of them. *See, e.g.*, *In re Cogent Energy Services, LLC*, No. 23-33659, 2024 WL 3770041, at *4 (Bankr. S.D. Tex. Aug. 12, 2024) (dismissing fraud claims with prejudice due to group pleading).

6

Plaintiffs' pleading shows the importance of connecting specific defendants to each representation, as "not all Defendants stand on equal footing." *Peel v. cPaperless, LLC*, No. 4:23-CV-02417, 2024 WL 1119411, at *4, *4 n.10 (S.D. Tex. Mar. 14, 2024). The Amended Complaint expressly alleges that Boyd was the mastermind of the purported scheme. Am. Compl. ¶¶ 55–56, 95. The Court should dismiss Plaintiffs' claims on this basis alone. *See, e.g.*, *Schiller v. Physicians Res. Group, Inc.*, No. CIV.A. 3:97-CV-3158L, 2002 WL 318441, at *5, *5 n.10 (N.D. Tex. Feb. 26, 2002), aff'd, 342 F.3d 563 (5th Cir. 2003); *Bittinger v. Wells Fargo Bank NA*, No. CIV.A. H-10-1745, 2011 WL 3568206, at *6 (S.D. Tex. Aug. 15, 2011).

## B.    Plaintiffs' RICO Claim Should Be Dismissed.

Congress passed RICO in 1970 as part of a comprehensive legislative package aimed at combating the influence of organized crime on interstate commerce. Congress described RICO as "an act designed to prevent 'known mobsters' from infiltrating legitimate businesses." S. Rep. No. 91-617, at 76 (1969). The federal RICO statute provides a private right of action to a person injured by an "enterprise" engaged in a "pattern of racketeering activity." 18 U.S.C. § 1962. Count One specifically alleges a violation of 18 U.S.C. § 1962(c), which makes it illegal "for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt." Count One is an example of over-pleading. This is not a RICO case. The Court should dismiss Count One for three reasons.

First, the RICO allegations in the Amended Complaint fail to meet the applicable pleading requirements. RICO claims resting on fraud allegations, like Plaintiffs', must meet the heightened pleading requirements in Rule 9(b). *See Williams v. WMX Techs., Inc.*, 112 F.3d 175, 177 (5th Cir. 1997); *Alpert v. Riley*, No. H-04-CV-3774, 2008 WL 304742, *13 (S.D. Tex. Jan. 31, 2008).

7

Rule 9(b) requires a plaintiff to allege "the who, what, when, and where." *Williams v. WMX Techs.*, 112 F.3d at 178. Among other requirements, a plaintiff must "specify the particulars of time, place, and contents of the false representations." *Id.* at 179 (citing *Tuchman v. DSC Commc'ns Corp.*, 14 F.3d 1061, 1068 (5th Cir. 1994)). "Anything less fails to provide defendants with adequate notice of the nature and grounds of the claim." *Hart v. Bayer Corp.*, 199 F.3d 239, 247 n.6 (5th Cir. 2000). In cases premised on a fraud theory of liability, this Court has applied Rule 9(b) to every RICO element. *See, e.g.*, *Alpert*, 2008 WL 304742, at *13 (finding failure to state reliance to support RICO claim under Rule 9(b)); *Barnard v. Bank of Amer., N.A. (USA)*, No. CV H-05-2589, 2005 WL 8166961, at *2 (S.D. Tex. Nov. 15, 2005) (finding failure to plead each defendant's specific role in furtherance of the purported RICO scheme under Rule 9(b)); *see also El Paso Disposal, LP v. Ecube Labs Co.*, 766 F. Supp. 3d 692, 703 (W.D. Tex. 2025) (applying Rule 9(b) to all "averments of fraud . . . irrespective of whether [plaintiffs] are bringing a fraud claim.").

When civil damages are sought under RICO for injuries resulting from purported fraud, the plaintiff must also establish proximate cause, which requires a showing of detrimental reliance. *See Molina-Aranda v. Black Magic Enterprises, L.L.C.*, 983 F.3d 779, 784 (5th Cir. 2020); *Verde Minerals, LLC v. Burlington Res. Oil & Gas Co., LP*, No. CV 2:16-463, 2017 WL 9535076, at *11–12 (S.D. Tex. June 30, 2017). The heightened pleading standards in Rule 9(b) are "particularly important" in RICO cases to protect defendants against baseless charges of racketeering, which are expensive to defend and which have "an almost inevitable stigmatizing effect" on named defendants. *See Hoatson v. New York Archdiocese*, No. 05 Civ. 10467(PAC), 2007 WL 431098, at *9 (S.D.N.Y. Feb. 8, 2007).

The allegations in Count One regarding Boggs do not meet Plaintiffs' pleading burden. For example, although Plaintiffs name Boggs as a member of a putative "association-in-fact enterprise" in a superficial, introductory paragraph, Am. Compl. ¶ 92, only one of the purportedly predicate acts of wire fraud and money laundering mentions Boggs by name. *See id.* ¶ 98 (bullet 1). Plaintiffs otherwise allege that Boyd made specific misrepresentations, *id.* (bullet 2), and that other unnamed "Defendants" engaged in other unspecific "exemplar acts," *id.*, but Count One is devoid of particulars regarding the time, place, and contents of any false representations or *why* these representations were false. Moreover, to the extent Plaintiffs intend to rely on over twenty newly added "representations" sprinkled throughout the Amended Complaint, this Court has already rejected attempts to look beyond a count to piece together plausible facts or the requisite particulars required under Rule 9(b). *PCS Software, Inc. v. Dispatch Services, Inc.*, No. CV H-23-108, 2024 WL 3448009 (S.D. Tex. July 16, 2024) ("[D]isjointed" allegations from different parts of a pleading cannot cure insufficiently specific allegations in each "causes of action" section); *see also Schiller*, 2002 WL 318441, at *5 (dismissing claims for failure to satisfy Rule 9(b), noting that the "complaint represents a labyrinth, requiring the court to piece together the elements of the claims from allegations made all over the complaint.").

Plaintiffs also fail to allege reliance on words or deeds perpetrated by *any defendant*, much less by Boggs. These pleading shortcomings alone warrant dismissal. *See, e.g.*, *Van Velzer v. Amegy Bank*, 713 Fed. Appx. 377, 378 (5th Cir. 2018). While the Amended Complaint now contains the word "reliance," *e.g.*, Am. Compl. ¶¶ 36, 37, these allegations are devoid of specifics, rely on group pleading, and otherwise fail to link detrimental reliance and Count One. *See Peel*, 2024 WL 1119411, at *4, *4 n.10 (RICO and fraud claims relying on group pleading failed to satisfy Rule 9(b)); *Verde Minerals,* 2017 WL 9535076, at *10 (same).

9

Second, Plaintiffs' factual allegations, when taken as true, disprove the conclusory statement in Count One that Boggs was a member of an association-in-fact enterprise. Am. Compl. ¶ 92. To establish an association-in-fact enterprise capable of supporting a Section 1962(c) RICO claim, a plaintiff must plead evidence that "various associates function as a continuing unit" for a "common purpose." *Allstate Ins. Co. v. Plambeck*, 802 F.3d 665, 673 (5th Cir. 2015) (citation omitted). Under Rule 9(b), a plaintiff must "specifically allege how each act of fraud furthered the fraudulent scheme, and how each defendant participated in the fraud." *Barnard*, 2005 WL 8166961, at *1 (citations omitted).

This is not a mob case. Each aspect of the "course of conduct" alleged in Count One can be tied to actions undertaken by a single defendant: James Boyd. Am. Compl. ¶ 95. No allegations in Count One explain how Boggs "furthered the fraudulent scheme," and the claim that Boggs provided the code that "*Boyd* later branched and weaponized" does not plausibly allege that Boggs knew of or otherwise participated in Boyd's manipulation. *Id.* (emphasis added). Regardless, simply providing services that happen to benefit a purported RICO enterprise, even "integral" goods and services, will not subject an individual to RICO liability absent participation in a "common purpose." *Allstate Ins. Co. v. Benhamou*, 190 F. Supp. 3d 631, 655 (S.D. Tex. 2016). Without a plausible allegation of concerted action, dismissal of the RICO claim is appropriate. *See, e.g.*, *Crosswell v. Martinez*, 120 F.4th 177, 185 (5th Cir. 2024).

Third, the series of events alleged in the Complaint do not qualify as a RICO "pattern" under federal law. A pattern of racketeering activity requires a demonstration that the pleaded racketeering predicate acts "amount to or pose a threat of continued criminal activity." *In re Mastercard Intern. Inc.*, 313 F.3d 257, 261–62 (5th Cir. 2002). To ensure that RICO does not "apply to ordinary business disputes," courts therefore require evidence of either ongoing, open-

10

ended activity or of terminated conduct that endured for a "substantial period." *H.J. Inc. v. Northwestern Bell Telephone Co.*, 492 U.S. 229, 241 (1989); *Calcasieu Marine Nat. Bank v. Grant*, 943 F.2d 1453, 1463 (5th Cir. 1991) ("Congress . . . did not intend to extend RICO to every fraudulent commercial transaction"). Some courts have set a benchmark for long-term, closed-end conduct at least two years. *See First Capital Asset Mgmt., Inc. v. Satinwood, Inc.*, 385 F.3d 159, 181 (2d Cir. 2004); *see also Abraham v. Singh*, 480 F.3d 351, 356 (5th Cir. 2007) (reversing motion to dismiss RICO claim involving "at least a two-year scheme"). The Fifth Circuit recently held, however, that no continuous enterprise existed in a series of "over 100 predicate acts" of alleged mail and wire fraud, money laundering, and other crimes over a period of four years. *See D&T Partners, L.L.C. v. Baymark Partners Mgmt., L.L.C.*, 98 F.4th 198, 207 (5th Cir. 2024).

The scheme alleged in the Amended Complaint falls short of either of these metrics. Plaintiffs tout that the purported pattern of racketeering activity in this case comprised "hundreds of discrete wire transmissions and laundering acts," Am. Compl. ¶ 99, but those transactions: (a) were largely the product of "automated," AI-driven microtransactions, *see, e.g.*, *id.* ¶ 60; (b) spanned less than one year, *see id.* ¶ 98; (c) appear to have involved a closed group of investors, joined as plaintiffs to this action; and (d) have no reasonable likelihood of continuing, as the person "directing" and "singlehandedly controlling" the alleged scheme turned himself into law enforcement and is nowhere to be found. *See id.* ¶¶ 3, 81. Plaintiffs cannot support a RICO claim on the allegations in Count One. *See, e.g.*, *Peel*, 2024 WL 5058609, at *16.

## C.    Plaintiffs' RICO Conspiracy Claim Should Be Dismissed.

Count Two alleges that Boggs and four other defendants are liable under 18 U.S.C. § 1962(d) for allegedly conspiring to violate one of the substantive provisions of the RICO statute. This requires a two-part showing: (1) two or more persons agreed to commit a substantive RICO offense, and (2) the defendant knew of and agreed to the overall objective of the RICO offense.

11

*See Davis–Lynch, Inc. v. Moreno*, 667 F.3d 539, 551 (5th Cir. 2012) (citing *Chaney v. Dreyfus Service Corp.*, 595 F.3d 219, 239 (5th Cir. 2010)).  To survive a motion to dismiss, "a RICO civil conspiracy complaint, at the very least, must allege specifically such an agreement" to satisfy prong two.  *Tel-Phonic Services, Inc. v. TBS Intern., Inc.*, 975 F.2d 1134, 1140 (5th Cir. 1992).  The Amended Complaint falls short of these requirements in two respects.

First, Plaintiffs must meet the heightened pleading standards of Rule 9(b) to state a plausible RICO conspiracy claim.  In *Crowe v. Henry*, 43 F.3d 198, 205 (5th Cir. 1995), the Fifth Circuit affirmed a Rule 12(b)(6) dismissal of mere "conclusory" allegations of a conspiratorial agreement to engage in conduct prohibited under 18 U.S.C. § 1962(b).  *See also W. Texas Nat. Bank v. FEC Holdings, LP*, No. MO-11-CV-086, 2013 WL 2158947, at *8 (W.D. Tex. May 17, 2013).  Count Two, however, fails again to plead with particularity.  The Amended Complaint summarily states:  "Each Defendant understood the scope of the unlawful scheme and joined in it to achieve its fraudulent purpose."  Am. Compl. ¶ 103.  But *who* reached this understanding? when? and what is the "scope of the unlawful scheme"?  Likewise, the alleged "[o]vert acts" of RICO conspiracy nowhere implicate Boggs and otherwise lack the information required under Rule 9(b).  The Amended Complaint nowhere identifies which of collective "Defendants" transported investors to Las Vegas, *id.* ¶ 28, or who specifically retained Peter Hatzipetros, ¶ 18, nor does it specify who attended the "staged demonstrations" in Las Vegas or the basis for Plaintiffs' assumption that Hatzipetros's legal work, much less his mere retention, was fraudulent.

Second, the Amended Complaint does not even try to plead a "meeting of the minds" or specific intent to engage in prohibited racketeering activity, much less support such allegations with plausible facts.  While a RICO conspiracy agreement can be pleaded through circumstantial evidence, it cannot be "lightly inferred."  *United States v. Sanders*, 925 F.3d 263, 273–74 (5th Cir.

12

2020). A person cannot be held liable "merely by evidence that he associated with other . . . conspirators or by evidence that places the defendant in a climate of activity that reeks of something foul." *United States v. Posada-Rios*, 158 F.3d 832, 858 (5th Cir. 1998). Plaintiffs' allegations at most place Boggs "at the scene" of the alleged misconduct, which is not enough. *See id.* The Court should dismiss such baldly deficient allegations and Count Two.

**D.     Plaintiffs' Conversion Claim Should Be Dismissed.**

To state a claim for conversion, the Amended Complaint must plausibly allege: (1) Plaintiffs owned, possessed, or had the right to immediate possession of property; (2) the property was personal property; (3) Boggs wrongfully exercised dominion or control over the property; and (4) Plaintiffs suffered injury. *See Green Int'l v. Solis*, 951 S.W.2d 384, 391 (Tex. 1997). Count Three should be dismissed as to Boggs because Plaintiffs cannot establish the second element.

The only property at issue in the Amended Complaint is virtual money; specifically, "cryptocurrency and other digital assets" initially generated by Plaintiffs. Am. Compl. ¶ 108. For money to qualify as specific chattel for purposes of a conversion claim, it must be "intended to be segregated, either substantially the form in which it was received or as an intact fund." *Mitchell Energy Corp. v. Samson Resources Co.*, 80 F.3d 976, 984 (5th Cir. 1996). "[O]ld coins" are an example of money capable of conversion. *Id.*

The digital assets at issue in the Amended Complaint cannot qualify as money capable of being converted for two reasons. One: A key feature of the "automated" trading system in which Plaintiffs willingly contributed funds was that "funds would be pooled" in the aggregate—*not segregated*. Am. Compl. ¶¶ 19, 35, 40, 44, 95, 120(c), 123(b). Courts have dismissed conversion claims on this basis alone. *See, e.g.*, *Dixon v. Wells Fargo Bank, N.A.*, No. 3:19-CV-1677-G-BH, 2020 WL 10050726, at *5 (N.D. Tex. Jan. 29, 2020), report and recommendation adopted, No.

13

3:19-CV-1677-G-BH, 2020 WL 10050712 (N.D. Tex. Feb. 3, 2020); *Tornado Bus Co. v. Bus & Coach Am. Corp.*, No. 3:14-CV-3231-M, 2015 WL 5164731, at *6 (N.D. Tex. Sept. 2, 2015).

Two: The Amended Complaint adds additional allegations confirming that the structure of the transactions at issue— "where money was routed through anonymous exchanges and circular wallets"—rendered the digital assets untraceable.  Am. Compl. ¶¶ 2, 65, 67, 69, 71, 76, 126(b). "A cause of action for conversion fails when the plaintiff cannot trace the exact funds claimed to be converted." *Tornado Bus*, 2015 WL 5164731, at *6 (internal quotations omitted).  Courts have appropriately found that pooled crypto assets are not easily traceable, *see Van Loon v. Dep't of the Treasury*, 122 F.4th 549, 557 (5th Cir. 2024), and are otherwise incapable of forming the basis of a conversion claim.  *See, e.g.*, *Liang v. Peng*, No. 4:24-cv-2657, 2025 WL 3050177, at *7–8 (S.D. Tex. Sept. 26, 2025).

**E.      Plaintiffs Have Not Pleaded A Basis To Sue Boggs For Breach Of Fiduciary Duty.**

Plaintiffs must establish that Plaintiffs and Boggs had a fiduciary relationship to sustain Count Four.  *See Meadows v. Hartford Life Ins. Co.,* 492 F.3d 634, 639 (5th Cir. 2007).  To create a confidential relationship "in a business transaction," the relationship "must exist prior to, and apart from, the agreement forming the basis of the suit."  *Id.*  Whether such a duty exists is a question of law.  *See Meyer v. Cathey*, 167 S.W.3d 327, 330 (Tex. 2005).

The Amended Complaint does not plausibly allege that Boggs had any relationship with Plaintiffs beyond an arms-length business connection.  Am. Compl. ¶ 112 (emphasis added).  This conclusory allegation fails as a matter of law because the mere receipt of funds does not establish a fiduciary duty, particularly where Boggs did not exercise any control or discretionary authority over those funds—*Boyd* did.  *Id.* ¶¶ 130(e), 140(b).  Further, the Amended Complaint disclaims the existence of a fiduciary duty by describing the relationships as merely contractual.  *E.g.*, *id.* ¶¶ 30 (QuantumArc Agreement "govern[ed] participation in the cryptocurrency arbitrage investment

14

program) and 98 ("Defendants solicited additional investor funds through contracts").  This Court recently dismissed a similar claim for breach of fiduciary duty with prejudice under Rule 12(b)(6). *See Occidental Petroleum Corp. v. Wells Fargo Bank, N.A.*, 573 F. Supp.3d 1161 (S.D. Tex. 2021); *see also, e.g.*, *In re Heartland Payment Sys., Inc. v. Customer Data Sec. Breach Lit'n*, No. H-10-171, 2011 WL 1232352, at \*19–21 (S.D. Tex. Mar. 31, 2011).

### F.    Plaintiffs Fail To State A Claim For Unjust Enrichment.

Count Five should be dismissed with respect to Boggs for two reasons.  First, even if the Court were to recognize unjust enrichment as a cause of action, which Boggs disputes, *see Williams v. Apple Inc.*, No. H-19-782, 2019 WL 2057960, at \*5 (S.D. Tex. May 9, 2019); *see also Redwood Resort Props., LLC v. Holmes Co. Ltd.*, No. 3:06-CV-1022-D, 2006 WL 3531422, at \*9 (N.D. Tex. Nov. 27, 2006), Plaintiffs' pleading would still need to articulate a factual basis for equitable relief.  *See Allstate Ins. Co. v. Donovan*, No. H-12-0432, 2012 WL 2577546, at \*18 (S.D. Tex. July 30, 2012).  The Amended Complaint, however, only makes superficial conclusory allegations.  Am. Compl.  ¶ 116.  Such superficial claims "must be dismissed pursuant to Rule 12(b)(6)."  *Allstate Ins. v. Donovan*, 2012 WL 2577546, at \*18; *see also In re BJ Servs., LLC*, No. 20-33627, 2023 WL 2311986, at \*5 (S.D. Tex. Mar. 1, 2023); *Greene v. CitiMortgage, Inc.*, No. 2:13-CV-219, 2014 WL 948878, at \*4 (S.D. Tex. Mar. 11, 2014).

Second, Plaintiffs have no basis for recovery under a quasi-contract theory because the Amended Complaint alleges that an express contract covers the parties' dispute.  Unjust enrichment claims "are predicated on the absence of an express contract controlling the circumstances." *Perales v. Bank of America, N.A.*, No. H-14-1791, 2014 WL 3907793, at \*4 (S.D. Tex. Aug. 11, 2014) (citing *Fortune Production Co. v. Conoco, Inc.*, 52 S.W.3d 671, 683 (Tex. 2000)).  "[T]here can be no recovery for unjust enrichment under a quasi-contract or contract implied-in-law theory when a valid, express contract covers the subject matter of the parties'

15

dispute." *Patterson v. Long Beach Mortg. Co.*, No. 07–cv–1602, 2009 WL 4884151, at *8 (N.D. Tex. Dec. 15, 2009). New allegations in the Amended Complaint confirm that the "QuantumArc Node System User Agreement" "govern[ed] participation in the cryptocurrency arbitrage investment program" and that "Defendants solicited additional investor funds through contracts." Am. Compl. ¶¶ 30–31, 98. Therefore, because one or more express contracts govern, any claim for unjust enrichment against Boggs fails and must be dismissed. *See Perales*, 2014 WL 3907793, at *4; *Bircher v. Bank of N.Y. Mellon*, No. 12–cv–171, 2012 WL 3245991, at *6 (N.D. Tex. Aug. 9, 2012).

### G.    Plaintiffs' Fraud-Based Claims Fail.

Counts Six, Seven, and Eight plead causes of action for common law fraud, "fraudulent inducement," and "fraudulent concealment," respectively. These counts do not describe actionable fraud by Boggs and are not pleaded with particularity under Rule 9(b), as Plaintiffs (again) fail to "specify the particulars of time, place, and contents of the false representations." *Williams v. WMX Techs.*, 112 F.3d at 179. Rule 9(b) cannot tolerate group allegations, which is precisely how Plaintiffs plead each of these claims. *VTX Communications, LLC v. AT&T Inc.*, No. 7:19-CV-00269, 2020 WL 4465968, at *29 (S.D. Tex. Aug. 4, 2020). Boggs previously noted this defect, *see* 1st Motion at 15–19, yet the Amended Complaint changes *none* of the allegations in Counts Six, Seven, and Eight. Am. Compl. ¶¶ 119–27. While Plaintiffs added new "representations" outside these counts, these are allegations attributed to a collective "Defendants." In short, the Amended Complaint is even more deficient than the Original Complaint.

Count Six also should be dismissed because, while Plaintiffs identify a single specific alleged misrepresentation by Boggs in Paragraph 120(a), Plaintiffs plead fraudulent intent, reliance, and causation in a conclusory way: "Defendants knew" these statements were false and "Plaintiffs reasonably relied on these misrepresentations in investing millions of dollars." *See* Am.

16

Compl. ¶ 121.  Such allegations are insufficient.  *See Bank of New York Mellon*, No. CV H-16-3238, 2017 WL 3424975, at *13 (S.D. Tex. Aug. 9, 2017); *U.S. ex rel. Briseno v. Hillcroft Medical Clinic Ass'n*, No. 4:20-cv-02871, 2022 WL 17417178, at *4 (S.D. Tex. Dec. 5, 2022); *Shandong Yinguang Chem. Indus. Joint Stock Co. v. Potter*, 607 F.3d 1029, 1033 (5th Cir. 2010).  The same result is warranted here.

The Amended Complaint alleges *only one* purported misrepresentation by Boggs in Count Seven: a purported claim by "Boyd and Boggs" in July 2024 that the proprietary arbitrage engine they were marketing had been "audited" and had "never lost principal."  Am. Compl. ¶ 123(a).  Again, the allegation omits key information required by Rule 9(b), including which defendant authored which alleged statement, what information was published, who heard the statement(s), where the statement(s) occurred, when Plaintiffs discovered the alleged falsity of the statement(s), and whether and to what extent Plaintiffs relied on the alleged statement(s).  This missing information is not academic.  For example, based on a fair reading of Paragraph 123(a) alone, Boggs may be entitled to judgment as a matter of law with respect to falsity:  Plaintiffs allege that "Boyd and Boggs claimed that their proprietary arbitrage engine had been 'audited',"" and then concede in the same sentence that "Defendants had . . . pass[ed] audits."  *Id.* ¶ 123(a).  More particular allegations are important to determine whether the purported statement was true or not.  Plaintiffs' sloppiness is fatal to Count Seven at this stage of the case.  *See Williams v. WMX Techs.*, 112 F.3d at 179; *see also, e.g.*, *Schouest v. Medtronic*, 92 F. Supp. 3d 606, 611 (S.D. Tex. 2015).

Finally, Count Eight should be dismissed both as a matter of pleading deficiency and as a matter of law.  First, the Amended Complaint is woefully vague with respect to the who, what, when, and where of any purported omission.  For example, it is improper for Plaintiffs to collectively allege that "Defendants" concealed six very different enumerated suppositions.  The

17

Amended Complaint establishes that Boggs had no role in Boyd's secret plan to "route[] [funds] though ChangeNow and StealthEx into Privacy Tokens," Am. Compl. ¶ 126(b), so how could Boggs be one of the "Defendants" who "concealed" that information?  Plaintiffs again fall short of their Rule 9(b) obligations.  *See Smith v. MTGLQ Investors, LP*, 2019 WL 13193219, at \*3 (S.D. Tex. 2019).

Second, Plaintiffs allege no facts to show Boggs had a duty to disclose the omitted facts to Plaintiffs, a required element of this claim.  *See Bradford v. Vento*, 48 S.W.3d 749, 754–55 (Tex. 2001).  Whether a duty to disclose exists is a question of law.  *Id.* at 755.  Such a duty can arise from (a) a fiduciary or other special relationship, (b) discovery of new information that makes an earlier representation misleading or untrue, (c) a partial disclosure creating a false impression, or (d) voluntary disclosure of some information in a way that requires disclosure of the whole truth. *See In re Marriage of Moncur*, 640 S.W.3d 309, 317–18 (Tex. App.—Houston [14th Dist.] 2022, no pet.).  As discussed for Count Four, however, Plaintiffs cannot plausibly plead such a duty exists on the part of Boggs vis-à-vis Plaintiffs.  Plaintiffs' conclusory allegation that "Defendants" had a duty because they "accepted" and "managed" funds for investment actually belies the existence of a duty because it illustrates nothing more than an arms-length business relationship. Am. Compl. ¶ 126.  Because Texas law presumes no duty exists between the parties to a potential business transaction unless a separate and independent fiduciary duty was already in place, this Court should dismiss Count Eight.  *See Willis v. Donnelly*, 199 S.W.3d 262, 277 (Tex. 2006).

## H.    Plaintiffs' Securities And Exchange Act Claim Has Fundamental Structural And Factual Flaws.

Count Nine purports to state a claim under Section 10(b) of the Securities and Exchange Act of 1934, 15 U.S.C. § 78j(b), which requires a plaintiff to allege: (1) a material misrepresentation, (2) scienter, (3) a connection between the misrepresentation or omission and

18

the purchase or sale of a security, (4) reliance on the misrepresentation or omission, (5) economic loss, and (6) loss causation." *Izadjoo v. Helix Energy Solutions Group, Inc.*, 237 F. Supp.3d 492, 506 (S.D. Tex. 2017) (citing *R2 Invs. LDC v. Phillips*, 401 F.3d 638, 641 (5th Cir. 2005)).  A plaintiff must clear two procedural hurdles to adequately plead these elements.  First, the heightened pleading standards in Rule 9(b) apply to Section 10(b) claims with the same force as fraud-based claims.  *See Izadjoo*, 347 F. Supp.3d at 506–07 (citing *Benchmark Electronics*, 343 F.3d at 724).  Second, the Private Securities Litigation Reform Act of 1995 ("PSLRA") imposes additional procedural requirements to deter frivolous and meritless securities claims at the outset of litigation.  *See* 15 U.S.C. § 78u-4(b)(2).  "A district court must dismiss a securities-fraud claim failing to satisfy either the PSLRA's pleading requirements or those of Rule 9(b)."  *Trendsetter Investors, LLC v. Hyperdynamics Corp.*, No. H-06-0746, 2007 WL 172627, at *12 (S.D. Tex. Jan. 18, 2007) (citation omitted).  Plaintiffs utterly fail to meet these procedural burdens.  Count Nine should be dismissed for four reasons.

First, the Amended Complaint's allegations of purportedly material misrepresentations are inadequate.  Vague, unspecific, blanket, or catchall allegations will not survive Rule 9(b) and the PSLRA's heightened pleading requirements.  *See* 15 U.S.C. § 78u-4(b)(1); *Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 345 (2005).  This stringent pleading requirement is in place, in part, because, without more detail about, *inter alia*, the content and date of alleged representations, a defendant cannot determine, for example, whether the PSLRA's statutory safe harbor for forward-looking statements is in play.  *See* 15 U.S.C. § 77z-2(c)(1); 15 U.S.C. § 78u-5(c)(1); *Southland*, 365 F.3d at 371.  Courts pay even closer attention when, as here, a plaintiff alleges that a defendant omitted material information; under Section 10(b) and the PLSRA, fraud by omission requires a plaintiff to sufficiently allege "a substantial likelihood that the disclosure of the omitted fact would

19

have been viewed by the reasonable investor as having significantly altered the 'total mix' of information made available." *Matrixx Initiatives, Inc. v. Siracusano*, 563 U.S. 27, 38 (2011). A plaintiff must not only plead why a statement is allegedly incomplete, but "why that incompleteness makes the statement misleading or untrue." *R2 Invs.*, 401 F.3d at 642.

Plaintiffs' allegations do not clear these hurdles. Plaintiffs vaguely allege that five defendants, including two limited liability companies, "made untrue statements of material fact and omitted to state material facts necessary to make the statements made not misleading." Am. Compl. ¶ 129. The next paragraph promises to elaborate ("Specifically, . . ."), then lists five categories of purported statements or omissions without dates, who spoke, who heard, or how the statements or actions were made, much less the reason why Plaintiffs allege the statements to be misleading or what impact the allegedly omitted information would have had on a "reasonable investor." *Id.* ¶ 130. This Court has dismissed claims where pleaded facts such as Plaintiffs are "too conclusory and speculative." *See, e.g.*, *Stephens v. Uranium Energy Corp.*, No. H-15-1862, 2016 WL 3855860, at *21 (S.D. Tex. July 15, 2016). The same outcome is warranted here.

Second, Plaintiffs' scienter allegations are almost insultingly inadequate. The PSLRA requires a complaint to allege, with particularity, facts that give rise to a strong inference that a defendant acted with the required state of mind. *See* 15 U.S.C. § 78u-4(b)(2); *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 321 (2007). Group pleading is not permitted to establish scienter. *Southland*, 365 F.3d at 365. While courts consider allegations in the complaint as a whole to determine if scienter is established, *Tellabs,* 551 U.S. at 322-23, the PSLRA requires specific allegations of facts "with respect to *each* act or omission alleged." *Id.* at 363 (emphasis in original).

Plaintiffs one-sentence scienter allegation in Paragraph 130(f) is conclusory, fails to provide any required Rule 9(b) particulars, and relies on impermissible group pleading. Looking at the Amended Complaint as a whole does not solve Plaintiffs' scienter problem because the new allegations in the factual background are not attributed to any particular defendant, flouting this jurisdiction's requirement to "distinguish among the defendants and allege each one's role, intent, and knowledge." *Dawes v. Imperial Sugar Co.*, 975 F. Supp.2d 666, 690–91 (S.D. Tex. 2013). This Court has rejected claims that alleged such thin to nonexistent scienter allegations. *See, e.g.*, *Izadjoo*, 237 F. Supp.3d at 514; *Dawes*, 975 F. Supp.2d at 692; *Schott v. Nobilis Health Corp.*, 211 F. Supp.3d 936, 956–57 (S.D. Tex. 2016). Count Nine should join that list.

Third, even if Count Nine was sufficiently pleaded, Plaintiffs' scienter statements are not plausible under the rubric set forth in *Tellabs*. To determine whether pleaded facts give rise to a "strong inference" of scienter, the Supreme Court requires the Court to "consider plausible, nonculpable explanations for the defendant's conduct, as well as inferences favoring the plaintiff." *Tellabs*, 551 U.S. at 324. A Section 10(b) claim will only "survive" if "a reasonable person would deem the inference of scienter cogent and at least as compelling as any opposing inference one could draw from the facts alleged." *Id.* "[O]missions and ambiguities count against inferring scienter." *Id.* at 326.

The Amended Complaint provides far greater evidence that Boggs acted *without* culpability than the bald conclusory allegation in Paragraph 130(f). For example, Plaintiffs allege that Boggs "initially verified" that his original source code was "active" before Boyd took control of the infrastructure. *See* Am. Compl. ¶ 58. If Boggs was in on Boyd's plan, why would he risk exposing the plan in this way? Likewise, Plaintiffs allege that Boggs made an effort to add legal formality to the investments through written agreements prepared by an attorney. *Id.* ¶¶ 30–31.

21

The last thing a covert fraudster would want to do, though, is invite a lawyer to examine records. Further, Plaintiffs allege that, after Boyd's scheme came to light, Boggs worked with investors to conduct "forensic analysis." *Id.* ¶ 83. When these facts are balanced against the conjecture of intent in Count Nine and the "omissions and ambiguities" put forth by Plaintiffs, the Court has no basis to draw a cogent inference of scienter.

Fourth, Plaintiffs' one-sentence allegation to plead loss causation is inadequate. Under the PSLRA, the plaintiff bears the burden of proving that the conduct of each defendant "caused the loss for which the plaintiff seeks to recover damages." 15 U.S.C. § 78u-4(b)(4); *Dura*, 544 U.S. at 346. The Fifth Circuit requires Plaintiffs to allege either (1) a "facially plausible causal relationship between the fraudulent statements or omissions and plaintiff's economic loss" or (2) "enough facts to give rise to a reasonable hope or expectation that discovery will reveal evidence of the . . . elements of loss causation." *Lormand v. U.S. Unwired, Inc.*, 565 F.3d 228, 239 (5th Cir. 2009). Once again, the Amended Complaint bears no resemblance to this standard, as Plaintiffs' entire loss causation allegation in Count Nine is a single sentence infected with group pleading, bald generality, and zero facts of a plausible causal connection between the matters in the preceding paragraphs and unspecified damages. Am. Compl. ¶ 131. Count Nine should be dismissed with prejudice for these reasons.

## I.    Plaintiffs' Texas Securities Act Claim Should Be Dismissed.

Count Ten alleges various general violations of the Texas Securities Act ("TSA"). Tex. Gov't. Code § 4008.051. The Fifth Circuit has held that TSA claims brought in federal court must meet the heightened pleading requirements of Federal Rule of Civil Procedure 9(b). *Williams v. WMX Techs.*, 112 F.3d at 177; *see also Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333, 338–39 (5th Cir. 2008). The Amended Complaint falls short of this standard with respect to Boggs in at least two respects.

One, Plaintiffs' TSA allegations are not sufficiently specific under Rule 9(b).  Like fraud claims, a plaintiff alleging a TSA violation must specifically plead the "who, what, when, where, and how" of any allegedly material misstatements and omissions.  *ABC Arbitrage Plaintiffs Group v. Tchuruk*, 291 F.3d 336, 350 (5th Cir. 2002); *Dorsey*, 540 F.3d at 339.  Here, however, Plaintiffs only plead generally that "Defendants misrepresented" a short list of alleged "material facts."  Am. Compl. ¶ 136.  This single paragraph does not identify "who" made the alleged misrepresentations, "when" these alleged misrepresentations were made, "where" they were made, "to whom" they were made, and "how" they were made.  *See, e.g.*, *Billitteri v. Sec. Am., Inc.*, No. 09-CV-1568-F, 2010 WL 6785484, at *8 (N.D. Tex. July 26, 2010); *R2 Invs.*, 2003 WL 22862738, at *7.

Two, Plaintiffs' TSA allegations also suffer from inappropriate group pleading, even after Boggs put Plaintiffs on notice of this defect.  1st Motion at 24.  There are five defendants listed in Plaintiffs' Amended Complaint.  *See* Am. Compl. ¶¶ 16–20.  Yet, the Amended Complaint provides no clarity regarding which of the "Defendants" made alleged misrepresentations to which plaintiff, including when they were made, where they were made, how they were made, and why they are misleading.  *See id.* ¶ 99.  "[A]llegations contained in the Complaint against the 'defendants' as a group [are not] properly imputable to any particular defendant unless the connection between the individual defendant and the allegedly fraudulent statement is specifically pleaded."  *Southland*, 365 F.3d at 365.  Courts have dismissed Texas Securities Act claims under Rule 12(b)(6) for such pleading defects.  *See, e.g.*, *In re Cogent*, 2024 WL 3770041, at *6–7; *Billitteri*, 2010 WL 6785484, at *8; *R2 Invs.*, 2003 WL 22862738, at *7.  Count Ten should be dismissed for the same reason.

## J.    Plaintiffs' Fraud Conspiracy Claim Should Be Dismissed.

Finally, although Plaintiffs expressly list Boggs as a defendant purportedly liable for "Civil Conspiracy to Commit Fraud," Am. Compl. ¶ 141, Count Eleven should be dismissed with respect

23

to Boggs for two reasons.  First, Plaintiffs' conspiracy cause of action is "derivative" of their fraud claims.  *Highland Crusader Offshore Partners, LP v. LifeCare Holdings Inc.*, 377 F. App'x 422, 428 (5th Cir. 2010) (per curiam) (citing *Tilton v. Marshall*, 925 S.W.2d 672, 681 (Tex. 1996)). Because they have failed to state a claim for fraud, Plaintiffs have failed to state a claim for conspiracy to commit fraud.

Second, the pleading standards of *Twombly* and Rule 9(b) apply to pleading a state law claim of conspiracy to commit fraud with the same force as a claim of fraud.  *See Williams v. WMX Techs.*, 112 F.3d at 178–79.  Here, neither the fraud claim nor the conspiracy claim is pleaded adequately under Rule 9(b).  Count Eleven is pleaded in three short numbered paragraphs.  Am. Compl. ¶¶ 140–43.  Paragraph 142 includes five summary "overt acts" subparagraphs, but the Count still fails to (a) allege, much less identify with specificity, any representations by Boggs or (b) allege any knowledge by Boggs of falsity or deception.  Plaintiffs also fail to allege any facts supporting a meeting of the minds on the part of Boggs sufficient to state this claim.  *See Duzich v. Advantage Fin. Corp.*, 395 F.3d 527, 530 (5th Cir. 2004).  This Court has dismissed fraud conspiracy claims under similar circumstances.  *See, e.g.*, *Whitney Nat'l Bank v. Med. Plaza Surgical Ctr. L.L.P.*, No. CIV.A. H-06-1492, 2007 WL 400094, at *5 (S.D. Tex. Feb. 1, 2007).

## K.    This Court Should Dismiss The Claims Against Boggs With Prejudice.

This is the second time Boggs has raised the pleading deficiencies described above. Despite full briefing and an opportunity to replead, the Amended Complaint failed to cure these defects.  Courts have discretion to dismiss claims with prejudice when amendment would be futile or based on unsuccessful efforts to cure pleading deficiencies.  *See Bittinger* 2011 WL 3568206, at *3 (citing *Great Plains Tr. Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 329 (5th Cir. 2002)).  This Court should dismiss Plaintiffs' claims with prejudice for two reasons.

24

First, by refusing to make any substantive changes to the causes of action with respect to Boggs, Plaintiffs functionally acknowledged the futility of their claims. For example, the Amended Complaint does not allege new facts to show that Boggs had a fiduciary relationship with Plaintiffs to sustain Count Four. *See In re Uplift RX, LLC*, 667 B.R. 665, 685 (Bankr. S.D. Tex. 2024) (dismissing with prejudice fiduciary duty claim after chance to replead). Plaintiffs have clearly "stated their best case" and can allege no plausible facts to sue Boggs. *See Ceramic Performance Worldwide, LLC v. Motor Works, LLC*, No. 3-09-CV-0344-BD, 2010 WL 234804, at *3 (N.D. Tex. Jan. 21, 2010).

Third, Plaintiffs pleaded facts contradict any allegations that could possibly make their claims viable. For example, Plaintiffs have affirmatively pleaded that Boyd "singlehandedly" "maintain[ed] unilateral control," access, and manipulation of the arbitrage system. *See, e.g.*, Am. Compl. ¶¶ 56, 59, 82, 95, 120(a) 130(e), 145(b). These allegations preclude repleading to plausibly allege that Boggs (or any other defendant), rather than Boyd, had discretionary control over Plaintiffs' assets making any amendment futile. *See Fast Capital Mktg., LLC v. Fast Capital LLC*, No. CIV. A. H-08-2142, 2008 WL 5381309, at *18 (S.D. Tex. Dec. 24, 2008).

## CONCLUSION

For the foregoing reasons, defendant Mike Boggs respectfully requests the Court to dismiss with prejudice Plaintiffs' claims against him for failure to state a claim upon which relief can be granted. Mr. Boggs reserves all rights to compel arbitration of Plaintiffs' claims for adjudication on the merits in the alternative, but the law requires Plaintiffs to plead their claims in the right court and in compliance with applicable law as a threshold matter.

25

Respectfully submitted,

**DRUMHELLER, HOLLINGSWORTH & MONTHY, LLP**

/s/ *Jeremy T. Monthy*

Jeremy T. Monthy, *Attorney-in-Charge*
State Bar No. 24073240
Federal I.D. No. 1115582
Derek S. Hollingsworth
State Bar No. 24002305
Federal I.D. No. 34569
Kathleen C. Laird
State Bar No. 24132063
Federal I.D. No. 3844989
712 Main Street, Suite 1705
Houston, Texas  77002
Telephone:  (713) 751-2300
Facsimile:  (713) 751-2310
Emails:  jmonthy@dhmlaw.com
        dhollingsworth@dhmlaw.com
        klaird@dhmlaw.com

**COGDELL LAW FIRM, PLLC**
Dan Cogdell
Texas Bar # 04501500
Cogdell Law Firm
712 Main St., Suite 2400
Houston, TX 77002
Telephone: 713 426 2244
Email: dan@cogdell-law.com

**ATTORNEYS FOR DEFENDANTS
MIKE BOGGS, PETER D. HATZIPETROS,
AND ANGELS CODING, LLC**

26

## CERTIFICATE OF SERVICE

I hereby certify that on April 10, 2026, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all registered parties, including:

Kyle A. Coker
Kaitlyn M. Coker
Farmer & Coker, PLLC
901 Main Street, Suite 5330
Dallas, Texas  75202

*Attorneys for Plaintiffs*

/s/ *Jeremy T. Monthy*
Jeremy T. Monthy

27