UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| CORBIN COWAN, DAWN COWAN, STRATEGIC EQUITY PARTNERS, LLC, TRIUMPH TECHNOLOGIES, LLC, CAB VENTURES, LLC, JEREMY ENGEL, SPARTAN MARKETING & INVESTMENTS, LLC, INTELLITECH SOLUTIONS, LLC, SOLIDA EQUITY PARTNERS, LLC, AND JOSH KIRK, | § § § § § § § § § | |
| *Plaintiffs*, | § § § | |
| v. | § § | CIVIL ACTION NO. 4:25-cv-04476 |
| JAMES TYLER BOYD, MIKE BOGGS, PETER D. HATZIPETROS, THE EDEN ALLIANCE, LLC, ANGELS CODING, LLC, AND DAWN BOGGS, | § § § § § § | |
| *Defendants*. | § § | |

**DEFENDANT PETER D. HATZIPETROS'S
MOTION TO DISMISS THE FIRST AMENDED COMPLAINT
FOR FAILURE TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED**

Subject to and without waiving his pending Motion to Compel Arbitration, defendant Peter D. Hatzipetros moves this Court to dismiss all claims against him in the First Amended Complaint of plaintiffs Corbin Cowan, Dawn Cowan, Strategic Equity Partners, LLC, Triumph Technologies, LLC, Cab Ventures, LLC, Jeremy Engel, Spartan Marketing & Investments, LLC, Intellitech Solutions, LLC, Solida Equity Partners, LLC, Josh Kirk, Justin Anderson, Jared Guller, Quantum Life Enterprises, LLC, Rainy Daze, LLC, and Simple Daze, LLC (collectively, "Plaintiffs") for failure to state a claim upon which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6).

## TABLE OF CONTENTS

TABLE OF CITATIONS ................................................................................................. iii

SUMMARY ..................................................................................................................... 1

NATURE AND STAGE OF PROCEEDING ................................................................... 2

STATEMENT OF ISSUES ............................................................................................. 2

FACTUAL BACKGROUND ........................................................................................... 3

    A.    The James Boyd "Scheme"............................................................................. 3

    B.    Hatzipetros Is A Practicing Attorney. ........................................................... 4

    C.    Plaintiffs' Amended Allegations About Hatzipetros Remain Centered On His Provision Of Legal Services. .................................................................. 4

ARGUMENT .................................................................................................................. 5

I.    Plaintiffs' Claims Are Barred By The Doctrine Of Attorney Immunity. ........................ 5

II.    Plaintiffs Have Failed To Adequately Plead Plausible Claims Against Hatzipetros. ......... 8

    A.    Plaintiffs' RICO Claim Should Be Dismissed. ........................................... 8

    B.    Plaintiffs' RICO Conspiracy Claim Should Be Dismissed. .............................. 12

    C.    Plaintiffs' Conversion Claim Should Be Dismissed. .......................................... 13

    D.    Plaintiffs Have Not Pleaded A Basis To Sue Hatzipetros For Breach Of Fiduciary Duty. ............................................................................................ 15

    E.    Plaintiffs Fail To State A Claim For Unjust Enrichment. ................................... 16

    F.    Plaintiffs' Fraud-Based Claims Fail. .......................................................... 17

    G.    Plaintiffs' Securities And Exchange Act Claim Has Fundamental Structural And Factual Flaws. ........................................................................ 18

    H.    Plaintiffs' Texas Securities Act Claim Should Be Dismissed. ............................ 22

    I.    Plaintiffs' Fraud Conspiracy Claim Should Be Dismissed. ................................ 23

III.    The Court Should Dismiss The Claims Against Hatzipetros With Prejudice. ................. 24

CONCLUSION ............................................................................................................ 25

## TABLE OF CITATIONS

**Cases**

*ABC Arbitrage Plaintiffs Group v. Tchuruk*,
  291 F.3d 336 (5th Cir. 2002) ...............................................................................................22

*Allstate Ins. Co. v. Benhamou*,
  190 F. Supp. 3d 631 (S.D. Tex. 2016) ..................................................................................11

*Allstate Ins. Co. v. Donovan*,
  No. H-12-0432, 2012 WL 2577546 (S.D. Tex. July 30, 2012) ............................................16

*Allstate Ins. Co. v. Plambeck*,
  802 F.3d 665 (5th Cir. 2015) ...............................................................................................10

*Alpert v. Riley*,
  No. H-04-CV-3774, 2008 WL 304742 (S.D. Tex. Jan. 31, 2008).................................5, 6, 7, 8

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009)............................................................................................................2, 3

*Bank of New York Mellon*,
  No. CV H-16-3238, 2017 WL 3424975 (S.D. Tex. Aug. 9, 2017) .......................................17

*Barnard v. Bank of Amer., N.A. (USA)*,
  No. CV H-05-2589, 2005 WL 8166961 (S.D. Tex. Nov. 15, 2005) ..................................8, 10

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007)......................................................................................................2, 3, 23

*Benchmark Elec., Inc. v. J.M. Huber Corp.*,
  343 F.3d 719 (5th Cir. 2003) ............................................................................................3, 19

*Billitteri v. Sec. Am., Inc.*,
  No. 09-CV-1568-F, 2010 WL 6785484 (N.D. Tex. July 26, 2010) .................................22, 23

*Bittinger v. Wells Fargo Bank NA*,
  No. CIV.A. H-10-1745, 2011 WL 3568206 (S.D. Tex. Aug. 15, 2011) ................................24

*Bradford v. Vento*,
  48 S.W.3d 749 (Tex. 2001)....................................................................................................18

*Burke v. Ocwen Loan Servicing, L.L.C.*,
  855 Fed. Appx. 180 (5th Cir. 2021)........................................................................................6

*Calcasieu Marine Nat. Bank v. Grant*,
  943 F.2d 1453 (5th Cir. 1991) ..............................................................................................11

*Cantey Hanger, LLP v. Byrd*,
    467 S.W.3d 477 (Tex. 2015).................................................................................6, 7

*Ceramic Performance Worldwide, LLC v. Motor Works, LLC*,
    No. 3-09-CV-0344-BD, 2010 WL 234804 (N.D. Tex. Jan. 21, 2010) ..............................24–25

*Chaney v. Dreyfus Service Corp.*,
    595 F.3d 219 (5th Cir. 2010) ......................................................................................12

*Crosswell v. Martinez*,
    120 F.4th 177 (5th Cir. 2024) ....................................................................................11

*Crowe v. Henry*,
    43 F.3d 198 (5th Cir. 1995) ......................................................................................12

*Daniels v. Pennymac Loan Servs., LLC*,
    No. 4:22-cv-199, 2022 WL 16556805 (S.D. Tex. Oct. 31, 2022) ............................................5

*Daniels v. Saucedo*,
    No. MO: 21-CV-101-DC, 2021 WL 6495244 (W.D. Tex. Nov. 17, 2021),
    aff'd, No. 21-51193, 2022 WL 6943343 (5th Cir. Oct. 12, 2022).........................................2, 7

*Davis–Lynch, Inc. v. Moreno*,
    667 F.3d 539 (5th Cir. 2012) ......................................................................................12

*Dawes v. Imperial Sugar Co.*,
    975 F. Supp.2d 666 (S.D. Tex. 2013) ..............................................................................21

*Dixon v. Wells Fargo Bank, N.A.*,
    No. 3:19-CV-1677-G-BH, 2020 WL 10050726 (N.D. Tex. Jan. 29, 2020),
    *report and recommendation adopted*, No. 3:19-CV-1677-G-BH,
    2020 WL 10050712 (N.D. Tex. Feb. 3, 2020).........................................................................14

*Dorsey v. Portfolio Equities, Inc.*,
    540 F.3d 333 (5th Cir. 2008) ......................................................................................22

*Dura Pharms., Inc. v. Broudo*,
    544 U.S. 336 (2005)................................................................................................19

*Duzich v. Advantage Fin. Corp.*,
    395 F.3d 527 (5th Cir. 2004) ......................................................................................24

*El Paso Disposal, LP v. Ecube Labs Co.*,
    766 F. Supp. 3d 692 (W.D. Tex. 2025).............................................................................8

*Fast Capital Mktg., LLC v. Fast Capital LLC*,
    No. CIV. A. H-08-2142, 2008 WL 5381309 (S.D. Tex. Dec. 24, 2008)................................25

*First Capital Asset Mgmt., Inc. v. Satinwood, Inc.*,
  385 F.3d 159 (2d Cir. 2004)..................................................................................................11

*Gilbreath v. Horan*,
  No. 01-17-00316-CV, 2023 WL 3011614 (Tex. App.—Houston [1st Dist.]
  Apr. 20, 2023, pet. denied) ...............................................................................................15

*Great Plains Tr. Co. v. Morgan Stanley Dean Witter & Co.*,
  313 F.3d 305 (5th Cir. 2002) ............................................................................................24

*Green Int'l v. Solis*,
  951 S.W.2d 384 (Tex. 1997)..............................................................................................13

*Greene v. CitiMortgage, Inc.*,
  No. 2:13-CV-219, 2014 WL 948878 (S.D. Tex. Mar. 11, 2014) ............................................17

*Harris Cty. v. MERSCORP Inc.*,
  791 F.3d 545 (5th Cir. 2015) ............................................................................................16

*Haynes & Boone, LLP v. NFTD, LLC*,
  631 S.W.3d 65 (Tex. 2021)..............................................................................................6, 7

*Highland Crusader Offshore Partners, LP v. LifeCare Holdings Inc.*,
  377 F. App'x 422 (5th Cir. 2010) (per curiam) .......................................................................23

*H.J. Inc. v. Northwestern Bell Telephone Co.*,
  492 U.S. 229 (1989)..........................................................................................................11

*Hoatson v. New York Archdiocese*,
  No. 05 Civ. 10467(PAC), 2007 WL 431098 (S.D.N.Y. Feb. 8, 2007)....................................9

*In re BJ Servs., LLC*,
  No. 20-33627, 2023 WL 2311986 (S.D. Tex. Mar. 1, 2023) ..................................................16

*In re Cogent Energy Services, LLC*,
  No. 23-33659, 2024 WL 3770041 (S.D. Tex. Aug. 12, 2024) ..................................16, 22–23

*In re Mastercard Intern. Inc.*,
  313 F.3d 257 (5th Cir. 2002) ............................................................................................11

*In re Uplift RX, LLC*,
  667 B.R. 665 (S.D. Tex. 2024) ...........................................................................................2

*Inclusive Cmtys. Project, Inc. v. Lincoln Prop. Co.*,
  920 F.3d 890 (5th Cir. 2019) .............................................................................................3

*Izadjoo v. Helix Energy Solutions Group, Inc.*,
  237 F. Supp.3d 492 (S.D. Tex. 2017) ..............................................................................19, 21

*Johnson v. Ashmore*,
    681 Fed. Appx. 345 (5th Cir. 2017)........................................................................6, 7

*Juarez v. Nationwide Prop. & Cas. Ins. Co.*,
    No. CIV.A. H-10-2726, 2010 WL 5464267 (S.D. Tex. Dec. 29, 2010)..................................17

*Kelly v. Nichamoff*,
    868 F.3d 371 (5th Cir. 2017) .............................................................................2, 6

*Liang v. Peng*,
    No. 4:24-cv-2657, 2025 WL 3050177 (S.D. Tex. Sept. 26, 2025)..........................................14

*Lincoln v. Turner*,
    874 F.3d 833 (5th Cir. 2017) .....................................................................................3

*Matrixx Initiatives, Inc. v. Siracusano*,
    563 U.S. 27 (2011)....................................................................................................20

*Mitchell Energy Corp. v. Samson Resources Co.*,
    80 F.3d 976 (5th Cir. 1996) ......................................................................................14

*Molina-Aranda v. Black Magic Enterprises, L.L.C.*,
    983 F.3d 779 (5th Cir. 2020) .....................................................................................9

*Occidental Petroleum Corp. v. Wells Fargo Bank, N.A.*,
    573 F. Supp.3d 1161 (S.D. Tex. 2021) ....................................................................15

*PCS Software, Inc. v. Dispatch Services, Inc.*,
    No. CV H-23-108, 2024 WL 3448009 (S.D. Tex. July 16, 2024).....................................9–10

*Peel v. cPaperless, Inc.*,
    No. 4:23-CV-02417, 2024 WL 5058609 (S.D. Tex. Nov. 8, 2024) ................................10, 12

*Perry v. Lyons*,
    No. A-09-CA-714-LY, 2010 WL 2136537 (W.D. Tex. May 26, 2010),
    *report and recommendation adopted*, No. CV A-09-CA-714-LY,
    2010 WL 11597867 (W.D. Tex. June 18, 2010) .................................................................11

*R2 Invs. LDC v. Phillips*,
    401 F.3d 638 (5th Cir. 2005) ...............................................................................19, 20

*Redwood Resort Props., LLC v. Holmes Co. Ltd.*,
    No. 3:06-CV-1022-D, 2006 WL 3531422 (N.D. Tex. Nov. 27, 2006) ..................................16

*Schiller v. Physicians Res. Group, Inc.*,
    No. CIV.A. 3:97-CV-3158L, 2002 WL 318441 (N.D. Tex. Feb. 26, 2002),
    aff'd, 342 F.3d 563 (5th Cir. 2003) ...........................................................................10

*Schott v. Nobilis Health Corp.*,
211 F. Supp.3d 936 (S.D. Tex. 2016) ...................................................................21

*Simmons v. Jackson*,
No. 3:15-CV-01700-S-BT, 2018 WL 7021485 (N.D. Tex. Dec. 21, 2018),
*report and recommendation adopted*, No. 3:15-CV-01700-S-BT,
2019 WL 186654 (N.D. Tex. Jan. 14, 2019) .............................................................7

*Smith v. MTGLQ Investors, LP*,
2019 WL 13193219 (S.D. Tex. 2019) ...................................................................18

*Southland Sec. Corp. v. INSpire Ins. Solutions, Inc.*,
365 F.3d 353 (5th Cir. 2004) ........................................................................19, 21

*Stephens v. Uranium Energy Corp.*,
No. H-15-1862, 2016 WL 3855860 (S.D. Tex. July 15, 2016) .............................20

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
551 U.S. 308 (2007)..............................................................................................21

*Tel-Phonic Services, Inc. v. TBS Intern., Inc.*,
975 F.2d 1134 (5th Cir. 1992) .............................................................................12

*Terry Black's Barbecue, L.L.C. v. State Auto. Mut. Ins. Co.*,
22 F.4th 450 (5th Cir. 2022) ...............................................................................15

*Tilton v. Marshall*,
925 S.W.2d 672 (Tex. 1996)................................................................................23

*Tornado Bus Co. v. Bus & Coach Am. Corp.*,
No. 3:14-CV-3231-M, 2015 WL 5164731 (N.D. Tex. Sept. 2, 2015) ...................14

*Trendsetter Investors, LLC v. Hyperdynamics Corp.*,
No. H-06-0746, 2007 WL 172627 (S.D. Tex. Jan. 18, 2007)................................19

*Troice v. Proskauer Rose, L.L.P.*,
816 F.3d 341 (5th Cir. 2016) .........................................................................1, 5, 6

*Tuchman v. DSC Commc'ns Corp.*,
14 F.3d 1061 (5th Cir. 1994) .................................................................................8

*United States v. Posada-Rios*,
158 F.3d 832 (5th Cir. 1998) ...............................................................................13

*United States v. Sanders*,
925 F.3d 263 (5th Cir. 2020) ...............................................................................13

vii

*U.S. ex rel. Briseno v. Hillcroft Medical Clinic Ass'n*,
  No. 4:20-cv-02871, 2022 WL 17417178 (S.D. Tex. Dec. 5, 2022) .........................................17

*Van Loon v. Dep't of the Treasury*,
  122 F.4th 549 (5th Cir. 2024) ...................................................................................................14

*Van Velzer v. Amegy Bank*,
  713 Fed. Appx. 377 (5th Cir. 2018)..........................................................................................10

*Verde Minerals, LLC v. Burlington Res. Oil & Gas Co., LP*,
  No. CV 2:16-463, 2017 WL 9535076 (S.D. Tex. June 30, 2017) ........................................9, 10

*VTX Communications, LLC v. AT&T Inc.*,
  No. 7:19-CV-00269, 2020 WL 4465968 (S.D. Tex. Aug. 4, 2020) .........................................17

*W. Texas Nat. Bank v. FEC Holdings, LP*,
  No. MO-11-CV-086, 2013 WL 2158947 (W.D. Tex. May 17, 2013)......................................12

*Waisath v. Lack's Stores*,
  474 S.W.2d 444 (Tex. 1971).....................................................................................................15

*Whitney Nat'l Bank v. Med. Plaza Surgical Ctr. L.L.P.*,
  No. CIV.A. H-06-1492, 2007 WL 400094 (S.D. Tex. Feb. 1, 2007) ......................................24

*Williams v. Apple Inc.*,
  No. H-19-782, 2019 WL 2057960 (S.D. Tex. May 9, 2019).....................................................16

*Williams v. WMX Techs., Inc.*,
  112 F.3d 175 (5th Cir. 1997) ........................................................................................8, 17, 22

*Willis v. Maverick*,
  760 S.W.2d 642 (Tex. 1988).....................................................................................................16

**Statutes**

15 U.S.C. § 77z-2(c)(1)...................................................................................................................19

15 U.S.C. § 78j(b)...........................................................................................................................18

15 U.S.C. § 78u-4(b)(1) ..................................................................................................................19

15 U.S.C. § 78u-4(b)(2) .............................................................................................................19, 21

15 U.S.C. § 78u-5(c)(1) ..................................................................................................................19

18 U.S.C. § 1962............................................................................................................. *passim*

18 U.S.C. § 1962(b) ........................................................................................................................12

18 U.S.C. § 1962(c) ................................................................................................ *passim*

18 U.S.C. § 1962(d) ...............................................................................................12

TEX. GOV'T CODE § 4008.051 ................................................................................22

TEX. GOV'T CODE § 4008.055(c) ............................................................................23

**Rules**

FED. R. CIV. P. 9(b) .............................................................................................. *passim*

FED. R. CIV. P. 12(b)(6) ......................................................................................... *passim*

## SUMMARY

This case involves an as-yet unsuccessful technology innovation to profit from incremental discrepancies across over 50 decentralized cryptocurrency exchanges, markets, and platforms. Like Plaintiffs, defendant Peter D. Hatzipetros, a practicing attorney in New York, fell prey to defendant James Boyd, who Plaintiffs accurately allege "maintain[ed] unilateral control over the system's core" and ultimately deceived both investors and associates alike. Pls' Am. Compl., filed March 16, 2026 [Dkt. 42] ("Am. Compl."), ¶¶ 56, 58–59. Boyd "singlehandedly" "weaponized" the technology defendant Mike Boggs initially conceived, *id.* ¶¶ 57, 95, and the apparently "legitimate" legal transactions prepared by Hatzipetros. *Id.* ¶ 31.

Plaintiffs' claims against Hatzipetros have two threshold flaws. First, Hatzipetros is immune from this suit. Texas law protects attorneys from claims by non-clients arising out of the attorney's actions in representing a client. *See Troice v. Proskauer Rose, L.L.P.*, 816 F.3d 341, 346 (5th Cir. 2016). After this Court ordered Plaintiffs to replead, Plaintiffs augmented their allegations against Hatzipetros in the Amended Complaint. Plaintiffs' amended allegations, however, *confirm* that Hatzipetros was "at all relevant times" acting squarely within the scope of his legal duties in representing his clients, as Plaintiffs' allegations wholly concern his "legal oversight" and structuring work. Am. Compl. ¶¶ 18, 33, 113(f). While the Amended Complaint seems to contend that Hatzipetros wore two hats, *e.g.*, *id.* ¶¶ 18, 31, none of Plaintiffs' "new" allegations describe conduct by Hatzipetros that is inherently wrongful or foreign to the duties of an attorney.

Second, Plaintiffs fail to sufficiently state a basis to proceed on any of their eleven claims against Hatzipetros, as the utilization of "legal services" by other defendants and Plaintiffs does not expose Hatzipetros to liability as a matter of law. This Court should dismiss all claims against Hatzipetros with prejudice under Rule 12(b)(6).

1

## NATURE AND STAGE OF PROCEEDING

Plaintiffs filed this lawsuit on September 19, 2025. *See* Dkt. 1. Hatzipetros timely filed a motion to dismiss all claims against him on December 4, 2025, which was Hatzipetros's first appearance. *See* Dkt. 10 ("1st Motion"). Hatzipetros also moved to compel arbitration, *see* Dkt. 38, and he reserves all related rights. This Court ordered Plaintiffs to amend their Complaint by March 13, 2026. *See* Dkt. 41. Plaintiffs filed the First Amended Complaint on March 16, 2026. Dkt. 42. Hatzipetros now seeks to have the Amended Complaint dismissed with prejudice under Federal Rule of Civil Procedure 12(b)(6).

## STATEMENT OF ISSUES

1.   Whether all Plaintiffs' claims against Hatzipetros are barred by attorney immunity.

     **Standard of review:** "[A]n attorney seeking dismissal based on attorney immunity bears the burden of establishing entitlement to the defense." *Kelly v. Nichamoff*, 868 F.3d 371, 375 (5th Cir. 2017). To meet this burden, the attorney must establish that "the conduct was within the attorney's legal representation of the client." *Id.* (quotations omitted). To "grant attorney immunity at the motion to dismiss stage, the scope of the attorney's representation must be 'apparent.'" *In re Uplift RX, LLC*, 667 B.R. 665, 687 (S.D. Tex. 2024). "The United States Courts of Appeal routinely affirm Rule 12(b)(6) dismissals of counsel" when this burden is met. *Daniels v. Saucedo*, No. MO: 21-CV-101-DC, 2021 WL 6495244, at *4 (W.D. Tex. Nov. 17, 2021), aff'd, No. 21-51193, 2022 WL 6943343 (5th Cir. Oct. 12, 2022) (collecting cases).

2.   Whether Plaintiffs have stated plausible claims against Hatzipetros for federal racketeering (Count One), RICO conspiracy (Count Two), conversion (Count Three), breach of fiduciary duty (Count Four), unjust enrichment (Count Five), fraud (Count Six), fraudulent inducement (Count Seven), fraudulent concealment (Count Eight), violation of Section 10(b) of the U.S. Securities Exchange Act (Count Nine), violation of the Texas Securities Act (Count Ten), or fraud conspiracy (Count Eleven).

     **Standard of review:** To "state a claim upon which relief can be granted" under Rule 12(b)(6), a complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim has "facial plausibility" when the plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* To withstand a Rule 12(b)(6) motion, a complaint must include "more than labels and conclusions, and a formulaic

2

recitation of the elements of a cause of action will not do." *Lincoln v. Turner*, 874 F.3d 833, 839 (5th Cir. 2017) (quoting *Twombly*, 550 U.S. at 555).  "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557).  The facts alleged in a complaint "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555).  In a case alleging fraud like this one, Rule 9(b) requires, "[a]t a minimum, . . . allegations of the particulars of time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby." *Benchmark Elec., Inc. v. J.M. Huber Corp.*, 343 F.3d 719, 724 (5th Cir. 2003) (citation and quoting reference omitted).  A court reviewing a motion to dismiss under Rule 12(b)(6) may consider "(1) the facts set forth in the complaint, (2) documents attached to the complaint, and (3) matters of which judicial notice may be taken under Federal Rule of Evidence 201." *Inclusive Cmtys. Project, Inc. v. Lincoln Prop. Co.*, 920 F.3d 890, 900 (5th Cir. 2019).

## FACTUAL BACKGROUND

### A.    The James Boyd "Scheme"

Defendant Mike Boggs designed an online trading concept and algorithm to (a) survey separate, decentralized cryptocurrency exchanges, markets, and platforms for incremental discrepancies in comparative currency value using Artificial Intelligence and then (b) execute arbitrage trades to capitalize on those disparities.  *See* Am. Compl. ¶¶ 17, 26, 31.  Defendant James Boyd devised and "controlled" an implementation infrastructure to accept funds into Boggs's conceptual system and convert them into blockchain-based "nodes."  *See* Am. Compl. ¶¶ 16, 29. The stated advantage of this conversion was security, ease of translation across various cryptocurrencies and markets, and cost.  *See id.* ¶¶ 26–27.

Unfortunately, "Boyd modified and branched [Boggs's] codebase" by creating a concealed underlayer, which allowed "Boyd to maintain unilateral control over the system's core infrastructure and wallet activity."  *Id.* ¶¶ 58–59.  Boyd's secret back-end exploitation of the system allowed Boyd to (a) access to the secure investor "wallets," over which he had "unilateral control," (b) route funds through other exchange systems to anonymize the funds, and (c) give the appearance of operational returns by recycling and redistributing investor funds to others in a series

3

of microtransactions.  *See id.* ¶¶ 59–61.  After less than one year, the "scheme" began to unravel and "Boyd turned himself in to federal authorities."  *See id.* ¶ 81.

**B.      Hatzipetros Is A Practicing Attorney.**

Defendant Peter D. Hatzipetros is an individual nonresident with an active law practice in New York.  Am. Compl. ¶ 18.  Hatzipetros was admitted to the New York Bar in August 2014.  *See* Attorney Detail Report, publicly available at https://iapps.courts.state.ny.us/attorneyservices/.  He has no disciplinary history.  *See id.*  Hatzipetros's law firm, Petros Law Group, P.C., specializes in complex commercial transactions, mergers and acquisitions, joint ventures, and strategic corporate infrastructure.

Hatzipetros served as the "attorney . . . associated with the venture" that defendant Mike Boggs originally conceived.  Am. Compl. ¶ 33.  Hatzipetros acted as Mr. Boggs's attorney prior to the events giving rise to this lawsuit.

**C.      Plaintiffs' Amended Allegations About Hatzipetros Remain Centered On His Provision Of Legal Services.**

Under the Amended Complaint, the scope of Hatzipetros's involvement in the "scheme" giving rise to this suit remains narrow.  While Plaintiffs contend that Hatzipetros was present during meetings with potential contributors as the attorney and partner, *see* Am. Comp. ¶ 33, Plaintiffs do not allege that Hatzipetros himself directly solicited Plaintiffs to invest in an alleged "cryptocurrency fraud scheme," performed any technical work to either set up or corrupt the "automated arbitrage" system, or processed funds or digital assets.   Plaintiffs' augmented allegations in the Amended Complaint demonstrate that Hatzipetros's role remained confined to the provision of legal services:

- Hatzipetros "is **an attorney** who, at all relevant times, held himself out to investors as a 'Partner / **General Counsel**'" of an entity that governed Plaintiffs' use of the algorithm.  Am. Compl. ¶ 18.

4

- Hatzipetros "held himself out as both a partner *and legal architect* of the enterprise," including by providing "**legal oversight**" of the operation and "**preparing legal documentation**." *Id.* ¶¶ 30–31, 33 (emphasis added).

- After Boyd's malfeasance came to light, Hatzipetros "communicated with investors regarding the status of the enterprise" and worked to advance "partial recovery of investor losses" by **"preparing legal documentation"** like "letters of intent" to facilitate a potential asset purchase. *Id.* ¶¶ 86, 93, 96.

The Amended Complaint expressly relies on at least one of the "legal document[s]" Hatzipetros prepared. *Id.* ¶ 30. Plaintiff Spartan Marketing & Investments, LLC executed a "QuantumArc Node System User Agreement," which governed at least one Plaintiff's use of the proprietary software algorithm and user account before manipulation by Boyd. *Id.*[1] The Amended Complaint confirms that this contract legitimized and formalized Plaintiffs' engagement in the system. *Id.* ¶ 31. In Plaintiffs' own words, "[b]y holding himself out as a partner and legal architect," Hatzipetros's legal services "lent credibility" to the venture. *Id.* ¶¶ 31, 96.

## ARGUMENT

### I.    Plaintiffs' Claims Are Barred By The Doctrine Of Attorney Immunity.

Hatzipetros is protected from suit based on attorney immunity because Plaintiffs' claims are based solely on actions he took in the course of his legal representation. Texas law protects attorneys from claims by non-clients arising out of the attorney's actions in representing a client. *See Troice*, 816 F.3d at 346. Attorney immunity is "true immunity from suit," *id.* at 348, and it applies equally to the "rendition of legal services outside the litigation context." *Alpert v. Riley*, No. CIV.A. H04CV-3774, 2008 WL 304742, at *17 (S.D. Tex. Jan. 31, 2008) (collecting cases).

This Court has held that the immunity is "broad." *Daniels v. Pennymac Loan Servs., LLC*, No. 4:22-cv-199, 2022 WL 16556805, at *5 (S.D. Tex. Oct. 31, 2022). Attorney immunity applies

---

[1]    The Amended Complaint's express reliance this Agreement strengthens Hatzipetros's pending Motion to Compel Arbitration. *See* Dkt. 38 & Dkt. 38-2.

even "to criminal acts so long as the attorney was acting within the scope of representation." *Troice*, 921 F.3d at 506–07; *see also Alpert*, 2008 WL 304742, at *14 ("attorney immunity typically applies even if conduct is wrongful.") (quotation omitted).

To determine whether an attorney is afforded this protection, courts must focus "on the kind—not the nature—of the attorney's conduct" even if this conduct "is labeled fraudulent." *Cantey Hanger, LLP v. Byrd*, 467 S.W.3d 477, 483–84 (Tex. 2015). Attorney immunity applies when a defendant is "doing the kind of thing an attorney does for h[is] clients." *Johnson v. Ashmore*, 681 Fed. Appx. 345, 347 (5th Cir. 2017); *Burke v. Ocwen Loan Servicing, L.L.C.*, 855 Fed. Appx. 180, 186 (5th Cir. 2021). An attorney is not protected "if he personally participates 'in a fraudulent business scheme *with* his client,' as opposed to on his client's behalf." *Haynes & Boone, LLP v. NFTD, LLC*, 631 S.W.3d 65, 77 (Tex. 2021) (emphasis in original) (quotations omitted).

Attorney immunity bars Plaintiffs' claims against Hatzipetros for two reasons. First, Plaintiffs' allegations against Hatzipetros, even as amended, wholly concern the performance of "legal services" or the "kind" of work an attorney does for his clients. *See Johnson*, 681 Fed. Appx. at 347. The scope of Hatzipetros's representation is apparent on the face of the Amended Complaint. *Kelly*, 868 F.3d at 375. Plaintiffs describe Hatzipetros as the "legal architect" of the venture. Am. Compl. ¶ 31. As such, Hatzipteros provided "legal oversight" and "legal structuring work," and he "prepared [at least one] agreement" and "prepared legal documentation" to formalize the venture. *Id.* ¶¶ 30–31, 33, 93, 113(f). And, while Plaintiffs allege that Hatzipetros was also designated as a "partner" of at least one entity associate with the venture (QuantumArc), the Amended Complaint concedes that Hatzipetros simultaneously held himself out as "General Counsel." *E.g., id.* ¶¶ 18, 30–31, 33. Even when Plaintiffs' allegations concern outward-facing

6

communications with Plaintiffs, *see id.* ¶¶ 18, 86–87, Hatzipetros was not discussing matters "for [his] health. [H]e was about his clients' business, doing the kind of thing an attorney does for his client." *Johnson*, 681 Fed. Appx. at 347; *Alpert*, 2008 WL 304742, at *15.

Second, the Amended Complaint alleges no independent or even knowingly fraudulent conduct by Hatzipetros. *See id.* In fact, none of Plaintiffs' allegations that specifically name Hatzipetros (as opposed to the vague collective "Defendants") identify any inherently wrongful conduct. For example, Hatzipetros is named as one of the members of the alleged RICO enterprise in Count One because he "facilitated the creation and use of corporate entities" and "drafted legal documentation used to structure the investment program." Am. Compl. ¶¶ 92, 95. These are purely legal acts. Moreover, *none* of the alleged predicate acts of money laundering or wire fraud in Paragraph 98 identify acts by Hatzipetros. *See, e.g.*, *id.* ¶¶ 98. Although Plaintiffs try to malign Hatzipetros's work product as improper after the fact with conclusory statements that he "knowingly agreed to facilitate" the money laundering scheme,[2] *e.g.*, *id.* ¶ 103, they cannot avoid immunity solely because this conduct "is labeled fraudulent." *Cantey*, 467 S.W.3d at 483-84; *see also Simmons v. Jackson*, No. 3:15-CV-01700-S-BT, 2018 WL 7021485, at *4 (N.D. Tex. Dec. 21, 2018), report and recommendation adopted, No. 3:15-CV-01700-S-BT, 2019 WL 186654 (N.D. Tex. Jan. 14, 2019). Because Plaintiffs allege no facts showing that Hatzipetros participated in the alleged "scheme *with* his client,' as opposed to on his client's behalf," attorney immunity applies. *Haynes*, 631 S.W.3d at 77; *see also Simmons*, 2018 WL 7021485, at *4. Dismissal at this stage is appropriate. *See Daniels v. Saucedo*, 2021 WL 6495244, at *4 ("Courts of Appeal

---

[2]     Notably, the Amended Complaint acknowledges that Hatzipetros's work product had "an appearance of legitimacy" to Plaintiffs throughout the system's operation. *Id.* ¶¶ 31, 104(c).

7

routinely affirm Rule 12(b)(6) dismissals of counsel from cases" based on this doctrine) (collecting cases).

**II.      Plaintiffs Have Failed To Adequately Plead Plausible Claims Against Hatzipetros.**

If this Court declines to apply attorney immunity to protect Hatzipetros, the Court should nonetheless dismiss all eleven claims against him under Rule 12(b)(6).

**A.      Plaintiffs' RICO Claim Should Be Dismissed.**

The federal RICO statute provides a private right of action to a person injured by an "enterprise" engaged in a "pattern of racketeering activity."   18 U.S.C. § 1962.   Count One specifically alleges a violation of 18 U.S.C. § 1962(c), which makes it illegal "for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt." The Court should dismiss Count One for three reasons.

First, the RICO allegations in the Amended Complaint fail to meet the applicable pleading requirements.  RICO claims resting on fraud allegations, like Plaintiffs', must meet the heightened pleading requirements in Rule 9(b).  *See Williams v. WMX Techs., Inc.*, 112 F.3d 175, 177 (5th Cir. 1997); *Alpert v. Riley*, No. H-04-CV-3774, 2008 WL 304742, *13 (S.D. Tex. Jan. 31, 2008). Among other requirements, a plaintiff must "specify the particulars of time, place, and contents of the false representations."  *Williams v. WMX Techs.*, 112 F.3d at 179 (citing *Tuchman v. DSC Commc'ns Corp.*, 14 F.3d 1061, 1068 (5th Cir. 1994)).  In cases premised on a fraud theory of liability, this Court has applied Rule 9(b) to every RICO element.  *See, e.g.*, *Alpert*, 2008 WL 304742, at *13; *Barnard v. Bank of Amer., N.A. (USA)*, No. CV H-05-2589, 2005 WL 8166961, at *2 (S.D. Tex. Nov. 15, 2005); *see also El Paso Disposal, LP v. Ecube Labs Co.*, 766 F. Supp. 3d 692, 703 (W.D. Tex. 2025) (applying Rule 9(b) to all "averments of fraud, . . . irrespective of

8

whether [plaintiffs] are bringing a fraud claim."). When civil damages are sought under RICO for injuries resulting from purported fraud, the plaintiff must also establish proximate cause, which requires a showing of detrimental reliance. *See Molina-Aranda v. Black Magic Enterprises, L.L.C.*, 983 F.3d 779, 784 (5th Cir. 2020); *Verde Minerals, LLC v. Burlington Res. Oil & Gas Co., LP*, No. CV 2:16-463, 2017 WL 9535076, at *11–12 (S.D. Tex. June 30, 2017). The heightened pleading standards in Rule 9(b) are "particularly important" in RICO cases to protect defendants against baseless charges of racketeering, which are expensive to defend and which have "an almost inevitable stigmatizing effect" on named defendants. *See Hoatson v. New York Archdiocese*, No. 05 Civ. 10467(PAC), 2007 WL 431098, at *9 (S.D.N.Y. Feb. 8, 2007).

The allegations in Count One regarding Hatzipetros do not meet Plaintiffs' pleading burden. First, although Plaintiffs name Hatzipetros as a member of a putative "association-in-fact enterprise" in a superficial, introductory paragraph, Am. Compl. ¶ 92, *none* of the purportedly predicate acts of wire fraud and money laundering mention Haztipetros—not one. *See id.* ¶ 98.[3] Plaintiffs do allege that other unnamed "Defendants" engaged in unspecific "exemplar acts," *see id.* ¶ 98, but Count One is devoid of particulars regarding the time, place, and contents of any false representations by Hatzipetros or why these representations were false. Moreover, to the extent Plaintiffs intend to rely on the more than twenty new alleged "representations" made by an unnamed group of "Defendants" sprinkled throughout the Amended Complaint, Am. Compl. ¶¶ 27, 29, 34, 35, 39, 40, 42, 43, 45, 46, 47, 49, 50, 51, 53, 62, 74, 78, 79, 84, 85, 87, 88, 89, this Court has already rejected attempts to look beyond a count to piece together plausible facts or the requisite particulars required under Rule 9(b). *PCS Software, Inc. v. Dispatch Services, Inc.*, No.

---

[3] While Plaintiffs name Hatzipetros in Paragraph 92 describing the "enterprise," the Amended Complaint labels the enterprise as "The Boyd–Boggs–Eden Enterprise," *id.* ¶¶ 92, 98, further demonstrating that Hatzipetros engaged in no independently fraudulent conduct.

9

CV H-23-108, 2024 WL 3448009 (S.D. Tex. July 16, 2024); *see also Schiller v. Physicians Res. Group, Inc.*, No. CIV.A. 3:97-CV-3158L, 2002 WL 318441, at \*5, \*5 n.10 (N.D. Tex. Feb. 26, 2002), aff'd, 342 F.3d 563 (5th Cir. 2003) (dismissing claims for failure to plead particulars under Rule 9(b), noting that the "complaint represents a labyrinth, requiring the court to piece together the elements of the claims from allegations made all over the complaint.").

Plaintiffs also fail to allege reliance on words or deeds perpetrated by *any defendant*, much less by Hatzipetros. These pleading shortcomings alone warrant dismissal. *See, e.g.*, *Van Velzer v. Amegy Bank*, 713 Fed. Appx. 377, 378 (5th Cir. 2018). While the Amended Complaint now contains the word "reliance," *e.g.*, Am. Compl. ¶¶ 36, 37, these allegations are devoid of specifics, rely on group pleading, and otherwise fail to link detrimental reliance and Count One. *See Peel v. cPaperless, LLC*, No. 4:23-CV-02417, 2024 WL 1119411, at \*4, \*4 n.10 (S.D. Tex. Mar. 14, 2024); *Verde Minerals*, 2017 WL 9535076, at \*10.

Second, Plaintiffs' factual allegations, when taken as true, disprove the conclusory statement in Count One that Hatzipetros was a member of an association-in-fact enterprise. Am. Compl. ¶ 92. To establish an association-in-fact enterprise capable of supporting a Section 1962(c) RICO claim, a plaintiff must plead evidence that "various associates function as a continuing unit" for a "common purpose." *Allstate Ins. Co. v. Plambeck*, 802 F.3d 665, 673 (5th Cir. 2015) (citation omitted). Under Rule 9(b), a plaintiff must "specifically allege how each act of fraud furthered the fraudulent scheme, and how each defendant participated in the fraud." *Barnard*, 2005 WL 8166961, at \*1 (citations omitted). This is not a mob case. Each aspect of the "course of conduct" alleged in Count One can be tied to actions undertaken by a single defendant: James Boyd. Am. Compl. ¶ 95. No allegations in Count One explain how Hatzipetros "furthered the fraudulent scheme." Although Plaintiffs allege that Hatzipetros prepared "legal documentation used to

10

formalize the investment program," *id.* ¶ 93, this claim does not plausibly allege that Hatzipetros knew of or otherwise participated in Boyd's manipulation.  Regardless, simply providing services that happen to benefit a purported RICO enterprise, even "integral" goods and services, will not subject an individual to RICO liability absent participation in a "common purpose." *Allstate Ins. Co. v. Benhamou*, 190 F. Supp. 3d 631, 655 (S.D. Tex. 2016).  This is particularly true when allegations involve legal services provided by an attorney.  *See Perry v. Lyons*, No. A-09-CA-714-LY, 2010 WL 2136537, at \*3 (W.D. Tex. May 26, 2010), report and recommendation adopted, No. CV A-09-CA-714-LY, 2010 WL 11597867 (W.D. Tex. June 18, 2010) ("[I]t is particularly important for Plaintiffs to state facts, rather than conclusory allegations, demonstrating that the lawyer's actions were not merely those involving the office, professional training, skill, and authority of a lawyer.").  Without plausible or specific allegations of concerted action by Hatzipetros beyond the provision of legal services, dismissal of the RICO claim is appropriate. *See id.*; *Crosswell v. Martinez*, 120 F.4th 177, 185 (5th Cir. 2024).

Third, the series of events alleged in the Complaint do not qualify as a RICO "pattern" under federal law.  A pattern of racketeering activity requires a demonstration that the pleaded racketeering predicate acts "amount to or pose a threat of continued criminal activity."  *In re Mastercard Intern. Inc.*, 313 F.3d 257, 261–62 (5th Cir. 2002).  To ensure that RICO does not "apply to ordinary business disputes," courts therefore require evidence of either ongoing, open-ended activity or of terminated conduct that endured for a "substantial period."  *H.J. Inc. v. Northwestern Bell Telephone Co.*, 492 U.S. 229, 241 (1989); *Calcasieu Marine Nat. Bank v. Grant*, 943 F.2d 1453, 1463 (5th Cir. 1991).  Some courts have set a benchmark for long-term, closed-end conduct at least two years.  *See First Capital Asset Mgmt., Inc. v. Satinwood, Inc.*, 385 F.3d 159, 181 (2d Cir. 2004).

11

The scheme alleged in the Amended Complaint falls short.  The purported pattern of racketeering activity in this case: (a) was largely the product of "automated," AI-driven microtransactions, *see, e.g.*, *id.* ¶ 60; (b) spanned less than one year, *see id.* ¶ 98; (c) appears to have involved a closed group of investors, joined as plaintiffs to this action; and (d) has no reasonable likelihood of continuing, as the person "directing" and "singlehandedly controlling" the alleged scheme turned himself into law enforcement and is nowhere to be found.  *See id.* ¶¶ 3, 81.  Plaintiffs cannot support a RICO claim on the allegations in Count One.  *See, e.g.*, *Peel*, 2024 WL 5058609, at \*16 (dismissing RICO claim for failure to plausibly establish a pattern of racketeering activity).

## B.    Plaintiffs' RICO Conspiracy Claim Should Be Dismissed.

Count Two alleges that Hatzipetros and four other defendants are liable under 18 U.S.C. § 1962(d), for allegedly conspiring to violate one of the substantive provisions of the RICO statute. This requires a two-part showing: (1) two or more persons agreed to commit a substantive RICO offense, and (2) the defendant knew of and agreed to the overall objective of the RICO offense. *See Davis–Lynch, Inc. v. Moreno*, 667 F.3d 539, 551 (5th Cir. 2012) (citing *Chaney v. Dreyfus Service Corp.*, 595 F.3d 219, 239 (5th Cir. 2010)).  To survive a motion to dismiss, "a RICO civil conspiracy complaint, at the very least, must allege specifically such an agreement" to satisfy prong two.  *Tel-Phonic Services, Inc. v. TBS Intern., Inc.*, 975 F.2d 1134, 1140 (5th Cir. 1992). The Amended Complaint falls short of these requirements in two respects.

First, Plaintiffs must meet the heightened pleading standards of Rule 9(b) to state a plausible RICO conspiracy claim.  In *Crowe v. Henry*, 43 F.3d 198, 205 (5th Cir. 1995), the Fifth Circuit affirmed a Rule 12(b)(6) dismissal of mere "conclusory" allegations of a conspiratorial agreement to engage in conduct prohibited under 18 U.S.C. § 1962(b).  *See also W. Texas Nat. Bank v. FEC Holdings, LP*, No. MO-11-CV-086, 2013 WL 2158947, at \*8 (W.D. Tex. May 17,

12

2013).  Count Two, however, fails again to plead with particularity.  The Amended Complaint summarily states: "Each Defendant understood the scope of the unlawful scheme and joined in it to achieve its fraudulent purpose."  Am. Compl. ¶ 103.  The only alleged "[o]vert act" of RICO conspiracy alleged that invokes Hatzipetros complains about "[r]etaining attorney Peter D. Hatzipetros to structure and register shell entities."  *Id.* ¶ 104(c).  The Amended Complaint, however, nowhere identifies who retained Hatzipetros, nor does it explain the basis for Plaintiffs' assumption that Hatzipetros's legal work, much less his mere retention, was fraudulent.

Second, the Amended Complaint does not even try to plead a "meeting of the minds" or specific intent to engage in prohibited racketeering activity, much less support such allegations with plausible facts.  While a RICO conspiracy agreement can be pleaded through circumstantial evidence, it cannot be "lightly inferred."  *United States v. Sanders*, 925 F.3d 263, 273–74 (5th Cir. 2020).  A person cannot be held liable "merely by evidence that he associated with other . . . conspirators or by evidence that places the defendant in a climate of activity that reeks of something foul."  *United States v. Posada-Rios*, 158 F.3d 832, 858 (5th Cir. 1998).  Plaintiffs' allegations at most place Hatzipetros "at the scene" of the alleged misconduct, which is not enough. *See id.*  The Court should dismiss such baldly deficient allegations and Count Two.

### C.    Plaintiffs' Conversion Claim Should Be Dismissed.

To state a claim for conversion, the Amended Complaint must plausibly allege: (1) Plaintiffs owned, possessed, or had the right to immediate possession of property; (2) the property was personal property; (3) Hatzipetros wrongfully exercised dominion or control over the property; and (4) Plaintiffs suffered injury.  *See Green Int'l v. Solis*, 951 S.W.2d 384, 391 (Tex. 1997).  Count Three should be dismissed as to Hatzipetros because Plaintiffs cannot establish the second or third element.

13

The only property at issue in the Amended Complaint is virtual money; specifically, "cryptocurrency and other digital assets" initially generated by Plaintiffs. Am. Compl. ¶ 108. For money to qualify as specific chattel for purposes of a conversion claim, it must be "intended to be segregated, either substantially the form in which it was received or as an intact fund." *Mitchell Energy Corp. v. Samson Resources Co.*, 80 F.3d 976, 984 (5th Cir. 1996). "[O]ld coins" are an example of money capable of conversion. *Id.*

The digital assets at issue in the Amended Complaint cannot qualify as money capable of being converted for two reasons. One: A key feature of the "automated" trading system in which Plaintiffs willingly contributed funds was that "funds would be pooled" in the aggregate—*not segregated.* Am. Compl. ¶¶ 19, 35, 40, 44, 95, 120(c), 123(b). Courts have dismissed conversion claims on this basis alone. *See, e.g.*, *Dixon v. Wells Fargo Bank, N.A.*, No. 3:19-CV-1677-G-BH, 2020 WL 10050726, at *5 (N.D. Tex. Jan. 29, 2020), report and recommendation adopted, No. 3:19-CV-1677-G-BH, 2020 WL 10050712 (N.D. Tex. Feb. 3, 2020); *Tornado Bus Co. v. Bus & Coach Am. Corp.*, No. 3:14-CV-3231-M, 2015 WL 5164731, at *6 (N.D. Tex. Sept. 2, 2015).

Two: The Amended Complaint adds additional allegations confirming that the structure of the transactions at issue— "where money was routed through anonymous exchanges and circular wallets"—rendered the digital assets untraceable. Am. Compl. ¶¶ 2, 65, 67, 69, 71, 76, 126(b). "A cause of action for conversion fails when the plaintiff cannot trace the exact funds claimed to be converted." *Tornado Bus*, 2015 WL 5164731, at *6. Courts have appropriately found that pooled crypto assets are not easily traceable, *see Van Loon v. Dep't of the Treasury*, 122 F.4th 549, 557 (5th Cir. 2024), and are otherwise incapable of forming the basis of a conversion claim. *See, e.g.*, *Liang v. Peng*, No. 4:24-cv-2657, 2025 WL 3050177, at *7–8 (S.D. Tex. Sept. 26, 2025).

14

Second, Plaintiffs' allegations with respect to Hatzipetros are inconsistent with the third conversion element.  To prove an action for conversion, Plaintiffs must establish that Hatzipetros personally exercised dominion and control over Plaintiffs' virtual funds.  *See Waisath v. Lack's Stores*, 474 S.W.2d 444, 447 (Tex. 1971).  Other than the conclusory, collective allegation in Count Three simply parroting required elements, the Complaint does not allege—even once—that Hatzipetros himself had any practical interaction with Plaintiffs' digital assets or transactions.

### D.    Plaintiffs Have Not Pleaded A Basis To Sue Hatzipetros For Breach Of Fiduciary Duty.

This Court should dismiss Count Four for breach of fiduciary duty *because Plaintiffs already abandoned it* against Hatzipetros.  In response to Hatzipetros's motion to dismiss the Original Complaint, Plaintiffs conceded "that fiduciary-duty claim presents a narrower question than the other causes of action asserted," and did not oppose dismissal of that claim.  Pls' Resp. to 1st Motion [Dkt. 23] ¶ 90.  Plaintiffs therefore abandoned this claim.  *See Terry Black's Barbecue, L.L.C. v. State Auto. Mut. Ins. Co.*, 22 F.4th 450, 459 (5th Cir. 2022).

Incredibly, the Amended Complaint reasserts this abandoned cause of action *unchanged* from the Original Complaint.  Am. Compl. ¶¶ 119–22.  As Plaintiffs already acknowledged, however, the Amended Complaint does not plausibly allege that Hatzipetros had a relationship with Plaintiffs, much less a relationship sufficient to create a fiduciary duty.  *See Gilbreath v. Horan*, No. 01-17-00316-CV, 2023 WL 3011614, at *38 (Tex. App.—Houston [1st Dist.] Apr. 20, 2023, pet. denied).  Plaintiffs' attempt to plead a duty, Am. Compl. ¶ 112, fails as a matter of law.  Assuming *arguendo* the Amended Complaint articulated a fiduciary duty owed by Hatzipetros based on his participation (as a lawyer) in meetings "soliciting" funds (it does not, *see Occidental Petroleum Corp. v. Wells Fargo Bank, N.A.*, 573 F. Supp.3d 1161 (S.D. Tex. 2021)), the closest such relationship would only establish a duty to "Defendants" including Mike Boggs,

15

rather than Plaintiffs.  Under Texas law, attorneys like Hatzipetros owe a fiduciary duty *to their clients*.  *See Willis v. Maverick*, 760 S.W.2d 642, 645 (Tex. 1988).  The Amended Complaint alleges that "Defendants" retained Hatzipetros to "structure and register shell entities," *id.* ¶ 104(c), and that he acted as the "legal architect" for Defendants' venture—not for Plaintiffs.  *Id.* ¶ 31, 104(c).  Indeed, Plaintiffs' legal theory is that Hatzipetros's legal work was *adverse* to Plaintiffs.  *See, e.g.*, *id.* ¶¶ 30, 126(d).  Simply put, there is no basis in the Amended Complaint to state a fiduciary duty owed by Hatzipetros to Plaintiffs, which dooms Count Four.

### E.    Plaintiffs Fail To State A Claim For Unjust Enrichment.

Count Five should be dismissed with respect to Hatzipetros for two reasons.  First, this Court has not recognized unjust enrichment as independent cause of action.  *See Williams v. Apple Inc.*, No. H-19-782, 2019 WL 2057960, at *5 (S.D. Tex. May 9, 2019) (citing *Harris Cty. v. MERSCORP Inc.*, 791 F.3d 545 (5th Cir. 2015); *see also Redwood Resort Props., LLC v. Holmes Co. Ltd.*, No. 3:06-CV-1022-D, 2006 WL 3531422, at *9 (N.D. Tex. Nov. 27, 2006).  Because Plaintiffs have no viable claims against Hatzipetros upon which they may base a claim for unjust enrichment, Count Five must be dismissed.  *See In re Cogent Energy Services, LLC*, No. 23-33659, 2024 WL 3770041, at *6  (S.D. Tex. Aug. 12, 2024).

Second, even if the Court were to recognize unjust enrichment as a cause of action, Plaintiffs' pleading would still need to articulate a factual basis for equitable relief.  *See Allstate Ins. Co. v. Donovan*, No. H-12-0432, 2012 WL 2577546, at *18 (S.D. Tex. July 30, 2012).  The Amended Complaint, however, makes superficial conclusory allegations, such as "Defendants were unjustly enriched at the expense of Plaintiffs by acquiring, retaining, and utilizing their cryptocurrency assets under false pretenses."  Am. Compl.  ¶ 116.  Such superficial claims "must be dismissed pursuant to Rule 12(b)(6)."  *Allstate Ins. v. Donovan*, 2012 WL 2577546, at *18; *see also In re BJ Servs., LLC*, No. 20-33627, 2023 WL 2311986, at *5 (S.D. Tex. Mar. 1, 2023);

16

*Greene v. CitiMortgage, Inc.*, No. 2:13-CV-219, 2014 WL 948878, at *4 (S.D. Tex. Mar. 11, 2014).

### F.    Plaintiffs' Fraud-Based Claims Fail.

Amended Complaint Counts Six, Seven, and Eight plead causes of action for common law fraud, "fraudulent inducement," and "fraudulent concealment," respectively.  These counts are not pleaded with particularity and do not describe actionable fraud by Hatzipetros in any event, including because Plaintiffs allege these causes of action against "Defendants" as a group.

### 1.    Plaintiffs' Misrepresentation Claims Do Not Satisfy Rule 9(b).

As discussed above, allegations of fraud must be pleaded with specificity to satisfy Rule 9(b).  *Williams v. WMX Techs.*, 112 F.3d at 178.  "Rule 9(b) also disallows collectivized or group allegations; Plaintiffs must delineate which Defendant is responsible for which allegedly fraudulent activity."  *VTX Communications, LLC v. AT&T Inc.*, No. 7:19-CV-00269, 2020 WL 4465968, at *29 (S.D. Tex. Aug. 4, 2020).

Among other shortcomings, the Complaint alleges *no misrepresentation at all* by Hatzipetros to Plaintiffs, much less the "time, place, and contents" of any such misrepresentation.  *See* Am. Compl. ¶ 120 (generally describing five "false misrepresentations" made by "Defendants" other than Hatzipetros); ¶ 123 (generally describing three purported "false inducements" made by "Defendants" other than Hatzipetros).  Indeed, Hatzipetros is not mentioned *at all* in Counts Six or Seven.  Plaintiffs' wholesale omission of Hatzipetros is fatal to those claims.  *See Williams v. WMX Techs.*, 112 F.3d at 179; *Bank of New York Mellon*, No. CV H-16-3238, 2017 WL 3424975, at *13 (S.D. Tex. Aug. 9, 2017); *U.S. ex rel. Briseno v. Hillcroft Medical Clinic Ass'n*, No. 4:20-cv-02871, 2022 WL 17417178, at *4 (S.D. Tex. Dec. 5, 2022); *Juarez v. Nationwide Prop. & Cas. Ins. Co.*, No. CIV.A. H-10-2726, 2010 WL 5464267, at *3 (S.D. Tex. Dec. 29, 2010) (dismissing

fraud and fraud conspiracy claims because pleading specified "no representation or alleged misrepresentation").

### 2. Plaintiffs' Omission Claim Does Not Satisfy Rule 9(b).

Count Eight is different from the other fraud-based claims, in that it mentions Hatzipetros in one of five "material facts" purportedly "concealed" by "Defendants." Am. Compl. ¶ 126(d). Count Eight still fails for two reasons.

First, the Complaint is still woefully vague with respect to the who, what, when, and where of any purported omission. Given the conflicting allegations throughout the Amended Complaint that defendants, including Hatzipetros, openly discussed "shell entities," including "Eden Alliance and Angels Coding," with Plaintiffs, *see, e.g.*, *id.* ¶¶ 35, 37, 95, 98, 73, 120(d), 108(e), it is reasonable to assume that Plaintiffs shirked their Rule 9(b) obligation because the facts do not support a claim for fraudulent nondisclosure.

Second, a plaintiff asserting a claim for fraud by nondisclosure in Texas must plausibly allege that the defendant had a duty to disclose the omitted facts to the plaintiff, which is a question of law. *See Bradford v. Vento*, 48 S.W.3d 749, 754–55 (Tex. 2001). As discussed with respect to Count Four, and as Plaintiffs already conceded, however, Plaintiffs have not, and cannot plausibly, plead such a duty exists on the part of Hatzipetros vis-à-vis Plaintiffs, so Count Eight is doomed on that basis. *See Smith v. MTGLQ Investors, LP*, 2019 WL 13193219, at *3 (S.D. Tex. 2019) (fraudulent concealment dismissed for failure to plead facts showing duty to disclose and the who, what, and where of alleged statements).

### G. Plaintiffs' Securities And Exchange Act Claim Has Fundamental Structural And Factual Flaws.

Count Nine purports to state a claim under Section 10(b) of the Securities and Exchange Act of 1934, 15 U.S.C. §78j(b), which requires a plaintiff to allege: (1) a material

18

misrepresentation, (2) scienter, (3) a connection between the misrepresentation or omission and the purchase or sale of a security, (4) reliance on the misrepresentation or omission, (5) economic loss, and (6) loss causation." *Izadjoo v. Helix Energy Solutions Group, Inc.*, 237 F. Supp.3d 492, 506 (S.D. Tex. 2017) (citing *R2 Invs. LDC v. Phillips*, 401 F.3d 638, 641 (5th Cir. 2005)).  A plaintiff must clear two procedural hurdles to adequately plead these elements.  First, the heightened pleading standards in Rule 9(b) apply to Section 10(b) claims with the same force as fraud-based claims.  *See Izadjoo*, 347 F. Supp.3d at 506–07 (citing *Benchmark Electronics*, 343 F.3d at 724).  Second, the Private Securities Litigation Reform Act of 1995 ("PSLRA") imposes additional procedural requirements to deter frivolous and meritless securities claims at the outset of litigation.  *See* 15 U.S.C. § 78u-4(b)(2).  "A district court must dismiss a securities-fraud claim failing to satisfy either the PSLRA's pleading requirements or those of Rule 9(b)."  *Trendsetter Investors, LLC v. Hyperdynamics Corp.*, No. H-06-0746, 2007 WL 172627, at *12 (S.D. Tex. Jan. 18, 2007) (citation omitted).  Plaintiffs utterly fail to meet these procedural burdens.  Count Nine should be dismissed for four reasons.

First, the Amended Complaint's allegations of purportedly material misrepresentations are inadequate.  Vague, unspecific, blanket, or catchall allegations will not survive Rule 9(b) and the PSLRA's heightened pleading requirements.  *See* 15 U.S.C. § 78u-4(b)(1); *Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 345 (2005).  This stringent pleading requirement is in place, in part, because, without more detail about, *inter alia*, the content and date of alleged representations, a defendant cannot determine, for example, whether the PSLRA's statutory safe harbor for forward-looking statements is in play.  *See* 15 U.S.C. § 77z-2(c)(1); 15 U.S.C. § 78u-5(c)(1); *Southland Sec. Corp. v. INSpire Ins. Solutions, Inc.*, 365 F.3d 353, 371 (5th Cir. 2004).  Courts pay even closer attention when, as here, a plaintiff alleges that a defendant omitted material information;

19

under Section 10(b) and the PLSRA, fraud by omission requires a plaintiff to sufficiently allege "a substantial likelihood that the disclosure of the omitted fact would have been viewed by the reasonable investor as having significantly altered the 'total mix' of information made available." *Matrixx Initiatives, Inc. v. Siracusano*, 563 U.S. 27, 38 (2011).  A plaintiff must not only plead why a statement is allegedly incomplete, but "why that incompleteness makes the statement misleading or untrue." *R2 Invs.*, 401 F.3d at 642.

Plaintiffs' allegations do not clear these hurdles.  Plaintiffs vaguely allege that five defendants, including two limited liability companies, "made untrue statements of material fact and omitted to state material facts necessary to make the statements made not misleading."  Am. Compl. ¶ 129.  The next paragraph promises to elaborate ("Specifically, . . ."), then lists five categories of purported statements or omissions without dates, who spoke, who heard, or how the statements or actions were made, much less the reason why Plaintiffs allege the statements to be misleading or what impact the allegedly omitted information would have had on a "reasonable investor." *Id.* ¶ 130.  For example, Paragraph 130(e) complains that "Defendants . . . [o]mitted material facts, including . . . the role of Hatzipetros in creating shell entities . . . .".  But Plaintiffs' own allegations undercut this vague assertion because the Amended Complaint alleges investors *knew* about Hatzipetros's role in creating the entities when he "communicated with investors" and held himself out as the "legal architect." *Id.* ¶¶ 31, 86.  This Court has dismissed claims where pleaded facts such as Plaintiffs are "too conclusory and speculative." *See, e.g.*, *Stephens v. Uranium Energy Corp.*, No. H-15-1862, 2016 WL 3855860, at *21 (S.D. Tex. July 15, 2016). The same outcome is warranted here.

Second, Plaintiffs' scienter allegations are almost insultingly inadequate.  The PSLRA requires a complaint to allege, with particularity, facts that give rise to a strong inference that a

20

defendant acted with the required state of mind. *See* 15 U.S.C. § 78u-4(b)(2); *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 321 (2007). Group pleading is not permitted to establish scienter. *Southland*, 365 F.3d at 365. The PSLRA requires specific allegations of facts "with respect to *each* act or omission alleged." *Tellabs*, 551 U.S. at 363 (emphasis in original). Plaintiffs' one-sentence scienter allegation in Paragraph 130(f) is conclusory, fails to provide any required Rule 9(b) particulars, and relies on impermissible group pleading. This Court has rejected claims that alleged such thin to nonexistent scienter allegations. *See, e.g.*, *Izadjoo*, 237 F. Supp.3d at 514; *see also, e.g.*, *Dawes v. Imperial Sugar Co.*, 975 F. Supp.2d 666, 692 (S.D. Tex. 2013); *Schott v. Nobilis Health Corp.*, 211 F. Supp.3d 936, 956–57 (S.D. Tex. 2016). Count Nine should join that list.

Third, even if Count Nine was sufficiently pleaded, Plaintiffs' scienter statements are not plausible under the rubric set forth in *Tellabs*. To determine whether pleaded facts give rise to a "strong inference" of scienter, the Supreme Court requires the Court to "consider plausible, nonculpable explanations for the defendant's conduct, as well as inferences favoring the plaintiff." *Tellabs*, 551 U.S. at 324. The Amended Complaint provides far greater evidence that Hatzipetros acted without culpability than the bald conclusory allegation in Paragraph 130(f). For example, Plaintiffs plead that they were aware of the legal entities Hatzipetros set up in real time and that Plaintiffs believed Hatzipetros's legal work to confirm that the system was structured with legal oversight. *See, e.g.*, Am. Compl. ¶ 33. The record also indicates that investors entered into written contracts with the Hatzipetros-created entities at arm's length. *See, e.g.*, *id.* ¶¶ 18, 30–31, 98, 104(c)–(d), 120(c), 123(b), 136(c) 145(e). And publicly-available information also shows that Hatzipetros is a practicing attorney without any disciplinary history in the New York Bar. When

21

these facts are balanced against the conjecture of intent in Count Nine and the "omissions and ambiguities" put forth by Plaintiffs, the Court has no basis to draw a cogent inference of scienter.

**H.      Plaintiffs' Texas Securities Act Claim Should Be Dismissed.**

Count Ten alleges various general violations of the Texas Securities Act ("TSA"). TEX. GOV'T. CODE § 4008.051. The Fifth Circuit has held that TSA claims brought in federal court must meet the heightened pleading requirements of Federal Rule of Civil Procedure 9(b). *Williams v. WMX Techs.*, 112 F.3d at 177; *see also Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333, 338–39 (5th Cir. 2008). The Amended Complaint falls short of this standard with respect to Hatzipetros in at least two respects.

One, Plaintiffs' TSA allegations are not sufficiently specific under Rule 9(b). Like fraud claims, a plaintiff alleging a TSA violation must specifically plead the "who, what, when, where, and how" of any allegedly material misstatements and omissions. *ABC Arbitrage Plaintiffs Group v. Tchuruk*, 291 F.3d 336, 350 (5th Cir. 2002); *Dorsey*, 540 F.3d at 339. Here, however, Plaintiffs only plead generally that "Defendants misrepresented" a short list of alleged "material facts." Am. Compl. ¶ 136. The vague list does not meet the strict pleading requirements of Rule 9(b), warranting dismissal. *See, e.g.*, *Billitteri v. Sec. Am., Inc.*, No. 09-CV-1568-F, 2010 WL 6785484, at *8 (N.D. Tex. July 26, 2010); *R2 Invs.*, 2003 WL 22862738, at *7.

Two, Plaintiffs' TSA allegations also suffer from inappropriate group pleading, even after Hatzipetros put Plaintiffs on notice of this defect in Hatzipetros's First Motion. 1st Motion at 23. There are five defendants listed in Plaintiffs' Amended Complaint. *See* Am. Compl. ¶¶ 16–20. Yet, the Amended Complaint provides no clarity regarding which of the "Defendants" made alleged misrepresentations to which plaintiff, including when they were made, where they were made, how they were made, and why they are misleading. *See id.* ¶ 99. Courts have dismissed Texas Securities Act claims under Rule 12(b)(6) for such pleading defects. *See, e.g.*, *In re Cogent*,

22

2024 WL 3770041, at \*6–7; *Billitteri*, 2010 WL 6785484, at \*8. Count Ten should be dismissed for the same reason.

Second, even if the Amended Complaint sufficiently pleaded a theory of liability against Hatzipetros under the TSA, the Act cannot reach him. The TSA provides for secondary liability for "aiders" of a plaintiff's seller, but only with additional scienter proof. TEX. GOV'T CODE § 4008.055(c) (requiring "intent to deceive or defraud" or "reckless intent"). Here, however, despite a superficial attempt to cast Hatzipetros as one of several "'sellers' and 'aiders' under the Act," Am. Compl. ¶ 137, the Amended Complaint does not allege scienter by Hatzipetros—nor could it given the limited allegation of "knowledge" throughout Plaintiffs' pleading. Plaintiffs do not allege that Hatzipetros knew of Boyd's secret back-end corruption of the system nor do Plaintiffs allege he created legal entities for any improper purpose, much less that Hatzipetros did so with an "intent to deceive," intent to "defraud," or "reckless intent." Count Ten should therefore be dismissed as a matter of form and incurable law.

## I. Plaintiffs' Fraud Conspiracy Claim Should Be Dismissed.

Finally, although Plaintiffs expressly list Hatzipetros a defendant purportedly liable for "Civil Conspiracy to Commit Fraud," Am. Compl. ¶ 141, Count Eleven should be dismissed with respect to Hatzipetros for two reasons. First, Plaintiffs' conspiracy cause of action is "derivative" of their fraud claims. *Highland Crusader Offshore Partners, LP v. LifeCare Holdings Inc.*, 377 F. App'x 422, 428 (5th Cir. 2010) (per curiam) (citing *Tilton v. Marshall*, 925 S.W.2d 672, 681 (Tex. 1996)). Because they have failed to state a claim for fraud, Plaintiffs have failed to state a claim for conspiracy to commit fraud.

Second, the pleading standards of *Twombly* and Rule 9(b) apply to pleading a state law claim of conspiracy to commit fraud with the same force as a claim of fraud. *See Williams v. WMX Techs.*, 112 F.3d at 178–79. Here, neither the fraud claim nor the conspiracy claim is pleaded

23

adequately under Rule 9(b).  Count Eleven is pleaded in three short numbered paragraphs.  Am. Compl. ¶¶ 140–43.  Among other issues, Plaintiffs fail to allege any facts supporting a meeting of the minds on the part of Hatzipetros sufficient to state this claim.  *See Duzich v. Advantage Fin. Corp.*, 395 F.3d 527, 530 (5th Cir. 2004).  This Court has dismissed fraud conspiracy claims under similar circumstances.  *See, e.g.*, *Whitney Nat'l Bank v. Med. Plaza Surgical Ctr. L.L.P.*, No. CIV.A. H-06-1492, 2007 WL 400094, at *5 (S.D. Tex. Feb. 1, 2007).

### III.    The Court Should Dismiss The Claims Against Hatzipetros With Prejudice.

This is the second time Hatzipetros has raised the pleading deficiencies described above. Despite full briefing and an opportunity to replead, the Amended Complaint failed to cure these defects.  Courts have discretion to dismiss claims with prejudice when amendment would be futile or based on unsuccessful efforts to cure pleading deficiencies.  *See Bittinger v. Wells Fargo Bank NA*, No. CIV.A. H-10-1745, 2011 WL 3568206, at *3 (S.D. Tex. Aug. 15, 2011) (citing *Great Plains Tr. Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 329 (5th Cir. 2002)).

Plaintiffs' amended allegations confirm the futility of their claims.  The Amended Complaint alleges that Hatzipetros was "at all relevant times" acting squarely within the scope of his legal duties in representing his clients as a "legal architect."  Am. Compl. ¶¶ 18, 31.  Plaintiffs' amendment proves that they cannot plead plausible facts to preclude application of attorney immunity, which bars all claims against Hatzipetros.  Further, by refusing to make any substantive changes to the causes of action with respect to Hatzipetros, Plaintiffs functionally acknowledged the futility of their claims.  For example, Plaintiffs abandoned their fiduciary duty claim in response to Hatzipetros's first Motion to Dismiss.  Yet the Amended Complaint retains Count Four without alleging any new facts to sustain the abandoned claim.  *See supra* at 15–16.  Plaintiffs have clearly "stated their best case" and can allege no plausible facts to sue Hatzipetros.  *See*

24

*Ceramic Performance Worldwide, LLC v. Motor Works, LLC*, No. 3-09-CV-0344-BD, 2010 WL 234804, at *3 (N.D. Tex. Jan. 21, 2010).

Moreover, Plaintiffs pleaded facts contradict any allegations that could possibly make their claims viable. For example, Plaintiffs have affirmatively pleaded that Boyd "singlehandedly" "maintain[ed] unilateral control," access, and manipulation of the arbitrage system, including the profit wallets. *See, e.g.*, Am. Compl. ¶¶ 56, 59, 82, 95, 120(a) 130(e), 145(b). These allegations preclude repleading to plausibly allege that Hatzipetros (or any other defendant), rather than Boyd, had discretionary control over Plaintiffs' assets making any amendment futile. *See Fast Capital Mktg., LLC v. Fast Capital LLC*, No. CIV. A. H-08-2142, 2008 WL 5381309, at *18 (S.D. Tex. Dec. 24, 2008) (courts may refuse leave to amend "allegations of other facts consistent with the challenged pleading could not possibly cure the deficiency.").

## CONCLUSION

For the foregoing reasons, defendant Peter D. Hatzipetros respectfully requests the Court to dismiss Plaintiffs' claims against him for failure to state a claim upon which relief can be granted. Mr. Hatzipetros reserves all rights to compel arbitration of Plaintiffs' claims for adjudication on the merits in the alternative, but the law requires Plaintiffs to plead their claims in the right court and in compliance with applicable law as a threshold matter.

Respectfully submitted,

DRUMHELLER, HOLLINGSWORTH & MONTHY, LLP

/s/ *Jeremy T. Monthy*
Jeremy T. Monthy, *Attorney-in-Charge*
State Bar No. 24073240
Federal I.D. No. 1115582
Derek S. Hollingsworth
State Bar No. 24002305
Federal I.D. No. 34569
Kathleen C. Laird

State Bar No. 24132063
Federal I.D. No. 3844989
712 Main Street, Suite 1705
Houston, Texas  77002
Telephone:  (713) 751-2300
Facsimile:  (713) 751-2310
Emails:  jmonthy@dhmlaw.com
dhollingsworth@dhmlaw.com
klaird@dhmlaw.com

**COGDELL LAW FIRM, PLLC**
Dan Cogdell
Texas Bar # 04501500
Cogdell Law Firm
712 Main St., Suite 2400
Houston, TX 77002
Telephone: 713 426 2244
Email: dan@cogdell-law.com


**ATTORNEYS FOR DEFENDANTS
MIKE BOGGS, PETER D. HATZIPETROS,
AND ANGELS CODING, LLC**


**CERTIFICATE OF SERVICE**

I hereby certify that on April 10, 2026, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all registered parties, including:

Kyle A. Coker
Kaitlyn M. Coker
Farmer & Coker, PLLC
901 Main Street, Suite 5330
Dallas, Texas  75202

*Attorneys for Plaintiffs*

 /s/ *Jeremy T. Monthy*
Jeremy T. Monthy

26