## IN THE UNITED STATES DISTRICT COURT
### SOUTHERN DISTRICT OF TEXAS
### HOUSTON DIVISION

| | | |
|---|---|---|
| CORBIN COWAN, DAWN COWAN, STRATEGIC EQUITY PARTNERS, LLC, TRIUMPH TECHNOLOGIES, LLC, CAB VENTURES, LLC, JEREMY ENGEL, SPARTAN MARKETING & INVESTMENTS, LLC, INTELLITECH SOLUTIONS, LLC, SOLIDA EQUITY PARTNERS, LLC AND JOSH KIRK,<br><br>    *Plaintiffs,*<br><br>v.<br><br>JAMES TYLER BOYD, MIKE BOGGS, PETER D. HATZIPETROS, THE EDEN ALLIANCE, LLC, ANGELS CODING, LLC, and DAWN BOGGS,<br><br>    *Defendants.* | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | CASE NO. 4:25-cv-04476 |

---

## PLAINTIFFS' RESPONSE TO DEFENDANT PETER D. HAZIPETROS'S HATZIPETROS'S MOTION TO DISMISS

---

TO THE HONORABLE JUDGE OF SAID COURT:

Plaintiffs submit this response in opposition to Defendant Peter D. Hazipetros's Motion to Dismiss. As set forth below, the Motion misapplies the governing pleading standards and asks the Court to resolve factual disputes and draw inferences in Hazipetros's favor at the pleading stage. When the Complaint is read as a whole and the well-pleaded allegations are accepted as true, Plaintiffs have plausibly stated their claims. The Motion should be denied.

**TABLE OF CONTENTS**

I.     INTRODUCTION ..........................................................................................................1

II.    LEGAL STANDARD ...................................................................................................1

    A.     Rule 12(b)(6)............................................................................................................1

    B.     Rule 9(b) (Where Applicable)..................................................................................2

III.   ARGUMENT................................................................................................................2

    A.     Attorney Immunity Does Not Shield Hazipetros. ....................................................2

      i.     *Legal standard* ..................................................................................................2

      ii.    *Hazipetros is Not Entitled to Attorney Immunity.* ............................................3

    B.     Plaintiffs Adequately Plead RICO Claims Against Hatzipetros. ..............................4

      i.     *Legal Standard*..................................................................................................4

      ii.    *Plaintiffs Plausibly Allege Hatzipetros Participated in the Operation or Management of the Enterprise*...........................................................................................................5

      iii.   *Plaintiffs Adequately Plead a Pattern of Racketeering Activity* .....................6

      iv.    *The PSLRA Does Not Warrant Dismissal at the Pleading Stage* .................7

      v.     *Plaintiffs Independently State a Claim for RICO Conspiracy* ........................8

    C.     Plaintiffs Adequately Plead a Claim for Conversion. .......................................9

    D.     Plaintiffs Adequately Plead Unjust Enrichment. ............................................11

      i.     *Texas Law Recognizes Unjust Enrichment as a Viable Theory of Recovery.* ...............11

      ii.    *The FAC Plausibly Alleges That Hatzipetros Obtained and Retained Benefits Through Fraud and Undue Advantage.* ...................................................................................12

    E.     The Plaintiffs Adequately Plead Fraud against Hazipetros. ......................................12

      i.     *The FAC Satisfies Rule 9(b) as to Counts Six and Seven.*................................12

      ii.    *Plaintiffs Adequately Plead Fraudulent Concealment.*....................................14

    F.     Plaintiffs Adequately Plead Their Section 10(b) and Rule 10b-5 Claim. ....................16

      i.     *The FAC Pleads Material Misrepresentations and Omissions with Particularity* .......16

ii.    *The FAC Specifically Connects Hatzipetros to the Alleged Misrepresentations and Omissions.* ........................................................................................................ *17*

iii.    *The FAC Pleads a Strong Inference of Scienter.* ......................................................... *19*

iv.    *The FAC Adequately Pleads Liability Under Rule 10b-5(a), (b), and (c).* ................... *20*

G.    Plaintiffs Adequately Plead Their Texas Securities Act Claim. ................................. 21

**IV.  CONCLUSION AND PRAYER** ........................................................................................ **23**

# TABLE OF AUTHORITIES

**Cases**

*ABC Arbitrage Plaintiffs Grp. v. Tchuruk*,
  291 F.3d 336 (5th Cir. 2002) ..................................................................................... 16

*Abraham v. Singh*,
  480 F.3d 351 (5th Cir. 2007) ....................................................................................... 4

*Affco Invs. 2001, L.L.C. v. Proskauer Rose, L.L.P.*,
  625 F.3d 185 (5th Cir. 2010) ................................................................... 5, 7, 18, 20

*AHBP LLC v. Lynd Co.*,
  649 F. Supp. 3d 371 (W.D. Tex. 2023) .................................................................... 13

*Ahlgren v. Ahlgren*,
  703 S.W.3d 378 (Tex. App.—Corpus Christi–Edinburg 2023, pet. denied)........................... 10

*Allstate Ins. Co. v. Plambeck*,
  802 F.3d 665 (5th Cir. 2015) ....................................................................................... 5

*Andrews v. Am. Nat'l Red Cross*,
  176 F. Supp. 2d 673 (E.D. Tex. 2001)....................................................................... 8

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009)....................................................................................................... 1

*Barnhill v. Automated Shrimp Corp.*,
  222 S.W.3d 756 (Tex. App.—Waco 2007, no pet.) ................................................ 13

*Bates Energy Oil & Gas v. Complete Oilfield Services*,
  361 F. Supp. 3d 633 (W.D. Tex. 2019) .................................................................... 14

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007)....................................................................................................... 1

*Benchmark Elecs., Inc. v. J.M. Huber Corp.*,
  343 F.3d 719 (5th Cir. 2003) .................................................................................. 5, 7

*Bradford v. Vento*,
  48 S.W.3d 749 (Tex. 2001)................................................................................... 15, 16

*Castro Co-op. Gin Co. v. Harrison*,
  272 S.W.2d 538 (Tex. App.—Eastland 1954, no writ) ............................................ 9

*Digital Drilling Data Sys., L.L.C. v. Petrolink Servs., Inc.*,
  965 F.3d 365 (5th Cir. 2020). .................................................................................... 11

*Dolenz v. Cont'l Nat'l Bank of Fort Worth*,
  620 S.W.2d 572 (Tex. 1981)......................................................................................... 9

*Dorsey v. Portfolio Equities, Inc.*,
  540 F.3d 333 (5th Cir. 2008) ............................................................................... 21, 22

*Elias v. Pilo*,
781 Fed. Appx. 336 (5th Cir. 2019)..................................................................................... 11

*Fin. Acquisition Partners LP v. Blackwell*,
440 F.3d 278 (5th Cir. 2006) .............................................................................................. 18

*Georgia Firefighters' Pension Fund v. Anadarko Petroleum Corp.*,
514 F. Supp. 3d 942 (S.D. Tex. 2021) ................................................................................ 21

*Goldovsky v. Rauld*,
No. 6:24-CV-00159-ADA-DTG, 2025 WL 1691913 (W.D. Tex. May 28, 2025)................... 22

*Gulf, C. & S.F. Ry. Co. v. Buckholts State Bank*,
270 S.W. 1008 (Tex. Comm'n App. 1925) .......................................................................... 10

*Hansel v. Hemby*,
No. 4:25-CV-00504-RWS-JBB, 2026 WL 776309 (E.D. Tex. Mar. 2, 2026)........................ 15

*Haynes & Boone, LLP v. NFTD, LLC*,
631 S.W.3d 65 (Tex. 2021)................................................................................................... 4

*Heldenfels Bros., Inc. v. City of Corpus Christi*,
832 S.W.2d 39 (Tex. 1992)................................................................................................. 11

*In re Enron Corp. Sec., Derivative & ERISA Litig.*,
235 F. Supp. 2d 549 (S.D. Tex. 2002) ................................................................................ 19

*In re Okedokun*,
593 B.R. 469 (Bankr. S.D. Tex. 2018) ........................................................................... 11, 12

*In re Uplift RX, LLC*,
667 B.R. 665 (Bankr. S.D. Tex. 2024) .......................................................................... 3, 4, 6

*In re Yazoo Pipeline Co., L.P.*,
459 B.R. 636 (Bankr. S.D. Tex. 2011) ................................................................................ 10

*Ironshore Eur. DAC v. Schiff Hardin, L.L.P.*,
912 F.3d 759 (5th Cir. 2019) ............................................................................................... 2

*Izadjoo v. Helix Energy Solutions Group, Inc.*,
237 F. Supp. 3d 492 (S.D. Tex. 2017) ................................................................................ 19

*Kelly v. Nichamoff*,
868 F.3d 371 (5th Cir. 2017) ............................................................................................ 2, 3

*Lorenzo v. Sec. & Exch. Comm'n*,
587 U.S. 71 (2019)............................................................................................................. 20

*Lutheran Broth. v. Kidder Peabody & Co., Inc.*,
829 S.W.2d 300 (Tex. App.—Texarkana 1992).................................................................... 22

*Matrixx Initiatives, Inc. v. Siracusano*,
563 U.S. 27 (2011)............................................................................................................. 16

*Matter of Connect Transp., L.L.C.*,
825 Fed. Appx. 150 (5th Cir. 2020)..................................................................................... 11

v

*Meason v. Bank of Miami*,
  652 F.2d 542 (5th Cir. 1981) ............................................................................. 7

*Owens v. Jastrow*,
  789 F.3d 529 (5th Cir. 2015) ........................................................................... 19

*Pan Am. Petroleum Corp. v. Long*,
  340 F.2d 211 (5th Cir. 1964) ........................................................................... 10

*Peatwatuck Enters. v. Truist Bank*,
  773 F. Supp. 3d 366 (S.D. Tex. 2025) .............................................................. 11

*Reves v. Ernst & Young*,
  507 U.S. 170 (1993) ........................................................................................ 4, 5

*Robin Singh Educ. Services, Inc. v. Test Masters Educ. Services, Inc.*,
  401 S.W.3d 95 (Tex. App.—Houston [14th Dist.] 2011, no pet.) ...................... 10

*Snow Ingredients, Inc. v. SnoWizard, Inc.*,
  833 F.3d 512 (5th Cir. 2016) ............................................................................. 8

*Southland Sec. Corp. v. INSpire Ins. Sols., Inc.*,
  365 F.3d 353 (5th Cir. 2004) ........................................................... 13, 16, 17, 22

*Sterling Trust Co. v. Adderley*,
  168 S.W.3d 835 (Tex. 2005) ............................................................................ 22

*Taylor v. Tolbert*,
  644 S.W.3d 637 (Tex. 2022) ........................................................................... 3, 4

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
  551 U.S. 308 (2007) ........................................................................................ 19

*Tel-Phonic Servs., Inc. v. TBS Int'l, Inc.*,
  975 F.2d 1134 (5th Cir. 1992) ......................................................................... 5, 6

*Troice v. Proskauer Rose, L.L.P.*,
  816 F.3d 341 (5th Cir. 2016) ............................................................................. 2

*United States ex rel. Grubbs v. Kanneganti*,
  565 F.3d 180 (5th Cir. 2009) ............................................................................. 2

*United States v. Barraza*,
  655 F.3d 375 (5th Cir. 2011) ............................................................................. 6

*United States v. Rosenthal*,
  805 F.3d 523 (5th Cir. 2015) ............................................................................. 8

*Van Loon v. Dep't of the Treasury*,
  122 F.4th 549 (5th Cir. 2024) .......................................................................... 10

*Williams v. WMX Techs., Inc.*,
  112 F.3d 175 (5th Cir. 1997) .......................................................................... 2, 21

*YETI Coolers, LLC v. Mercatalyst, Inc.*,
  No. 1:22-CV-01337-DAE, 2023 WL 11852866 (W.D. Tex. Nov. 14, 2023) .......... 9

vi

**Statutes**

15 U.S.C. § 78u-4(b)(2) ................................................................................................. 23

## I.  INTRODUCTION

1.      Defendant Hatzipetros attempts to portray himself as nothing more than outside counsel who provided legal services to a failed cryptocurrency venture. But that is not what Plaintiffs allege. The First Amended Complaint ("FAC")[1] alleges that Hatzipetros held himself out to investors as "Partner / General Counsel" of the QuantumArc enterprise, prepared investor-facing agreements, participated in presentations alongside James Tyler Boyd and Holton Buggs, communicated directly with investors, and helped structure the entities through which the scheme operated. Plaintiffs further allege that these acts were undertaken to induce investors to transfer cryptocurrency into the QuantumArc program through false representations concerning the legitimacy, structure, and operation of the enterprise. At the pleading stage, those allegations plausibly establish that Hatzipetros was not merely providing legal advice, but actively participating in the promotion and operation of the scheme. Accordingly, the Motion should be denied.

## II.  LEGAL STANDARD

### A.  Rule 12(b)(6)

2.      To survive a motion to dismiss under Rule 12(b)(6), a complaint must allege sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 554–57 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

3.      In assessing plausibility, the Court must draw all reasonable inferences in the plaintiff's favor and may not resolve factual disputes, weigh evidence, or assess the merits of competing explanations. *Twombly*, 550 U.S. at 554–56; *Iqbal*, 556 U.S. at 678–79. The question

---

[1] First Am. Compl. ("FAC") [ECF 42].

at this stage is not whether Plaintiffs will ultimately prevail, but whether they have alleged facts sufficient to move their claims across the line from conceivable to plausible.

### B. Rule 9(b) (Where Applicable)

4.      For claims sounding in fraud, Rule 9(b) requires that the circumstances constituting fraud be pleaded with particularity, including the nature of the alleged misrepresentations or omissions and the manner in which they were misleading. *Williams v. WMX Techs., Inc.*, 112 F.3d 175, 178 (5th Cir. 1997).

5.      Rule 9(b), however, does not require evidentiary detail or proof at the pleading stage, nor does it prohibit group pleading where defendants are alleged to have acted in concert as part of a unified scheme. *United States ex rel. Grubbs v. Kanneganti*, 565 F.3d 180, 190 (5th Cir. 2009). Where the complaint identifies the fraudulent scheme and each defendant's role within it, Rule 9(b) is satisfied.

### III. ARGUMENT

### A. Attorney Immunity Does Not Shield Hazipetros.

#### i.   *Legal standard*

6.      Under Texas law, attorney immunity protects attorneys from civil liability to non-clients for conduct undertaken within the scope of legal representation. *Troice v. Proskauer Rose, L.L.P.*, 816 F.3d 341, 346 (5th Cir. 2016). Although framed as an affirmative defense, Texas courts treat attorney immunity as a true immunity from suit, meaning it may support dismissal only where the defense is apparent on the face of the complaint. *Kelly v. Nichamoff*, 868 F.3d 371, 375 (5th Cir. 2017).

7.      The attorney asserting the defense bears the burden to conclusively establish that the challenged conduct fell within protected legal representation. *Ironshore Eur. DAC v. Schiff Hardin, L.L.P.*, 912 F.3d 759, 763–64 (5th Cir. 2019). Courts applying Texas law repeatedly

2

emphasize that dismissal at the pleading stage is appropriate only in the "rare instances" where the scope of representation is clear from the pleadings themselves. *In re Uplift RX, LLC*, 667 B.R. 665, 687 (Bankr. S.D. Tex. 2024).

> ii. *Hazipetros is Not Entitled to Attorney Immunity.*

8.      Defendant Hatzipetros cannot meet his burden to establish attorney immunity at the pleading stage. The FAC does not conclusively establish that the challenged conduct fell within protected legal representation. Rather, the Complaint plausibly alleges that Hatzipetros acted in a dual capacity—as both legal counsel and an active participant in the QuantumArc enterprise.[2]

9.      Attorney immunity does not protect attorneys who participate in "independently fraudulent activities" with clients, as opposed to merely representing client interests. *Kelly,* 868 F.3d at 376. Nor does the "mere fact that an attorney was representing a client at the time of alleged fraudulent activity" establish immunity. *Id*. at 375. Conduct "entirely foreign to the duties of an attorney" falls outside the doctrine's protection. *Taylor v. Tolbert*, 644 S.W.3d 637, 646 (Tex. 2022).

10.     The allegations here go well beyond ordinary legal services. Plaintiffs allege that Hatzipetros identified himself in investor-facing materials as "Partner / General Counsel" of QuantumArc, participated in investor-facing presentations, communicated directly with investors regarding the investment program, and helped structure the entities through which the scheme operated.[3] Those activities are not uniquely lawyerly in nature. Texas courts have emphasized that attorney immunity does not extend to conduct lacking the "unique office, professional skill, training, and authority of an attorney." *Haynes & Boone, LLP v. NFTD, LLC*, 631 S.W.3d 65, 78

---

[2] FAC ¶¶ 18, 30–33, 93, 95–96.

[3] *Id.*

(Tex. 2021). Investor solicitation, promotional presentations, and credibility-enhancing communications are functions routinely performed by non-lawyers.

11.     Nor does the drafting of the governing investment agreement resolve the issue in Hatzipetros's favor. The relevant inquiry is not whether lawyers sometimes draft contracts, but whether the conduct constitutes protected legal representation under the circumstances. *Id*. at 79–80. Here, Plaintiffs allege that the agreement itself functioned as part of the fraudulent mechanism and identified Hatzipetros to investors as "Partner / General Counsel," plausibly supporting the inference that he was participating in the enterprise rather than merely advising it.[4]

12.     At minimum, these allegations create a factual dispute as to whether Hatzipetros acted as counsel or as a business participant, precluding dismissal at the pleading stage. *See In re Uplift RX, LLC*, 667 B.R. at 688. Moreover, attorney immunity does not apply to Plaintiffs' federal claims, including their RICO and federal securities claims. *Taylor*, 644 S.W.3d at 655–57.

## B.  Plaintiffs Adequately Plead RICO Claims Against Hatzipetros.

### i.  Legal Standard

13.     To state a claim under 18 U.S.C. § 1962(c), a plaintiff must allege that a defendant participated in the affairs of an enterprise through a pattern of racketeering activity. *Abraham v. Singh*, 480 F.3d 351, 357 (5th Cir. 2007). A defendant participates in an enterprise's affairs where he has "some part in directing those affairs," including through participation in key aspects of the scheme. *Reves v. Ernst & Young*, 507 U.S. 170, 179 (1993).

14.     Where RICO predicate acts sound in fraud, Rule 9(b) applies. However, the Fifth Circuit permits plaintiffs to plead the fraudulent scheme with particularity while specifying each defendant's role, even if every communication is not individually identified. *Tel-Phonic Servs.,*

---

[4] FAC ¶¶ 30–31, 93, 96.

*Inc. v. TBS Int'l, Inc.*, 975 F.2d 1134, 1139 (5th Cir. 1992); *Benchmark Elecs., Inc. v. J.M. Huber Corp.*, 343 F.3d 719, 724 (5th Cir. 2003).

15.    The PSLRA bars civil RICO claims based on conduct actionable as securities fraud, but it does not foreclose RICO claims predicated on independent acts of wire fraud. *Affco Invs. 2001, L.L.C. v. Proskauer Rose, L.L.P.*, 625 F.3d 185, 190–91 (5th Cir. 2010).

> ii.    *Plaintiffs Plausibly Allege Hatzipetros Participated in the Operation or Management of the Enterprise*

16.    The FAC plausibly alleges that Hatzipetros participated in the operation or management of the enterprise under *Reves*. At the pleading stage, Plaintiffs need only allege facts supporting a reasonable inference that he had "some part in directing" the enterprise's affairs. *Reves*, 507 U.S. at 179.

17.    First, Plaintiffs allege that Hatzipetros was identified in investor-facing materials as "Partner / General Counsel" of QuantumArc.[5] A defendant's formal role within an enterprise is relevant to whether he participated in its operation or management. *See Allstate Ins. Co. v. Plambeck*, 802 F.3d 665, 674–75 (5th Cir. 2015) (considering defendant's role in scheme and interactions with participants). Being presented to investors as a "partner" supports the inference that he was not merely outside counsel but part of the enterprise's leadership structure.

18.    Second, the FAC alleges that Hatzipetros participated in investor presentations alongside other principals.[6] Participation in the solicitation of victims can constitute participation in the operation of a RICO enterprise. *See Plambeck*, 802 F.3d at 674 (defendant's role in recruiting and interacting with participants supported operation-or-management element).

---

[5] FAC ¶¶ 18, 30.

[6] FAC ¶¶ 32–33, 93, 96.

19.     Third, Plaintiffs allege that Hatzipetros structured the entities used to carry out the scheme and drafted the governing documents through which investors participated.[7] Courts have recognized that professionals who design or implement the mechanisms through which a fraudulent enterprise operates may satisfy *Reves*. *See In re Uplift RX*, 667 B.R. at 687 (allegations that attorney helped shape business structure supported inference of participation in enterprise's affairs).

20.     Fourth, the FAC alleges that Hatzipetros communicated with investors regarding the program.[8] While not every communication is attributed to him individually, the Fifth Circuit does not require that a defendant personally make each fraudulent statement to be liable under RICO; participation in the scheme itself is sufficient. *Tel-Phonic Servs.*, 975 F.2d at 1139.

21.     These allegations support a reasonable inference that Hatzipetros had at least "some part in directing" the enterprise's affairs, which is all that *Reves* requires at this stage.

   *iii.  Plaintiffs Adequately Plead a Pattern of Racketeering Activity*

22.     The FAC alleges a pattern of racketeering activity consisting of repeated acts of wire fraud. To establish wire fraud, a plaintiff must allege (1) a scheme to defraud and (2) the use of interstate wire communications in furtherance of that scheme. *United States v. Barraza*, 655 F.3d 375, 383 (5th Cir. 2011).

23.     Plaintiffs allege a coordinated scheme to induce investors to contribute funds through misrepresentations regarding a purported arbitrage system and related investment

---

[7] FAC ¶¶ 30–31, 35, 93, 95–96.

[8] FAC ¶ 96.

program.[9] The FAC further alleges that interstate electronic communications were used to solicit investors and communicate regarding the program.[10]

24.     Rule 9(b) does not require Plaintiffs to allege every wire transmission with particularity as to each defendant. Rather, Plaintiffs must describe the scheme and the defendant's role in it. *Benchmark Elecs.*, 343 F.3d at 724. The FAC satisfies this standard by alleging that Hatzipetros participated in drafting investor-facing documents, structuring the enterprise, and engaging in investor communications and presentations.[11] These allegations are sufficient to plead a pattern of racketeering activity as to Hatzipetros.

### iv.  The PSLRA Does Not Warrant Dismissal at the Pleading Stage

25.     The PSLRA bars RICO claims predicated on conduct that would be actionable as securities fraud. 18 U.S.C. § 1964(c). However, dismissal is inappropriate if the complaint alleges predicate acts that are not exclusively grounded in securities fraud. *Affco*, 625 F.3d at 189–90.

26.     Here, Plaintiffs' RICO claims are based on a broader fraudulent scheme involving misrepresentations, inducement, and misuse of investor funds through interstate communications.[12] These allegations support wire fraud predicates independent of any securities fraud theory.

27.     Moreover, whether the investment opportunity constitutes a "security" under the *Howey* test is a fact-intensive inquiry that courts are reluctant to resolve at the pleading stage where the record is undeveloped. *See, e.g., Meason v. Bank of Miami*, 652 F.2d 542, 549 (5th Cir. 1981) (emphasizing that the Howey test is not to be "invoked ritualistically whenever the existence of a

---

[9] FAC ¶¶ 29–37, 93.

[10] FAC ¶¶ 30–31, 40–41, 93.

[11] FAC ¶¶ 30–33, 93, 95–96.

[12] FAC ¶¶ 29–41, 92–96.

7

security is at issue," but rather must be applied based on considerations pertinent to the specific instrument in question). Thus, the PSLRA does not provide a basis for dismissal at this stage.

### v.  Plaintiffs Independently State a Claim for RICO Conspiracy

28.    Even if the Court were to find any deficiency in Plaintiffs' § 1962(c) claim, Plaintiffs' RICO conspiracy claim under § 1962(d) independently survives.

29.    Unlike a substantive RICO claim, a § 1962(d) claim does not require that a defendant participate in the operation or management of the enterprise. In the Fifth Circuit, the *Reves* operation-or-management test "did not apply" to a RICO conspiracy claim. *United States v. Rosenthal*, 805 F.3d 523, 532 (5th Cir. 2015). Instead, liability under § 1962(d) requires only that the defendant had knowledge of, and agreed to further, the overall objective of the RICO enterprise. *See Snow Ingredients, Inc. v. SnoWizard, Inc.*, 833 F.3d 512, 525 (5th Cir. 2016).

30.    The FAC satisfies that standard. Plaintiffs allege that Hatzipetros worked in concert with Boyd, Boggs, and others to structure the enterprise, draft the governing documents used to induce investment, and participate in investor-facing communications and presentations.[13] These coordinated activities are not isolated or incidental; they reflect participation in a common scheme and support a reasonable inference that Hatzipetros agreed to further the enterprise's objective.

31.    Moreover, this is not a case where the conspiracy claim fails for lack of adequately pled predicate acts. The FAC alleges a broader pattern of racketeering activity sufficient to support a substantive RICO claim.[14] Where predicate acts are adequately alleged, a § 1962(d) claim may proceed based on the defendant's agreement to facilitate that conduct. *See Andrews v. Am. Nat'l Red Cross*, 176 F. Supp. 2d 673, 692 (E.D. Tex. 2001).

---

[13] FAC ¶¶ 30–33, 92–96.

[14] FAC ¶¶ 92–96.

32.     Accordingly, even if the Court were to narrow Plaintiffs' § 1962(c) claim, the FAC plausibly alleges that Hatzipetros agreed to participate in the enterprise's unlawful scheme, and the § 1962(d) claim independently precludes dismissal.

## C.  Plaintiffs Adequately Plead a Claim for Conversion.

33.     Hatzipetros argues that Plaintiffs' conversion claim fails because the FAC does not allege specific, segregated funds. That argument misstates Texas law and ignores the nature of the allegations. Plaintiffs sufficiently allege that Defendants exercised wrongful dominion over identifiable property obtained through fraud.

34.     Under Texas law, conversion is the exercise of dominion over another's property without consent and inconsistent with the owner's rights. *Dolenz v. Cont'l Nat'l Bank of Fort Worth*, 620 S.W.2d 572, 576 & n.2 (Tex. 1981). While consent ordinarily defeats conversion, consent induced by fraud is not effective. *Castro Co-op. Gin Co. v. Harrison*, 272 S.W.2d 538, 541 (Tex. App.—Eastland 1954, no writ). Courts applying Texas law have accordingly recognized that conversion encompasses property obtained through fraudulent pretenses and occurs when the plaintiff transfers property in reliance on misrepresentations. *YETI Coolers, LLC v. Mercatalyst, Inc.*, No. 1:22-CV-01337-DAE, 2023 WL 11852866, at *5 (W.D. Tex. Nov. 14, 2023).

35.     The FAC alleges precisely that scenario: Plaintiffs transferred cryptocurrency in reliance on Defendants' misrepresentations regarding the QuantumArc program.[15] Those allegations plausibly establish that any apparent consent was ineffective and that Defendants' control over those assets was wrongful from the outset.

36.     Hatzipetros's argument also fails because it treats cryptocurrency as indistinguishable from general funds. Texas law has traditionally limited conversion to tangible

---

[15] FAC¶¶ 37–41.

9

property, *Robin Singh Educ. Services, Inc. v. Test Masters Educ. Services, Inc.*, 401 S.W.3d 95, 97–98 (Tex. App.—Houston [14th Dist.] 2011, no pet.), but courts have recognized that digital assets may qualify as property where they are identifiable and subject to control. *See In re Yazoo Pipeline Co., L.P.*, 459 B.R. 636, 653 (Bankr. S.D. Tex. 2011). Cryptocurrency transactions are recorded on a blockchain with unique identifiers and traceable histories tied to specific wallet addresses. *Ahlgren v. Ahlgren*, 703 S.W.3d 378, 390 (Tex. App.—Corpus Christi–Edinburg 2023, pet. denied); *Van Loon v. Dep't of the Treasury*, 122 F.4th 549, 554–60 (5th Cir. 2024).

37.    The FAC alleges that Plaintiffs' cryptocurrency can be traced through specific wallet addresses and blockchain transactions.[16] These allegations plausibly establish identifiable property, distinguishing this case from claims involving undifferentiated cash.

38.    Nor do Plaintiffs' allegations of commingling defeat the claim. Conversion turns on whether the defendant exercised dominion over property in a manner inconsistent with the plaintiff's rights. *Gulf, C. & S.F. Ry. Co. v. Buckholts State Bank*, 270 S.W. 1008, 1010 (Tex. Comm'n App. 1925). The FAC alleges that Defendants took control of Plaintiffs' assets and transferred and redistributed them for their own purposes. At the pleading stage, Defendants cannot defeat a conversion claim by pointing to their own alleged commingling of those assets.

39.    Finally, Plaintiffs adequately allege dominion and control. Conversion requires only an intentional exercise of control inconsistent with the plaintiff's rights, not wrongful intent. *Pan Am. Petroleum Corp. v. Long*, 340 F.2d 211, 220 (5th Cir. 1964). The FAC alleges that Defendants received, controlled, and failed to return Plaintiffs' cryptocurrency, which is sufficient.[17]

---

[16] FAC ¶¶ 40–41.

[17] FAC ¶¶ 39–41, 93–95.

10

40.    At minimum, whether the assets were sufficiently identifiable or required to be segregated presents factual issues that cannot be resolved on a motion to dismiss. Accordingly, Plaintiffs' conversion claim should not be dismissed.

### D. Plaintiffs Adequately Plead Unjust Enrichment.

*i.    Texas Law Recognizes Unjust Enrichment as a Viable Theory of Recovery.*

41.    Hatzipetros first argues that Plaintiffs' unjust enrichment claim fails because unjust enrichment is not an independent cause of action under Texas law. That argument is inconsistent with the approach repeatedly applied by the Fifth Circuit and courts within the Southern District.

42.    The Fifth Circuit has acknowledged that Texas courts are divided on whether unjust enrichment constitutes an independent cause of action, but it has expressly declined to resolve the issue. *Elias v. Pilo*, 781 Fed. Appx. 336, 338–39 (5th Cir. 2019); *Matter of Connect Transp., L.L.C.*, 825 Fed. Appx. 150, 154 n.2 (5th Cir. 2020). Instead, the Fifth Circuit focuses on whether the plaintiff plausibly alleges that the defendant obtained a benefit "by fraud, duress, or the taking of an undue advantage." *Digital Drilling Data Sys., L.L.C. v. Petrolink Servs., Inc.*, 965 F.3d 365, 379–80 (5th Cir. 2020).

43.    Courts within the Southern District apply the same framework. In *In re Okedokun*, the Bankruptcy Court declined to dismiss an unjust enrichment claim despite the split in Texas authority, reasoning that recovery remains available where a defendant obtained a benefit through "fraud, duress, or the taking of undue advantage." 593 B.R. 469, 579 (Bankr. S.D. Tex. 2018) More recently, the Southern District proceeded under the same approach in *Peatwatuck Enters. v. Truist Bank*, 773 F. Supp. 3d 366, 371 (S.D. Tex. 2025). That framework derives directly from *Heldenfels Bros., Inc. v. City of Corpus Christi*, which recognized recovery where "one person has obtained a benefit from another by fraud, duress, or the taking of an undue advantage." 832 S.W.2d 39, 41 (Tex. 1992).

44.     Accordingly, dismissal is not warranted merely because Hatzipetros disputes whether unjust enrichment is technically an "independent" cause of action. The relevant question is whether Plaintiffs plausibly allege that Hatzipetros obtained and retained a benefit through fraud or undue advantage.

> ii. *The FAC Plausibly Alleges That Hatzipetros Obtained and Retained Benefits Through Fraud and Undue Advantage.*

45.     The FAC alleges that Defendants solicited cryptocurrency investments through false representations concerning the D.A.W.N.N. arbitrage system, the legitimacy of the QuantumArc enterprise, and the handling of investor assets, which were then pooled, redistributed, and misappropriated through the scheme.[18]

46.     As to Hatzipetros specifically, Plaintiffs allege that he identified himself as "Partner / General Counsel" in the QuantumArc User Agreement, prepared investor-facing documents, participated in investor presentations alongside Boyd and Boggs, communicated directly with investors, and continued participating in communications regarding the enterprise after the scheme began to unravel.[19]

47.     Taken together, these allegations plausibly support the inference that Hatzipetros was not merely a detached legal service provider, but instead participated in and benefited from an enterprise that allegedly obtained investor cryptocurrency through fraud and undue advantage. That is sufficient to state a claim for unjust enrichment under Texas law. *See In re Okedokun*, 593 B.R. at 579.

**E.  The Plaintiffs Adequately Plead Fraud against Hazipetros.**

> i. *The FAC Satisfies Rule 9(b) as to Counts Six and Seven.*

---

[18] FAC ¶¶ 29–41, 93.

[19] FAC ¶¶ 18, 30–33, 86, 93, 96.

48.     Hatzipetros argues that Counts Six and Seven fail because the FAC allegedly pleads fraud collectively against "Defendants" and does not identify actionable misrepresentations attributable specifically to him. The FAC, however, must be read as a whole, and when read in its entirety, it satisfies Rule 9(b)'s particularity requirement.

49.     Under Fifth Circuit law, Rule 9(b) requires a plaintiff to plead the "who, what, when, where, and how" of the alleged fraud. *Southland Sec. Corp. v. INSpire Ins. Sols., Inc.*, 365 F.3d 353, 362 (5th Cir. 2004). Although Rule 9(b) prohibits undifferentiated group pleading, courts permit collective allegations where the complaint otherwise identifies each defendant's role in the fraudulent scheme and attributes specific conduct to each defendant. *AHBP LLC v. Lynd Co.*, 649 F. Supp. 3d 371, 389 (W.D. Tex. 2023).

50.     The FAC satisfies that standard. Plaintiffs do not merely allege that Hatzipetros was associated with QuantumArc in some passive capacity. Rather, the FAC alleges that he identified himself in the QuantumArc User Agreement as "Partner / General Counsel," helped prepare the investment-related agreements and investor-facing materials used to solicit investments, participated in investor presentations alongside Boyd and Boggs in Las Vegas, and communicated directly with investors regarding the enterprise.[20] These allegations specifically identify Hatzipetros's role in the alleged scheme and distinguish him from generalized group pleading.

51.     Nor does Rule 9(b) require Plaintiffs to allege that Hatzipetros personally uttered every fraudulent statement. Under Texas law, individuals who knowingly participate in the creation, preparation, approval, or dissemination of fraudulent materials may face liability for fraud even where another person physically delivers the statements to investors. *Barnhill v. Automated Shrimp Corp.*, 222 S.W.3d 756, 767 (Tex. App.—Waco 2007, no pet.); *In re Primera*

---

[20] FAC ¶¶ 18, 30–33, 96.

*Energy, LLC*, 579 B.R. 75, 144 (Bankr. W.D. Tex. 2017), *aff'd sub nom. Alfaro v. Reiley*, No. 5:18-CV-0329-JKP, 2019 WL 4765385 (W.D. Tex. Sept. 27, 2019). Likewise, personal liability turns on the nature of the defendant's participation in the fraudulent conduct, not merely whether the defendant held a formal corporate title. *Bates Energy Oil & Gas v. Complete Oilfield Services*, 361 F. Supp. 3d 633, 664 (W.D. Tex. 2019).

52.    Here, the FAC alleges that Hatzipetros actively participated in the preparation and dissemination of investor-facing materials and presentations designed to induce Plaintiffs to invest in the QuantumArc program.[21] These allegations provide substantially more than the sort of conclusory, undifferentiated accusations rejected by Rule 9(b).

53.    Moreover, the FAC identifies the substance of the alleged misrepresentations, including representations concerning the legitimacy of the QuantumArc arbitrage system, the security and functionality of the enterprise's infrastructure, and the nature of the investment program itself.[22] The FAC further identifies the relevant investor presentations, written agreements, and communications through which those representations were conveyed.[23] Taken together, the FAC plausibly alleges the "time, place, and contents" of the fraudulent scheme and Hatzipetros's specific role within it. Accordingly, Counts Six and Seven satisfy Rule 9(b).

 ii.    *Plaintiffs Adequately Plead Fraudulent Concealment.*

54.    Hatzipetros separately argues that Count Eight fails because the FAC allegedly does not plead omissions with sufficient specificity and fails to establish any duty to disclose. The FAC plausibly alleges both.

---

[21] FAC¶¶ 30–33, 93, 96.

[22] FAC ¶¶ 29, 31–36.

[23] FAC ¶¶ 30–33, 96.

55.     Under Texas law, a fraudulent concealment or nondisclosure claim requires allegations that the defendant concealed or failed to disclose material facts despite a duty to disclose them. *Bradford v. Vento*, 48 S.W.3d 749, 754–55 (Tex. 2001). Rule 9(b) applies to claims sounding in fraudulent concealment, and Plaintiffs therefore must plead the alleged omissions with sufficient particularity. *Hansel v. Hemby*, No. 4:25-CV-00504-RWS-JBB, 2026 WL 776309, at *23 (E.D. Tex. Mar. 2, 2026), *report and recommendation adopted*, No. 4:25-CV-504-RWS-JBB, 2026 WL 775762 (E.D. Tex. Mar. 18, 2026).

56.     The FAC does exactly that. Plaintiffs allege that Defendants concealed material facts concerning the true structure and operation of the QuantumArc enterprise, including the use and purpose of shell entities and the handling of investor funds.[24] The FAC further alleges that Hatzipetros participated in investor-facing communications and presentations and was identified to investors as "Partner / General Counsel" of the enterprise.[25] These allegations plausibly support the inference that he participated in communications that created a misleading impression while omitting material facts necessary to make those communications not misleading.

57.     Hatzipetros's argument that some entities were openly referenced elsewhere in the FAC does not defeat the claim at the pleading stage. The relevant issue is not whether Plaintiffs were aware that entities such as Angels Coding or Eden Alliance existed, but whether Defendants disclosed the true nature, purpose, and operation of those entities within the alleged scheme. Plaintiffs plausibly allege they did not.

58.     The FAC also adequately alleges a duty to disclose. Under Texas law, a duty to disclose may arise where a defendant voluntarily discloses partial information but fails to disclose

---

[24] FAC ¶¶ 35, 39–41, 93.

[25] FAC ¶¶ 18, 30, 32–33, 96.

the whole truth. *Bradford*, 48 S.W.3d at 755. Plaintiffs allege that Hatzipetros participated in investor-facing communications and materials intended to induce investment while omitting material facts concerning the structure and operation of the enterprise.[26] At the pleading stage, those allegations are sufficient to plausibly support a duty to disclose. Accordingly, Count Eight should not be dismissed.

### F. Plaintiffs Adequately Plead Their Section 10(b) and Rule 10b-5 Claim.

#### i. The FAC Pleads Material Misrepresentations and Omissions with Particularity

59.    Hatzipetros first argues that Count Nine fails because the FAC allegedly does not identify actionable misrepresentations or omissions with the specificity required by Rule 9(b) and the PSLRA. The FAC, however, pleads substantially more detail than Defendants acknowledge.

60.    To satisfy Rule 9(b) and the PSLRA, a securities-fraud complaint must identify the allegedly fraudulent statements, the speaker, when and where the statements were made, and why the statements were misleading. *ABC Arbitrage Plaintiffs Grp. v. Tchuruk*, 291 F.3d 336, 348 (5th Cir. 2002); *Southland Sec. Corp.*, 365 F.3d at 365. A complaint alleging omissions must likewise plead why the omitted information rendered the affirmative statements misleading in light of the "total mix" of information available to investors. *Matrixx Initiatives, Inc. v. Siracusano*, 563 U.S. 27, 38 (2011).

61.    The FAC satisfies those standards. Plaintiffs allege that Defendants made false and misleading statements concerning, among other things, the legitimacy and functionality of the QuantumArc investment program, the operation and security of the D.A.W.N.N. system and node infrastructure, the handling of investor assets, and the nature and purpose of the entities used in

---

[26] FAC ¶¶ 30–35, 93, 96.

16

the enterprise.[27] The FAC further identifies the contexts in which those representations were made, including the QuantumArc User Agreement, investor-facing materials, investor communications, and live investor presentations in Las Vegas.[28]

62.     The FAC also adequately alleges why the statements and omissions were misleading. Plaintiffs allege that Defendants represented the enterprise as a legitimate investment operation with legal oversight and secure infrastructure while concealing material facts concerning the true operation of the enterprise, including the role of shell entities, the pooling and redistribution of investor assets, and the misuse of investor funds.[29] Contrary to Hatzipetros's argument, the FAC does not merely allege that certain entities existed; it alleges that Defendants concealed the true function and use of those entities within the alleged scheme.

63.     At the pleading stage, these allegations sufficiently identify the substance of the alleged misrepresentations and omissions, the contexts in which they were made, and why Plaintiffs contend they were materially misleading.

> ii.   *The FAC Specifically Connects Hatzipetros to the Alleged Misrepresentations and Omissions.*

64.     Hatzipetros next argues that Count Nine fails because the FAC improperly relies on collective allegations against "Defendants." The FAC, however, specifically identifies Hatzipetros's individual role in the alleged fraud.

65.     The Fifth Circuit has rejected undifferentiated group pleading in securities-fraud cases; plaintiffs must distinguish among defendants and identify each defendant's particular role in the alleged fraud. *Southland*, 365 F.3d at 364. At the same time, a plaintiff may adequately

---

[27] FAC ¶¶ 29–36.

[28] FAC¶¶ 30–33, 96.

[29] FAC ¶¶ 31–36, 39–41, 93.

connect a defendant to alleged misrepresentations through allegations that the defendant signed, prepared, approved, disseminated, or was specifically identified in the relevant investor-facing materials. *Fin. Acquisition Partners LP v. Blackwell*, 440 F.3d 278, 288 (5th Cir. 2006).

66.    The FAC does precisely that here. Plaintiffs allege that Hatzipetros identified himself in the QuantumArc User Agreement as "Partner / General Counsel," helped prepare investment-related agreements and investor-facing materials, participated in live investor presentations alongside Boyd and Boggs, communicated directly with investors, and held himself out as part of the enterprise's legal and leadership structure.[30] These allegations specifically connect Hatzipetros to the alleged misrepresentations and omissions and distinguish him from the passive secondary actors discussed in cases such as *Affco*, 625 F.3d at 193.

67.    Indeed, *Affco* underscores why dismissal is inappropriate here. There, the Fifth Circuit affirmed dismissal where investors were unaware of the law firm's alleged behind-the-scenes role and no statements were attributed to the firm at the time of dissemination. *Id*. at 195. Here, by contrast, Plaintiffs specifically allege that Hatzipetros was identified by name and title in investor-facing materials and personally participated in investor communications and presentations.[31] Those allegations plausibly support attribution and reliance at the pleading stage.

68.    The FAC further alleges that Hatzipetros participated in preparing and structuring the very materials and entities used to induce investment into the QuantumArc program.[32] Courts within this circuit have recognized that attorneys and other professionals who participate in preparing dishonest investor-facing materials or structuring deceptive entities may face primary

---

[30] FAC¶¶ 18, 30–33, 93, 96.

[31] FAC ¶¶ 18, 30, 32–33, 96.

[32] FAC ¶¶ 30–31, 35, 93, 95–96.

18

liability under Section 10(b). *In re Enron Corp. Sec., Derivative & ERISA Litig.*, 235 F. Supp. 2d 549, 604 (S.D. Tex. 2002). Accordingly, the FAC adequately alleges Hatzipetros's individual participation in the alleged securities fraud.

### iii. The FAC Pleads a Strong Inference of Scienter.

69.     Count Nine also adequately pleads scienter under the PSLRA and *Tellabs*. The PSLRA requires Plaintiffs to plead facts giving rise to a "strong inference" that the defendant acted with the required state of mind. 15 U.S.C. § 78u-4(b)(2). Under *Tellabs*, courts must assess scienter holistically and determine whether the inference of scienter is at least as compelling as any opposing innocent inference. *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 323–24 (2007). The Fifth Circuit likewise evaluates scienter based on the collective weight of the allegations rather than in isolation. *Owens v. Jastrow*, 789 F.3d 529, 536 (5th Cir. 2015).

70.     The FAC alleges substantially more than mere title-based or conclusory scienter allegations. Plaintiffs allege that Hatzipetros personally participated in preparing investor-facing agreements and materials, identified himself as "Partner / General Counsel" in those materials, participated in investor presentations, communicated directly with investors regarding the investment program, and structured entities allegedly used in furtherance of the scheme.[33] Taken together, these allegations plausibly support the inference that Hatzipetros knew of, or was severely reckless regarding, the alleged falsity of the representations conveyed to investors.

71.     The FAC's scienter allegations are therefore materially different from the deficient allegations discussed in cases such as *Izadjoo v. Helix Energy Solutions Group, Inc.*, 237 F. Supp. 3d 492, 509 (S.D. Tex. 2017), where the allegations rested primarily on an officer's corporate

---

[33] *Id.*

19

position or signature authority. Here, Plaintiffs allege direct participation in drafting, presenting, and disseminating the investor-facing materials themselves.

72.    Nor does Hatzipetros's competing "innocent inference" defeat the claim at the pleading stage. The fact that Plaintiffs allegedly knew certain entities existed or entered written agreements does not negate Plaintiffs' allegations that Defendants concealed the true purpose and operation of those entities or misrepresented the legitimacy and structure of the investment program. Likewise, the absence of bar discipline does not foreclose a plausible inference of scienter under the PSLRA.

73.    When the FAC is viewed holistically, as *Tellabs* requires, Plaintiffs plausibly allege an inference of scienter that is at least as compelling as Defendants' competing innocent explanations.

    *iv.    The FAC Adequately Pleads Liability Under Rule 10b-5(a), (b), and (c).*

74.    Finally, Count Nine adequately pleads primary liability under Rule 10b-5.

75.    To the extent Hatzipetros argues he cannot be liable because he was not the "maker" of every alleged statement, that argument ignores both the FAC's allegations and the scope of Rule 10b-5 liability. Plaintiffs allege that Hatzipetros was identified by name and title in investor-facing agreements and personally communicated with investors regarding the investment program.[34] Those allegations plausibly support liability under Rule 10b-5(b). *See Affco*, 625 F.3d at 194.

76.    In addition, primary liability may arise under Rules 10b-5(a) and (c) where a defendant disseminates false information or otherwise participates in a deceptive scheme. *Lorenzo v. Sec. & Exch. Comm'n*, 587 U.S. 71, 83–84 (2019). Courts within this circuit have recognized that scheme liability may extend to conduct involving the creation or structuring of deceptive

---

[34] FAC ¶¶ 18, 30–33, 93, 95–96.

entities and participation in fraudulent investor communications. *Georgia Firefighters' Pension Fund v. Anadarko Petroleum Corp.*, 514 F. Supp. 3d 942, 950–51 (S.D. Tex. 2021).

77.    The FAC alleges precisely that type of conduct here. Plaintiffs allege that Hatzipetros helped structure entities used in the enterprise, prepared investor-facing materials, communicated directly with investors, and participated in presentations promoting the QuantumArc program.[35] These allegations plausibly support primary liability under Rule 10b-5(a), (b), and (c). Accordingly, dismissal of Count Nine is unwarranted.

### G.  Plaintiffs Adequately Plead Their Texas Securities Act Claim.

78.    The complaint adequately pleads a claim under the Texas Securities Act ("TSA"). TSA claims sounding in fraud are subject to Rule 9(b)'s heightened pleading standard. *Williams*, 112 F.3d at 177; *Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333, 338–39 (5th Cir. 2008). Rule 9(b) requires Plaintiffs to identify the allegedly fraudulent statements, the speaker, when and where the statements were made, and why they were misleading. *ABC Arbitrage*, 291 F.3d at 349–50.

79.    The complaint satisfies that standard. Plaintiffs do not merely allege that "Defendants" collectively promoted QuantumArc. Rather, the complaint specifically alleges that Hatzipetros identified himself in the QuantumArc User Agreement as "Partner / General Counsel," helped prepare investor-facing agreements and materials, participated in investor presentations in Las Vegas alongside Boyd and Boggs, and communicated directly with investors regarding the structure and legitimacy of the investment program.[36] These allegations sufficiently identify Hatzipetros's individual role in the alleged misrepresentations and omissions and provide

---

[35] FAC ¶¶ 30–33, 93, 95–96.

[36] FAC ¶¶ 18, 30–33, 96.

substantially more detail than the impermissible group pleading rejected in *Southland Securities Corp.*, 365 F.3d at 365.

80.     The complaint also plausibly alleges primary seller liability under the TSA. The Act broadly defines a "seller" to include those who actively solicit securities purchases. *Dorsey*, 540 F.3d at 343; *Lutheran Broth. v. Kidder Peabody & Co., Inc.*, 829 S.W.2d 300, 306–07 (Tex. App.—Texarkana 1992).Courts applying the TSA distinguish between detached professionals providing ordinary legal services and investor-facing participants who actively promote or solicit investments. *See Goldovsky v. Rauld*, No. 6:24-CV-00159-ADA-DTG, 2025 WL 1691913, at *3–5 (W.D. Tex. May 28, 2025). Here, the complaint alleges materially more than behind-the-scenes legal work. Hatzipetros allegedly held himself out to investors as "Partner / General Counsel," participated in investor presentations, communicated directly with investors regarding the investment program, and helped structure the entities through which the program operated.[37] Those allegations plausibly place him on the seller side of the TSA liability framework.

81.     Alternatively, the complaint adequately pleads aider liability under Tex. Gov't Code § 4008.055(c). An aider may be liable where he materially assists the securities violation with intent to deceive or reckless disregard for the truth or law. *Sterling Trust Co. v. Adderley*, 168 S.W.3d 835, 846 (Tex. 2005). The complaint alleges that Hatzipetros drafted investor-facing agreements, structured the entities used in the scheme, participated in investor presentations, and communicated directly with investors regarding the legitimacy and structure of the program.[38] At the pleading stage, those allegations plausibly support both substantial assistance and subjective awareness of improper activity sufficient to survive Rule 12(b)(6).

---

[37] FAC ¶¶ 18, 30–33, 93, 95–96.

[38] FAC ¶¶ 30–35, 93, 95–96.

## IV. CONCLUSION AND PRAYER

82.     Plaintiffs respectfully submit that the First Amended Complaint adequately pleads each challenged cause of action against Defendant Hatzipetros and that dismissal under Rule 12(b)(6) is unwarranted. The Complaint plausibly alleges that Hatzipetros acted as an active participant in the promotion, structuring, and operation of the QuantumArc enterprise.

83.     Accordingly, Plaintiffs respectfully request that the Court deny Defendant Hatzipetros's Motion to Dismiss in its entirety and grant Plaintiffs all further relief to which they may be justly entitled.

Respectfully submitted,

*/s/Kaitlyn M. Coker*
Kyle A. Coker
Texas Bar I.D. 24115353
kyle@farmercoker.com
Kaitlyn M. Coker
Texas Bar I.D. 24115264
kaitlyn@farmercoker.com

**FARMER & COKER, PLLC**
901 Main St., Ste. 5330
Dallas, TX 75202
Tel:    (832) 240-1047

**ATTORNEYS FOR PLAINTIFFS**

## CERTIFICATE OF SERVICE

I hereby certify that on May 15, 2026, a true and correct copy of the foregoing Plaintiffs' Response to Defendant Hazipetros's Motion to Dismiss was served on all counsel of record through the Court's CM/ECF system, which will effect service upon all attorneys registered with the CM/ECF system.

/s/*Kaitlyn M. Coker*
KAITLYN M. COKER

23