UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| CORBIN COWAN, DAWN COWAN, | § | |
| STRATEGIC EQUITY PARTNERS, LLC, | § | |
| TRIUMPH TECHNOLOGIES, LLC, | § | |
| CAB VENTURES, LLC, JEREMY ENGEL, | § | |
| SPARTAN MARKETING & INVESTMENTS, | § | |
| LLC, INTELLITECH SOLUTIONS, LLC, | § | |
| SOLIDA EQUITY PARTNERS, LLC, AND | § | |
| JOSH KIRK, | § | |
| | § | |
| *Plaintiffs*, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 4:25-cv-04476 |
| | § | |
| JAMES TYLER BOYD, | § | |
| MIKE BOGGS, PETER D. HATZIPETROS, | § | |
| THE EDEN ALLIANCE, LLC, | § | |
| ANGELS CODING, LLC, AND | § | |
| DAWN BOGGS, | § | |
| | § | |
| *Defendants*. | § | |

**DEFENDANT MIKE BOGGS'S REPLY IN SUPPORT OF
MOTION TO DISMISS FIRST AMENDED COMPLAINT**

Subject to and without waiving his pending Motion to Compel Arbitration, defendant Mike Boggs submits this reply brief in further support of his April 10, 2026 motion to dismiss the claims of plaintiffs Corbin Cowan, Dawn Cowan, Strategic Equity Partners, LLC, Triumph Technologies, LLC, Cab Ventures, LLC, Jeremy Engel, Spartan Marketing & Investments, LLC, Intellitech Solutions, LLC, Solida Equity Partners, LLC, Josh Kirk, Justin Anderson, Jared Guller, Quantum Life Enterprises, LLC, Rainy Daze, LLC, and Simple Daze, LLC (collectively, "Plaintiffs") against him for failure to state a claim upon which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6) [Dkt. 44] (the "Motion").

**TABLE OF CONTENTS**

TABLE OF CITATIONS ...................................................................................................... iii

ARGUMENT ....................................................................................................................... 1

I.      Plaintiffs Have Abandoned Counts Four And Eleven. ........................................ 3

II.     Recurring, Uncorroborated Summaries Of Purportedly Specific Boggs
        Allegations In The Response Fail To Cure Improper Group Pleading In The
        Amended Complaint. ............................................................................................. 3

III.    The Response Fails To Adequately Defend Plaintiffs' Enumerated Claims. ....... 7

        A.      Count One: Plaintiffs' RICO Claim Should Be Dismissed. ................... 7

        B.      Count Two: Plaintiffs' RICO Conspiracy Claim Should Be Dismissed. ............. 10

        C.      Count Three: Plaintiffs' Conversion Claim Should Be Dismissed. ...................... 12

        D.      Count Five: Plaintiffs Fail To State A Claim For Unjust Enrichment. ................. 14

        E.      Count Six:  Plaintiffs' Common-Law Fraud Claim Fails. ..................................... 16

        F.      Count Seven:  Plaintiffs' Fraudulent Inducement Claim Fails. ............................ 19

        G.      Count Eight:  Plaintiffs' Fraudulent Concealment Claim Fails. ........................... 20

        H.      Count Nine:  Plaintiffs' Federal Securities Fraud Claim Should Be
                Dismissed. ............................................................................................................ 22

        I.      Count Ten: Plaintiffs' Texas Securities Act Claim Should Be Dismissed. .......... 24

CONCLUSION ................................................................................................................... 25

## TABLE OF CITATIONS

**Cases**

*Abraham v. Singh*,
480 F.3d 351 (5th Cir. 2007) ..................................................................................8, 12

*Affiliated Ute Citizens of Utah v. U.S.*,
406 U.S. 128 (1972).............................................................................................22, 23

*Ahlgren v. Ahlgren*,
703 S.W.3d 378 (Tex. App.—Corpus Christi–Edinburg 2023, pet. denied)....................13, 14

*Allstate Ins. Co. v. Benhamou*,
190 F. Supp.3d 631 (S.D. Tex. 2016) ...................................................................10

*Allstate Ins. Co. v. Donovan*,
No. H-12-0432, 2012 WL 2577546 (S.D. Tex. July 30, 2012)...............................12

*Allstate Ins. Co. v. Plambeck*,
802 F.33d 665 (5th Cir. 2015) ...........................................................................9, 10

*Bank of New York Mellon,*
No. CV H-16-3238, 2017 WL 3424975 (S.D. Tex. Aug. 9, 2017) ....................4, 19

*Barnard v. Bank of Amer., N.A. (USA)*,
No. CV H-05-2589, 2005 WL 8166961 (S.D. Tex. Nov. 15, 2005) .......................9

*Barrie v. Intervoice-Brite, Inc.*,
397 F.3d 249 (5th Cir. 2005),
*opinion modified on denial of reh'g*, 409 F.3d 653 (5th Cir. 2005) ......................16

*Black v. N. Panola Sch. Dist.*,
461 F.3d 584 (5th Cir. 2006) ..................................................................................3

*Bradford v. Vento*,
48 S.W.3d 749 (Tex. 2001)....................................................................................21

*Carroll v. Fort James Corp.*,
470 F.3d 1171 (5th Cir. 2006) .........................................................................17, 18

*Dawes v. Imperial Sugar Co.*,
975 F. Supp.2d 666 (S.D. Tex. 2013) ...................................................................23

*Del Castillo v. PMI Holdings N. Am. Inc.,*
No. 4:14-CV-3435, 2015 WL 3833447 (S.D. Tex. June 22, 2015)....................6–7

*Delaware Cnty. Employees Ret. Sys. v. Cabot Oil & Gas Corp.*,
No. CV H-21-2045, 2024 WL 83503 (S.D. Tex. Jan. 8, 2024)............................23

*Dorsey v. Portfolio Equities, Inc.*,
  540 F.3d 333 (5th Cir. 2008) ....................................................................10, 18, 19, 22

*Fin. Acquisition Partners LP v. Blackwell*,
  440 F.3d 278 (5th Cir. 2006) ..................................................................................21

*Gonzales v. AutoZone, Inc.*,
  No. CIV.A. 4:09-4054, 2011 WL 2457929 (S.D. Tex. June 16, 2011)....................3

*Greene v. CitiMortgage, Inc.*,
  No. 2:13-CV-219, 2014 WL 948878 (S.D. Tex. Mar. 11, 2014) ...........................15

*Gutierrez v. Venegas*,
  No. 6:20-CV-129-H, 2021 WL 9314946 (N.D. Tex. Sept. 8, 2021) .................10, 12

*Harris Cty. v. Eli Lilly & Co.*,
  No. H-19-4994, 2020 WL 5803483 (S.D. Tex. Sept. 29, 2020)..............................11

*Hernandez v. U.S. Bank, N.A.*,
  No. 3:13-CV-2164-O, 2013 WL 6840022 (N.D. Tex. Dec. 27, 2013)....................14

*IAS Servs. Grp., LLC v. Jim Buckley & Assocs., Inc.*,
  900 F.3d 640 (5th Cir. 2018) ..................................................................................20

*In re BJ Servs., LLC*,
  No. 20-33627, 2023 WL 2311986 (S.D. Tex. Mar. 1, 2023) .................................15

*In re Mastercard Intern. Inc.*,
  313 F.3d 257 (5th Cir. 2002) ....................................................................................7

*Janvey v. Alguire*,
  846 F. Supp.2d 662 (N.D. Tex. 2011) ...............................................................14, 15

*Janvey v. Suarez*,
  978 F. Supp.2d 685 (N.D. Tex. 2013) .....................................................................15

*JT Brother Construction, LLC v. Texas Pride Trailers, LLC*,
  No. H-21-4205, 2022 WL 800183 (S.D. Tex. Mar. 16, 2022) ...............................20

*Marlin v. Moody Nat. Bank, N.A.*,
  248 Fed. Appx. 534 (5th Cir. 2007)......................................................................11–12

*Mitchell Energy Corp. v. Samson Resources Co.*,
  80 F.3d 976 (5th Cir. 1996) ....................................................................................13

*N. Port Firefighters' Pension v. Temple-Inland, Inc.*,
  936 F. Supp. 2d 722 (N.D. Tex. 2013) ......................................................................5

*Owens v. Jastrow*,
  789 F.3d 529 (5th Cir. 2015) ....................................................................................3

*Pace v. Cirrus Design Corp.*,
    93 F.4th 879 (5th Cir. 2024) ...................................................................................17

*PCS Software, Inc. v. Dispatch Services, Inc.*,
    No. CV H-23-108, 2024 WL 3448009 (S.D. Tex. July 16, 2024)...............................16, 17, 18

*Peel v. cPaperless, Inc.*,
    No. 4:23-CV-02417, 2024 WL 5058609 (S.D. Tex. Nov. 8, 2024) .........................................8

*Reves v. Ernst & Young*,
    507 U.S. 170 (1993)......................................................................................................9, 10

*Rodriguez-Meza v. Venegas*,
    No. DR-17-CV-54-AM/CW, 2018 WL 7348864 (W.D. Tex. Sep. 27, 2018) ........................12

*Salinas v. United States*,
    522 U.S. 52 (1997)......................................................................................................11, 12

*Shandong Yinguang Chem. Indus. Joint Stock Co. v. Potter*,
    607 F.3d 1029 (5th Cir. 2010) ...................................................................................20

*Sharifan v. NeoGenis Labs, Inc.*,
    622 F. Supp.3d 478 (S.D. Tex. 2022) ...................................................................................24

*Southland Sec. Corp. v. INSpire Ins. Sols., Inc.*,
    365 F.3d 353 (5th Cir. 2004) ...................................................................................1, 6

*Steel Dust Recycling, LLC v. Robinson*,
    667 F. Supp.3d 511 (S.D. Tex. 2023) ...................................................................................20

*Stephens v. Uranium Energy Corp.*,
    No. H-15-1862, 2016 WL 3855860 (S.D. Tex. July 15, 2016) ..............................................24

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
    551 U.S. 308 (2007)......................................................................................................4, 22, 23, 24

*Terry Black's Barbecue, L.L.C. v. State Auto. Mut. Ins. Co.*,
    22 F.4th 450 (5th Cir. 2022) ...................................................................................1, 3

*Tornado Bus Co. v. Bus & Coach Am. Corp.*,
    No. 3:14-CV-3231-M, 2015 WL 5164731 (N.D. Tex. Sept. 2, 2015) ....................................13

*Tristani v. OptionSellers.com, Inc.*,
    No. 6:19-CV-585-JDK, 2021 WL 2099313 (E.D. Tex. Apr. 5, 2021) ........................18, 19, 24

*U.S. ex rel. Bennett v. Medtronic, Inc.*,
    747 F. Supp.2d 745 (S.D. Tex. 2010) ...................................................................................24, 25

*U.S. ex rel. Briseno v. Hillcroft Medical Clinic Ass'n*,
    No. 4:20-cv-02871, 2022 WL 17417178 (S.D. Tex. Dec. 5, 2022) .......................................19

*U.S. ex rel. Grubbs v. Kanneganti*,
    565 F.3d 180 (5th Cir. 2009) ...........................................................................................25

*U.S. v. Elliott*,
    571 F.2d 880 (5th Cir. 1978) ...........................................................................................11

*U.S. v. Posada-Rios*,
    158 F.3d 832 (5th Cir. 1998) ...........................................................................................11

*U.S. v. Sanders*,
    925 F.3d 263 (5th Cir. 2020) ...........................................................................................11

*Verde Minerals, LLC v. Koerner*,
    No. 2:16-CV-199, 2017 WL 7052205 (S.D. Tex. Aug. 14, 2017) ...........................................14

*VeroBlue Farms USA, Inc. v. Wulf*,
    465 F. Supp. 3d 633 (N.D. Tex. 2020) ..............................................................................17, 18

*Walker v. Beaumont Indep. Sch. Dist.*,
    No. 1:15-CV-379, 2016 WL 3456983 (Jan. 22, 2016) ...........................................................11

*Williams v. WMX Techs., Inc.*,
    112 F.3d 175 (5th Cir. 1997) ...........................................................................................5, 20

*Word of Faith World Outreach Ctr. Church, Inc. v. Sawyer*,
    90 F.3d 118 (5th Cir. 1996) ...........................................................................................8

**Statutes**

17 CFR § 240.10b-5.............................................................................................................22

15 U.S.C. § 78j(b)..............................................................................................................22

15 U.S.C. § 78u-4(b)(2) ......................................................................................................2, 4

18 U.S.C. § 1962(c) ...........................................................................................................7, 9

18 U.S.C. § 1962(d) ...........................................................................................................10, 11

**Rules**

FED. R. CIV. P. 9(b)............................................................................................ *passim*

FED. R. CIV. P. 12(b)(6) ....................................................................................... *passim*

## ARGUMENT

After two complaints and two Rule 12(b)(6) responses totaling 82 pages, Plaintiffs still fail to state any viable theory of liability—much less viable causes of action—against defendant Mike Boggs. The *first sentence* of Plaintiffs' May 15, 2026 Response to Boggs's Motion to Dismiss [Dkt. 31] (the "Response") critically, and accurately, describes Boggs as "a *passive* software developer who happened to know James Boyd." Response at 1 (emphasis added). According to Plaintiffs, Boyd is the defaulted defendant who "singlehandedly" "weaponized" cryptocurrency arbitrage technology to allegedly defraud Plaintiffs. Pls.' 1st Am. Compl., filed March 16, 2026 [Dkt. 42] ("Am. Compl."), ¶¶ 57, 95. Neither the Amended Complaint nor the Response plausibly connect Boyd's conduct and state of mind to Boggs, much less with the detail required under Rule 9(b). The Court should dismiss all eleven claims asserted against Boggs arising out of his "passive" role in Boyd's alleged scheme under Rule 12(b)(6).

Three characteristics of the Response are worth noting at the threshold. First, Plaintiffs do not mount any defense at all to Boggs's motion to dismiss Count Four (Breach of Fiduciary Duty) or Count Eleven (Fraud Conspiracy). The Court should treat both counts as abandoned and dismiss them with prejudice. *See Terry Black's Barbecue, L.L.C. v. State Auto. Mut. Ins. Co.*, 22 F.4th 450, 459 (5th Cir. 2022).

Second, in response to Boggs's point that the Amended Complaint is "replete with instances of group pleading" rather than allegations specifically tying Boggs to potential liability by name, *see* Motion at 6–7 (citing *Southland Sec. Corp. v. INSpire Ins. Sols., Inc.*, 365 F.3d 353, 385 (5th Cir. 2004)), Plaintiffs repeatedly insist that "[t]he FAC identifies Boggs by name throughout" and characterize their pleading in summary fashion—without any quotes or citations to the Amended Complaint at all. *See, e.g.*, Response ¶¶ 10, 15, 16, 20, 23, 24, 28, 31, 37, 38, 41, 42, 45, 49, 50, 52, 54, 55, 56, 57, 59, 61. This frequent gloss is not only dubious, but the Response

1

often characterizes the Amended Complaint in a way that contradicts the actual allegations in the pleading. Indeed, the Response commits the same group-pleading sin as the Amended Complaint at times. *See, e.g.*, Response ¶¶ 53 ("Defendants simultaneously concealed that investor assets were being misappropriated"), 57 ("Defendants induced investments"). In short, while Plaintiffs concede that "Rule 9(b) requires particularity," Response at 15, neither the Amended Complaint nor Response provide any such particularity with respect to Boggs.

Third, the Response fails to respond *at all* to numerous dispositive points in the Motion. Among other legal and pleading problems Boggs identified in each of the nine remaining causes of action in the Amended Complaint, Plaintiffs *do not even try* to contest that:

- The closed-end scheme alleged in the Amended Complaint operated for thirteen months at most, which falls short of the longevity courts require to support a RICO claim (Count One) (*see* Motion at 11);

- Plaintiffs are required to plead detrimental reliance to support their civil RICO claim (Count One), but the Amended Complaint fails to do so with specificity (*see id.* at 8, 9);

- Plaintiffs do not allege culpable knowledge by Boggs of Boyd's "international Ponzi scheme," as required to plead RICO conspiracy (Count Two) (*see id.* at 12);

- Plaintiffs do not allege any meeting of the minds, as required to plead RICO conspiracy (Count Two) (*see id.* at 12–13);

- Plaintiffs' cryptocurrency payments were pooled and rendered untraceable, disqualifying the virtual money from being treated as chattel to support a conversion claim (Count Three) (*see id.* at 13–14);

- Plaintiffs' reliance on a "User Agreement" that "govern[ed] participation in the cryptocurrency arbitrage investment program" in the Amended Complaint precludes a claim for unjust enrichment (Count Five) (*see id.* at 15–16);

- Plaintiffs' allegations of fraudulent intent, reliance, and causation are too conclusory to plausibly state any fraud claims (Counts Six, Seven, and Eight) (*see id.* at 16–17);

- If the Amended Complaint alleges Securities and Exchange Act fraud by omission (which Plaintiffs conveniently dispute, *see* Response at 21), Plaintiffs fail to allege materiality required by the Private Securities Litigation Reform Act of 1995, 15 U.S.C. § 78u-4(b)(2) ("PSLRA") (Count Nine) (*see* Motion at 19–20);

2

- The Fifth Circuit—including in a case upon which Plaintiffs rely—"disregards" group-pleaded allegations to support claims like Count Nine and Count Ten (*see* Response at 4 (citing *Owens v. Jastrow*, 789 F.3d 529, 537 (5th Cir. 2015)), but the Amended Complaint aggregates "Defendants" in an indistinguishable group (*see* Motion at 6, 21, 23); and

- Any further amendment would be futile in this case, warranting dismissal with prejudice (*see id.* at 24–25).

Based on these flaws and the balance of applicable law, which favors Boggs and the Motion, this Court has ample grounds to dismiss each and every one of Plaintiffs' claims against Boggs now under Rule 12(b)(6).

## I.    Plaintiffs Have Abandoned Counts Four And Eleven.

In the Motion, Boggs challenged Plaintiffs' claims for breach of fiduciary duty (Count Four) and civil conspiracy to commit fraud (Count Eleven).  *See* Motion at 14–15, 23–24.  The Response appears to concede these points, as Plaintiffs completely fail to defend Count Four or Count Eleven.  Plaintiffs' silence has legal significance.  The Court should treat Counts Four and Eleven as abandoned with respect to Boggs and dismiss the claims with prejudice.  *See Terry Black's Barbecue*, 22 F.4th at 459 ("A plaintiff abandons claims when it fails to address the claims or oppose a motion challenging those claims."); *Black v. N. Panola Sch. Dist.*, 461 F.3d 584, 588 n.1 (5th Cir. 2006) ("[Plaintiff's f]ailure to pursue this claim beyond her complaint [in response to motion to dismiss] constituted abandonment."); *Gonzales v. AutoZone, Inc.*, No. CIV.A. 4:09-4054, 2011 WL 2457929, at *2 (S.D. Tex. June 16, 2011) (same).

## II.   Recurring, Uncorroborated Summaries Of Purportedly Specific Boggs Allegations In The Response Fail To Cure Improper Group Pleading In The Amended Complaint.

In a clumsy attempt to defend against Boggs's global condemnation of improper group pleading and each basis for dismissal advanced in the Motion, the Response essentially cuts and pastes a purported summary of allegations pleaded in the Amended Complaint multiple times over, such as:

> 20.    And the FAC plausibly alleges far more than innocent association with Boyd. Plaintiffs allege that Boggs [1] participated in the enterprise's technical infrastructure, investor [2] solicitations, promotional events, wallet operations, and investor-facing representations concerning the platform's operation, profitability, and safety. Plaintiffs further allege that investor [3] funds were diverted through wallets controlled by Boyd and Boggs and that fabricated dashboard activity was used to conceal the scheme.

Response ¶ 20 (numbers added); *see also id.* ¶¶ 5–7, 10, 15, 20, 22, 25, 28, 31, 37, 41, 42, 45, 48, 49, 53, 54, 55, 56, 57, 59, 62. Plaintiffs' characterizations of their own pleading, which notably fail to cite the Amended Complaint at all after Page 3, suffer four fatal flaws.

First, none of the listed acts Boggs purportedly "participated in" are inherently wrongful, actionable, or capable of supporting Plaintiffs claims. Read fairly, the repeated refrain of conduct in the Response merely describes a defendant who unwittingly facilitated Boyd's misconduct, rather than engaged in misconduct himself. For example, Plaintiffs' fraud claims in Counts Six, Seven, and Eight require plausible allegations that Boggs made a misrepresentation or omission of material fact. *See, e.g.*, *Bank of New York Mellon,* No. CV H-16-3238, 2017 WL 3424975, at *5 (S.D. Tex. Aug. 9, 2017). Boggs's alleged "participation" in solicitations and promotional events does not establish that Boggs affirmatively made any material representation at these events. *See id.* Likewise, Plaintiffs' Securities and Exchange Act claim requires pleading particular facts that give rise to a strong inference of scienter. *See* 15 U.S.C. § 78u-4(b)(2); *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 321 (2007). Boggs's participation in various administrative and promotional tasks sheds no light on his state of mind and utterly fails to show that he did anything wrong, let alone engaged in securities fraud.

Second, the Response's description of Plaintiffs' pleading is inaccurate—and not just because it calls defendant Michael Boggs by the wrong name. Response ¶ 62 ("Defendant Charles Boggs"). The stated point of Plaintiffs' recurring blurb is to demonstrate that "[t]he FAC identifies

Boggs by name throughout." *Id.* ¶ 10. But the Amended Complaint does not actually plead that Boggs was involved in or made any "investor-facing representations concerning the platform's operation, profitability, and safety." *Id.* ¶ 20; *see also id.* ¶¶ 8, 10, 20, 28, 37, 41, 48, 49, 59. Plaintiffs instead allege that an unspecific group of "*Defendants* staged elaborate presentations," that "*Defendants* represented to investors that funds . . . would be secured," and that "*Defendants* . . . described the arbitrage platform as a highly secure, automated system capable of producing predictable profits." Am. Compl. ¶¶ 28, 29, 32 (emphasis added). The Response also claims that Boggs participated in "investor-facing conduct," including "participation in the D.A.W.N.N. and Eden systems," *see* Response ¶¶ 10, 22, 39, 41, 42, 45, 48, 49, 52, but Plaintiffs actually pleaded that "*Defendants* . . . represented that investor funds would be pooled and managed . . . [through] The Eden Alliance, LLC." Am. Compl. ¶ 35 (emphases added). The Response cannot conjure up Boggs-specific conduct that is not alleged in the Amended Complaint to compensate for Plaintiffs' pleading failures. *See N. Port Firefighters' Pension v. Temple-Inland, Inc.*, 936 F. Supp. 2d 722, 740 (N.D. Tex. 2013) (courts "may not consider allegations not pleaded in the operative complaint.").

Third, by slipping in passive-voice descriptions of alleged conduct—*e.g.*, that "investor funds were diverted through wallets controlled by Boyd and Boggs"—the Response implicitly concedes that the Amended Complaint does not plead fraud-based claims against Boggs with particularity. Rule 9(b) requires a plaintiff to plead "the who, what, when, and where" of an alleged fraud. *See Williams v. WMX Techs., Inc.*, 112 F.3d 175, 178 (5th Cir. 1997). The Response's insistence that Plaintiffs' pleading is sufficient as to Boggs because it alleges that funds "were diverted" or "were routed through wallets controlled by Boyd and Boggs," *e.g.*, Response ¶¶ 1, 20, 22, 59, or that "investor assets were being misappropriated and diverted," *id.* ¶ 53, is devoid of the specifics required under Rule 9(b). Most obviously, the Response's repeated use of passive

5

voice fails to describe *who* misappropriated Plaintiffs' money. If Boggs was the wrongdoer, Plaintiffs could have pleaded so specifically. The fact that the Amended Complaint fails to do so dooms the fraud-based claims against Boggs.

Fourth, the Response *itself* commits the same group-pleading defect that permeates the Amended Complaint to its ruin. *See* Motion at 6–7. For example, in the same paragraph, the Response both insists that the Amended Complaint pleads "actionable misrepresentations attributable" to Boggs and refers to purported representations made by an unnamed collective "Defendants." *See, e.g.*, Response ¶ 41 ("Plaintiffs further allege that Boggs participated in Las Vegas promotional events . . . where Defendants . . . represented that investor cryptocurrency would be securely managed."). Paragraph 48 also claims, "The FAC specifically alleges that Boggs failed to disclose multiple material facts," but Plaintiffs then goes on to list six "material facts" that "*Defendants* concealed." *Id.* ¶ 48 (a)-(f) (emphasis added). At least thirteen of Plaintiffs' unsubstantiated pleading summaries feature this group-pleading problem. *See id.* ¶¶ 7, 25, 31, 41, 42, 45, 48, 49, 52, 53, 54, 57, 62.

As discussed more fully in the Motion, Plaintiffs cannot satisfy their pleading burden by simply pretending that group-pleaded allegations about "Defendants" in the Amended Complaint (and, now, the Response) should properly be attributed to Boggs. *See* Motion at 6–7. For example, Plaintiffs assert fraud claims in counts Six, Seven, and Eight against all "Defendants" without identifying *who* made each purported statement listed in the counts. Am. Compl. ¶¶ 119–27. Plaintiffs attribute a single alleged representation to Boggs, *e.g.*, *id.* ¶ 120(a), but Plaintiffs then list other "false representations" made by "Defendants" in the same paragraph without identifying who made them. Such group-pleaded allegations fail to provide Boggs with fair notice of the claims against him and fall short of satisfying Rule 9(b). *See Southland*, 365 F.3d at 385; *Del*

6

*Castillo v. PMI Holdings N. Am. Inc.,* No. 4:14-CV-3435, 2015 WL 3833447, at *6 (S.D. Tex. June 22, 2015).

### III.    The Response Fails To Adequately Defend Plaintiffs' Enumerated Claims.

The Response also fails to solve the legal and pleading problems Boggs identified in each of the remaining nine causes of action in the Amended Complaint.

#### A.    Count One: Plaintiffs' RICO Claim Should Be Dismissed.

The Motion identified three defects in Plaintiffs' Section 1962(c) RICO claim warranting dismissal of Count One:  (1) Plaintiffs' allegations about Boggs in Count One do not satisfy Rule 9(b), as (a) only one alleged predicate act expressly involved Boggs, (b) other acts implicating unspecified "Defendants" are vague about the time, place, and contents of any false representations, and (c) Plaintiffs fail to allege reliance on words or deeds perpetrated by *any defendant*, much less by Boggs; (2) the factual allegations in the Amended Complaint disprove that Boggs and Boyd acted with a "common purpose" sufficient to plead a RICO enterprise; and (3) the alleged scheme was too limited, short, and close-ended to qualify as a "pattern" under federal law.  Motion at 7–11.  Plaintiffs' response does not join issue with points (1)(c), (2), and (3), and their other arguments lack merit.

First, Plaintiffs *do not contest* that the wire transmissions and alleged laundering acts establishing a purported pattern of racketeering activity in this case (a) were largely the product of "automated," AI-driven microtransactions, *see* Am. Compl. ¶ 60, (b) spanned around one year, *see id.* ¶ 98, and (d) have no reasonable likelihood of continuing, as the person "directing" and "singlehandedly controlling" the alleged scheme shut down the system, turned himself into law enforcement, and is nowhere to be found, *see id.* ¶¶ 3, 81.  There should be no dispute, therefore, that the pleaded racketing predicate acts do not "amount to or pose a threat of continued criminal activity." *In re Mastercard Intern. Inc.*, 313 F.3d 257, 261–62 (5th Cir. 2002).  These points alone

7

warrant dismissal of Count One.  *See, e.g.*, *Peel v. cPaperless, Inc.*, No. 4:23-CV-02417, 2024 WL 5058609, at *16 (S.D. Tex. Nov. 8, 2024) (dismissing RICO claim for failure to plausibly establish a pattern of racketeering activity).

The main argument Plaintiffs advance to satisfy RICO's "pattern" requirement in the face of these uncontested metrics is self-defeating.  *See* Response ¶¶ 24–26.  The Response cites two Fifth Circuit cases establishing the pleading requirements for "an ongoing fraudulent enterprise" and then declares that the Amended Complaint alleges such a "continuing scheme."  *Id.* ¶ 25 (citing *Abraham v. Singh*, 480 F.3d 351 (5th Cir. 2007); *Word of Faith World Outreach Ctr. Church, Inc. v. Sawyer*, 90 F.3d 118 (5th Cir. 1996)).  Plaintiffs' reliance on *Word of Faith* is perplexing, as the court in that case *affirmed dismissal* of a RICO suit based on a determination that the complained-of conduct was too short in duration to qualify as "continued criminal activity."  90 F.3d at 122–24.  And Plaintiffs' other case supports Boggs's argument that this case involves "a finite commercial dispute" instead of "a continuing scheme."  In *Abraham*, the court found that a RICO complaint sufficiently alleged continuity of racketeering activity where "up to 200" alleged victims were defrauded "in at least a two-year scheme," which would have "continued indefinitely had the Plaintiffs not filed th[e] lawsuit."  480 F.3d at 356.  This case, however, allegedly involves a handful of wealthy individuals and their affiliated LLCs, a one-year time period, and a "unraveling" scheme that ended by itself well before Plaintiffs filed suit.  *See* Am. Compl. ¶¶ 80–88.  The Response and its cases ultimately support dismissal of Count One, rather than the opposite.

Second, Plaintiffs' treatment of the pleading deficiencies identified in the Motion is evasive at best.  The Response does not contest that the Amended Complaint fails to allege reliance on words or deeds perpetrated by Boggs; in fact, the Response does not discuss reliance with respect to Count One at all.  Despite a point heading stating "The FAC Pleads Boggs's Participation in the

RICO Enterprise with Particularity," the succeeding paragraphs in the Response cite no passages in the Amended Complaint.  *See* Response at 7–8.  And, as discussed above, Plaintiffs' representation that "[t]he FAC does not rely on vague accusations that "Defendants" collectively engaged in wrongdoing," is belied by the actual allegations behind Plaintiffs' rote summary of the Amended Complaint.  *See* Response ¶ 23.

Third, the Response tries to lower Plaintiffs' pleading bar altogether by arguing that the Amended Complaint need "only" establish certain structural components of an "association-in-fact enterprise" and Boggs's participation, "directly or indirectly," in that enterprise.  Response ¶¶ 11–17.  This argument fails as a matter of procedure, law, and pleaded fact.  One:  Plaintiffs' contention that the Amended Complaint "alleges an association-in-fact enterprise" does not absolve Plaintiffs from pleading with particularity.  As this Court has explained,

> Rule 9(b) . . . , in the civil RICO context, requires that the plaintiff specifically allege how each act of fraud furthered the fraudulent scheme, and how each defendant participated in the fraud.  It is not enough for the plaintiff vaguely to attribute the alleged fraudulent activity to the "defendants" collectively.

*Barnard v. Bank of Amer., N.A. (USA)*, No. CV H-05-2589, 2005 WL 8166961, at *1 (S.D. Tex. Nov. 15, 2005) (citations omitted).  Count One, however, does not attribute the "ongoing structure and purpose" of the purported "enterprise" to *any* one defendant, much less allege how Boggs knew about and adopted that purpose.  Am. Compl. ¶ 93.

Two:  Plaintiffs' argument that "lower-level participants" in an enterprise can be liable under 18 U.S.C. § 1962(c) is based on a misunderstanding of the law.  *See* Response ¶¶ 14–15 (citing *Reves v. Ernst & Young*, 507 U.S. 170 (1993); *Allstate Ins. Co. v. Plambeck*, 802 F.33d 665 (5th Cir. 2015)).  The U.S. Supreme Court in *Reves* held that the definition of "participate" in Section 1962(c) has a "narrower meaning" than mere participatory access to an allegedly fraudulent scheme.  507 U.S. at 178–79.  As Plaintiffs' own case explains, providing goods and

services that happen to benefit a purported RICO enterprise will not subject an individual to RICO liability absent participation in a "common purpose." *Allstate Ins. Co. v. Benhamou*, 190 F. Supp.3d 631, 655 (S.D. Tex. 2016).[1]  Even "contributing to the enterprise with the knowledge of or willful disregard for the other defendants' supposed criminal liability" does not qualify as participation in a "common purpose." *Id.*

Three:  Even read in a light most favorable to Plaintiffs, the Amended Complaint does not allege Boggs's participation beyond the levels in *Reves* and *Benhamou*.  Count One expressly alleges that "*Boyd* directed the technical infrastructure of the Enterprise."  Am. Compl. ¶ 95 (emphasis added).  Plaintiffs plead that Boggs "directed investor solicitation and algorithm design," but the same sentence clarifies that "Boyd *later* branched and weaponized" Boggs's contributions.  *Id.* (emphasis added).  These allegations undercut the presence of a "common purpose."  And nowhere does the Amended Complaint allege that Boggs knew about Boyd's "later" manipulation of Boggs's trading algorithm in real time.  While the Response represents otherwise in uncorroborated summaries of the complaint, *see* Response ¶¶ 15–17, a plaintiff cannot defeat a Rule 12(b)(6) motion by inventing pleading allegations out of whole cloth.  *See Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333, 338 (5th Cir. 2008); *Gutierrez v. Venegas*, No. 6:20-CV-129-H, 2021 WL 9314946, at *8 (N.D. Tex. Sept. 8, 2021).

**B.    Count Two: Plaintiffs' RICO Conspiracy Claim Should Be Dismissed.**

The Motion identified two defects in Plaintiffs' Section 1962(d) RICO conspiracy claim warranting dismissal of Count Two:  (1) the allegations in Count Two are too superficial and conclusory to satisfy Rule 9(b); and (2) the Amended Complaint does not even try to plead a

---

[1]    *Plambeck* does not provide otherwise, as the Fifth Circuit affirmed a RICO judgment based, in part, of a finding that the defendants acted with full knowledge of the scheme.  802 F.3d 674 ("[T]he jury had plenty of evidence to find that [defendant] was a willing participant in the scheme.  The same is true of [defendant] . . . .").

"meeting of the minds" required to state a claim under 18 U.S.C. Section 1962(d).  Motion at 11–13.  Plaintiffs' response to these points fails in two respects.

First, Plaintiffs *do not argue at all* that the Amended Complaint satisfied the "meeting of the minds" element of a RICO conspiracy.  At most, the Response obliquely posits that "[d]irect evidence of an agreement is unnecessary," Response ¶ 27, but, a RICO conspiracy agreement cannot be "lightly inferred."  *United States v. Sanders*, 925 F.3d 263, 273–74 (5th Cir. 2020).  As Plaintiffs' own cases explain, a person cannot be held liable for a RICO conspiracy "merely by evidence that he associated with other . . . conspirators or by evidence that places the defendant in a climate of activity that reeks of something foul."  *United States v. Posada-Rios*, 158 F.3d 832, 858 (5th Cir. 1998); *see also United States v. Elliott*, 571 F.2d 880, 903 (5th Cir. 1978) ("The Act does not . . . punish mere association with conspirators or knowledge of illegal activity; its proscriptions are directed against conduct, not status.").  A complaint that merely alleges "parallel conduct" does not adequately plead circumstantial evidence of a RICO conspiracy agreement.  *See Harris Cty. v. Eli Lilly & Co.*, No. H-19-4994, 2020 WL 5803483, at *11 (S.D. Tex. Sept. 29, 2020); *see also Walker v. Beaumont Indep. Sch. Dist.*, No. 1:15-CV-379, 2016 WL 3456983, at *15–16 (Jan. 22, 2016) (dismissing RICO conspiracy count against defendants based on "conclusory allegations" of related conduct).  The Response does not, as it cannot, cite to any passage in the Amended Complaint specifically alleging real-time knowledge of bad acts by Boggs.

Second, Plaintiffs argue that a RICO conspiracy claim can survive dismissal without pleading "that each conspirator personally committed every racketeering act."  Response ¶ 27 (citing *Salinas v. United States*, 522 U.S. 52 (1997)).  While this is true, *Salinas* and other cases still require a plaintiff to sufficiently plead that a defendant "must have known and agreed to assist in" the racketeering acts.  *Marlin v. Moody Nat. Bank, N.A.*, 248 Fed. Appx. 534, 538 (5th Cir.

11

2007) (citing *Salinas*, 522 U.S. at 65).  Plaintiffs fail to do so.  The Amended Complaint's allegation of Boggs's knowledge of and agreement in purportedly conspiratorial acts contains no factual content.  Am. Compl. ¶ 103.  "This type of summary pleading is not sufficient to support" a RICO conspiracy claim.  *Allstate Ins. Co. v. Donovan*, No. H-12-0432, 2012 WL 2577546, at *15 (S.D. Tex. July 30, 2012).  To properly allege a conspiracy claim, "there must be at least some factual matter to support allegations of [Boggs's] knowledge of, and agreement to assist in, the underlying . . . offense."  *Gutierrez*, 2021 WL 9314946, at *8.  Such an agreement must be pleaded "specifically."  *Id.* (citing *Abraham*, 480 F.3d at 358); *see also Rodriguez-Meza v. Venegas*, No. DR-17-CV-54-AM/CW, 2018 WL 7348864, at *22 (W.D. Tex. Sep. 27, 2018).  The Response again refers the Court to a vague summary of purported allegations in the Amended Complaint without citations, but neither the Amended Complaint nor the Response allege facts of Boggs's knowledge and agreement.

### C.    Count Three: Plaintiffs' Conversion Claim Should Be Dismissed.

In the Motion, Boggs moved to dismiss Count Three because the Amended Complaint does not, and cannot plausibly, allege facts to support the second element of a state-law conversion claim; namely, that the claim relates to control over personal property.  Motion at 13–14.  The Response does not mention, much less distinguish, cases cited in the Motion contrasting the virtual money pooled and converted through cryptocurrency channels here with "specific chattel" capable of conversion.  Instead, Plaintiffs combat a fairly straightforward point by (a) representing, without citation, that the Amended Complaint alleged Plaintiffs' cryptocurrency payments to be "identifiable" and "traceable," despite the conflicting descriptions of Boyd's conduct, (b) referring the Court to a Texas state-court case discussing cryptocurrency, and (c) describing the second conversion element as "a fact-intensive inquiry ill-suited for resolution at the motion-to-dismiss stage."  Response ¶¶ 30–32.  These arguments fail.

First, the Response is notable in what Plaintiffs *do not* argue.  The Response concedes that, for money to qualify as specific chattel for purposes of a conversion claim, it must be "specifically identifiable and segregable."  Response ¶ 30 (citing *Mitchell Energy Corp. v. Samson Resources Co.*, 80 F.3d 976, 984 (5th Cir. 1996)).  "[O]ld coins" are an example of money capable of conversion.  *Mitchell Energy*, 80 F.3d at 984.  The Response is silent about whether the cryptocurrency deposited by Plaintiffs was intended to be segregated, and for good reason.  A key component of the "automated arbitrage engine" into which Plaintiffs willingly paid was that "funds were to be pooled and traded" in the aggregate—not segregated.  Am. Compl. ¶ 120(c); *see also id.* ¶¶ 35, 40, 95.  Courts have dismissed conversion claims on this basis alone.  *See, e.g.*, *Tornado Bus Co. v. Bus & Coach Am. Corp.*, No. 3:14-CV-3231-M, 2015 WL 5164731, at *6 (N.D. Tex. Sept. 2, 2015).

Second, Plaintiffs' representation that the Amended Complaint alleges "that Defendants exercised wrongful dominion over . . . traceable digital assets" does not match the Amended Complaint itself.  Response ¶ 31.  Plaintiffs' pleading alleges the opposite: "[I]nvestor funds were routed through concealed infrastructure, obscured though complex transaction networks, and ultimately misappropriated."  Am. Compl. ¶ 89; *see also id.* ¶ 65 ("The structure of these transactions . . . was consistent with a deliberate effort to frustrate tracing and conceal the true origin and destination of funds.").  When the Court considers Plaintiffs' actual pleaded allegations rather than spin in the Response, a conversion claim clearly should not survive.

Third, Plaintiffs' point that "Texas courts increasingly recognize the significance of blockchain traceability in identifying specific digital assets and wallet-level transactions" is a dud.  The lone case cited in the Response did not involve a conversion claim, much less an analysis of whether cryptocurrency inherently qualifies as personal property as a matter of law.  *See Ahlgren v. Ahlgren*, 703 S.W.3d 378 (Tex. App.—Corpus Christi–Edinburg 2023, pet. denied) (breach of

13

fiduciary duty involving trust assets).  To the contrary, *Ahlgren* recognized that the cryptocurrency at issue in that case was rendered "untraceable" when—like the conduct Plaintiffs allege of Boyd— the defendant/trustee "washed" Bitcoin by mixing his holdings with others' holdings to obtain a new address on the blockchain.  703 S.W.3d at 391, 397.

Fourth, the Response argues, without any supporting case citations, that the Court cannot assess the second conversion element at the Rule 12(b)(6) stage because analyzing characteristics of assets involves "a fact-intensive question."  Response ¶ 32.  Not so.  Courts have dismissed conversion claims under Rule 12(b)(6) based on similar arguments advanced in the Motion.  *See, e.g.*, *Verde Minerals, LLC v. Koerner*, No. 2:16-CV-199, 2017 WL 7052205, at \*4 (S.D. Tex. Aug. 14, 2017).  The same result is warranted here.

**D.     Count Five: Plaintiffs Fail To State A Claim For Unjust Enrichment.**

The Motion identified three defects in Plaintiffs' unjust enrichment claim warranting dismissal of Count Five:  (1) this Court has not recognized unjust enrichment as independent cause of action; (2) Plaintiffs' pleading of Count Five merely consists of unsupported conclusions; and (3) there is no basis for recovery under a quasi-contract claim here because an express contract covering the parties' dispute exists.  Motion at 15–16.  Plaintiffs concede the first point in a protracted discussion, Response ¶ 34 ("The Fifth Circuit has acknowledged that Texas courts are divided on whether unjust enrichment constitutes an independent cause of action, but it has expressly declined to resolve the issue."), and do not contest the third point at all.  Count Five should be dismissed on the uncontested existence of a contract alone.  *See, e.g.*, *Hernandez v. U.S. Bank, N.A.*, No. 3:13-CV-2164-O, 2013 WL 6840022, at \*8 (N.D. Tex. Dec. 27, 2013).

Instead, the Response argues that "Courts applying Texas law routinely sustain unjust enrichment claims" where the plaintiff plausibly alleges that a defendant "retained benefits" from a fraudulent scheme.  Response ¶¶ 37–38 (citing *Janvey v. Alguire*, 846 F. Supp.2d 662 (N.D. Tex.

14

2011), and *Janvey v. Suarez*, 978 F. Supp.2d 685 (N.D. Tex. 2013)).  There are two problems with Plaintiffs' argument.

First, the Response does not address, much less dispute, that Plaintiffs' unjust enrichment allegations are conclusory.  Despite the well-worn gloss yet again repeated by Plaintiffs, the Amended Complaint does not actually plead that Boggs "obtained a benefit" or other enrichment, one of the prerequisites for Count Five.  The Amended Complaint instead pleads that Plaintiffs' funds were diverted by Boyd to Boyd's "unilateral control."  Am. Compl. ¶¶ 120(a), 130(e), 145(b), 145(e).  Plaintiffs plead no specific allegation of "benefit" to Boggs at all, much less as a result of inequitable conduct.  *Cf. id.* ¶ 117 (vaguely alleging, "It would be inequitable and unjust for Defendants to retain the benefits obtained through this misconduct").  Dismissal is appropriate in the absence of such allegations.  *See, e.g.*, *In re BJ Servs., LLC*, No. 20-33627, 2023 WL 2311986, at *5 (S.D. Tex. Mar. 1, 2023); *Greene v. CitiMortgage, Inc.*, No. 2:13-CV-219, 2014 WL 948878, at *4 (S.D. Tex. Mar. 11, 2014).

Second, Plaintiffs' cases do not compel a different result.  In the two *Janvey* cases cited in the Response, the Dallas District Court declined to dismiss unjust enrichment claims brought by an appointed receiver where (a) the claim was presented in the "alternative" and (b) the purpose was to facilitate equitable disgorgement of assets belonging to the receiver estate.  *See Janvey v. Alguire*, 846 F. Supp.2d at 673–74; *Janvey v. Suarez*, 978 F. Supp.2d at 699.  That context is not present here.  Moreover, *Janvey v. Alguire* acknowledged that "some Texas authorities hold that plaintiffs cannot state a claim for unjust enrichment as an independent cause of action under Texas law."  846 F. Supp.2d at 674.  Nothing about these authorities should discourage dismissal of Count Five.

### E.    Count Six:  Plaintiffs' Common-Law Fraud Claim Fails.

In the Motion, Boggs moved for dismissal of Count Six for three reasons:  (1) the fraud claim is not pleaded with particularity as Rule 9(b) requires; (2) the claim improperly relies on group allegations; and (3) Plaintiffs' allegations of three required elements for common-law fraud— fraudulent intent, reliance, and causation—are conclusory and implausible on the face of the Amended Complaint itself.  Motion at 16–17.  Indeed, the full measure of Plaintiffs' allegations to establish those three elements is:

> Defendants knew these [multiple statements across five subparagraphs] were false when made and intended Plaintiffs to rely on them.  Plaintiffs reasonably relied on these misrepresentations in investing millions of dollars.

Am. Compl. ¶ 121.  The Response makes two arguments to justify such factless allegations, both of which fail.  *See* Response ¶¶ 39–40, 44–45.

First, the Response argues that the Court should look past the superficial allegations in Count Six because Plaintiffs added boilerplate language that "reallege[d] and fully incorporate[d] the preceding paragraphs as if fully set forth herein."  Response ¶¶ 39–40; Am. Compl. ¶ 115.  According to Plaintiffs, the Court should read the Amended Complaint "as a whole" to assess whether Plaintiffs' allegations satisfy Rule 9(b).  This argument has three key flaws.

One:  This Court has rejected Plaintiffs' argument that courts can import allegations from other parts of a pleading to compensate for Rule 9(b) deficiencies in a challenged count.  *PCS Software v. Dispatch Services, Inc.*, No. CV H-23-108, 2024 WL 3448009, at *2 (S.D. Tex. July 16, 2024).  The plaintiff's complaint in *PCS Software* alleged details about certain representations in the factual background section, but allegations about the 'who' and 'where' of such representations were in the "causes of action" section instead.  *Id.*  This Court held that such "disjointed" pleading failed to satisfy Rule 9(b).  *Id.*  The Fifth Circuit has affirmed this approach in the context of a securities fraud case.  *Barrie v. Intervoice-Brite, Inc.*, 397 F.3d 249, 260 (5th

16

Cir. 2005), opinion modified on denial of reh'g, 409 F.3d 653 (5th Cir. 2005). Plaintiffs' allegations in Count Six are even more suspect than those in *PCS Software*, as the cause of action is devoid of *any* detail, much less contain allegations that fail to "harmonize" with general allegations. *See PCS Software*, 2024 WL 3448009, at *2.

Plaintiffs cite two cases for the proposition that conclusory or superficial allegations can be salvaged by reviewing a pleading "as a whole": *Pace v. Cirrus Design Corp.*, 93 F.4th 879 (5th Cir. 2024); and *VeroBlue Farms USA, Inc. v. Wulf*, 465 F. Supp.3d 633 (N.D. Tex. 2020). Response ¶ 40. Neither of these cases stands for the broad procedural rule Plaintiffs advance. Not only does the *Pace* opinion fail to mention a "holistic," "read as a whole," or non-claim-based review of a pleading challenged to meet Rule 9(b), but the *Pace* court affirmed dismissal of plaintiff's fraud claim "because Pace failed to allege a misrepresentation or false information with particularity." 93 F.4th at 890. *VeroBlue* is somewhat more helpful to Plaintiffs, as the Dallas District Court opined that the "defect" of mass incorporation of factual allegations, while "annoying," "is not fatal." 465 F. Supp.3d at 657. Nonetheless, the *VeroBlue* court still dismissed plaintiff's fraud claims for failure to plead fraud with specificity. *Id.* at 656.

Two: The one case cited in the Response for the proposition that the Fifth Circuit has "repeatedly recognized that plaintiffs may incorporate prior factual allegations into later causes of action" is actually unhelpful to Plaintiffs. Response ¶ 39 (citing *Carroll v. Fort James Corp.*, 470 F.3d 1171 (5th Cir. 2006)). The *Carroll* court noted a limitation Plaintiffs fail to mention: "[T]here is a body of persuasive precedent indicating that such incorporation must be done 'with a degree of specificity and clarity which would enable the responding party to easily determine the nature and extent of the incorporation.'" 470 F.3d at 1176 (citing cases and treatise). The *Carroll* court also distinguished between claims utilizing "incorporation by reference" language and the appellant plaintiff's "fraud claim, which appellants were attempting to plead *with greater*

17

*particularity.*" *Id.* In other words, the "incorporation by reference" discussion in *Carroll* did not apply to fraud claims. Further, even with the "greater particularity" noted in the opinion, the *Carroll* court *still* affirmed dismissal of plaintiff's fraud claim for failure to "make out a fraud claim that could satisfy Rules 12(b)(6) and 9(b)." *Id.* at 1174.

Three: Even if it the Court were to import allegations outside of Count Six despite the precedent in *PCS Software* and Plaintiffs' own cases, doing so would just "reallege" and "incorporate" into Count Six the defects pleaded elsewhere in the Amended Complaint, including impermissible group pleading. As the Court in *VeroBlue* explained,

> The claims incorporate by reference the factual background. But the factual background itself often fails to illuminate who made the fraudulent statements and what their state of mind was at the time.

*VeroBlue*, 465 F. Supp. 3d at 655. Similarly here, the Amended Complaint cannot circumvent Rule 9(b)'s required specificity by incorporating facts alleged outside of Count Six because the "representations" described in the background portions of the pleading were allegedly made by unspecified "Defendants." *See* Am. Compl. ¶¶ 27, 29, 31, 33, 34, 35, 37, 39, 42, 43, 45, 46, 47, 49, 50, 51, 74, 78.

Second, Plaintiffs argue that the Rule 9(b) pleading requirement should be "calibrated" when a complaint alleges a "coordinated multi-investor fraud scheme[]." Response ¶ 45 (citing *Dorsey*, 540 F.3d 333; *Tristani v. OptionSellers.com, Inc.*, No. 6:19-CV-585-JDK, 2021 WL 2099313 (E.D. Tex. Apr. 5, 2021). Again, however, Plaintiffs' position lacks support in the law and in the pleaded facts. In *Dorsey*, the Fifth Circuit affirmed dismissal of common-law fraud claims as to some defendants and reversed dismissal as to others, but the decision to reverse was based on at least seven detailed allegations in the complaint that provided a foundation for "a sufficient inference of scienter." 540 F.3d at 341–43. *Tristani* is similarly unavailing. The Tyler District Court denied a motion to dismiss plaintiff's fraud claim in *Tristani* after expressly

18

identifying "the who, what, when, and where of the alleged fraud" in the challenged complaint. 2021 WL 2099313, at *3. Neither *Dorsey* nor *Tristani* involved an alleged "scheme" or adopted a "scheme" exception to Rule 9(b).

Moreover, Plaintiffs' uncorroborated summary of the Amended Complaint simply doubles down on the vague and conclusory allegations of intent, reliance, and causation in the Complaint. Response ¶ 45. Rule 9(b) requires more detail than either the Amended Complaint or Response provide. *See, e.g.*, *Bank of New York Mellon*, 2017 WL 3424975, at *13; *U.S. ex rel. Briseno v. Hillcroft Medical Clinic Ass'n*, No. 4:20-cv-02871, 2022 WL 17417178, at *4 (S.D. Tex. Dec. 5, 2022).

### F.    Count Seven:  Plaintiffs' Fraudulent Inducement Claim Fails.

In the Motion, Boggs moved for dismissal of Count Seven for similar reasons:  Plaintiffs' allegations of fraudulent intent, reliance, and causation are too conclusory and implausible to state a viable claim for fraudulent inducement. Motion at 16. In addition, Count Seven is flawed in that it only connects Boggs by name to one alleged representation to Plaintiffs (in July 2024) and then alleges different purported inducements during the ensuing nine months. *See* Am. Compl. ¶ 123(a). Despite Boggs's limited presence in these allegations, the Complaint then alleges, in full:

> Defendants made these misrepresentations with the specific intent that Plaintiffs would invest. Plaintiffs did so and were harmed as a result.

*Id.* ¶ 124. The Response cites no law other than the cases distinguished above to justify the scant detail in Count Seven. *See* Response ¶¶ 41–43. Instead, the Response tries to salvage Count Seven by summarizing the Amended Complaint to allege more "actionable misrepresentations" than are listed in Count Seven itself. Plaintiffs' approach has two problems, in addition to the legal fallacies discussed in Point III(E) above.

19

First, the Response offers no answer at all for the Rule 9(b) particulars the Motion listed as missing, including *who* heard the statement(s) and *when* Plaintiffs discovered the alleged falsity of the statement(s). The Response is also completely silent on alleged falsity, *i.e.*, whether any statements allegedly made by Boggs were false *when made*. These allegations (and supporting facts) are required to state a fraudulent inducement claim. *See IAS Servs. Grp., LLC v. Jim Buckley & Assocs., Inc.*, 900 F.3d 640, 647 (5th Cir. 2018). Dismissal is appropriate without such pleaded facts. *See, e.g.*, *Shandong Yinguang Chem. Indus. Joint Stock Co. v. Potter*, 607 F.3d 1029, 1033 (5th Cir. 2010); *Steel Dust Recycling, LLC v. Robinson*, 667 F. Supp.3d 511, 515 (S.D. Tex. 2023); *JT Brother Construction, LLC v. Texas Pride Trailers, LLC*, No. H-21-4205, 2022 WL 800183, at *5 (S.D. Tex. Mar. 16, 2022).

Second, as discussed in Point II above, Plaintiffs' uncorroborated summary of the Amended Complaint shamelessly misstates the pleading and reinforces the error of group pleading. For example, the Response argues, "Plaintiffs further allege that Boggs participated in Las Vegas promotional events and investor meetings where *Defendants* pitched the investment platform and represented that investor cryptocurrency would be securely managed through proprietary arbitrage systems and wallet infrastructure." Response ¶ 41. In the next paragraph, the Response lists six other "specific" representations Plaintiffs contend are attributable to Boggs, but the representation does not hold up. Response ¶ 42(a)–(f). The Amended Complaint actually attributed the listed statements to an unnamed collective of "Defendants"—not Boggs. *See* Am. Compl. ¶¶ 34, 35, 44, 49, 123(a). Pleading deficiencies are not cured by repetition or misdirection. Plaintiffs' threadbare fraudulent inducement claim should be dismissed. *See Williams*, 112 F.3d at 179.

### G.      Count Eight:  Plaintiffs' Fraudulent Concealment Claim Fails.

In his Motion, Boggs moved for dismissal of Count Eight because Plaintiffs' allegations were too vague and grouped to satisfy Rule 9(b) and because allegations elsewhere in the Amended

Complaint undercut any plausible allegation that Boggs had a duty to disclose facts alleged to have been fraudulently concealed.  Motion at 17–18.  The Response makes two arguments to defend Count Eight, Response ¶¶ 46–49, but neither argument has merit.

First, the Response assures the Court that the Amended Complaint "specifically alleges that Boggs failed to disclose multiple material facts necessary to make Defendants' investor-facing representations not misleading," Response ¶ 48, but Plaintiffs' uncorroborated paraphrase of the Amended Complaint is inaccurate and improperly reliant on group pleading.  Plaintiffs again fail to appreciate, for example, that both the Amended Complaint and the summary in the Response fail to distinguish among "Defendants" in violation of Rule 9(b).  Indeed, the entire list of purportedly concealed facts in the Response is preceded by, "Plaintiffs allege that . . . *Defendants* concealed . . . ."  *Id.*

In addition, the Response fails to grapple with the fact that, as Boggs noted in the Motion, "Defendants" cannot logically refer to Boggs with respect to every one of the listed acts.  The Amended Complaint itself alleges that Boggs had no role in Boyd's secret plan to "route[] [funds] though ChangeNow and StealthEx into Privacy Tokens."  *See* Am. Compl. ¶¶ 98, 120(b).  How, then, can the Court agree with Plaintiffs that the Amended Complaint "specifically alleges that Boggs failed to disclose . . . that investor assets were being routed through intermediary exchanges and privacy-token infrastructure . . . "?  Response ¶ 48(d).  Plaintiffs' stubborn refusal to distinguish among "Defendants" is grounds for dismissal.  *See Fin. Acquisition Partners LP v. Blackwell*, 440 F.3d 278, 287 (5th Cir. 2008).

Second, Plaintiffs re-cite a case from the Motion to argue that Texas law recognizes a duty to disclose when a partial disclosure creates a false impression. Response ¶ 49 (citing *Bradford v. Vento*, 48 S.W.3d 749, 755 (Tex. 2001)).  This argument fails for two reasons.  One:  Plaintiffs' duty theory is cut from whole cloth.  The Amended Complaint alleges a different duty (contrary

21

to Texas law), not a "partial disclosure" duty.  *See* Am. Compl. ¶ 126 ("Defendants owed Plaintiffs a duty to disclose material facts because they accepted Plaintiffs' funds for investment and understood to manage those funds on Plaintiffs' behalf.").  The Court should reject this new theory. *See Dorsey*, 540 F.3d at 338 ("Because the court reviews only the well-pleaded facts in the complaint, it may not consider new factual allegations made outside the complaint.").  Two: Again, Plaintiffs' uncorroborated gloss of the Amended Complaint does not track reality.  For example, the Response represents that "the FAC alleges that Boggs . . . chose[] to speak on [specified] subjects [during investor-facing presentations], [so] Boggs had a duty not to create a materially misleading impression by omitting facts . . . ."  Response ¶ 49.  But the allegations about "elaborate presentations" in the Amended Complaint do not mention Boggs as a speaker, *see* Am. Compl. ¶¶ 2, 28, 32, 33, much less allege that Boggs intentionally omitted facts from any speech.

### H.    Count Nine:  Plaintiffs' Federal Securities Fraud Claim Should Be Dismissed.

The Motion identified three defects in Plaintiffs' securities fraud claim under Section 10(b) of the Securities and Exchange Act and Regulation 10b-5:  (1) the five-paragraph cause of action fails to plead discrete misstatements or omissions, materiality, scienter, and loss causation with sufficient detail to satisfy Rule 9(b) or the PSLRA; (2) Plaintiffs' misrepresentation and scienter allegations improperly group "Defendants" as an indiscriminate entity; and (3) weighing allegations related to scienter in the Amended Complaint using the *Tellabs* rubric favors dismissal. Motion at 18–22.  The Response's rebuttal fails for three reasons.

First, Plaintiffs' treatment of materiality in the Response is based on a misunderstanding of the law.  The Response argues that, because the "investment interests" at issue here were not publicly-traded, Plaintiffs are not required to allege that that there is a substantial likelihood that disclosure of omitted facts alleged in the complaint would have altered the total mix of information available to a reasonable investor.  Response ¶ 56 (citing *Affiliated Ute Citizens of Utah v. U.S.*,

22

406 U.S. 128 (1972)).  Boggs is not aware of any case relieving a plaintiff alleging securities fraud from pleading materiality with sufficient specificity, including *Affiliated Ute*.  Indeed, in that case, which involved Ute Partition Act provisions that, among other things, provided for the division of tribal assets among tribal members based on heredity, the U.S. Supreme Court held that, while "positive proof of reliance" may not be a "prerequisite to recovery," it is still "necessary" to plead and prove "that facts withheld be materials in the sense that a reasonable investor might have considered them important in the making of this decision."  406 U.S. at 153–54.  This Court has similarly held, "Even if misrepresentations and omissions are pleaded with sufficient specificity, they must be material."  *Delaware Cnty. Employees Ret. Sys. v. Cabot Oil & Gas Corp.*, No. CV H-21-2045, 2024 WL 83503, at *4 (S.D. Tex. Jan. 8, 2024) (citing cases).  Plaintiffs' legal fallacy is likely meant to hide the fact that Plaintiffs cite *no allegations* in the Amended Complaint to meet the materiality requirement in Count Nine—not one.

Second, Plaintiffs devote so much energy to repeating the uncorroborated summary of the Amended Complaint to establish required elements like scienter and loss causation—which are inaccurate and flawed for the reasons discussed above—that the Response fails to justify the superficiality of allegations in Count Nine.  One-sentence allegations about "Defendants" as a group are presumptively inadequate to plead scienter and loss causation with specificity.  *See Dawes v. Imperial Sugar Co.*, 975 F. Supp.2d 666, 690–91 (S.D. Tex. 2013).  Plaintiffs' single sentence also suffers from group pleading, bald generality, and zero facts of a plausible causal connection between the matters in the preceding paragraphs and unspecified damages.

Third, the Response misunderstands *Tellabs*.  In that case, the U.S. Supreme Court set out a rubric to determine whether pleaded facts give rise to a "strong inference" of scienter as required under the PSLRA.  551 U.S. at 324.  The Court expressly directed courts to "weigh" "competing inferences," as "[t]he strength of an inference cannot be decided in a vacuum."  *Id.* at 323–24; *see*

23

*also id.* at 332 (explaining "that competing inferences must be weighed because the strong-inference requirement [in the PSLRA] 'is inherently comparative,'") (J. Scalia, concurring). The Response objects to the comparison of inferences in the Motion as an improper effort to "resolve factual disputes." Response ¶ 58. But weighing inferences under *Tellabs* is a feature, not a bug. *See also, e.g.*, *Stephens v. Uranium Energy Corp.*, No. H-15-1862, 2016 WL 3855860, at *21 (S.D. Tex. July 15, 2016).

## I.        Count Ten: Plaintiffs' Texas Securities Act Claim Should Be Dismissed.

In the Motion, Boggs identified two defects in Plaintiffs' state securities fraud claim under the Texas Securities Act: (1) the six-paragraph cause of action fails to plead when Boggs "offered and sold securities in Texas," misrepresentations, and omissions with sufficient detail to satisfy Rule 9(b); and (2) Plaintiffs' allegations again improperly group "Defendants" as an indiscriminate entity. Motion at 23–24. The Response entirely ignores the second point, and Plaintiffs' rebuttal of the first point fails as a matter of law and fact.

First, as a sure sign that Plaintiffs' allegations in Count Ten are vague, conclusory, and not expressly applicable to Boggs, the Response argues that the Rule 9(b) pleading requirement can be relaxed to merely require "representative allegations" of investor solicitations and "the contours of the fraudulent scheme." Response ¶ 60 (citing *Tristani*, 2021 WL 2099313; *Sharifan v. NeoGenis Labs, Inc.*, 622 F. Supp.3d 478 (S.D. Tex. 2022)). Plaintiffs also encourage the Court to read the Amended Complaint "holistically" to piece together alleged securities allegations from outside of Count Ten. These positions lack legal support. While this Court has recognized that, in a False Claims Act context, a *qui tam* plaintiff pleading a fraudulent scheme with particularity may "provide representative examples of specific fraudulent acts conducted pursuant to that scheme," *U.S. ex rel. Bennett v. Medtronic, Inc.*, 747 F. Supp.2d 745, 768–69 (S.D. Tex. 2010), this is not a False Claims Act case. Plaintiffs' reliance on *Sharifan* is even more puzzling, as that

24

case applied Rule 9(b) in full force to dismiss a DTPA claim that fell "well short of Rule 9(b)'s heightened pleading requirement."  747 F. Supp.2d at 493–94.  Moreover, even FCA cases that relax the application of Rule 9(b) in certain respects still apply Rule 9(b) "with 'bite' and 'without apology'" in all other respects.  *United States ex rel. Grubbs v. Kanneganti*, 565 F.3d 180, 185 (5th Cir. 2009) (citations omitted).  Where, as here, a complaint fails to properly allege the "who, what, when, where, and how" of *each* fraud-based claim, dismissal is appropriate.  *See id.* at 188 (recognizing that application of Rule 9(b) "depends on the elements of the claim at hand"); *Medtronic*, 747 F. Supp. 2d at 771.

Second, Plaintiffs once again paraphrase the Amended Complaint to contend that "the FAC easily provides Boggs fair notice of the alleged fraudulent conduct" alleged in Count Ten. Response ¶ 61.  The same defects addressed above persist here.  Despite Plaintiffs' abstract of the Amended Complaint, neither the Response nor Count Ten (or any other paragraph in the Amended Complaint) specifically allege that *Boggs* (as opposed to "Defendants") made misrepresentations about "the purported arbitrage engine, investor safety, audits, profitability, and preservation of capital," much less the "who, what, when, where, and how" of such alleged misrepresentations.

## **CONCLUSION**

For the foregoing reasons and those set forth in his initial Motion, defendant Mike Boggs respectfully requests the Court to dismiss Plaintiffs' claims against him for failure to state a claim upon which relief can be granted.  Mr. Boggs reserves all rights to alternatively or additionally compel arbitration of Plaintiffs' claims for adjudication on the merits.

Respectfully submitted,

**DRUMHELLER, HOLLINGSWORTH & MONTHY, LLP**

/s/ *Jeremy T. Monthy*

Jeremy T. Monthy, *Attorney-in-Charge*
State Bar No. 24073240
Federal I.D. No. 1115582
Derek S. Hollingsworth
State Bar No. 24002305
Federal I.D. No. 34569
Kathleen C. Laird
State Bar No. 24132063
Federal I.D. No. 3844989
712 Main Street, Suite 1705
Houston, Texas  77002
Telephone:  (713) 751-2300
Facsimile:  (713) 751-2310
Emails:  jmonthy@dhmlaw.com
         dhollingsworth@dhmlaw.com
         klaird@dhmlaw.com

**COGDELL LAW FIRM, PLLC**
Dan Cogdell
Texas Bar # 04501500
Cogdell Law Firm
712 Main St., Suite 2400
Houston, TX 77002
Telephone: 713 426 2244
Email: dan@cogdell-law.com

**ATTORNEYS FOR DEFENDANTS,
MIKE BOGGS, PETER D. HATZIPETROS,
AND ANGELS CODING, LLC**

26

## CERTIFICATE OF SERVICE

I hereby certify that on May 29, 2026, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all registered parties, including:

Kyle A. Coker
Kaitlyn M. Coker
Farmer & Coker, PLLC
901 Main Street, Suite 5330
Dallas, Texas  75202

*Attorneys for Plaintiffs*

/s/ *Jeremy T. Monthy*
Jeremy T. Monthy

27