UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| CORBIN COWAN, DAWN COWAN, STRATEGIC EQUITY PARTNERS, LLC, TRIUMPH TECHNOLOGIES, LLC, CAB VENTURES, LLC, JEREMY ENGEL, SPARTAN MARKETING & INVESTMENTS, LLC, INTELLITECH SOLUTIONS, LLC, SOLIDA EQUITY PARTNERS, LLC, AND JOSH KIRK, | § § § § § § § § § § | |
| *Plaintiffs*, | § § | |
| v. | § § | CIVIL ACTION NO. 4:25-cv-04476 |
| JAMES TYLER BOYD, MIKE BOGGS, PETER D. HATZIPETROS, THE EDEN ALLIANCE, LLC, ANGELS CODING, LLC, AND DAWN BOGGS, | § § § § § § | |
| *Defendants*. | § § § | |

**REPLY BY DEFENDANT PETER D. HATZIPETROS
IN SUPPORT OF MOTION TO DISMISS
FOR FAILURE TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED**

Subject to and without waiving his pending Motion to Compel Arbitration, defendant Peter D. Hatzipetros submits this reply brief in further support of his April 10, 2026 motion to dismiss the claims of plaintiffs Corbin Cowan, Dawn Cowan, Strategic Equity Partners, LLC, Triumph Technologies, LLC, Cab Ventures, LLC, Jeremy Engel, Spartan Marketing & Investments, LLC, Intellitech Solutions, LLC, Solida Equity Partners, LLC, Josh Kirk, Justin Anderson, Jared Guller, Quantum Life Enterprises, LLC, Rainy Daze, LLC, and Simple Daze, LLC (collectively, "Plaintiffs") against him for failure to state a claim upon which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6) [Dkt. 45] (the "Motion").

**TABLE OF CONTENTS**

TABLE OF CITATIONS ................................................................................................... iii

ARGUMENT .................................................................................................................... 1

I.  Attorney Hatzipetros Is Immune From Suit.......................................................... 3

II.  The Response Relies On Improper Group Pleading And Argument. .................... 6

III.  The Response Fails To Adequately Defend Plaintiffs' Enumerated Claims. ...... 9

  A.  Plaintiffs Have Abandoned Counts Four And Eleven. ............................ 9

  B.  Count One: Plaintiffs' RICO Claim Should Be Dismissed. ................... 10

  C.  Count Two: Plaintiffs' RICO Conspiracy Claim Should Be Dismissed. ............. 13

  D.  Count Three: Plaintiffs' Conversion Claim Should Be Dismissed. ....................... 15

  E.  Count Five: Plaintiffs Fail To State A Claim For Unjust Enrichment. ................. 18

  F.  Count Six And Count Seven:  Plaintiffs' Common-Law Fraud By Misrepresentation Claims Fail. .............................................................. 19

  G.  Count Eight:  Plaintiffs' Fraudulent Concealment Claim Fails. ........................... 20

  H.  Count Nine:  Plaintiffs' Federal Securities Fraud Claim Should Be Dismissed. ............................................................................................. 21

  I.  Count Ten: Plaintiffs' Texas Securities Act Claim Should Be Dismissed. .......... 24

CONCLUSION ................................................................................................................ 25

**TABLE OF CITATIONS**

**Cases**

*ABC Arbitrage Plaintiffs Group v. Tchuruk*,
  291 F.3d 336 (5th Cir. 2002)..................................................................................................22

*Affco Invs. 2001, L.L.C. v. Proskauer Rose, L.L.P.*,
  625 F.3d 185 (5th Cir. 2010)......................................................................................13, 22, 23

*AHBP LLC v. Lynd Co.*,
  649 F. Supp.3d 371 (W.D. Tex. 2023)....................................................................................20

*Ahlgren v. Ahlgren*,
  703 S.W.3d 378 (Tex. App.—Corpus Christi–Edinburg 2023, pet. denied)...........................16

*Allstate Ins. Co. v. Donovan*,
  No. H-12-0432, 2012 WL 2577546 (S.D. Tex. July 30, 2012)................................................14

*Alpert v. Riley*,
  No. CIV.A. H04CV-3774, 2008 WL 304742 (S.D. Tex. Jan. 31, 2008)....................................4

*Andrews v. Am. Nat'l Red Cross*,
  176 F. Supp.2d 673 (E.D. Tex. 2001)......................................................................................14

*Barnard v. Bank of Am., N.A. (USA)*,
  No. CV H-05-2589, 2005 WL 8166961 (S.D. Tex. Nov. 15, 2005) .........................................12

*Barrie v. Intervoice-Brite, Inc.*,
  397 F.3d 249 (5th Cir. 2005),
  opinion modified on denial of reh'g, 409 F.3d 653 (5th Cir. 2005)........................................19

*Benchmark Elecs., Inc. v. J.M. Huber Corp.*,
  343 F.3d 719 (5th Cir. 2003) ..................................................................................................11

*Bittinger v. Wells Fargo Bank NA*,
  No. CIV.A. H-10-1745, 2011 WL 3568206 (S.D. Tex. Aug. 15, 2011).....................................9

*Bradford v. Vento*,
  48 S.W.3d 749 (Tex. 2001) .....................................................................................................21

*Cantey Hanger, LLP v. Byrd*,
  467 S.W.3d 477 (Tex. 2015) .....................................................................................................3

*Crowe v. Henry*,
  43 F.3d 198 (5th Cir. 1995)...............................................................................................15, 19

*Daniels v. Pennymac Loan Servs., LLC*,
    No. 4:22-cv-199, 2022 WL 16556805 (S.D. Tex. Oct. 31, 2022)................................3

*Del Castillo v. PMI Holdings N. Am. Inc.*,
    No. 4:14-CV-3435, 2015 WL 3833447 (S.D. Tex. June 22, 2015)...........................6

*Dixon v. Wells Fargo Bank, N.A.*,
    No. 3:19-CV-1677-G-BH, 2020 WL 10050726 (N.D. Tex. Jan. 29, 2020)...........................17

*Dorsey v. Portfolio Equities, Inc.*,
    540 F.3d 333 (5th Cir. 2008)...............................................................12, 21, 25

*Fin. Acquisition Partners LP v. Blackwell*,
    440 F.3d 278 (5th Cir. 2006).......................................................21, 22, 23

*Gonzales v. AutoZone, Inc.*,
    No. CIV.A. 4:09-4054, 2011 WL 2457929 (S.D. Tex. June 16, 2011) ...................................10

*Greene v. CitiMortgage, Inc.*,
    No. 2:13-CV-219, 2014 WL 948878 (S.D. Tex. Mar. 11, 2014)................................18

*Gutierrez v. Venegas*,
    No. 6:20-CV-129-H, 2021 WL 9314946 (N.D. Tex. Sept. 8, 2021) ...............................12, 14

*Harris Cty. v. Eli Lilly & Co.*,
    No. H-19-4994, 2020 WL 5803483 (S.D. Tex. Sept. 29, 2020) ...............................14

*In re BJ Servs., LLC*,
    No. 20-33627, 2023 WL 2311986 (S.D. Tex. Mar. 1, 2023) ...................................18

*In re Moody*,
    899 F.2d 383 (5th Cir. 1990)...............................................................18

*In re Uplift RX, LLC*,
    667 B.R. 665 (S.D. Tex. 2024)..............................................................5, 6, 12

*In re Yazoo Pipeline Co., L.P.*,
    459 B.R. 636 (Bankr. S.D. Tex. 2011) ...................................................16

*International Bus. Machs. Corp. v. Lufkin Indus.*,
    573 S.W.3d 224 (Tex. 2019) ...............................................................20

*Ironshore Eur. DAC v. Schiff Hardin, L.L.P.*,
    912 F.3d 759 (5th Cir. 2019).............................................................5

*JPMorgan Chase Bank v. Orca Assets G.P., L.L.C.*,
    546 S.W.3d 648 (Tex. 2018) ...............................................................20

iv

*Juarez v. Nationwide Prop. & Cas. Ins. Co.*,
  No. CIV.A. H-10-2726, 2010 WL 5464267 (S.D. Tex. Dec. 29, 2010)...................................20

*Kelly v. Nichamoff*,
  868 F.3d 371 (5th Cir. 2017) ..............................................................................................6

*Lorenzo v. Sec. & Exch. Comm'n*,
  587 U.S. 71 (2019)............................................................................................................24

*Marlin v. Moody Nat. Bank, N.A.*,
  248 Fed. Appx. 534 (5th Cir. 2007) ...................................................................................14

*Moskovits v. McGlinchey Stafford PLLC*,
  No. 4:23-CV-3746, 2024 WL 2750049 (S.D. Tex. May 1, 2024),
  *report and recommendation adopted*, No. 4:23-CV-03746,
  2024 WL 2753252 (S.D. Tex. May 29, 2024), aff'd, No. 24-20295,
  2025 WL 1157546 (5th Cir. Apr. 21, 2025) ........................................................................5

*N. Port Firefighters' Pension v. Temple-Inland, Inc.*,
  936 F. Supp. 2d 722 (N.D. Tex. 2013) .................................................................................8

*PCS Software, Inc. v. Dispatch Services, Inc.*,
  No. CV H-23-108, 2024 WL 3448009 (S.D. Tex. July 16, 2024) ....................................19, 25

*Peel v. cPaperless, LLC*,
  No. 4:23-CV-02417, 2024 WL 1119411 (S.D. Tex. Mar. 14, 2024).........................................9

*Reves v. Ernst & Young*,
  507 U.S. 170 (1993)...........................................................................................................12

*Simmons v. Jackson*,
  No. 3:15-CV-01700-S-BT, 2018 WL 7021485 (N.D. Tex. Dec. 21, 2018),
  *report and recommendation adopted*, No. 3:15-CV-01700-S-BT,
  2019 WL 186654 (N.D. Tex. Jan. 14, 2019)..............................................................................5

*Smith v. MTGLQ Investors, LP*,
  2019 WL 13193219 (S.D. Tex. 2019)......................................................................................8

*Snow Ingredients, Inc. v. SnoWizard, Inc.*,
  833 F.3d 512 (5th Cir. 2016).................................................................................................14

*Southland Sec. Corp. v. INSpire Ins. Sols., Inc.*,
  365 F.3d 353 (5th Cir. 2004)...........................................................................................6, 8, 9

*Taylor v. Tolbert*,
  644 S.W.3d 637 (Tex. 2022) ............................................................................................4, 5

v

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
    551 U.S. 308 (2007)..................................................................................................22

*Tel-Phonic Servs., Inc. v. TBS Int'l, Inc.*,
    975 F.2d 1134 (5th Cir. 1992) ..................................................................................11

*Terry Black's Barbecue, L.L.C. v. State Auto. Mut. Ins. Co.*,
    22 F.4th 450 (5th Cir. 2022)......................................................................................10

*Troice v. Proskauer Rose, L.L.P.*,
    816 F.3d 341 (5th Cir. 2016).......................................................................................3

*U.S. ex rel. Briseno v. Hillcroft Medical Clinic Ass'n*,
    No. 4:20-cv-02871, 2022 WL 17417178 (S.D. Tex. Dec. 5, 2022)..........................19

*U.S. ex rel. Grubbs v. Kanneganti*,
    565 F.3d 180 (5th Cir. 2009)....................................................................................8, 9

*U.S. v. Sanders*,
    925 F.3d 263 (5th Cir. 2020).....................................................................................13

*Van Loon v. Dep't of the Treasury*,
    122 F.4th 549 (5th Cir. 2024).....................................................................................16

*VeroBlue Farms USA, Inc. v. Wulf*,
    465 F. Supp. 3d 633 (N.D. Tex. 2020) ...........................................................8, 13, 20

*Whitney Nat'l Bank v. Med. Plaza Surgical Ctr. L.L.P.*,
    No. Civ.A H-06-1492, 2007 WL 400094 (S.D. Tex. Feb. 1, 2007) ..........................10

*Williams v. WMX Techs., Inc.*,
    112 F.3d 175 (5th Cir. 1997) .....................................................................................13

*Willis v. Maverick*,
    760 S.W.2d 642 (Tex. 1988) ......................................................................................10

*YETI Coolers, LLC v Mercatalyst, Inc.*,
    No. 1:22-CV-01337-DAE, 2023 WL 11852866 (W.D. Tex. Nov. 14, 2023)............15

**Statutes**

17 CFR § 240.10b-5.........................................................................................................21

15 U.S.C. § 78j(b)......................................................................................................21, 23

15 U.S.C. § 78u-4(b)(2) .............................................................................................2, 22

18 U.S.C. § 1962(c) ......................................................................................10, 11, 12

18 U.S.C. § 1962(d) ...............................................................................................13

18 U.S.C. § 2511 .......................................................................................................5

31 U.S.C. § 3729(a)(1)..............................................................................................9

TEX. GOV'T CODE § 4008.052 ................................................................................25

TEX. GOV'T CODE § 4008.055(c) ............................................................................25

**Rules**

FED. R. CIV. P. 9(b).......................................................................................... *passim*

FED. R. CIV. P. 12(b)(6) ................................................................................... *passim*

## ARGUMENT

Frustrated that James Boyd, the person who "singlehandedly" manipulated an innovative online trading concept and algorithm to reroute large sums of cryptocurrency and render it "inaccessible," has disappeared, Plaintiffs have cast a large net to make others answer for Boyd's misconduct. Plaintiffs' wide aim snared New York corporate attorney Peter D. Hatzipetros, who served as the personal attorney for co-defendant Mike Boggs before the events giving rise to this lawsuit and rendered transactional advice in connection with some of those events. Although Plaintiffs' response to Hatzipetros's motion filed on May 15, 2026 [Dkt. 50] (the "Response"), now insists that Hatzipetros "worked in concert" with Boyd in his scheme, Response ¶ 30, even after two attempts at pleading, a fair reading of the actual allegations in the Amended Complaint is that Hatzipetros was not directly involved in Boyd's secret manipulation of best-laid plans.

For some reason, Plaintiffs' recent litigation energy has been focused on Hatzipetros. Plaintiffs' Original Complaint mentioned Hatzipetros in only 3 of the 53 paragraphs of pre-claim factual allegations. The Original Complaint candidly pleaded that Plaintiffs had no additional facts of Hatzipetros's "involvement" at the time the suit was filed. Compl. [Dkt. 1] ¶ 46. After Hatzipetros moved to dismiss the Original Complaint and the Court posed questions about him in a preliminary appearance, however, Plaintiffs amended their pre-claim allegations to double the references to Hatzipetros. *See* Pls.' 1st Am. Compl., filed March 16, 2026 [Dkt. 42] ("Am. Compl."), ¶¶ 1, 18, 30, 31, 33, 80. Without the spin in the Response, though, Plaintiffs' pleaded allegations about Hatzipetros are limited to four tasks typical of an alleged "legal architect" of a technology venture: (a) legal "structuring" work to create "shell entities" affiliated with the platform; (b) "drafting and preparing legal documentation to structure the investment program, including the QuantumArc Node System User Agreement;" (c) passive "appear[ance] at" and identification in "Las Vegas presentations" as a person offering "legal oversight and institutional

1

safeguards" to the platform; and (d) "communications" with Plaintiffs after problems with the platform surfaced about potential solutions and "recovery of investor funds." *Id.* ¶¶ 18, 30, 33, 86, 96. The Amended Complaint pleads that Plaintiffs believed in real time that Hatzipetros's "legal services" were components of a "legitimate" corporate structure. Am. Compl. ¶ 31. , Plaintiffs' description of Hatzipetros's role in Defendants' purported affairs is only one of two allegations in the Amended Complaint advanced "[u]pon information and belief." Am. Compl. ¶ 18.

Plaintiffs' zeal is also evident in the number of causes of action brought against Hatzipetros. As set forth more fully in the Motion, however, the Court should dismiss any action against Hatzipetros because he is immune from defending an action by a non-client about the "legal services" he performed. The Response has now abandoned Plaintiffs' (frivolous) breach of fiduciary duty and civil conspiracy claims against Hatzipetros. The Response also does not event try to contest numerous dispositive points in the Motion, including:

- The closed-end scheme alleged in the Amended Complaint operated for thirteen months at most, which falls short of the longevity courts require to support a RICO claim (Count One) (*see* Motion at 11);

- Plaintiffs are required to plead reliance to support their civil RICO claim (Count One), but the Amended Complaint fails to do so with specificity (*see id.* at 10);

- Plaintiffs do not allege any meeting of the minds, as required to plead RICO conspiracy (Count Two) (*see id.* at 13);

- Plaintiffs fail to allege materiality required by the Private Securities Litigation Reform Act of 1995, 15 U.S.C. § 78u-4(b)(2) ("PSLRA") (Count Nine) (*see* Motion at 20);

- The Fifth Circuit disregards group-pleaded allegations to support claims like Count Nine and Count Ten, but the Amended Complaint aggregates "Defendants" in an indistinguishable group (*see id.* at 21); and

- Any further amendment would be futile in this case, warranting dismissal with prejudice (*see id.* at 24–25).

Therefore, in addition to granting immunity, the Court also should dismiss all nine of the remaining claims asserted against Hatzipetros under Rule 12(b)(6).

2

**I.**     **Attorney Hatzipetros Is Immune From Suit.**

Texas law protects attorneys from claims by non-clients arising out of the attorney's actions in representing a client. *See Troice v. Proskauer Rose, L.L.P.*, 816 F.3d 341, 346 (5th Cir. 2016). This doctrine amounts to "true immunity from suit." *Id.* at 348.  This Court has held that the immunity is "broad." *Daniels v. Pennymac Loan Servs., LLC*, No. 4:22-cv-199, 2022 WL 16556805, at *5 (S.D. Tex. Oct. 31, 2022).  In the Motion, Hatzipetros moved to dismiss Plaintiffs' suit based on this established law because the allegations against him in the Amended Complaint wholly concern Hatzipetros' alleged role as a "legal architect" and performance of "legal services." *See, e.g.*, Am. Compl. ¶¶ 96, 109(a).  While Plaintiffs take umbrage at the manipulation by Boyd of Hatzipetros's work product, all of the complained-of acts—"structuring" legal entities, "preparing legal documents," appearing at presentations as the "legal oversight" representative, and communicating with stakeholders regarding "potential transactions" to remedy a problem— are typical of an attorney working in representation of a client. *See id.* 18, 33, 86, 93.

The Response makes three arguments to exempt their action against Hatzipetros from attorney immunity.  First, Plaintiffs contend that attorney immunity does not apply here because Hatzipetros was alleged to have been providing "dual capacity" services such as acting "as a business participant." Response ¶¶ 8, 12.  The Texas Supreme Court has explained that "the focus in evaluating attorney liability to a non-client is on the kind—not the nature—of the attorney's conduct." *Cantey Hanger, LLP v. Byrd*, 467 S.W.3d 477, 483 (Tex. 2015) (citation omitted).  In other words, "an attorney cannot be held liable to a third party for conduct that requires the office, professional training, skill, and authority of an attorney," even if such conduct would be perceived to be "wrongful in the context of the underlying suit." *Id.* at 481–82 (citations omitted).

The Amended Complaint undercuts Plaintiffs' contention that Hatzipetros's alleged conduct was "not uniquely lawyerly in nature." Response ¶ 10.  Plaintiffs allege that Hatzipetros

3

was "retain[ed]" as an "attorney . . . to structure and register shell entities."  Am. Compl. ¶ 104(c).

The Amended Complaint further describes Hatzipetros's structuring work as "legal services," and

describes him as a "legal architect."  *Id.* ¶¶ 96, 109(g).  Even Hatzipetros's alleged presence during

"Las Vegas presentations" was not as a pitch man or technical advisor, but, allegedly, as "the

attorney and partner associated with the venture.  *Id.* ¶ 33.  Accordingly, even if Plaintiffs now

believe the object and "nature" of Hatzipetros's labor was morally or legally questionable (which

Hatzipetros denies), the "kind" of work consistently alleged by Plaintiffs is well within the skills

of an attorney.  *See Alpert v. Riley*, No. CIV.A. H04CV-3774, 2008 WL 304742, at *14 (S.D. Tex.

Jan. 31, 2008).

The alleged fact that one of the documents Hatzipetros "draft[ed] and prepar[ed]" stated

Hatzipetros's title as "Partner/General Counsel" of QuantumArc International is not the silver

bullet Plaintiffs seem to think it is.  Again, courts evaluate attorney immunity based on kind and

substance, not nature and form.   Moreover, the title merely indicates Hatzipetros's role with

respect to QuantumArc International, which is not a party to this suit.  *See* Am. Compl. ¶ 93.[1]  The

title "Partner/General Counsel" does *not* describe Hatzipetros's relationship with Plaintiffs, nor

does it describe the role pleaded in the Amended Complaint.

Second, in Plaintiffs' final sentence on this point, the Response briefly argues that "attorney

immunity does not apply to Plaintiffs' federal claims" as a matter of law.  Response ¶ 12 (citing

*Taylor v. Tolbert*, 644 S.W.3d 637, 646 (Tex. 2022)).  This apparent afterthought overstates

*Taylor*, and other courts have not endorsed the rule the Response proposes.  In *Taylor*, the Texas

---

[1]     Plaintiffs have gone further in another context to state QuantumArc "is not before the
Court" and that "Plaintiffs do not assert claims based on the QuantumArc Agreement, and their
claims do not depend on it."  Pls.' Response to Defs.' Mot. To Compel Arbitration and Stay
Proceedings, filed Apr. 10, 2026 [Dkt. 43], at 10, 13.

Supreme Court held that it was "unlikely" that a federal court would apply the Texas common-law attorney immunity defense to the federal wiretap statute, 18 U.S.C. § 2511, because that statute contains "exclusivity language" applying the law to any person "[e]*xcept as otherwise specifically provided*." 644 S.W.3d at 655–56 (emphasis in original). The court recognized, however, that attorney immunity *would* apply to other federal statutes. *Id.* at 654.

The limited holding in *Taylor* does not apply here. Unlike the federal wiretap statute, the RICO and Securities and Exchange Act statutes upon with Plaintiffs rely do not contain "exclusivity language." Indeed, courts in this Circuit have applied attorney immunity to bar federal law claims, including RICO. *See, e.g.*, *Simmons v. Jackson*, No. 3:15-CV-01700-S-BT, 2018 WL 7021485, at *4 (N.D. Tex. Dec. 21, 2018), report and recommendation adopted, No. 3:15-CV-01700-S-BT, 2019 WL 186654 (N.D. Tex. Jan. 14, 2019); s*ee also Moskovits v. McGlinchey Stafford PLLC*, No. 4:23-CV-3746, 2024 WL 2750049, at *5 (S.D. Tex. May 1, 2024), report and recommendation adopted, No. 4:23-CV-03746, 2024 WL 2753252 (S.D. Tex. May 29, 2024), aff'd, No. 24-20295, 2025 WL 1157546 (5th Cir. Apr. 21, 2025). This Court should follow suit.

Third, Plaintiffs argue that the Court is "preclude[ed]" from dismissal under Rule 12(b)(6) because Hatzipetros's assertion of attorney immunity "create[s] a factual dispute." Response ¶ 12 (citing *In re Uplift RX, LLC*, 667 B.R. 665, 688 (S.D. Tex. 2024)). Again, Plaintiffs' position is unfounded. The Fifth Circuit has held that courts may grant attorney immunity at the motion to dismiss stage when "the scope of the attorney's representation—and thus entitlement to the immunity—is apparent on the face of the complaint." *Ironshore Eur. DAC v. Schiff Hardin, L.L.P.*, 912 F.3d 759, 763–64 (5th Cir. 2019) (quotations and citations omitted).

5

That is precisely the case here.  The Amended Complaint affirmatively alleges that Boyd and others "retain[ed] attorney Peter D. Hatzipetros to structure and register shell entities," to provide "assistance" "maintain[ing]" those entities.  Am. Compl. ¶¶ 103, 104(c).  Hatzipetros allegedly "serve[d] as the enterprise's . . . General Counsel." *Id.* ¶ 96.  In that role, Hatzipetros's work involved "drafting and preparing" at least one written contract.  *See id.*  This "legal documentation" was allegedly designed to lend "credibility" to solicitation efforts and convey that the cryptocurrency arbitrage platform had "legal oversight" and "institutional[]"—as opposed to Defendant-controlled—safeguards.  *Id.* at ¶¶ 33, 96.  The Amended Complaint also expressly alleges that Hatzipetros's actions were "legal services" and "legal" structuring work.  *See, e.g.*, *id.* ¶¶ 33, 96, 109(g), 113(f).  This case is different from *Kelly v. Nichamoff*, 868 F.3d 371, 375 (5th Cir. 2017), *see* Response ¶ 9, as the complaint in that case merely established an attorney-client relationship without any allegations about the scope of that representation.  Likewise, *In re Uplift* does not compel litigation past "the pleading stage" as the Response contends, as the complaint in that case alleged that the defendant law firm agreed to engage in "business decisions," including service on the bankruptcy debtor's board of directors.  667 B.R. at 687–88

In sum, this case presents an opportunity for the Court to apply the well-worn rule.  The Amended Complaint plainly alleges conduct by Hatzipetros acting as a "retain[ed] attorney," and it seeks to hold Hatzipetros liable for performing those "legal services."  Am. Compl. ¶¶ 104(c), 109(g).  Texas law prohibits this as a matter of law.

## II.    The Response Relies On Improper Group Pleading And Argument.

Pleading allegations describing purported conduct by multiple unspecified "Defendants" are improper in fraud-based cases like this one, as they fail to provide an individual defendant with fair notice of the claims against him and the specificity required under Rule 9(b).  S*ee Southland Sec. Corp. v. INSpire Ins. Sols., Inc.*, 365 F.3d 353, 385 (5th Cir. 2004); *Del Castillo v. PMI*

6

*Holdings N. Am. Inc.*, No. 4:14-CV-3435, 2015 WL 3833447, at \*6 (S.D. Tex. June 22, 2015). This defect is rampant in the Amended Complaint. For example, that pleading added over twenty "representations" made by an unspecified collective "Defendants" to Plaintiffs' original, flawed pleading. Am. Compl. ¶¶ 27, 29, 34, 35, 39, 40, 42, 43, 45, 46, 47, 49, 50, 51, 53, 62, 74, 78, 79, 84, 85, 87, 88, 89. Plaintiffs' group pleading problem also infects each pleaded count, particularly with respect to Hatzipetros. For example, Counts Six and Seven allege "representations" made by "Defendants" and do not name Hatzipetros. *Id.* ¶¶ 120(a–e), 123(a–c). And Count Eight lists an omission *about Hatzipetros*, but alleges these omissions were made by "Defendants." *Id.* ¶ 126(d). Unfortunately, Plaintiffs take the same approach to the Response. The Response's reliance on group pleading is improper in three respects.

First, to inflate the relatively sparse allegations about Hatzipetros in the Amended Complaint (and to try to broaden those allegations beyond standard lawyer fare, which supports the application of attorney immunity), the Response repeatedly—but inaccurately—represents that allegations in the Amended Complaint are Hatzipetros-specific. Plaintiffs' misinformation takes various forms, such as:

> The FAC alleges that Hatzipetros actively participated in the preparation and dissemination of investor-facing . . . presentations designed to induce Plaintiffs to invest in the QuantumArc program.

Response ¶ 52, *see also id.* ¶¶ 1, 30, 46, 56, 58, 61. The Amended Complaint, however, passively alleges that Hatzipetros "*was presented* to investors as the attorney" during alleged presentations conducted by "Defendants." Am. Compl. ¶ 33 (emphasis added). Plaintiffs do not allege that Hatzipetros actually attended, spoke, or "actively participated" at these alleged meetings. Instead, Plaintiffs allege that an unnamed collective "*Defendants* hosted in-person meetings," "[d]uring these meetings, *Defendants* presented the" arbitrage system, and that "*Defendants*

7

introduced . . . Hatzipetros" and described his role. *Id.* ¶¶ 32–34 (emphasis added).[2] Plaintiffs cannot manufacture Hatzipetros-specific allegations out of collective pleading. *See N. Port Firefighters' Pension v. Temple-Inland, Inc.*, 936 F. Supp. 2d 722, 740 (N.D. Tex. 2013).

Second, the Response itself proliferates the group-pleading problem in the Amended Complaint. For example, the Response argues that Plaintiffs have plausibly stated a fraudulent concealment claim against Hatzipetros because "[t]he FAC . . . allege[s] that *Defendants* concealed material facts concerning the true structure and operation" of the system. Response ¶ 56 (emphasis added). This does not come close to pleading that *Hatzipetros* specifically concealed any facts, which is required to state this claim and to satisfy the heightened pleading standard of Rule 9(b). *See Smith v. MTGLQ Investors, LP*, 2019 WL 13193219, at *3 (S.D. Tex. 2019). Similarly, in defense of Plaintiffs' conversion claim against Hatzipetros, the Response contends that the "FAC alleges that *Defendants* received, controlled, and failed to return Plaintiffs' cryptocurrency." Response ¶ 39 (emphasis added). But Plaintiffs did not plead that Hatzipetros received or controlled any funds. Plaintiffs cannot satisfy their pleading burden by attributing to Hatzipetros the impermissibly group-pleaded allegations attached to the collective "Defendants" throughout the Amended Complaint. *See Southland*, 365 F.3d at 385; *VeroBlue Farms USA, Inc. v. Wulf*, 465 F. Supp. 3d 633, 655–56 (N.D. Tex. 2020).

Third, in an implicit confession about the problems above, the Response unabashedly argues that "Rule 9(b) does not . . . prohibit group pleading where defendants are alleged to have acted in concert as part of a unified scheme." Response ¶ 5 (citing *United States ex rel. Grubbs v. Kanneganti*, 565 F.3d 180, 190 (5th Cir. 2009)). This argument is wrong. As discussed in Point

---

[2]    Neither does the Amended Complaint plead that Hatzipetros "participated in presentations alongside … Holton Buggs," who Plaintiffs have not a named as party to this suit. Response ¶ 1.

III(B) in more detail, Plaintiffs' stance that "scheme" pleading can relieve a plaintiff of the requirements in Rule 9(b) lacks legal support. And two: Plaintiffs' specific citation to *Kanneganti* is more helpful to the Motion than the Response. *Kanneganti* does not directly discuss, let alone condone, group-pleading. In that case, the Fifth Circuit analyzed how Rule 9(b)'s particularity requirements apply to "a False Claims Act § 3729(a)(1) claim," which differs from common-law fraud. 565 F.3d at 190. Nonetheless, the Court still held that, even with respect to FCA claims, courts must still apply Rule 9(b) "with 'bite' and 'without apology.'" *Id.* at 185. In short, the *Kanneganti* court did not weaken Fifth Circuit law that prohibiting group pleading or relax Plaintiffs' Rule 9(b) burden; rather, the "bite" of Rule 9(b) *includes* the prohibition on group pleading that the Fifth Circuit outlined in *Southland.* 365 F.3d at 385.

Group pleading is particularly problematic where, as here, "not all Defendants stand on equal footing." *Peel v. cPaperless, LLC*, No. 4:23-CV-02417, 2024 WL 1119411, at \*4, \*4 n.10 (S.D. Tex. Mar. 14, 2024). The Amended Complaint expressly alleges that one of the "Defendants"—Boyd—was the mastermind of the purported scheme. Am. Compl. ¶¶ 55–56, 95. These allegations preclude the notion that Hatzipetros, rather than Boyd, had agency over Boyd's purported scheme or discretionary control over Plaintiffs' assets. Accordingly, Plaintiffs' repeated reliance on allegations about "Defendants" in the Amended Complaint and Response is alarming and wrong. The Court should dismiss Plaintiffs' claims on this basis alone. *See, e.g.*, *Bittinger v. Wells Fargo Bank NA*, No. CIV.A. H-10-1745, 2011 WL 3568206, at \*6 (S.D. Tex. Aug. 15, 2011).

## III. The Response Fails To Adequately Defend Plaintiffs' Enumerated Claims.

### A. Plaintiffs Have Abandoned Counts Four And Eleven.

The Motion challenged Plaintiffs' claims for breach of fiduciary duty (Count Four) and civil conspiracy to commit fraud (Count Eleven). *See* Motion at 15–16, 23–24. Among other

9

defects, the Motion argued attorneys like Hatzipetros owe a duty to their clients, rather than alleged adversaries like Plaintiffs. *See id.* at 16 (citing *Willis v. Maverick*, 760 S.W.2d 642, 645 (Tex. 1988)). Hatzipetros also argued that Plaintiffs' failure to allege, *inter alia*, any knowledge by Hatzipetros of falsity or deception defeated a civil conspiracy claim. *See id.* at 24 (citing *Whitney Nat'l Bank v. Med. Plaza Surgical Ctr. L.L.P.*, No. Civ.A H-06-1492, 2007 WL 400094, at *5 (S.D. Tex. Feb. 1, 2007)). The Response appears to concede these points, as Plaintiffs completely fail to defend Count Four or Count Eleven. Plaintiffs' silence has legal significance. The Court should treat Counts Four and Eleven as abandoned with respect to Hatzipetros and dismiss the claims with prejudice. *See Terry Black's Barbecue, L.L.C. v. State Auto. Mut. Ins. Co.*, 22 F.4th 450, 459 (5th Cir. 2022); *Gonzales v. AutoZone, Inc.*, No. CIV.A. 4:09-4054, 2011 WL 2457929, at *2 (S.D. Tex. June 16, 2011).

### B.      Count One: Plaintiffs' RICO Claim Should Be Dismissed.

The Motion identified three defects in Plaintiffs' Section 1962(c) RICO claim warranting dismissal of Count One: (1) Plaintiffs' allegations about Hatzipetros in Count One do not satisfy Rule 9(b), as (a) none of the alleged predicate acts expressly involved Hatzipetros, (b) the description of Hatzipetros's "legal" work is vague about the time, place, and contents of any false representations, and (c) Plaintiffs fail to allege reliance on words or deeds perpetrated by *any defendant*, much less by Hatzipetros; (2) the factual allegations in the Amended Complaint disprove that Hatzipetros and others acted with a "common purpose" sufficient to plead a RICO enterprise; and (3) the alleged scheme was too limited, short, and close-ended to qualify as a "pattern" under federal law. Motion at 8–12. Critically, the Response completely ignores and fails to rebut points (1)(c), (2), and (3). These omissions alone warrant dismissal of Count One. *See Terry Black's Barbecue*, 22 F.4th at 459. The three arguments advanced in the Response fare no better.

First, the Response argues that, by pleading a "fraudulent scheme" along with allegations of "each defendant's role" in that scheme, a plaintiff in this Circuit can relax both her Rule 9(b) fraud pleading burden and the requirement to plead a "pattern" of racketeering activity under 18 U.S.C. § 1962(c).  Response ¶¶ 14 (citing *Tel-Phonic Servs., Inc. v. TBS Int'l, Inc.,* 975 F.2d 1134, 1139 (5th Cir. 1992), and *Benchmark Elecs., Inc. v. J.M. Huber Corp.*, 343 F.3d 719, 724 (5th Cir. 2003)).  Plaintiffs' position lacks support in the law and the pleaded facts.

The cases cited in the Response do not support the relaxation of Rule 9(b) and Section 1962(c).  In *Tel-Phonic,* the Fifth Circuit actually affirmed dismissal of a RICO claim for failure to satisfy Rule 9(b).  975 F.2d at 1139.  The court did not relieve Plaintiffs from specifying the "communications" alleged as predicate acts, but instead reaffirmed that Rule 9(b) "applies to the pleading of fraud as a predicate act in a RICO claim" and held that that this requires alleging the "time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation."  *Id.*  And in *Benchmark*, the court held a plaintiff stated a fraud claim with particularity because the complaint alleged specific representations, the specific defendant who made these statements, and the dates on which they were made.  343 F.3d at 724.  *Benchmark* did not discuss 18 U.S.C. § 1962(c) at all, as it was not a RICO case.

Moreover, even if Plaintiffs' "scheme-pleading" construct was legally viable, the allegations in the Amended Complaint still could not save Count One as to Hatzipetros.  Although he is superficially listed as an alleged enterprise member, Am. Compl. ¶ 92, none of the purportedly predicate acts of wire fraud and money laundering mention Hatzipetros.  *Id.* ¶ 98.  Instead, Plaintiffs allege that other unnamed "Defendants" engaged in unspecific "exemplar acts," but the count completely fails to state the particulars regarding the time, place, and contents of any false representations by Hatzipetros or why these representations were false.  *Id*.  The Response's

11

argument that Plaintiffs need only specify Hatzipetros role in the overall scheme cannot compensate for this failure. *Barnard v. Bank of Am.*, *N.A. (USA)*, No. CV H-05-2589, 2005 WL 8166961, at *1 (S.D. Tex. Nov. 15, 2005).

Second, the Response argues that, in order to plausibly plead that Hatzipetros is a "RICO person" under Section 1962(c), "Plaintiffs need only allege facts supporting a reasonable inference that he had 'some part in directing' the enterprise's affairs." Response ¶ 16 (citing *Reves v. Ernst & Young*, 507 U.S. 170, 179 (1993)). This argument has at least two incurable flaws. One: Plaintiffs' "some part in directing" test fails to account for cases that have held that merely providing legal advice is not sufficient "operation or management of the enterprise" to subject a person to liability. *See In re Uplift*, 667 B.R. at 699. Indeed, Plaintiffs' *own case* stands for a similar principle with respect to accounting services. *See Reves*, 507 U.S. at 179. Courts deciding whether legal services were operational or just routine professional services look at "how pervasive the services provided by [the lawyer] were during the relevant time period." *In re Uplift*, 667 B.R. at 699. This analysis is at odds with the relaxed standard Plaintiffs advocate.

And two: The Response's arguments regarding RICO participation are based on a fictional account of the Amended Complaint. As discussed more fully in Point II above, Plaintiffs' characterization of Hatzipetros in the Response does not match the allegations in the Amended Complaint. When the Court considers Hatzipetros's role based on the allegations in the Amended Complaint, as it must, *see Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333, 338 (5th Cir. 2008), Plaintiffs' basis to attach RICO liability on Hatzipetros disappears. *See Gutierrez v. Venegas*, No. 6:20-CV-129-H, 2021 WL 9314946, at *8 (N.D. Tex. Sept. 8, 2021) (dismissing RICO claims for conclusory allegations and rejecting plaintiffs "after-the-fact attempts to imbue the complaint with greater specificity and meaning than can be gleaned from its text.").

12

Third, the Response argues that Count One is too "fact-intensive" to be dismissed "at the pleading stage."  Response ¶¶ 25–27 (citing *Affco Invs. 2001, L.L.C. v. Proskauer Rose, L.L.P.*, 625 F.3d 185, 189–90 (5th Cir. 2010)).  But Fifth Circuit law is clear that Rule 9(b)'s stringent requirements are intended safeguard against advancing a case to unnecessary discovery.  *Williams v. WMX Techs., Inc.*, 112 F.3d 175, 177–78 (5th Cir. 1997).  As one court explained:

> [T]he Court does not believe that labeling a group as fraudsters—
> and then seeking discovery to tighten the allegations after the fact—
> is consistent with the Fifth Circuit's view of Rule 9's heightened
> fraud pleading requirements.

*VeroBlue*, 465 F. Supp. 3d 633 at 655–56.  *Affco* does not say otherwise, as the Fifth Circuit in that case actually affirmed dismissal of plaintiff's RICO claim under Rule 12(b)(6) "on the face of the pleadings."  625 F.3d at 191.  The Court should reject this gameplay and dismiss Plaintiffs' claims with prejudice.

### C. Count Two: Plaintiffs' RICO Conspiracy Claim Should Be Dismissed.

The Motion identified two defects in Plaintiffs' Section 1962(d) RICO conspiracy claim warranting dismissal of Count Two:  (1) Plaintiffs' conspiracy allegations do not satisfy Rule 9(b); and (2) the Amended Complaint does not even try to plead a "meeting of the minds" required to state a claim under 18 U.S.C. Section 1962(d).  Motion at 12–13.  Plaintiffs ignore Hatzipetros's second point altogether.  The court can and should dismiss Count Two on this basis alone.  Plaintiffs' two responses to Hatzipetros's other point also fail.

First, Plaintiffs argue that courts can infer a plausible RICO conspiracy merely from allegations that Hatzipetros "worked in concert" with other Defendants or otherwise engaged in "coordinated activities."  Response ¶¶ 29–30.  This argument lowers Plaintiffs' pleading burden below the bar set by the Fifth Circuit.  While a RICO conspiracy agreement can be pleaded through circumstantial evidence, it cannot be "lightly inferred."  *United States v. Sanders*, 925 F.3d 263,

13

273–74 (5th Cir. 2020). As Plaintiffs' own case explains in the course of rejecting a claim like Count Two "because they do not satisfy the federal pleading standards": "Civil-RICO conspiracy . . . cannot be premised on negligence. It requires an actual agreement between conspirators—they must specifically intend the illegal conduct." *Snow Ingredients, Inc. v. SnoWizard, Inc.*, 833 F.3d 512, 525–26 (5th Cir. 2016). A complaint that merely alleges "coordinated" conduct does not adequately plead circumstantial evidence of a RICO conspiracy agreement. *See Harris Cty. v. Eli Lilly & Co.*, No. H-19-4994, 2020 WL 5803483, at *11 (S.D. Tex. Sept. 29, 2020).

Second, Plaintiffs argue that a RICO conspiracy claim can survive dismissal without pleading a detailed account of any predicate acts by Hatzipetros as long as Plaintiffs' predicate acts allege "a broader pattern of racketeering activity." Response ¶ 31 (citing *Andrews v. Am. Nat'l Red Cross*, 176 F. Supp.2d 673, 692 (E.D. Tex. 2001)). This argument has two flaws. One: Even if Plaintiffs' legal contention was correct, a plaintiff still must sufficiently plead that a defendant "must have known and agreed to assist in" the racketeering predicate acts. *Marlin v. Moody Nat. Bank, N.A.*, 248 Fed. Appx. 534, 538 (5th Cir. 2007). Plaintiffs fail to do so. The Amended Complaint's allegation of Hatzipetros's knowledge of and agreement in purportedly conspiratorial acts contains no factual content. Am. Compl. ¶ 103. "This type of summary pleading is not sufficient to support" a RICO conspiracy claim. *Allstate Ins. Co. v. Donovan*, No. H-12-0432, 2012 WL 2577546, at *15 (S.D. Tex. July 30, 2012). To properly allege a conspiracy claim, "there must be at least some factual matter to support allegations of [Hatzipetros's] knowledge of, and agreement to assist in, the underlying . . . offense." *Gutierrez*, 2021 WL 9314946, at *8. The Response does not even try to direct the Court to any citation to the Amended Complaint pleading that Hatzipetros agreed to the goal of furthering a RICO violation.

14

Two:  Even if the law allowed the Court to advance Count Two on a mere "reasonable inference that Hatzipetros agreed to further the enterprise's objective," such an inference is contradicted by the Amended Complaint itself.  Among other allegations, the Amended Complaint pleads that "Defendant James Tyler Boyd maintained control over a concealed layer of system infrastructure" unbeknownst to Hatzipetros's client Mike Boggs.  Am. Compl. ¶ 55; *see also id.* ¶¶ 56 ("Boyd maintained a hidden backend architecture"), 95 ("Boyd directed the technical infrastructure of the Enterprise by configuring concealed servers . . .").  Such contradictory allegations are ample grounds for dismissal.  *See Crowe v. Henry*, 43 F.3d 198, 206 (5th Cir. 1995) (dismissing RICO conspiracy claim when plaintiff pleaded conclusory allegation of conspiracy).

### D.    Count Three: Plaintiffs' Conversion Claim Should Be Dismissed.

In the Motion, Hatzipetros moved for dismissal of Count Three because the Amended Complaint does not, and cannot plausibly, allege facts to support the second or third elements of a state-law conversion claim; namely, that (1) the claim relates to control over personal property and (2) that Hatzipetros exercised dominion and control over such property.  Motion at 14–15.  Plaintiffs advance five arguments in response, none of which have merit.  Response ¶¶ 33–39.

First, the Response argues that the classic requirements to plead conversion can be circumvented in cases where property was allegedly "obtained through fraudulent pretenses."  Response ¶¶ 34–35 (citing *YETI Coolers, LLC v Mercatalyst, Inc.*, No. 1:22-CV-01337-DAE, 2023 WL 11852866, at *5 (W.D. Tex. Nov. 14, 2023)).  *YETI Coolers* does establish such a rule.  The *YETI Coolers* court acknowledged that an action for civil theft by false pretenses overlaps the tort of conversion in the course of a personal jurisdiction analysis, 2023 WL 11852866, at *5, but it did not establish a pleading hierarchy between those causes of action.  Moreover, the implications of a civil theft claim are academic here, as the Amended Complaint plainly attempts to (superficially) plead conversion and its elements, not theft.  *See* Am. Compl. ¶¶ 108–110.

15

Second, Plaintiffs argue that cryptocurrency assets are capable of having characteristics of personal property under certain circumstances.  Response ¶ 36 (citing *In re Yazoo Pipeline Co., L.P.*, 459 B.R. 636, 653 (Bankr. S.D. Tex. 2011), *Ahlgren v. Ahlgren*, 703 S.W.3d 378 (Tex. App.—Corpus Christi–Edinburg 2023, pet. denied), *Van Loon v. Dep't of the Treasury*, 122 F.4th 549, 554–60 (5th Cir. 2024)).  Hatzipetros agrees, but this point does not disprove the positions in the Motion.  Count Three is not doomed because cryptocurrency can *never* give rise to a conversion claim, it is doomed because the cryptocurrency assets described in the Complaint cannot give rise to a conversion claim.  Plaintiffs' *Ahlgren* case illustrates Hatzipetros's point.  Although neither that case nor *Van Loon* involved a conversion claim,[3] the court recognized that the cryptocurrency at issue in that case was rendered "untraceable" when—like the conduct Plaintiffs allege of Boyd—the defendant/trustee "washed" Bitcoin by mixing his holdings with others' holdings to obtain a new address on the blockchain.  703 S.W.3d at 391, 397.  Likewise, the entire purpose of the cryptocurrency arbitrage system described in the Amended Complaint was to "deploy" virtual money "in the trading system," where it would not be maintained in the same form it was received.  Am. Compl. ¶¶ 35, 40.  Plaintiffs understood that virtual money would be transformed at least twice:  routed from a "wallet" entry point to a pooled, non-custodial exchange platform and then "converted to and held in stablecoins such as USDC or USDT."  *Id.* ¶¶ 35, 40, 98, 130.  In short, the scenario Plaintiffs voluntarily entered into with Boyd was like the scenario in *Ahlgren*.

Third, Plaintiffs represent that the Amended Complaint alleged that "Plaintiffs' cryptocurrency can be traced," Response ¶ 37, but the Amended Complaint says the opposite.  Although one of the pleading paragraphs cited in the Response initially alleges that Plaintiffs

---

[3]     Plaintiffs' reliance on *In re Yazoo* is even more confounding, as that case involved seismic computer data, not cryptocurrency.  *See* 459 B.R. at 653.

16

"deposit[ed] cryptocurrency into specific digital wallet addresses designated by enterprise," that paragraph goes on to allege, "These wallets were represented as entry points into the arbitrage system, through which investor capital would be pooled and deployed into trading activity." Am. Compl. ¶ 40. Once pooled, the Amended Complaint describes actions by Boyd "to frustrate tracing and conceal the true origin and destination of funds" by "fragmenting the transaction history across multiple blockchain networks." *Id.* ¶¶ 65, 71; *see also id.* ¶¶ 67, 69, 76. When the Court considers Plaintiffs' actual pleaded allegations rather than the spin in the Response, Count Three clearly should not survive. *See, e.g. Dixon v. Wells Fargo Bank, N.A.*, No. 3:190CV-1677-G-BH, 2020 WL 10050726, at *5 (N.D. Tex. Jan. 29, 2020).

Fourth, Plaintiffs try to dodge unhelpful law that "pooled" virtual money cannot be converted by arguing that such pooling should not count if it was performed by Defendants. Response ¶ 38 ("At the pleading stage, Defendants cannot defeat a conversion claim by pointing to their own alleged commingling of those assets."). The Response cites no case authority for this position, but it fails as a matter of fact in any event. According to the Amended Complaint, a key component of the "automated arbitrage engine" into which Plaintiffs willingly paid was that "investor funds would be pooled" and traded in the aggregate—not segregated. Am. Compl. ¶¶ 35, 40, 120(c), 123(b).

Fifth, the Response superficially argues that "Plaintiffs adequately allege dominion and control" simply because the Amended Complaint alleged that "Defendants received, controlled, and failed to return Plaintiffs' cryptocurrency." Response ¶ 39. Not only does this gloss rely on group pleading and argument, which is problematic as discussed in Point II above, but the Response ignores Texas law that requires proof that a defendant act in a way that is "to the exclusion of, or inconsistent with, the plaintiff's rights" in order to establish "dominion and

17

control." *In re Moody*, 899 F.2d 383, 385 (5th Cir. 1990). Moreover, even under Plaintiffs' view, the alleged point of Hatzipetros's involvement was to "facilitat[e]" Plaintiffs' voluntary contributions to the cryptocurrency arbitrage system, not frustrate it. *See, e.g.*, Am. Compl. ¶ 95. Actions Plaintiffs condone in real time cannot be "inconsistent with . . . plaintiff's rights."

### E.    Count Five: Plaintiffs Fail To State A Claim For Unjust Enrichment.

The Motion identified two defects in Plaintiffs' unjust enrichment claim warranting dismissal of Count Five: (1) this Court has not recognized unjust enrichment as independent cause of action; and (2) Plaintiffs' pleading of Count Five merely consists of unsupported conclusions. Motion at 16–17. Plaintiffs effectively concede the first point in a protracted discussion, Response ¶ 42 ("The Fifth Circuit has acknowledged that Texas courts are divided on whether unjust enrichment constitutes an independent cause of action, but it has expressly declined to resolve the issue."), and they characterize the Amended Complaint in a number of ways to address the second point. Response ¶¶ 45–47. The latter effort fails for three reasons.

First, Plaintiffs cannot improve the threadbare allegations in Count Five by relying on allegations outside of that count. Every citation in Plaintiffs' argument is to an allegation unrelated to Plaintiffs' unjust enrichment cause of action. *See* Response at 12 nn. 18–19 (citing Am. Compl. ¶¶ 18, 29–41, 86 (from Factual Background) and 93 and 96 (from Count One)). Dismissal is appropriate in the absence of count-specific allegations. *See, e.g.*, *In re BJ Servs., LLC*, No. 20-33627, 2023 WL 2311986, at *5 (S.D. Tex. Mar. 1, 2023); *Greene v. CitiMortgage, Inc.*, No. 2:13-CV-219, 2014 WL 948878, at *4 (S.D. Tex. Mar. 11, 2014).

Second, the Amended Complaint does not actually plead that Hatzipetros "obtained a benefit" or other enrichment, despite the position in the Response. Response ¶ 47. None of the paragraphs cited in the Response contain any allegation about fees or other benefits obtained by Hatzipetros—not one.

18

Third, nor does the Amended Complaint plead that Hatzipetros obtained a benefit as a result of any inequitable conduct. As discussed above in Point III(B), the Amended Complaint does not actually allege that Hatzipetros "knowingly" engaged in misconduct. Indeed, the Amended Complaint disproves Plaintiffs' reckless "knowingly" contention. Contradictory, unsupported allegations are subject to dismissal. *See Crowe*, 43 F.3d at 206.

> F.    **Count Six And Count Seven:    Plaintiffs' Common-Law Fraud By Misrepresentation Claims Fail.**

In the Motion, Hatzipetros moved for dismissal of Count Six and Count Seven because neither Plaintiffs' common-law fraud claim (Count Six) nor Plaintiffs' fraudulent inducement claim (Count Seven) mentioned Hatzipetros by name or any of his alleged conduct. Motion at 17–18. As a result, Plaintiffs cannot possibly claim that the Amended Complaint satisfied the heightened pleading requirements in Rule 9(b). *See, e.g.*, *U.S. ex rel. Briseno v. Hillcroft Medical Clinic Ass'n*, No. 4:20-cv-02871, 2022 WL 17417178, at *4 (S.D. Tex. Dec. 5, 2022).

The Response makes three arguments to salvage Plaintiffs' barren fraud claims, none of which are compelling. First, the Response argues that the Court can assess the sufficiency of fraud claims by reading the Amended Complaint "as a whole." Response ¶ 48. As if to demonstrate this position, Plaintiffs proceed to claim that they plead fraud with respect to Hatzipetros "with specificity" based, exclusively, on citations outside of Counts Six or Seven. *See* Response at 13–14. But Plaintiffs' invitation to read the Amended Complaint "as a whole" is contrary to the law of this Court and this Circuit. *PCS Software, Inc. v. Dispatch Services, Inc.*, No. CV H-23-108, 2024 WL 3448009 (S.D. Tex. July 16, 2024); *Barrie v. Intervoice-Brite, Inc.*, 397 F.3d 249, 260 (5th Cir. 2005), opinion modified on denial of reh'g, 409 F.3d 653 (5th Cir. 2005).

Second, the Response tries to lower the pleading threshold in the Federal Rules by arguing that Rule 9(b) permits "collectivized allegations" if a complaint identifies a defendant's role in a

fraud scheme.  Response ¶ 49 (citing *AHBP LLC v. Lynd Co.*, 649 F. Supp.3d 371, 389 (W.D. Tex. 2023)).  *AHBP*, however, did not create a new "scheme"-based standard to supplant Rule 9(b).  In that case, the plaintiff's fraud claim satisfied Rule 9(b) because the complaint identified specific misrepresentations and specified by name who made the statements and on which dates.  649 F. Supp.3d at 389.  In contrast, Plaintiffs attribute *no* purported representations or omissions made *by* Hatzipetros and instead list various statements or omissions made by "Defendants."  Am. Compl. ¶¶ 120, 123, 126.  As discussed in Part II, collective group allegations "fail[ ] to illuminate who made the fraudulent statements" and whether Hatzipetros was one of them.  *VeroBlue,* 465 F. Supp.3d at 655.

Third, Plaintiffs argue that the absence of any pleaded misrepresentations by Hatzipetros in Counts Six and Seven is not fatal because a fraud claim does not actually require an affirmative misstatement.  Response ¶ 51.  This is not an accurate statement of Texas law.  The first required element in both common-law fraud and fraudulent inducement claims is that the defendant was responsible for a false representation.  *JPMorgan Chase Bank v. Orca Assets G.P., L.L.C.*, 546 S.W.3d 648, 653 (Tex. 2018) (common-law fraud); *International Bus. Machs. Corp. v. Lufkin Indus.*, 573 S.W.3d 224, 228 (Tex. 2019) (fraudulent inducement).  Where a plaintiff fails to identify such a statement, those claims should be dismissed.  *See, e.g.*, *Juarez v. Nationwide Prop. & Cas. Ins. Co.*, No. CIV.A. H-10-2726, 2010 WL 5464267, at *3 (S.D. Tex. Dec. 29, 2010).

### G.    Count Eight:  Plaintiffs' Fraudulent Concealment Claim Fails.

In the Motion, Hatzipetros moved for dismissal of Count Eight because Plaintiffs' allegations were too vague to satisfy Rule 9(b) and because allegations elsewhere in the Amended Complaint undercut any plausible allegation that Hatzipetros had a duty to disclose facts alleged to have been fraudulently concealed.  Motion at 18.  The Response makes two arguments to defend Count Eight, Response ¶¶ 55–58, but neither argument has merit.

20

First, Plaintiffs try to attribute alleged concealment by "Defendants" to Hatzipetros. Response ¶¶ 56–57 (citing Am. Compl. ¶¶ 35, 39–41, 93).  As discussed in Point II above, however, the Court should reject that position because the Fifth Circuit prohibits such indiscriminate grouping of "Defendants" when a claim is subject to Rule 9(b).  *See Fin. Acquisition Partners LP v. Blackwell*, 440 F.3d 278, 287 (5th Cir. 2006).

Second, Plaintiffs re-cite a case from the Motion to argue that Texas law recognizes a duty to disclose when a partial disclosure creates a false impression.  Response ¶ 58 (citing *Bradford v. Vento*, 48 S.W.3d 749, 755 (Tex. 2001)).  This argument fails for two reasons.  One:  Plaintiffs' duty theory is cut from whole cloth.  The Amended Complaint alleges a different purported duty. *See* Am. Compl. ¶ 126 ("Defendants owed Plaintiffs a duty to disclose material facts because they accepted Plaintiffs' funds for investment and understood to manage those funds on Plaintiffs' behalf.").  The Court should reject Plaintiffs' new theory.  *See Dorsey*, 540 F.3d at 338.  Two: Again, Plaintiffs' uncorroborated abstract of the Amended Complaint does not track reality.  For example, the Response represents that "Plaintiffs allege that Hatzipetros participated in investor-facing communications and materials intended to induce investment while omitting material facts concerning the structure and operation of the enterprise."  Response ¶ 58.  But the allegations about "investor-facing communications" in the Amended Complaint do not mention Hatzipetros as a speaker, *see* Am. Compl. ¶¶ 2, 28, 32, 33, much less allege that Hatzipetros intentionally omitted material facts from any document or speech.  Plaintiffs' fraudulent concealment claim should be dismissed.

**H.     Count Nine:  Plaintiffs' Federal Securities Fraud Claim Should Be Dismissed.**

The Motion identified three defects in Plaintiffs' securities fraud claim under Section 10(b) of the Securities Exchange Act and Regulation 10b-5:  (1) the five-paragraph cause of action fails to plead discrete misstatements or omissions, materiality, scienter, and loss causation with

sufficient detail to satisfy Rule 9(b) or the PSLRA; (2) Plaintiffs' misrepresentation and scienter allegations improperly group "Defendants"; and (3) weighing allegations related to scienter in the Amended Complaint using the *Tellabs* rubric favors dismissal.  Motion at 19–22  (citing *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308 (2007)).  The Response completely ignores Hatzipetros's concerns about Plaintiffs' materiality pleading and only superficially addresses *Tellabs* implausibility in connection with Count Nine.  Dismissal is proper on that basis alone. *See, e.g.*, *ABC Arbitrage Plaintiffs Group v. Tchuruk*, 291 F.3d 336, 359–62 (5th Cir. 2002).

The Response makes three different rebuttal arguments, Response ¶¶ 91–102, none of which have merit.  First, Plaintiffs again argues that a cause of action meets the pleading standards of Rule 9(b) (and, here, the PSLRA) by referring the Court to allegations about "Defendants" in the background section of the Amended Complaint.  Response ¶¶ 61–63.  In fact, the Response compounds this group pleading defect itself by alleging "that *Defendants* made false and misleading statements concerning" various matters and "that *Defendants* concealed the true function and use of [certain] entities within the alleged scheme."  Response ¶¶ 61–62 (emphasis added).  As discussed in Point II above, however, the Court should reject a position that relies on the grouped pleading of "Defendants."  *See Blackwell*, 440 F.3d at 287.

Second, the Response contends that the presence of Hatzipetros's name on "investor-facing materials" alone can sustain Count Nine.  Response ¶¶ 65–68 (citing *Blackwell*, 440 F.3d at 288, and *Affco*, 625 F.3d at 193, 195).  Plaintiffs' legal premise is unfounded.  This argument wildly misreads the two cases cited in the Response.  In *Blackwell*, the Fifth Circuit affirmed the dismissal of a securities fraud claim after excoriating the plaintiffs for relying heavily on improper group pleading.  440 F.3d at 287–88.  The Court then considered—and ultimately rejected—an argument by plaintiffs that an individual defendant may be liable if a business filing the defendant signed or

22

created happened to contain false statements. *Id.* at 288. The "materials" in *Blackwell* involved an SEC filing (10-K), the signature of which carries elaborate statutory legal significance. *Id.* The QuantumArc User Agreement misused in the Response is *not* such a regulated document. Moreover, it bears repeating that, even in a case involving the signature of a misleading 10-K, the *Blackwell* court *still* dismissed plaintiff's claim because the complaint merely made "conclusory statements" about required elements. *Id.* at 288–89. The same criticisms apply here.

*Affco* is even less helpful to Plaintiffs. In another case affirming the dismissal of a securities fraud claim based on insufficiently-pleaded allegations, the Fifth Circuit deliberated whether to adopt a "scheme liability" theory and whether a "secondary actor" such as a lawyer "can be held liable in a private section 10(b) action only for false statements attributed to that secondary actor at the time of dissemination." 625 F.3d at 192–94. These questions are pertinent in this case because Hatzipetros is a lawyer who allegedly prepared and signed materials like the QuantumArc User Agreement. But the Response gets the holding in *Affco* backwards. Response ¶ 67–68. ("Courts within this circuit have recognized that attorneys and other professionals who participate in preparing dishonest investor-facing materials or structuring deceptive entities may face primary liability under Section 10(b)."). The *Affco* court held that a "secondary actor" can "be held liable in a private section 10(b) action *only* for false statements *attributed to that secondary actor at the time of dissemination*." 625 F.3d at 194 (emphasis added). The Amended Complaint attributes *no allegedly actionable statements at all* to Hatzipetros in Count Nine or elsewhere. A proper reading of *Affco* therefore urges dismissal, rather than the opposite.

Third, implicitly conceding that the misrepresentation and omission allegations in Count Nine are vague, conclusory, and not expressly applicable to Hatzipetros, the Response urges the Court to treat the Amended Complaint under a scheme-liability rubric, which purportedly reduces

23

Plaintiffs' pleading burdens with respect to individual defendants like Hatzipetros.  Response ¶ 76 (citing *Lorenzo v. Sec. & Exch. Comm'n*, 587 U.S. 71, 77 (2019)).  There are two problems with Plaintiffs' reliance on scheme pleading in this case.  One: Plaintiffs misread *Lorenzo*.  In that case, the U.S. Supreme Court held that the anti-fraud provisions of federal securities law covered "dissemination of false or misleading statements with intent to defraud," even if "the disseminator did not 'make' the statements."  587 U.S. at 78.  The Response focuses on the last part of the holding (liability under Rule 10b-5 does not require that a defendant personally make a misstatement), but it overlooks the first part of the holding, which still requires "dissemination of false or misleading statements."  *See id.*  In other words, *Lorenzo* does not absolve Plaintiffs of pleading the presence of false or misleading statements and that Hatzipetros.

Two, even if *Lorenzo* applies to this case as Plaintiffs contend, scheme-based pleading *still* requires a plaintiff to plead and prove real-time "intent to defraud."  *Lorenzo*, 587 U.S. at 78.  That is a problem for Plaintiffs.  As discussed above in Point III(B) and elsewhere, the Amended Complaint does not actually contain any factual allegations that Hatzipetros "knowingly engaged" in his legal work with an awareness that his conduct was deceptive.  Indeed, the Amended Complaint disproves Plaintiffs' reckless "knowingly" contentions.

## I.        Count Ten: Plaintiffs' Texas Securities Act Claim Should Be Dismissed.

The Motion identified three defects in Plaintiffs' state securities fraud claim under the Texas Securities Act:  (1) the six-paragraph cause of action fails to plead when Hatzipetros "offered and sold securities in Texas," misrepresentations, and omissions with sufficient detail to satisfy Rule 9(b); (2) Plaintiffs' allegations again improperly group "Defendants"; and (3) the Amended Complaint lacks factual allegations to support any category of liability under the Act. Motion at 22–23.  The Response makes two rebuttal arguments, neither of which has merit.

24

First, the Response claims that Count Ten complies with Rule 9(b), Response ¶ 79, but the Response only cites allegations in the Factual Background section and Count One of the Amended Complaint. As discussed above, this Court has rejected Plaintiffs' view that the Court should read the Amended Complaint "as a whole" when testing whether Count Ten satisfies Rule 9(b). *See PCS Software*, 2024 WL 3448009, at *2.

Second, Plaintiffs try to embellish deficient pleading in the Amended Complaint by hypothesizing two ways the Texas Securities Act may apply to Hatzipetros: "seller" liability under TSA Section 4008.052, Response ¶ 80; or "aider" liability under TSA Section 4008.055(c), Response ¶ 81. Like the worst edition of "Let's Make a Deal" ever, however, there is garbage behind each of these options.

- Door 1: To sufficiently plead primary "seller" TSA liability, the Amended Complaint need not plead reliance, loss causation, or scienter. Response ¶ 80 (citing *Dorsey*, 540 F.3d at 343–44). This category of liability, however, only applies to a person who offered or sold a security by means of an untrue statement or omission of material fact. The Amended Complaint does not allege that Hatzipetros offered or sold any purported securities.

- Door 2: To sufficiently plead "aider" TSA liability, the Amended Complaint must plead, *inter alia*, the defendant's "general awareness of his role" in the securities fraud of another *and* a demonstration of intent to deceive or reckless disregard for the truth. Response ¶ 81 (citing TEX. GOV'T CODE § 4008.055(c)). As discussed elsewhere, the Amended Complaint does not actually allege, must less specify with facts, that Hatzipetros "knowingly" engaged in misconduct.

Because a fair reading of Plaintiffs' Amended Complaint will not support *either* of the theories of liability above, Count Ten should be dismissed as a matter of form and incurable law.

## CONCLUSION

For the foregoing reasons and those set forth in his initial Motion, defendant Peter D. Hatzipetros respectfully requests the Court to dismiss Plaintiffs' claims against him for failure to state a claim upon which relief can be granted. Mr. Hatzipetros reserves all rights to alternatively or additionally compel arbitration of Plaintiffs' claims for adjudication on the merits.

25

Respectfully submitted,

**DRUMHELLER, HOLLINGSWORTH & MONTHY, LLP**

/s/ *Jeremy T. Monthy*

Jeremy T. Monthy, *Attorney-in-Charge*
State Bar No. 24073240
Federal I.D. No. 1115582
Derek S. Hollingsworth
State Bar No. 24002305
Federal I.D. No. 34569
Kathleen C. Laird
State Bar No. 24132063
Federal I.D. No. 3844989
712 Main Street, Suite 1705
Houston, Texas  77002
Telephone:  (713) 751-2300
Facsimile:  (713) 751-2310
Emails:  jmonthy@dhmlaw.com
　　　　dhollingsworth@dhmlaw.com
　　　　klaird@dhmlaw.com

**COGDELL LAW FIRM, PLLC**
Dan Cogdell
Texas Bar # 04501500
Cogdell Law Firm
712 Main St., Suite 2400
Houston, TX 77002
Telephone: 713 426 2244
Email: dan@cogdell-law.com

**ATTORNEYS FOR DEFENDANTS,
MIKE BOGGS, PETER D. HATZIPETROS,
AND ANGELS CODING, LLC**

26

## CERTIFICATE OF SERVICE

I hereby certify that on May 29, 2026, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all registered parties, including:

Kyle A. Coker
Kaitlyn M. Coker
Farmer & Coker, PLLC
901 Main Street, Suite 5330
Dallas, Texas  75202

*Attorneys for Plaintiffs*

/s/ *Jeremy T. Monthy*
Jeremy T. Monthy

27